## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | Civil Action No. 06-369-GMS |
| Plaintiff-Counterdefendant, | ) ) | |
| v. | ) ) | |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) | |
| Defendants-Counterclaimants. | ) ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION
TO STRIKE SECURE COMPUTING CORPORATION'S,
CYBERGUARD CORPORATION'S AND WEBWASHER AG'S
AFFIRMATIVE DEFENSE OF UNENFORCEABILITY AND
DISMISS SECURE COMPUTING CORPORATION'S AND
WEBWASHER AG'S COUNTERCLAIM OF
UNENFORCEABILITY**

OF COUNSEL

Paul J. Andre
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
(650) 838-4300

Dated: August 15, 2006

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff
Finjan Software, Ltd.

# TABLE OF CONTENTS

INTRODUCTION .............................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS
AND STATEMENT OF FACTS..................................................................................1

SUMMARY OF ARGUMENT ......................................................................................3

ARGUMENT ..................................................................................................................3

A.   Defendants' Unenforceability Allegations Fail to Meet the Pleading
     Requirements of Fed. R. Civ. P. 8 and 9............................................................3

B.   Secure Computing Corporation's and WebWasher AG's Unenforceability
     Counterclaim Should Be Dismissed With Prejudice Under Fed. R. Civ. P.
     12(b)(6) .................................................................................................................5

C.   Defendants' Affirmative Defense of Unenforceability Should Be Stricken
     Under Fed. R. Civ. P. 12(f)..................................................................................5

CONCLUSION................................................................................................................7

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Cardiogenesis Corp. v. PLC Systems, Inc.,*
  Civ. No. 96-20749 SW, 1997 WL 12129 (N.D. Cal., Jan. 8, 1997) ...........................4

*Conley v. Gibson,*
  355 U.S. 41 (1957) ...........................................................................................................4

*EMC Corp. v. Storage Tech. Corp.,*
  921 F. Supp. 1261 (D. Del. 1996) ................................................. ...............................6

*Ferguson Beauregard/Logic Controls, Division of Dover Resources, Inc. v.*
  *Megasystems, LLC,*
  350 F.3d 1327 (Fed. Cir. 2003) ...................................................................................4

*Harrison v. Westinghouse Savannah River Co.,*
  176 F.3d 776 (4th Cir. 1999)..........................................................................................6

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,*
  863 F.2d 867 (Fed. Cir. 1988), *cert. denied*, 490 U.S. 1067 (1989) ...........................3

*Qarbon.com Inc. v. eHelp Corp.,*
  315 F. Supp. 2d 1046 (N.D.Cal. 2004).........................................................................5

*Samsung Electronics Co., Ltd. v. Texas Instruments Inc.,*
  No. 3:96-CV-0001-P, 1996 WL 343330 (N.D. Tex. Apr. 18, 1996)..........................6

*Williams v. Potter,*
  384 F. Supp. 2d 730 (D. Del. 2005) .............................................................................5

### STATUTES AND RULES

35 U.S.C. Section 101, *et seq.*..........................................................................................2

35 U.S.C. Section 112.........................................................................................................2

Fed. R. Civ. P. 8 .........................................................................................................3, 4, 5

Fed. R. Civ. P. 9(b) .................................................................................................4, 5, 6

Fed. R. Civ. P. 12(b) .......................................................................................................3

Fed. R. Civ. P. 12(b)(6)..................................................................................................5

Fed. R. Civ. P. 12(f).......................................................................................................3, 5

## INTRODUCTION

Plaintiff Finjan Software, Ltd. ("Finjan") brought this suit to prevent Defendants Secure Computing Corporation, Cyberguard Corporation, and WebWasher AG (collectively "Defendants") from infringing United States Patent No. 6,092,194 (the "'194 Patent"). In response to Finjan's complaint, among other affirmative defenses and counterclaims, Defendants simply assert that the '194 Patent is unenforceable, without any supporting facts. That conclusory statement, without more, fails to meet even the minimum pleading requirements of the Federal Rules of Civil Procedure, let alone the heightened pleading requirements of the Federal Rules applicable here, because it fails to provide *any* basis for Defendants' unenforceability defense and counterclaim. Accordingly, Finjan respectfully requests that the Court strike Defendants' affirmative defense of unenforceability, and dismiss Secure Computing Corporation's and WebWasher AG's declaratory judgment counterclaim to the extent that they seek to have the '194 Patent declared unenforceable.

## NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS

Finjan filed a complaint against Defendants for infringement of the '194 Patent on June 5, 2006. On July 26, 2006, Defendants served their Answer and Counterclaims of Defendants Secure Computing Corporation, Cyberguard Corporation, and Webwasher AG (D.I. 14) (hereinafter "Answer"). In the Answer, Defendants raised an affirmative defense of unenforceability and Secure

Computing Corporation and WebWasher AG asserted a declaratory judgment

counterclaim of unenforceability.

Defendants have not pled any facts to support their unenforceability

allegations in the Answer. For their affirmative defense directed to

unenforceability, all Defendants have pled is:

> 18. Plaintiff's asserted patent, United States Patent No. 6,092,194 ("the '194 patent"), is invalid, *unenforceable*, and/or void for failure to satisfy the requirements of patentability contained in 35 U.S.C. Section 101, et seq., including, but not limited to, Section 102, 103, and for lack of enablement and inadequate written description under 35 U.S.C. section 112, and for failure to disclose best mode.
>
> 19. Secure Computing reserves its right to assert additional grounds for the invalidity or *unenforceability* of the '194 patent if it discovers such grounds during the court of the litigation.

Answer ¶¶ 18 & 19 (emphasis added).

For their counterclaim directed to unenforceability, all Secure Computing

Corporation and WebWasher AG have pled is as follows:

> 28. United Stated Patent No. 6,092,194 and each claim thereof is invalid, *unenforceable* and not infringed by Secure Computing.
> ......
> 30. Secure Computing therefore seeks a declaration and finding by this Court that United States Patent No. 6,092,194 is invalid and *unenforceable* and that Secure Computing does not infringe, directly, indirectly, contributorily or otherwise, and has not induced any others to infringe, any valid claims of United States Patent No. 6,092,194.

Answer ¶¶ 28 & 30 (emphasis added).

## SUMMARY OF ARGUMENT

The issue at the core of this motion is: what do Defendants mean by "unenforceable"?  Defendants do not provide any grounds for their unenforceability allegations.  The affirmative defense and counterclaim on unenforceability are merely conclusory allegations without any factual support and as a result, fail to provide Finjan with the fair notice of a cognizable claim for unenforceability as required by Rule 8(a) of the Federal Rules of Civil Procedure. To the extent that Defendants are attempting to assert their unenforceability allegations on inequitable conduct, Defendants fail to meet the heightened pleading requirements for fraud-based claims under Federal Rule of Civil Procedure 9(b).  Accordingly, Finjan respectfully asks this Court to dismiss with prejudice Secure Computing Corporation and WebWasher AG's unenforceability counterclaim pursuant to Fed. R. Civ. P. 12(b) and strike Defendants' affirmative defense of unenforceability pursuant to Fed. R. Civ. P. 12(f).

## ARGUMENT

A.     **Defendants' Unenforceability Allegations Fail to Meet the Pleading Requirements of Fed. R. Civ. P. 8 and 9.**

Typically, an allegation of unenforceability in a patent dispute implies the defense of inequitable conduct, where a patent is rendered unenforceable if the patent applicant acted inequitably before the Patent and Trademark Office in prosecuting the patent.  *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F. 2d 867, 872 (Fed. Cir. 1988), *cert. denied*, 490 U.S. 1067 (1989). "Unenforceable" can also serve as an umbrella for other defenses such as fraud,

3

estoppel, unclean hands, and patent misuse. *Cardiogenesis Corp. v. PLC Systems, Inc.*, Civ. No. 96-20749 SW, 1997 WL 12129 , at \*1 (N.D. Cal., Jan. 8, 1997)(unpublished opinion) (Ex. A hereto). In this instance, Defendants fail to provide *any* grounds for their unenforceability allegations.

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must provide the defendants with "***fair notice of what the plaintiff's claim is and the grounds upon which it rests.***" *Conley v. Gibson*, 355 U.S. 41, 47 (1957)(emphasis added). Defendants' assertions of unenforceability are vague and conclusory, and fail to provide any notice at all to Finjan of the grounds of their allegations, thereby violating the plain notice requirement of Rule 8.

If Defendants intended to assert inequitable conduct as grounds for their unenforceability allegations, their sparse statements of unenforceability would certainly be stricken for failure to conform to the heightened particularity requirements of Fed. R. Civ. P. 9(b). *See Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Megasystems, LLC*, 350 F. 3d 1327, 1344 (Fed. Cir. 2003) (holding that a claim for inequitable conduct must be "pled with particularity.") Here, Defendants do not even meet the minimum pleading requirement of Rule 8(a), let alone the heightened pleading requirements under Fed. R. Civ. P. 9(b).

4

**B.      Secure Computing Corporation's and WebWasher AG's Unenforceability Counterclaim Should Be Dismissed With Prejudice Under Fed. R. Civ. P. 12(b)(6).**

If a claim fails to meet Rule 8's liberal pleading standard, that claim is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. *Williams v. Potter*, 384 F. Supp. 2d 730, 733 (D. Del. 2005). Since Secure Computing Corporation's and WebWasher AG's unenforceability claim is devoid of any factual support, it should be dismissed with prejudice under Rule 12(b)(6).

**C.      Defendants' Affirmative Defense of Unenforceability Should Be Stricken Under Fed. R. Civ. P. 12(f).**

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because Defendants' allegations of unenforceability are pled without any factual support and fails to meet the pleading requirements under Rule 8(a) and Rule 9(b), the Court should grant Finjan's motion to strike the allegation of unenforceability from the Answer. *See Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049-1050 (N.D.Cal. 2004) (holding that affirmative defenses not meeting the pleading requirements were stricken where the defenses were alleged as conclusions without any factual basis, depriving plaintiff of fair notice of what the defense is and the grounds upon which it rests).

5

Even though Defendants claim to reserve their rights to assert additional grounds for unenforceability affirmative defense, a party may not use subsequent discovery to salvage a defective pleading. *EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263, 1263-64 (D. Del. 1996). Indeed, one of the purposes of Rule 9(b) is to "eliminate fraud actions in which all the facts are learned after discovery." *Harrison v. Westinghouse Savannah River Co.*, 176 F. 3d 776, 784 (4th Cir. 1999), *see also Samsung Electronics Co., Ltd. v. Texas Instruments Inc.*, No. 3:96-CV-0001-P, 1996 WL 343330, at *3 (N.D. Tex. Apr. 18, 1996) (Ex. B hereto) ("A general allegation of inequitable conduct should not be used as a launching pad for extensive or unwarranted discovery, and holding Plaintiff to the strictures of Rule 9(b) may assist in discouraging that practice."). Therefore, this Court should not allow Defendants to engage in discovery to fulfill their duty of pleading with particularity under Rule 9(b).

## CONCLUSION

For the above reasons, Finjan respectfully requests that the Court strike

Defendants' affirmative defense on unenforceability and dismiss Secure

Computing Corporation's and WebWasher AG's counterclaim on unenforceability

with prejudice.

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Paul J. Andre                               By: _____
Perkins Coie LLP                                Philip A. Rovner (#3215)
101 Jefferson Drive                             Hercules Plaza
Menlo Park, CA  94025-1114                      P. O. Box 951
(650) 838-4300                                  Wilmington, DE  19899
                                                (303) 984-6000
Dated: August 15, 2006                          provner@potteranderson.com
746062

Attorneys for Plaintiff
Finjan Software, Ltd.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 15, 2006, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY

Frederick L. Cottrell, III, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801

_____/s/ Philip A. Rovner_____
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.                                                                                              Page 1
Not Reported in F.Supp., 1997 WL 12129 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court, N.D. California.
    CARDIOGENESIS CORPORATION, Plaintiff,
                              v.
    PLC SYSTEMS, INC., et al., Defendant.
                **Civ. No. 96-20749 SW.**

                      Jan. 8, 1997.

ORDER GRANTING IN PART DEFENDANT PLC
   MEDICAL SYSTEMS, INC.'S MOTION TO
  DISMISS FOR FAILURE TO STATE A CLAIM
  OR, IN THE ALTERNATIVE, FOR MORE
            DEFINITE STATEMENT
SPENCER WILLIAMS, District Judge.

                    BACKGROUND

*1 PLC Medical, Inc. ("PLCM"), a wholly owned
subsidiary of PLC Systems, Inc. ("PLCS") FN1, owns
United States Patent No. 5,125,926 ("the '926
patent") for a laser device used in heart surgery. As
a potential infringer of the '926 patent,
CardioGenesis filed this case for a declaratory
judgment that 1.) the '926 patent is invalid,
unenforceable, and/or void, and 2.) CardioGenesis
does not infringe the patent. PLCM has
counterclaimed for patent infringement.

> FN1. CardioGenesis initially named PLCS
> as a defendant. The parties have since
> stipulated that PLCS has no proprietary
> interest in the '926 patent, and they agree
> that PLCS is no longer a party to this action.

Paragraph 11 of CardioGenesis's Complaint alleges
that:
"The '926 patent is invalid, unenforceable, and/or
void for failure to comply with the requirements of
Part II of Title 35, United States Code."

In response to CardioGenesis's brief allegation of
unenforceability, PLCM asks this Court to take one
of three actions: 1.) dismiss for failure to state a
claim of unenforceability under Fed.R.Civ.P.
12(b)(6); 2.) order CardioGenesis to provide a more
definite statement under Fed.R.Civ.P. 12(e); or 3.)

strike the unenforceability allegation of the
Complaint under Fed.R.Civ.P. 12(f).

                    DISCUSSION

This motion boils down to a simple question: what
does Plaintiff CardioGenesis mean by
"unenforceable"? Typically an allegation of
unenforceability in a patent dispute implies the
defense of inequitable conduct, where a patent is
rendered unenforceable if the patent applicant acted
inequitably before the PTO in prosecuting the patent.
See Kingsdown Medical Consultants, Ltd. v.
Hollister, Inc., 863 F.2d 867, 872, 9 U.S.P.Q.2d 1384
(Fed.Cir.1988), cert. denied, 490 U.S. 1067 (1989).
"Unenforceable" can also serve as an umbrella for
other defenses such as fraud, estoppel, unclean hands,
and patent misuse. However, in its opposition
papers and at the January 7, 1997 hearing, Plaintiff
denied that it meant to assert the defenses of
inequitable conduct FN2, fraud, estoppel, unclean
hands, or patent misuse when it plead
"unenforceability." Rather, Plaintiff explained that it
intended to allege something far simpler: that if this
Court finds patent '926 invalid, then as a result of the
invalidity the patent should also be held
unenforceable. In other words, Plaintiff does not
assert unenforceability as an independent defense to
patent infringement.

> FN2. The Court notes that if CardioGenesis
> did intend to assert inequitable conduct, its
> allegation of unenforceability would have
> been stricken for failure to conform to the
> particularity requirements of Fed.R.Civ.P.
> 9(b). Courts have overwhelmingly held that
> Rule 9(b) applies to the defense of
> inequitable conduct in a patent action. See
> Chiron Corp. v. Abbott Laboratories, 31
> U.S.P.Q.2d 1848 (N.D.Cal.1994).

It appears that Plaintiff, in an attempt to backtrack
from its original allegations, toys with semantics and
twists the ordinary meaning, at least in the scope of
patent litigation, of "unenforceability." In fact,
Plaintiff's present argument is inconsistent with its
own Complaint alleging the patent to be invalid
"and/or " unenforceable (emphasis added). Under
Plaintiff's present argument, the allegation of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 12129 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

unenforceability could not survive on its own.

Fed.R.Civ.P. 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Because the allegation of unenforceability is redundant and immaterial, the Court GRANTS Defendant's motion to strike the allegation of unenforceability from the Complaint. The motion to strike having been granted, it is unnecessary to address the alternative motions.

**\*2** IT IS SO ORDERED.

N.D.Cal.,1997.
Cardiogenesis Corp. v. PLC Systems, Inc.
Not Reported in F.Supp., 1997 WL 12129 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 5:96CV20749 (Docket) (Sep. 10, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1996 WL 343330 (N.D Tex.), 39 U.S.P.Q.2d 1673
**(Cite as: 1996 WL 343330 (N.D.Tex.))**

## C

**Motions, Pleadings and Filings**

United States District Court, N.D. Texas, Dallas Division.
SAMSUNG ELECTRONICS CO., LTD., Plaintiff,
v.
TEXAS INSTRUMENTS INCORPORATED, Defendant.
**Civ. A. No. 3:96-CV-0001-P.**

April 18, 1996.

*ORDER*

SOLIS, District Judge.

*1 Now before the Court are:

1. Texas Instruments' Motion to Dismiss or Strike Counts 2-4 of the Complaint Under Fed.R.Civ.P. 12 and Memorandum in Support, filed January 31, 1996;
2. Samsung's Brief in Opposition to Texas Instruments' Motion to Dismiss or Strike, filed February 20, 1996; and
3. Texas Instruments' Reply in Support of its Motion to Dismiss or Strike, filed March 6, 1996.

For the reasons stated below, the Court GRANTS in part and DENIES in part Defendant Texas Instruments' Motion to Dismiss or Strike.

### I. Background

Texas Instruments ("TI") and Samsung Electronics Co., Ltd., ("Samsung") are two of the largest developers and manufacturers of semiconductor products in the world. Until January 1, 1996, TI and Samsung manufactured and sold some of their products under a patent cross-license agreement. When the parties were not able to negotiate an extension of the license, both parties filed patent infringement lawsuits in various federal district courts in Texas. In this suit, Samsung brings three causes of action against TI. First, in Count 1 Samsung sues for infringement of thirteen Samsung patents. Next, in Counts 2 and 3 Samsung requests declaratory judgments that Samsung does not infringe two groups of TI patents: first, a defined group of forty-six patents (Group 1 Patents) and second, the remainder of the several thousand patents which TI owns (Group 2 Patents). Finally, Count 4 contains a claim for unfair competition.

TI moves to dismiss or strike three of the four counts of the complaint based on a number of arguments. First, TI asserts that the inequitable conduct claim in Count 2 is not pled in conformity with Rule 9(b) and should be dismissed under Rule 12(b)(6) or stricken under Rule 12(f). [FN1] TI also moves to dismiss or strike the invalidity and unclean hands claims in Count 2. Next, TI claims that Count 3, requesting a declaratory judgment as to the "Group 2 Patents," should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because there is no actual controversy. Finally, TI argues that Count 4 of the complaint fails to state a claim for unfair competition and should be dismissed. The Court will consider each of these arguments in turn.

> FN1. In the alternative, TI requests that the Court require Samsung to provide a more definite statement as to Count 2.

### II. Count 2: Declaratory Judgment for "Group 1 Patents"

#### A. Inequitable Conduct

Count 2 of Samsung's complaint is a claim for declaratory judgment relating to the validity, enforceability, and alleged infringement of forty-six (46) patents which Samsung refers to as the "Group 1 Patents." [FN2] (Compl. ¶ 15-16) Samsung asserts that "TI has committed inequitable conduct in procuring the TI Group 1 Patents, rendering them unenforceable." (Compl. ¶ 18) Then, in the succeeding subparagraphs, Samsung provides examples of this alleged inequitable conduct as to only eight of forty-six patents (Compl. ¶ 18.1-18.8).

> FN2. Samsung lists the "Group 1 Patents" in Exhibit A to its Complaint. This list includes patent number 08/215,554 that is classified as "pending." The case law precludes suit, even preemptively, based on only a patent application. 35 U.S.C. § 271(a); Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 636 (Fed.Cir.), cert. denied, 502 U.S. 1013 (1991) (existence of issued patent claims are a prerequisite to litigation of a declaratory judgment action). Thus, the Court finds that this patent application should be removed from the list of Group 1 Patents.

Westlaw.

Not Reported in F Supp                                                    Page 2
Not Reported in F.Supp., 1996 WL 343330 (N.D Tex.), 39 U.S.P.Q.2d 1673
**(Cite as: 1996 WL 343330 (N.D.Tex.))**

TI contends that Samsung's inequitable conduct claims, including the general allegation in paragraph 18, as well as the more specific allegations in subparagraphs 18 1-18 8, are insufficient in that they do not meet the pleading standard of Rule 9(b) which requires all averments of fraud or mistake to be pled with particularity It is Samsung's contention that rule 9(b) does not apply to a claim of inequitable conduct

*2 As both sides concede, the Federal Circuit has yet to confront the issue of whether Rule 9(b) applies to inequitable conduct Thus, TI relies on lower court case law and policy considerations to support its position, [FN3] while Samsung advances its argument by reference to a Federal Circuit case which draws a distinction between fraud and inequitable conduct *Argus Chem. Corp. v. Fibre Glass-Evercoat Co., 759 F.2d 10, 14 (Fed.Cir.),* cert denied, 474 U.S. 903 (1985) (inequitable conduct which renders a patent unenforceable is broader than the common law tort of fraud) Aside from the language in the *Argus* opinion, and one district court case from California, [FN4] Samsung offers no other case law which directly supports its argument.

> FN3. There are a number of district court cases which have concluded that Rule 9(b) does apply to a defense or counterclaim of inequitable conduct *Optical Coating Lab., Inc. v. Applied Vision, Ltd., 1995 WL 150513, pp. 3-4 (N.D.Cal.1995); Laitram Corp. v. OKI Elec. Indus. Co., 30 USPQ2d 1527, 1532-33 (E.D.La.1994); Chiron Corp. v. Abbott Lab., 156 F.R.D. 219, 220 (N.D.Cal.1994); Simpson v Stand,* 21 USPQ2d 1848 (S D Ind 1994); *Wicker Group v. Standard Register Co.,* 33 USPQ2d 1678 (E.D.Va.1994); *IPPV Enter. v. Cable/Home Communications,* 25 USPQ2d 1894, 1896 (S.D.Cal.1992); *Energy Absorption Sys. Inc. v. Roadway Safety Serv. Inc.,* 28 USPQ2d 1717, 1718-19 (N.D.Ill.1990); *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 178 (E.D.N.Y.1988), aff'd, 870 F.2d 642 (Fed.Cir.1989).

> FN4. Samsung points to *Quantum Corp. v. Western Digital Corp.,* 10 USPQ2d 1712, 1712-13 (N.D.Cal.1988) (Aguilar, J.) to suggest that courts are not in agreement on this issue. In *Quantum,* the

court declined to require a defendant to plead fraud with particularity with regard to defenses enumerated in 35 U.S.C. § 282 However, it is unclear whether the affirmative defense of inequitable conduct was contemplated in the court's reasoning *See Chiron Corp., 156 F.R.D. at 222, n. 1* Although inequitable conduct was at issue in the case, the author of the *Quantum* opinion had previously found that "fraud on the Patent Office is included within [Rule 9(b) ]" and gave no indication in the later ruling of a change in that position. *Id* (citing *Intel Corp. v. Hyundai Electronics America, Inc., 692 F.Supp. 1113, 1115 (N.D.Cal.1987)* (Aguilar, J )).

On balance, the Court finds that Rule 9(b) should apply to Samsung's claim of inequitable conduct The court in *Chiron Corp* expressed it well when it observed that "[a]lthough the Federal Circuit has yet to squarely address whether Rule 9(b) applies to inequitable conduct, a plain reading of the Federal Rules, the weight of authority, and sound public policy all require that pleadings which allege inequitable conduct before the PTO comply with Rule 9(b)." 156 F.R.D. at 220

Although the Federal Circuit has acknowledged that inequitable conduct is broader than common law fraud, *Argus, 759 F.2d at 14,* this does not mean that a claim of inequitable conduct is not an allegation involving fraudulent conduct. Indeed, the Federal Circuit has indicated that intent to deceive is a required element of inequitable conduct *Kingsdown Medical Consultants v. Hollister, Inc., 863 F.2d 867 (Fed.Cir.1988), cert denied, 493 U.S. 1076 (1990)* As the Federal Rule is phrased, "all averments of fraud" must be pled with particularity, and inequitable conduct has been called "fraud on the patent office." *Burlington Indus., 849 F.2d 1418, 1422 (Fed.Cir.1988)* Thus, the distinction between inequitable conduct and fraud drawn by the court in *Argus* seems relevant to the elements that must be established for each cause of action and to the legal consequences of the conduct, rather than to the pleading standard which should be applied to each claim *See Chiron Corp., 156 F.R.D. at 221*

Moreover, concerns of public policy counsel in favor of the application of Rule 9 The Federal Circuit has expressed

© 2006 Thomson/West No Claim to Orig. U S. Govt Works.

Westlaw.

Not Reported in F Supp                                                    Page 3
Not Reported in F Supp , 1996 WL 343330 (N D Tex ), 39 U S P Q 2d 1673
(Cite as: 1996 WL 343330 (N.D.Tex.))

concern over the potential abuse of the inequitable conduct cause of action  For example, the Federal Circuit cautioned that inequitable conduct is not, or should not be, "a magic incantation to be asserted against every patentee." *FMC Corp. v. Manitowoc Co., Inc.,* 835 F.2d 1411, 1415 (Fed.Cir.1987) The following year, the court stated that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague   A patent litigator should be made to feel, therefore, that an unsupported charge of 'inequitable conduct in the Patent Office' is a negative contribution to the rightful administration of justice." *Burlington Industries,* 849 F.2d 1418, 1422 [7 USPQ2d 1158] (Fed.Cir.1988).

**\*3** Application of Rule 9(b) may serve as an effective tool in preventing this type of abuse. As courts have explained, the Rule prevents the filing of a complaint as a pretext for the discovery of unknown wrongs. *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 521 (5th Cir.1993); *Semegen v. Weidner,* 780 F.2d 727, 731-35 (9th Cir.1985)  Indeed, it is meant to give the opposing party notice of *particular* misconduct. *Shushany,* 992 F.2d at 521; *Urcarco Sec. Litig.,* 148 F.R.D. 561 (N.D.Tex.1993), aff'd sub nom. *Melder v. Morris,* 27 F.3d 1097 (5th Cir.1994). The application of Rule 9(b) is especially appropriate in the case at hand, given Samsung's implications that discovery may serve to elucidate and bolster its pleadings. [FN5] A general allegation of inequitable conduct should not be used as a launching pad for extensive or unwarranted discovery, and holding Plaintiff to the strictures of Rule 9(b) may assist in discouraging that practice.

> FN5. For example, Samsung states that it "has pleaded that the Group I patents are unenforceable, in part, because of inequitable conduct as to the specific Paragraph 18 Patents  While the other Group I patents may also be unenforceable due to inequitable conduct in the prosecution of those patents--*information which discovery will develop ...*" (Resp  at 11)  In another section, Samsung states that the allegations it puts forth in paragraph 18 are sufficient at this stage, because "only through discovery will Samsung become aware of the full extent of the inequitable conduct." (Resp  at 10).

The weight of legal authority and policy considerations lead

the Court to conclude that Samsung's allegations of inequitable conduct should be subject to the pleading requirements of Rule 9(b)  Thus, the Court must determine whether the portions of the complaint which allege inequitable conduct comply with Rule 9(b) [FN6] and recite the necessary elements of inequitable conduct. [FN7] A review of the eight relevant paragraphs in Count 2 reveals that Samsung's allegations do not meet these standards  Samsung does not specifically state the time, place, and content of any alleged conduct. *Shushany,* 992 F.2d at 521 ("Rule 9(b) requires at a minimum, however, allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.") (citing *Tel-Phonic Serv., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir.1992)) Moreover, some of the paragraphs do not allege the requisite intent necessary to sustain an inequitable conduct claim.

> FN6. Although it appears from the face of the complaint that Samsung is alleging that TI has committed inequitable conduct in procuring all of the TI Group 1 Patents, rendering them unenforceable, Samsung assures the Court that it "has not attempted to claim inequitable conduct specific to [the remaining 38 Group 1] patents. Rather, Samsung has pleaded that the remaining patents are unenforceable under the doctrine of unclean hands." (Resp  at 11). Thus, according to its own characterization of its Complaint, Samsung only intends to currently allege inequitable conduct as to the eight patents enumerated in paragraphs 18.1-18.8.

> FN7. The Federal Circuit has enumerated the elements of inequitable conduct, stating that it consists of an "affirmative misrepresentation of material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.,* 1996 WL 4114, \*6-7 (Fed.Cir.1996) (citing *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995); *Kingsdown Medical Consultants v. Holister, Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988), cert denied, 490 U.S. 1067 (1989)).

© 2006 Thomson/West  No Claim to Orig  U.S. Govt  Works.

Westlaw.

Not Reported in F.Supp.                                                                          Page 4
Not Reported in F Supp., 1996 WL 343330 (N.D Tex.), 39 U.S.P.Q 2d 1673
**(Cite as: 1996 WL 343330 (N.D.Tex.))**

Thus, the Court grants Samsung twenty (20) days from the date of this order to amend its pleadings in conformity with Rule 9(b). In amending its complaint, Samsung should state with particularity its allegations of inequitable conduct with respect to each of the eight patents, keeping in mind the elements of the cause of action as well as the need to specifically state the facts surrounding the alleged conduct. In other words, Samsung should, if it can, pinpoint the precise offending conduct of which it complains. If Samsung wishes to allege this cause of action as to any other patents in Group 1, it should state this separately, and do so with the same attention to particular facts. A global allegation of inequitable conduct as to the Group 1 Patents as a whole will not suffice.

*B. Invalidity*

Samsung's complaint places the validity of TI patents in issue, and its Prayer requests that "[t]he Court enter judgment declaring that the TI Group 1 and TI Group 2 Patents are invalid and unenforceable." (Compl. at 14, ¶ E) TI moves to dismiss or strike the allegations of invalidity on the basis that Samsung does not "identify the grounds upon which it contests the validity or even positively allege that TI's patents are invalid." (Mot. at 3) Citing to *Grid Sys. Corp. v. Texas Instruments Inc., 771 F.Supp. 1033, 1042 (N.D.Cal.1991)*, TI contends that Samsung's allegations do not satisfy the requirement of Rule 8, much less the more rigorous requirements of 35 U.S.C. § 282 for pleading of grounds of alleged patent invalidity. (Mot. at 3-4)

*4 In pertinent part, section 282 provides:
   The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
   (2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability;
   (3) Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title. 35 U.S.C. § 282

Thus, although Samsung's invalidity claim is not subject to a heightened pleading requirement, it must comport with the relevant federal statute, which requires a party to indicate the grounds for the invalidity. *See Cornwall v. U.S. Constr. Man., Inc., 800 F.2d 250, 252 (Fed.Cir.1986)*. This suggests that at the least, Samsung must make an allegation of invalidity, stating which grounds of invalidity are being asserted. Although Samsung names the patents at issue, it does not affirmatively state that they are invalid, or identify the grounds upon which the Court should find them invalid. Thus, it will be necessary for Samsung to replead its invalidity claim to include these basic elements; the Court grants Samsung twenty (20) days to do so.

*B. Unclean Hands*

Count 2 also makes the assertion that TI's Group 1 Patents are all related, and that "[d]ue to TI's inequitable conduct in procuring these patents, TI has unclean hands, and all TI Group 1 Patents are unenforceable in law and equity." (Compl. ¶ 19) TI moves to strike or dismiss this claim because it relies on the deficient inequitable conduct charges as a foundation.

The Court has instructed Samsung to replead its inequitable conduct allegations, and if such amendment is sufficient, this objection will be rendered moot.

III. *Count 3  Declaratory Judgment for "Group 2 Patents"*

TI argues that Count 3 of Samsung's complaint, which also requests a declaratory judgment, should be dismissed under Rule 12(b)(1) because it fails to state a justiciable controversy. TI contends that because Samsung does not name specific patents, the allegation lacks facts necessary to show the presence of an actual claim or controversy, a necessary element of a declaratory judgment action under 28 U.S.C. §§ 2201-2202.

Samsung counters by insisting that Count 3 arose because of the statements made by TI during the license negotiations; Samsung asserts that "TI represented generally during the license negotiations .. that the TI Group 1 Patents were merely representative of the patents in TI's overall patent portfolio which TI asserted were infringed by Samsung." (Compl. ¶ 6) Samsung claims, in other words, that TI's negotiation strategy forced it to file this form of declaratory judgment action, making Samsung "apprehensive that TI ac-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F. Supp.                                                                                          Page 5
Not Reported in F. Supp., 1996 WL 343330 (N.D.Tex.), 39 U.S.P.Q.2d 1673
**(Cite as: 1996 WL 343330 (N.D.Tex.))**

tually will bring suit, either presently or in the near future, asserting that Samsung's above identified products and processes infringe one or more of the TI Group 2 Patents." (Compl. ¶ 6; Resp. at 14).

*5 Count 3 of Samsung's complaint states that:

23. On information and belief, TI is the owner by assignment of many United States Letters Patents, other than the TI Group 1 Patents, which relate to Samsung Products and Processes and one or more of which TI has suggested are infringed by Samsung Products and Processes. Such other TI Patents are referred to as the "TI Group 2 Patents."

24. By reason of the facts set forth above with respect to paragraphs 4-6, a real, immediate and justiciable controversy exists between Samsung and TI with respect to the validity and enforceability of the claims of the TI Group 2 Patents, and the alleged infringement of those claims by Samsung.

25. Samsung Products and Processes have not infringed and do not presently infringe any valid and enforceable claim of the TI Group 2 Patents.

Under the Declaratory Judgment Act, [FN8] an actual controversy must exist at the time the plaintiff files its complaint and throughout the pending action. *Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 887 (Fed.Cir.1992).* Moreover, the plaintiff must allege an actual controversy, not a hypothetical conflict or one premised on some uncertain prospective occurrence. *BP Chem. Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed.Cir.1993)* ("There must be a 'definite and concrete' dispute between adverse parties, appropriate to immediate and definitive determination of their legal rights.") The Supreme Court has admitted the difficulty of determining whether an actual controversy exists in each case, but the Court has counseled that there must be a substantial controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).*

FN8. The Declaratory Judgment Act provides in pertinent part:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the fil-

ing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201.

In the context of declaratory judgments implicating patent rights, the Federal Circuit has articulated a two-pronged test to evaluate the sufficiency of complaints. In *Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953 (Fed.Cir.1987),* the court explained that a plaintiff must demonstrate:

First, the defendant's conduct must have created on the part of plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or have prepared to produce that device. *Id.* at 955 (quoting *Indium Corp. v. Semi-Alloys, Inc., 781 F.2d 879, 882-83 (Fed.Cir.1985), cert. denied, 479 U.S. 820 (1986))*

In the situation at hand, the Court need only concern itself with the first prong of the test, which turns on the actions of the defendant patent holder to determine whether its conduct rose to a "level sufficient to indicate an intent to enforce its patent." *Shell, 970 F.2d at 888.* This test is an objective one, and subjective apprehension on the part of the asserted infringer will not suffice. *BP Chem., 4 F.3d at 978; Indium, 781 F.2d 879.* Short of an express charge of infringement, a court must consider the "totality of the circumstances" in determining whether the conduct of the defendant meets the first prong of the test. *Shell Oil, 970 F.2d at 888; Goodyear, 824 F.2d at 955.* In either case, the burden is on the plaintiff to establish an actual controversy. *Shell Oil, 970 F.2d at 888; West Interactive Corp. v. First Data Resources, 972 F.2d 1295 (Fed.Cir.1992).*

*6 In this case, the Court concludes that the first prong of the test is not satisfied. Samsung merely alleges that TI "suggested" and made "general representations" during licensing negotiations concerning its total portfolio of nearly 4,000 patents. Looking at TI's alleged statements in the context in which they were made, the Court finds that this type of pos-

Not Reported in F.Supp.                                                                                              Page 6
Not Reported in F.Supp., 1996 WL 343330 (N.D.Tex.), 39 U.S.P.Q.2d 1673
**(Cite as: 1996 WL 343330 (N.D.Tex.))**

turing was for purposes of persuasion and strategy during the extended cross-licensing negotiations. *Shell Oil, 970 F.2d at 889* (holding that comments and statements made by patent holder during license negotiations amounted only to "jawboning" which typically occurs during negotiations, and neither constituted an express threat nor rose to the level of reasonable apprehension); *AgriDyne Technologies, Inc. v. W.R. Grace & Co., 863 F.Supp. 1522, 1529 (D.Utah 1994)* (patent holder's references to its portfolio of patents and discussion of multiple patents in a general sense did not instill reasonable apprehension of patent infringement suit as to the threatened patent); *Century Indus., Inc. v. Wenger corp., 851 F.Supp. 1260, 1264 (S.D.Ind.1994)* (holding that parties merely engaged in posturing not rising to the level of reasonable apprehension).

Further, the lack of an *immediate* controversy as to the Group 2 Patents is underscored by Samsung's general request for leave to amend Count 3 "as may become necessary and appropriate, if ever, to add the identity of specific TI Group 2 Patents if and when those patents are identified to Samsung by TI." (Compl. at 14, ¶ (G)) In fact, Count 2 of Samsung's complaint contains a declaratory judgment action specifically challenging the patents over which Samsung *does* have reasonable apprehension, namely the Group 1 Patents. (Com pl. ¶¶ 14-16).

In sum, the Court finds that Samsung has not met its burden in establishing an actual controversy. The allegations in paragraph 6 of the complaint do not suggest that TI expressly threatened suit for patent infringement, and the totality of the circumstances in this case does not suggest that TI engaged in conduct that placed Samsung in reasonable apprehension of an infringement suit over the relevant patents, which in this case are the nearly 4,000 patents which comprise the Group 2 Patents. Thus, there is no real and immediate conflict between the parties that creates an actual controversy within the meaning of the Declaratory Judgment Act. [FN9]

> FN9. Even assuming that a controversy did exist, however, the Court would decline to exercise jurisdiction. In appropriate circumstances, a court may decline to declare legal rights and relations; the Declaratory Judgment Act states that a court "may"

grant one. *Arrowhead, 846 F.2d 731, 735 n. 6; See also Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 241 (1952)*. This Court recognizes that the declaratory judgment action is not a permissive action that may be heard or dismissed on a whim. As such, the Court would have several sound reasons for declining jurisdiction.

For example, a declaratory judgment involving a vast portfolio of nearly 4,000 patents would be an unprecedented, and indeed unwieldy, action. It would be a virtually insurmountable task for the Court to issue a declaration as to TI's Group 2 Patents, which number in the thousands. Although Samsung assures the Court that its intention in filing suit in Dallas was to secure a speedy road to trial, this purported goal would surely be thwarted by the request for declaratory relief in Count 3. Additionally, TI would undoubtedly be prejudiced by such an open-ended and wide-ranging request for declaratory relief addressing potentially all of its portfolio. Considerations of justice and efficiency would require the Court to decline jurisdiction.

Accordingly, the Court must dismiss Count 3 of Samsung's complaint.

**III. *Count 4. Unfair Competition***

Finally, TI claims that Count 4 of the complaint must be dismissed because the allegations of unfair competition fail to state the required elements of the cause of action. TI argues that Samsung alleges no independent tort or illegal act which would support an unfair competition claim under Texas law. All of the acts alleged, claims TI, are either preempted by federal law or are at most defenses to enforcement of TI's patents.

*7 At least for the purposes of this motion, both sides agree that state law governs the question of unfair competition. [FN10] *Northwest Power Prod., Inc. v. Omark Indus., Inc., 576 F.2d 83, 88 (5th Cir.1978)* ("there is no federal law of unfair competition); *Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 670 (Fed.Cir.)* ("there is no federal common law of unfair competition), *cert. denied,* 488 U.S. 968 (1988). A claim for unfair competition under Texas law re-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                 Page 7
Not Reported in F.Supp., 1996 WL 343330 (N.D.Tex.), 39 U.S.P.Q.2d 1673
**(Cite as: 1996 WL 343330 (N.D.Tex.))**

quires the commission of an independent tort or other illegal conduct that interfered with the plaintiff's ability to do business; liability cannot be premised on the tort of unfair competition. *Continental Airlines, Inc. v. American Airlines, Inc.,* 824 F.Supp. 689, 694 n. 6 (S.D.Tex.1993); *Schoellkopf v. Pledger,* 778 S.W.2d 897, 904-5 (Tex.App.--Dallas 1989, writ denied), *error denied,* (June 13, 1990).

> FN10. TI's Motion and Reply addresses solely state law, and Samsung "accepts for the sake of argument TI's assumption that the Texas law of unfair competition applies to all of the acts alleged in the complaint." (Resp. at 18, n. 9) In addition, Samsung characterizes its Complaint as including a claim for "state law unfair competition ..." (Resp. at 1)

Patent infringement, however, cannot form the basis of a Texas unfair competition claim. *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux,* 24 F.3d 1368, 1373 (Fed.Cir.1994) (noting that "infringement of patents, foreign or domestic, is not generally recognized as coming within the rubric of 'unfair competition' "); *J.M. Huber Corp. v. Positive Action Tool of Ohio,* 897 F.Supp. 705, 709 (S.D.Tex.1995) (claim for alleged patent infringement is properly actionable under federal patent law, not as an act of unfair competition). Thus, Samsung cannot rely on TI's alleged patent infringement to support its unfair competition claim. [FN11] This claim is encompassed by Samsung's actual claim for patent infringement under the federal patent laws. (Compl. ¶¶ 8-13).

> FN11. Count 4 of the Complaint states that "TI competes unfairly against Samsung by engaging in unfair practices which include the following acts: ... TI commits acts of patent infringement of Samsung's Patents in Suit in disregard of Samsung's rights (Compl. ¶ 28)

The Court finds, however, that the complaint does contain other allegations which may serve as a predicate for an unfair competition claim; Samsung recites wrongful acts by TI that go beyond TI's violations of the patent laws. The complaint states that TI has engaged in illegal package licensing (¶ 28.1), discriminatory licensing practices (¶ 28.3), misap-

propriation from standard-setting groups (¶ 28.4), and unfounded threats of litigation (¶ 29).

Accordingly, TI's motion to dismiss Samsung's unfair competition claim in Count 4 of the complaint is DENIED.

*Conclusion*

Samsung is granted twenty (20) days from the date of this order to replead its inequitable conduct and invalidity claims in Count 2. TI's request to dismiss the declaratory judgment contained in Count 3 of the complaint is GRANTED. Finally, the Court finds that Samsung has stated a claim for unfair competition and TI's motion to dismiss Count 4 is DENIED.

So Ordered.

Not Reported in F.Supp., 1996 WL 343330 (N.D.Tex.), 39 U.S.P.Q.2d 1673

**Motions, Pleadings and Filings (Back to top)**

• 3:96cv00001 (Docket) (Jan. 01, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.