# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | Civil Action No. 06-369 GMS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) ) | |

## PLAINTIFF'S TRIAL BRIEF

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
(650) 838-4300

Dated: January 7, 2008
Public Version: January 14, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiff/Counterdefendant
Finjan Software, Ltd., and Counterdefendant
Finjan Software, Inc.*

**TABLE OF CONTENTS**

I.      THE NATURE OF THE CASE ..................................................................................1

II.     THE FACTS AT ISSUE............................................................................................2

        A.      The Finjan Patents...........................................................................................2

        B.      Defendants' Patents .........................................................................................4

III.    FACTS AND THEORIES REGARDING CLAIMS AND DEFENSES............................4

        A.      The Webwasher Product Infringes the Finjan Patents .............................................4

                1.      The Webwasher Product Infringes the '194 Patent ......................................5

                2.      The Webwasher Product Infringes the '780 Patent ......................................6

                3.      The Webwasher Product Infringes the '822 Patent ......................................7

                4.      Defendants Willfully Infringed the Finjan Patents ......................................8

        B.      The Finjan Patents are Valid and Enforceable........................................................8

                1.      Prior Art Does Not Invalidate the Finjan Patents .........................................9

                2.      Defendants Put Forth No Evidence Regarding
                        the Section 112 Claims ......................................................................9

                3.      Defendants Put Forth No Evidence of Inequitable Conduct
                        by Finjan .......................................................................................10

                4.      The Priority Date of Finjan's Provisional Patent Applications
                        is Irrelevant ...................................................................................10

        C.      No Finjan Product Infringes Defendants' Patents ..................................................11

                1.      Finjan Does Not Infringe the '361 Patent................................................11

                2.      Finjan Did Not Infringe the '010 Patent. ................................................11

        D.      Defendants' Patents are Invalid ........................................................................12

                1.      Prior Art Invalidates the Defendants' Patents...........................................12

                2.      Defendants Will Present No Rebuttal Evidence Showing Validity...........13

        E.      Miscellaneous Defenses.................................................................................13

IV.     DAMAGES.............................................................................................................13

V.      ANTICIPATED MOTIONS FOR DIRECTED VERDICT ............................................14

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Al-Site Corp. v. VSI Intern., Inc.,*
    174 F.3d 1308 (Fed. Cir. 1999)........................................................................................9

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.,*
    55 F.3d 615 (Fed. Cir. 1995)......................................................................................7, 8

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,*
    229 F.3d 1120 (Fed. Cir. 2000)....................................................................................9

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,*
    381 F.3d 1371 (Fed. Cir. 2004)..................................................................................10

*FMC Corp. v. Manitowoc Co.,*
    835 F.2d 1411 (Fed. Cir. 1987)..................................................................................10

*In re Seagate Tech., L.L.C.,*
    497 F.3d 1360 (Fed. Cir. 2007)....................................................................................8

*Lewmar Marine, Inc. v. Barient, Inc.,*
    827 F.2d 744 (Fed. Cir. 1987)......................................................................................9

*nCube Corp. v. Seachange Intern., Inc.,*
    436 F.3d 1317 (Fed. Cir. 2006)....................................................................................4

*Paice LLC v. Toyota Motor Corp.,*
    504 F.3d 1293 (Fed. Cir. 2007)....................................................................................4

*Ruiz v. A.B. Chance Co.,*
    234 F.3d 654 (Fed. Cir. 2000)......................................................................................9

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.,*
    204 F.3d 1360 (Fed. Cir. 2000)....................................................................................8

## STATUTES

35 U.S.C. §§ 102............................................................................................................8

35 U.S.C. §§ 103............................................................................................................8

35 U.S.C. § 112......................................................................................................8, 9, 14

## I.     THE NATURE OF THE CASE

Finjan Software, Ltd. And Finjan Software, Inc. (collectively "Finjan") will present evidence at trial proving that Defendants Secure Computing Corporation, Cyberguard Corporation and Webwasher AG ("Defendants") willfully infringed Finjan's three patents-in-suit: U.S. Patent Nos. 6,092,194 ("the '194 Patent"), 6,804,780 ("the '780 Patent"), and 7,058,822 ("the '822 Patent") (collectively the "Finjan Patents"). Finjan will further present evidence of the damages that Finjan is entitled to recover as a result of Defendants' infringement of these patents.

The Finjan Patents are in the field of computer network security and specifically relate to systems for analyzing incoming files at a gateway and, where malicious behavior is detected, blocking those files at the gateway level. Under the Finjan Patents, in situations where the system is unable to determine whether the behavior is malicious, the system creates and sends a protective sandbox to the client with the file to allow for further analysis when the file is actually executed. Finjan has asserted Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent, Claims 1-18 of the '780 Patent and Claims 1, 2, 4, 6, 8, 9, 12, 13, 15-18, 20-22, 24, 26-29, 31, 32, 34, and 35 of the '822 Patent.

Defendants counterclaimed seeking a declaratory judgment that Defendants do not infringe the Finjan Patents and/or that the Finjan Patents are invalid and/or unenforceable.

Defendants counterclaimed for patent infringement of U.S. Patent Nos. 7,185,361 ("the '361 Patent") and 6,357,010 ("the '010 Patent") (collectively "Defendants' Patents") owned by Defendants. Generally, the '361 Patent involves a system for allowing a firewall to authenticate users without using a local database while the '010 Patent involves controlling access to documents.

Finjan counterclaimed seeking a declaratory judgment that Finjan does not infringe the Defendants' Patents and/or that Defendants' Patents are invalid.

## II.    THE FACTS AT ISSUE

### A.    The Finjan Patents

The Finjan Patents are pioneering patents in the field of behavior based network security. In a typical network security system, an external network such as the Internet is coupled to an internal network through a server containing a network security system known as a gateway. A user at a computer connected to the internal network accesses content on an external network, such as an Internet webpage, by clicking on a link for a desired webpage. When the user clicks the link, a request is sent from the user's computer, or client, to the gateway. The gateway then forwards the request to the server hosting the webpage. In response, the content on the webpage is delivered to the gateway which sends the content to the client. During the delivery of the webpage to the client, the network security system at the gateway intercepts the response and determines whether or not the content of the webpage is in any way malicious.

The interception of the webpage by the gateway is a typical method for protecting a network from threats on the Internet. These threats are commonly referred to as viruses because they infect and damage the computer network in the same way that a cold or flu infects a person. Viruses come in a variety of shapes and pose a serious threat to the integrity of every computer network connected to the Internet.

The traditional method for protecting a network against viruses at the gateway is signature-based scanning. A signature is a unique "fingerprint" that identifies a particular virus. Traditional network security systems maintain a database of virus signatures. These databases are periodically updated on a subscription basis. When a file is received at the gateway, the security system scans the file to determine whether or not it contains one of the signatures stored in the database. If the file contains a signature matching one in the database, the file is flagged as having a virus and appropriate measures are taken, including denying the file access to the network.

Unfortunately, signature-based scanning only protects a network from known viruses corresponding to identifiable signatures. When a new virus is created and unleashed onto the

2

Internet, network security systems using signature-based scanning are unable to protect the network until a new signature is developed for the virus and uploaded to the signature database through an update. Meanwhile, between the release of the virus and the creation and distribution of the corresponding signature, the network is vulnerable to the new virus because there is no way for the network security system to detect the virus.

To address this issue, the inventors of the Finjan Patents created a revolutionary invention. Rather than examining a file to determine whether it includes a virus signature, the Finjan invention detects a virus by observing the file's behavior. While each virus is written differently (and therefore requires a different signature), the vast majority of viruses attempt similar types of operations. In a network security system, the Finjan invention examines the behavior of the incoming file, rather than the signature, and determines whether or not the file is malicious based on that analysis. Therefore, the computer network is protected against all viruses, whether known or unknown, that perform malicious operations.

For instance, several thousand viruses known today attempt to delete all the files stored on a computer. In order to prevent a new virus of this type from deleting all the files stored on the computers in a network, the computer network's gateway security database must contain a signature for the newly created virus so that the scanner can identify and block the virus. If the computer network's security database does not contain a signature for the new virus, the computer will be vulnerable until a signature is created to identify the virus. A system employing Finjan's novel technology will not have that problem because the system will analyze the behavior of the file containing the new virus using Finjan's technology and will determine that the received file performs an operation to delete all of the files stored on the computer. Consequently, since deleting all files stored on a computer is a behavior typically associated with a virus, the security system will block the file even though the virus has not yet been identified and does not correspond to a known signature.

The asserted claims of Finjan's '194 Patent generally relate to the behavior-based scanning feature discussed above. These claims cover the prevention of a file from executing on

a network if its behavior is determined to be malicious or potentially malicious. *See generally* the '194 Patent. Building on that concept, the asserted claims of Finjan's '780 Patent increase the efficiency of the system implementing the technology disclosed in the '194 Patent by assigning a unique ID to the file found to be malicious. Once the unique ID has been assigned to the malicious file, the system will identify the malicious file based on this ID without having to analyze the behavior of the file in subsequent download attempts. *See generally* the '780 Patent. Once again building on the concept in the '194 Patent, the asserted claims of Finjan's '822 Patent allow a system that does not block the file at the gateway to identify suspicious files and form and send a sandbox to the client surrounding the file which monitors the operations of the file. *See generally* the '822 Patent.

### B.    Defendants' Patents

Defendants' Patents are directed to various administrative tasks typically associated with a company. For instance, the '361 Patent involves a system that allows a firewall to use the database of an existing server rather than importing the data on to the firewall itself. The '010 Patent is directed to a system that controls access to documents. Both of these technologies have been known in the field for quite sometime and are very limited in scope.

## III.    FACTS AND THEORIES REGARDING CLAIMS AND DEFENSES

### A.    The Webwasher Product Infringes the Finjan Patents.

Finjan will present evidence showing that Defendants' Webwasher product (and the Cyberguard TSP product including the infringing Webwasher technology) (collectively "Webwasher product") satisfies each of the elements of the asserted claims of the Finjan Patents and therefore infringes either literally or under the doctrine of equivalents the Finjan Patents. *See e.g., nCube Corp. v. Seachange Intern., Inc.*, 436 F.3d 1317, 1323 (Fed. Cir. 2006); *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1305-7 (Fed. Cir. 2007).

To prove infringement, Finjan will show by a preponderance of the evidence that the Webwasher product infringes at least one claim of the Finjan Patents. Finjan's primary sources of evidence are as follows:

4

(1) Defendants' internal documents such as source code, white papers, manuals, internal memoranda and communications;

(2) the sworn testimony of Defendants including past and present employees;

(3) the sworn testimony of technical expert witnesses; and

(4) publicly available information such as Defendants' marketing and promotional materials and information found on Defendant Secure Computing Corporation's website.

### 1.    The Webwasher Product Infringes the '194 Patent.

The claims of Finjan's '194 Patent are generally directed to a method, system and program code for receiving a Downloadable addressed to a client at a gateway, comparing Downloadable security profile data pertaining to the Downloadable to a security policy (where the Downloadable security profile data includes a list of suspicious computer operations) and blocking the Downloadable if the security policy is violated.[1]  Defendants' documents and testimony unambiguously                    REDACTED

Specifically, Defendants' documents indicate          REDACTED

Further, Defendants' documents

REDACTED

In order to make this determination, the

Webwasher product analyzes                    REDACTED

The Webwasher product then

REDACTED

---

[1] Due to the space constraints, only aspects of certain independent claims will be discussed.

Based on this Court's claim construction order as well as the technical expert reports and Defendants' technical expert's testimony in this case, it appears that Defendants' only non-infringement position is that the Webwasher product          REDACTED

Defendants' technical expert witness

REDACTED

However, Finjan will demonstrate that Defendants' proposed definition of "list" is inconsistent with the patent claims, specification and prosecution history.  Further, Finjan will show that Defendants' position regarding the definition of "list" is inconsistent with Defendants' technical expert witness' own report and testimony as well as the Webwasher product source code and other documentary evidence.  Moreover, even if Defendants' proposed narrow definition of "list" was accepted, there is abundant evidence that the Webwasher product would still infringe the claims of the '194 Patent.

### 2.    The Webwasher Product Infringes the '780 Patent.

The claims of Finjan's '780 Patent are generally directed to a method, system and program code for generating a Downloadable ID.  The network security system generates the Downloadable ID by obtaining a Downloadable that includes one or more references to software components and then hashing the Downloadable together with its software components.

Defendants' documents

REDACTED

As such, the Webwasher product    REDACTED

Defendants'

non-infringement argument is that          REDACTED

6

REDACTED                .[2]  However, Defendants'

REDACTED


### 3.    The Webwasher Product Infringes the '822 Patent.

Finjan's '822 patent is generally directed at methods and systems that check downloadable information for executable code.  Further, the methods and system disclosed in Finjan's '822 Patent form a sandbox around the executable code and send it to the client.  The sandbox is used as a protective environment in which malicious and potentially malicious operations are intercepted and further analyzed by the system.

The Webwasher product infringes the '822 Patent in part      REDACTED

Defendants'


REDACTED


Defendants do not deny that the Webwasher product has the functionality described in the claims of Finjan's '822 Patent.  Rather, Defendants' position is that the Webwasher product does not infringe because      REDACTED

In other words,

REDACTED                              This

interpretation is not supported by the patent claims, specification or prosecution history.

---

[2]      REDACTED

Defendants' position is also inconsistent                    REDACTED

                                                    Further, Defendants' position is incorrect as

a matter of law because the Webwasher product need only perform the steps of the method

sometimes in order to be found infringing. *Bell Commc'ns*, 55 F.3d at 622-23.

### 4.    Defendants Willfully Infringed the Finjan Patents.

Finjan will present evidence demonstrating that Defendants were aware of the Finjan

Patents, and understood that the Webwashwer product fell within the scope of the Finjan Patents.

Despite being aware that the Webwasher product was infringing valid Finjan Patents, Defendants

continued their business in reckless disregard of its infringing activity with no good faith basis

for believing that they were not infringing the Finjan Patents. *See e.g., In re Seagate Tech., LLC*,

497 F.3d 1360 (Fed. Cir. 2007). Defendants have not provided any evidence in this case that it

acted as a responsible company with respect to the Finjan Patents, and did not even obtain

opinions of counsel to guide it in its activity.

### B.    The Finjan Patents are Valid and Enforceable.

Defendants assert that Sections 102, 103, and 112 of the Patent Act invalidate the Finjan

Patents. *See* 35 U.S.C. §§ 102, 103, and 112. Defendants further assert that the '194 Patent and

'780 Patent are unenforceable due to inequitable conduct.

Defendants have a particularly difficult burden of proof for their invalidity defense

because they "must overcome the statutory presumption of validity that attaches to an issued

patent by proving invalidity by facts supported by clear and convincing evidence." *Ultra-Tex

Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000). Ultimately,

Defendants have "the added burden of overcoming the deference that is due to a qualified

government agency presumed to have properly done its job, which includes one or more

examiners who are assumed to have some expertise in interpreting the references and to be

familiar from their work with the level of skill in the art and whose duty it is to issue only valid

patents." *Id.*

### 1.    Prior Art Does Not Invalidate the Finjan Patents.

Defendants rely on insubstantial anticipation challenge and different combinations of references in support of their obviousness challenge for the '194 Patent and the '780 Patent. Defendants rely upon a single reference for their anticipation challenge of the '822 Patent, even though their expert admits that not all of the elements are found in the reference. Many of the obviousness challenges are based on combinations of references that are not specifically addressed in the arguments of Defendants' technical expert witnesses' expert report, but were included only in the exhibits attached to his report. Finjan has addressed and refuted the arguments Defendants' expert presents in his technical expert report in the rebuttal technical expert report of Finjan's expert witness. *See e.g., Lewmar Marine, Inc. v. Barient*, Inc., 827 F.2d 744 (Fed. Cir. 1987); *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1323-5 (Fed. Cir. 1999).

Furthermore, Finjan will present extensive evidence of objective indications of non-obviousness of the Finjan patents also known as secondary considerations of non-obviousness. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000). "Court precedents clearly hold that secondary considerations, when present, must be considered in determining obviousness." *Ruiz*, 234 F.3d at 668. Finjan will present evidence of: (1) commercial success, (2) a long-felt need for the invention, (3) copying of the invention by others in the field, and (4) the licensing of the patent by third parties. *Id.* at 663; *Brown*, 229 F.3d at 1129-31.

### 2.    Defendants Put Forth No Evidence Regarding the Section 112 Claims.

Defendants' claims that the Finjan Patents are invalid because they are indefinite, lack an adequate written description and/or are not enabled pursuant to Section 112 are not supported by evidence disclosed during discovery. *See* 35 U.S.C. § 112. Defendants have provided absolutely no support for these claims in their technical expert report, and there has been no testimony from any expert witness in this case that any claim of the Finjan Patents is invalid pursuant to 35 U.S.C. § 112.

9

### 3.    Defendants Put Forth No Evidence of Inequitable Conduct by Finjan.

Defendants allege that the Finjan '194 Patent and '780 Patent were obtained by inequitable conduct. To establish a claim of inequitable conduct, Defendants must show by clear and convincing evidence that: "(1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411 (Fed. Cir. 1987). Defendants have not provided any expert testimony to support their claim of inequitable conduct based on prior art.

Defendants also allege inequitable conduct by contending that Finjan was required to file as a large entity after entering an agreement to have Cisco bundle Finjan's software with another product. An otherwise qualifying small entity patent holder is only required to claim a large entity status if it licenses the actual patent to another entity that has over 500 employees. *See e.g., Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,* 381 F.3d 1371 (Fed. Cir. 2004). Following the bundling agreement with Cisco, Finjan maintained small entity status because the agreement was to bundle software, not to license the patents. Further, Defendants have not provided any evidence that Finjan acted in a manner to intentionally mislead the PTO, and did not even attempt to depose the attorney(ies) that prosecuted any of the Finjan Patents.

### 4.    The Priority Date of Finjan's Provisional Patent Applications is Irrelevant.

Defendants assert that the Finjan Patents cannot claim the benefit of the filing date of their respective provisional applications. The benefit of the priority date from the provisional applications is irrelevant and presents a moot question because no prior art reference put forth by Defendants is after the dates contained in the provisional applications. Nonetheless, all of the evidence presented in this case supports Finjan's position that its patents are entitled to claim the benefit of the provisional application filing date.

C.    **No Finjan Product Infringes Defendants' Patents.**

Defendants continue to allege literal infringement of Defendants' Patents under theories of direct and indirect (inducing and contributory) infringement. However, Defendants have not even attempted to put forward any evidence of indirect infringement, and its only technical expert has not even offer an opinion regarding indirect infringement. Accordingly, these claims are not expected to make it to the jury. Likewise, Defendants continue to assert infringement under the doctrine of equivalents, even though there is absolutely no expert testimony presented in this case regarding such claims.

1.    **Finjan Does Not Infringe the '361 Patent.**

Defendants allege that Finjan infringes claims 1-5, 7-12 and 14-15 of the '361 Patent. Defendants' technical expert witness opined that he "find[s] every limitation of the asserted claims of the '361 Patent in [Finjan's] Vital Security NG appliances." However, Finjan will present evidence that Defendants' infringement argument contains numerous errors. One of those errors is fatal because Defendants' own technical expert witness admitted that an element of the asserted claims is not contained within the Vital Security NG appliances. Moreover, the Vital Security Appliances are not firewalls – a required element of the claims of the '361 Patent. Further, Defendants' technical expert witnesses admitted that the NG appliances do not perform the method claim of the '361 Patent as required by the claims, specification and prosecution history. Finally, and as set forth in Finjan's motion *in limine*, Defendants' technical expert witness should be precluded from testifying as to why he believes the Vital Security NG appliances infringe each element because such discussion is not disclosed in his report.

In addition, Finjan will present conclusive evidence of non-infringement of the '361 Patent from internal company documents, sworn testimony and expert opinion testimony.

2.    **Finjan Did Not Infringe the '010 Patent.**

Defendants allege that Finjan infringes claim 37 of the '010 Patent. The Finjan product which Defendants accuse of infringing the '010 Patent is no longer sold by Finjan. Finjan will present evidence that several elements of Claim 37 are not found in the discontinued Finjan

11

product.  Moreover, because such an opinion is not disclosed in his expert report, Defendants'
technical expert should not be able to testify as to his opinion that the discontinued Finjan
product infringes Claim 37.  Further, Defendants' infringement claim regarding the '010 Patent
will be shown to be without merit because Defendants' expert uses only three marketing flyers in
his analysis, one of which is about a different product and another that was published by a
different company.  Defendants' expert chose not to examine the Finjan product's source code or
review technical documents, and as such his proposed testimony is unreliable.

In addition, Finjan will present conclusive evidence of non-infringement of the '010
Patent from internal company documents, sworn testimony and expert opinion testimony.

### D.    Defendants' Patents are Invalid.

Finjan is required to prove by clear and convincing evidence that Defendants' Patents are
invalid.  As detailed below, several products that include all of the limitations of the asserted
claims existed at least one year prior to the filing date of Defendants' Patents and thereby render
Defendants' Patents invalid.

### 1.    Prior Art Invalidates the Defendants' Patents

In regard to the '361 Patent, there are several prior art references that invalidate the
asserted claims.  For example, the CheckPoint Firewall product introduced in the market more
than one year prior to the filing date of the '361 Patent contains all of the limitations of the
asserted claims in the '361 Patent.  In particular, the CheckPoint manual discloses a server which
has an LDAP database and a firewall that uses the information stored in the LDAP database to
authorize network resource requests.  In addition to evidence regarding the CheckPoint Firewall,
Finjan will present evidence that several other references can be combined to invalidate all of the
asserted claims of the '361 Patent.

The '010 Patent is also invalid in light of the prior art and Defendant cannot offer
evidence to the contrary.  The SESAME system introduced over a year prior to the filing date of
the '010 Patent contains the exact same limitations found in the asserted claim of the '010 Patent.
Specifically, Finjan will introduce into evidence a technical paper which discloses that SESAME

12

is a role-based authorization system which controls access to documents. In addition to the SESAME system, Finjan will present evidence that several other references disclose the role-based access control to documents claimed in the '010 Patent.

### 2. Defendants Will Present No Rebuttal Evidence Showing Validity.

Finjan served Defendants with an expert report disclosing evidence of the invalidity of the Defendants' Patents. Defendants did not submit a technical expert report rebutting Finjan's expert opinion that Defendants' Patents are invalid. Therefore, Defendants cannot offer rebuttal testimony at trial on the topic.

### E. Miscellaneous Defenses

During the course of preparing the pre-trial order and accompanying schedules and documents, Defendants raised a couple of defenses that have never been at issue in this case. Defendants contend that Finjan is barred from alleging infringement by inducement and/or contributory infringement because the underlying alleged direct infringement is licensed and/or released. Finjan is not alleging indirect infringement against Defendants, so it is uncertain why this defense is being raised. Further, Defendants assert that Finjan's infringement claims are barred by the doctrine of patent exhaustion. Defendants have no reasonable grounds for this defense. However, because there has been no evidence of this nature presented in this case, it is expected that Defendants will present no evidence regarding these defenses at trial.

## IV. DAMAGES

Finjan seeks an 18% royalty on past sales of Defendants' infringing software products and 11% on Defendants past sales of infringing hardware appliances. Finjan's evidence includes, *inter alia*, expert testimony, Defendants' financial documents and the fact that the Finjan Patents are pioneering patents in the field of behavior-based network security. Finjan will also offer evidence that it is entitled to other damages, including pre-judgment interest, treble damages, attorneys' fees and costs.

Defendants seek a 2% royalty on Finjan's allegedly infringing products.

13

## V.    ANTICIPATED MOTIONS FOR DIRECTED VERDICT

Finjan anticipates that it will file the following motions for directed verdict:

(1)    Motion that Defendants infringe the Finjan Patents, and that such infringement was willful.

(2)    Motion that the Finjan Patents are valid in light of the prior art because Defendants cannot prove that each element of the asserted claims are found in the prior art.

(3)    Motion that the Finjan Patents are valid because Defendants cannot provide evidence of invalidity pursuant to 35 U.S.C. § 112.

(4)    Motion that the Finjan Patents are enforceable because Defendants cannot provide evidence of inequitable conduct.

(5)    Motion that Finjan does not infringe the '361 Patent because Defendants cannot prove that the Finjan Vital Security NG appliances contains each limitation of the '361 Patent.

(6)    Motion that Finjan does not infringe the '010 Patent because Defendants cannot prove that the discontinued Finjan products contain each limitation on the '010 Patent.

(7)    Motion that the Defendants' Patents are invalid in light of the prior art.


POTTER ANDERSON & CORROON LLP

OF COUNSEL

Paul J. Andre
Lisa Kobialka
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
(650) 838-4300

Dated: January 7, 2008
Public Version: January 14, 2008
842582

By: /s/ Philip A. Rovner
        Philip A. Rovner (#3215)
        Hercules Plaza
        P. O. Box 951
        Wilmington, DE 19899
        (302) 984-6000
        provner@potteranderson.com

*Attorneys for Plaintiff/Counterdefendant*
*Finjan Software, Ltd., and*
*Counterdefendant Finjan Software, Inc.*

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 14, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com; farnan@rlf.com

I hereby certify that on January 14, 2008 I have sent by E-mail the foregoing document to the following non-registered participants:

Jake M. Holdreith, Esq.
Christopher A. Seidl, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
jmholdreith@rkmc.com ; caseidl@rkmc.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com