IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | |
| Plaintiff-counterdefendants, | ) ) | |
| v. | ) ) | C. A. No. 06-00369-GMS |
| SECURE COMPUTING CORPORATION, a Delaware corporation; CYBERGUARD CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) ) | **REDACTED PUBLIC VERSION** |
| Defendants-counterclaimants. | ) ) | |

### SECURE COMPUTING CORPORATION'S TRIAL BRIEF

<table>
<tr>
<td></td>
<td>

Fredrick L. Cottrell, III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger
</td>
</tr>
<tr>
<td>

OF COUNSEL:
Ronald J. Schutz
Jake M. Holdreith
Christopher A. Seidl
Trevor J. Foster
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500
</td>
<td>

One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys For Defendants*
</td>
</tr>
</table>

Dated: January 7, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ...................................................................................................................... 1

I.     NATURE OF THE CASE ................................................................................................ 1

     A.    Description of the Dispute ............................................................................. 1

II.    SECURE COMPUTING'S CLAIMS AGAINST FINJAN .............................................. 2

     A.    Secure Computing's Patent Infringement Claims Against Finjan ............ 2

         1.    Finjan Infringes the '361 patent ....................................................... 2

             a.    Background of the '361 patent ............................................ 2

             b.    Summary of Finjan's infringement of the '361 patent .................................................................................... 2

             c    Finjan's Arguments that the Asserted Claims of the '361 Patent Are Invalid Will Fail .......................................... 4

         2.    Finjan Infringes the '010 patent ....................................................... 4

             a.    Background of the '010 patent ............................................ 4

             b.    Summary of Finjan's infringement of the '010 patent .................................................................................... 5

             c.    Finjan's Arguments that the Asserted Claims of the '010 Patent Are Invalid Will Fail .......................................... 5

     B.    Damages Resulting from Finjan's Infringement ...................................... 6

III.    FINJAN'S CLAIMS AGAINST SECURE COMPUTING ............................................ 7

     A.    Secure Computing's Primary Defenses to Finjan's Claims ................... 7

         1.    Secure Computing Does Not Infringe the '194 patent ................... 7

             a.    Webwasher Does Not Infringe the '194 patent ................. 7

                 i.    Webwasher is not "a server that serves as a gateway" ................................................ 7

                 ii.    Webwasher Does Not Create a List of Suspicious Computer Operations ..................... 8

             b.    Cyberguard TSP does not infringe the '194 patent ......... 8

             c.    Many instances of Webwasher do not infringe because the accused functions are unlicensed, locked, and disabled in most cases ................................ 9

TABLE OF CONTENTS
(continued)

Page

2.   The '194 patent is Invalid ................................................................. 9

  a.   U.S. patent No. 6,571,338 (Shaio) (filed Dec. 20,
       1995) anticipates the '194 patent ....................................... 9

  b.   The Beta Firewall Toolkit (FWTK) anticipates the
       '194 patent ............................................................................ 9

  c.   U.S. patent No. 5,623,600 (Ji) (filed Sep. 26, 1995)
       or U.S. patent No. 5,414,833 (Hershey) in
       combination with several known client-side security
       scanning techniques render the '194 patent obvious ....... 10

  d.   Claims 8-11 and 33-36 of the '194 Patent are
       invalid for indefiniteness ................................................... 10

3.   Secure Computing Does Not Infringe the '780 patent ................ 10

4.   The '780 Patent is Invalid ............................................................ 11

5.   Secure Computing Does Not Infringe the '822 patent ................ 11

6.   The '822 Patent is Invalid ............................................................ 12

  a.   Claims 9, 12, 13, and 15 are invalid for
       indefiniteness ....................................................................... 12

  b.   The '822 patent Is Anticipated By U.S. patent No.
       5,983,348 (Ji II) (filed Sept. 10, 1997), and in the
       Alternative, Invalid for Lack of Enablement ................. 12

7.   Unenforceability Due to Inequitable Conduct ........................... 12

8    Finjan Cannot Meet the High Burden of Proving
     Willful Infringement ................................................................... 13

9    Finjan's Potential Damages are Minimal ................................... 14

IV.   POTENTIAL DIRECTED VERDICT MOTIONS ................................ 15

V.   CONCLUSION ................................................................................... 15

-ii-

## TABLE OF AUTHORITIES

### CASES

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
49 F.3d 1575 (Fed. Cir. 1995)..........................................................................3

*DSU Medical Corp. v. JMS Co. Ltd.*,
471 F.3d 1293 (Fed. Cir. 2006) ......................................................................3

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)................................................................6

*LG Electronics v. BizCom*,
453 F.3d 1370 (Fed. Cir. 2006), *cert. granted*, 128 S. Ct. 28 (2007) ............15

*Nillsen v. Osram Sylvania, Inc.*,
440 F. Supp. 2d 884 (N.D. Ill. 2006)............................................................13

*Perricone v. Medicis Pharm. Corp*,
432 F.3d 1368 (Fed. Cir. 2005)...................................................................4, 6

*In re Seagate Tech., L.L.C.*,
497 F.3d 1360 (Fed. Cir. 2007) ....................................................................13

*Sensonics, Inc. v. Aerosonic Corp.*,
81 F.3d 1566 (Fed. Cir. 1996)......................................................................4, 5

*Ex parte Simpson*,
218 U.S.P.Q. 1020 (Bd. App. 1982)...............................................................10

*State Indus., Inc. v. Mor-Flor Indus., Inc.*,
883 F.2d 1573 (Fed. Cir. 1989)......................................................................6

*Toxgon Corp. v. BNFL, Inc.*,
312 F.3d 1379 (Fed. Cir. 2002)....................................................................14

### FEDERAL STATUTES

35 U.S.C. § 112.............................................................................. 10, 12

35 U.S.C. § 271....................................................................................... 3

35 U.S.C. § 282 ....................................................................................4, 5

35 U.S.C. § 284......................................................................................6

RLF1-3241346-1

35 U.S.C. § 285 ..................................................................................................6

28 U.S.C. § 1498(a) ...........................................................................................14

iv

## INTRODUCTION

Defendants-Counterclaimants Secure Computing Corporation, Cyberguard Corporation, and Webwasher AG (collectively "Secure Computing") submit this trial brief pursuant to the Court's direction. This action involves five United States patents. Plaintiff-Counterdefendant Finjan Software, Ltd. asserts that Secure Computing infringes U.S. Patent No. 6,092,194 ("the '194 patent"), 6,804,780 ("the '780 patent"), and 7,058,822 ("the '822 patent"). Secure Computing asserts that Finjan Software, Ltd. and Finjan Software, Inc. infringe U.S. patent Nos. 7,185,361 ("the '361 patent") and 6,357,010 ("the '010 patent"). The issues for trial concern the infringement and validity of the asserted claims of the five patents in suit. Furthermore, the parties will try the issue of damages related to the infringement of each of the five patents in the case that any are found both valid and infringed. We have also raised motions in limine, which, if denied, will be issues raised at trial.

## I.    NATURE OF THE CASE

### A.    Description of the Dispute

Secure Computing asserts that Finjan infringes Secure Computing's '361 and '010 patents. Specifically, Secure Computing asserts that all of Finjan's Vital Security products, including but not limited to, the Vital Security Internet 1Box™, and NG-1100, NG-5100, NG-6100, and NG-8100 products, infringe the '361 patent. Secure Computing asserts that Finjan's Vital Security™ for (Enterprise) Documents (aka Finjan Mirage) product infringes the '010 patent. Finjan Software, Ltd. asserts that Secure Computing's Webwasher product and Cyberguard TSP product infringe the '194 patent, '780 patent, and '822 patent.

1

## II.    SECURE COMPUTING'S CLAIMS AGAINST FINJAN

### A.    Secure Computing's Patent Infringement Claims Against Finjan

Secure Computing's expert witness, Dr. Dan Wallach, will provide testimony and refer to evidence showing that Finjan's Vital Security products, including Finjan's Next Generation ("NG") appliances, infringe claims 1-5, 7-12, and 14-15 of the '361 patent. Secure Computing's expert witness will also provide testimony and refer to evidence showing that Finjan's Vital Security for Documents product infringes claim 37 of the '010 patent. See Ex. 1, Wallach Opening Report.

#### 1.    Finjan Infringes the '361 patent

##### a.    Background of the '361 patent

Secure Computing will present evidence showing that the invention disclosed in Secure Computing's '361 patent is a new and more efficient way for network administrators to set user and group-based security policies on firewalls. Before the '361 patent, network administrators had begun maintaining information about users within a particular company on directory servers. The inventors of the '361 patent realized, the evidence will show, that information related to users and groups stored in directory servers, such as Microsoft's Active Directory, could be used to facilitate setting specific permissions on a firewall without having to build and maintain separate lists for both the firewall and the directory server. See Ex. 2, U.S. Patent No. 7,185,361 at col.2, ll.53-67.

##### b.    Summary of Finjan's infringement of the '361 patent

Secure Computing's technical expert will testify that Finjan sells a line of infringing firewall products that Finjan calls the "Next Generation" ("NG") appliances. These products operate as firewalls that can either authorize or deny requests from users wishing to access certain network resources based on custom policies. These products can be used, as the evidence

2

will show, to set user and group-based security policies based on the information existing in a corporation's Active Directory servers.

## REDACTED

As Secure Computing's technical expert will testify, the technology described by Finjan above is the technology that Secure Computing disclosed and claimed in the '361 patent. Namely, the firewall product is capable of basing its various security policies on existing Active Directory groups. The evidence will show that Finjan integrated this feature into its products at least as early as June 2003. See Ex. 4, Finjan Press Release. The '361 patent was filed in January 2000 and issued February 27, 2007. See Ex. 2.

Based on this evidence, Secure Computing will be able to show that Finjan is liable for directly infringing its '361 patent because Finjan because it made, used, offered to sell, and sold a product that contained each and every limitation of the asserted claims. See 35 U.S.C. § 271; Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1582 (Fed. Cir. 1995).

In addition to direct infringement, the evidence will show that the asserted claims of the '361 patent were also infringed indirectly. In particular, the testimony of Finjan's witnesses, Secure Computing's technical expert, and Finjan documents will show that Finjan had knowledge of Secure Computing's '361 patent and intended to induce its customers to infringe the asserted claims of the '361 patent. 35 U.S.C. 271(b); DSU Medical Corp. v. JMS Co. Ltd., 471 F.3d 1293 (Fed. Cir. 2006) (en banc). Likewise, the evidence will prove that Finjan contributed to the infringement by its customers by selling customers a material component of the invention that had no substantial noninfringing use. 35 U.S.C. § 271(c).

c.    **Finjan's Arguments that the Asserted Claims of the '361 Patent Are Invalid Will Fail**

Finjan's technical expert, Dr. Trent Jaeger, has suggested that Secure Computing's patents are invalid for reasons of anticipation and obviousness. In particular, Dr. Jaeger has suggested that the asserted claims of Secure Computing's '361 patent are anticipated by the Checkpoint Firewall system as disclosed in a particular manual related to the Checkpoint system. This is a reference that was already before the PTO during prosecution and rejected. Likewise, Dr. Jaeger asserts that the Checkpoint Firewall system in combination with two references related to LDAP and an Active Directory reference render the asserted claims obvious.

Secure Computing's patent is presumed valid in all respects, and Finjan must establish invalidity by clear and convincing evidence. 35 U.S.C. § 282; Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1570 (Fed. Cir. 1996). Cross examination of Dr. Jaeger will demonstrate that Finjan cannot meet this burden. In particular, Finjan will not be able to show that each limitation of the asserted claims is taught by the cited references as required by the Federal Circuit. See, e.g., Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1375 (Fed. Cir. 2005).

2.    **Finjan Infringes the '010 patent**

a.    **Background of the '010 patent**

Secure Computing's expert witness will also testify that the inventors of the '010 patent conceived of a way to allow people from outside a company to request internal documents without risking the disclosure of proprietary information. The evidence will show that prior to the invention, people who wished to access internal documents from outside a company were either given access to the entire internal network or they were given access only to an external web server. See Ex 5, U.S. Patent No. 6,357,010 at col.1,ll.43-59. The inventors of the '010 patent came up with a way to allow outsiders selective access to files on the internal network. In

particular, the inventors described a document server that evaluates requests for internal files and authorizes particular users to access those documents based on the group to which they belong. Id. at col.2, ll. 1-10.

### b.    Summary of Finjan's infringement of the '010 patent

Finjan's witnesses and the evidence will show that Finjan has sold document control software named Vital Security for Documents (aka Finjan Mirage). This products "allow[] an organization to audit and control the provisioning of sensitive documents at a corporate level. It gives system administrators the ability to control and set policies for business documents for individual users or user groups." See Ex. 6, Vital Security brochure at 1. Dr. Wallach will testify that the technology used in Finjan's Vital Security for Documents product is the same technology disclosed and claimed in the '010 patent.

### c.    Finjan's Arguments that the Asserted Claims of the '010 Patent Are Invalid Will Fail

Finjan's technical expert, Dr. Trent Jaeger, has suggested that Secure Computing's '010 patent is invalid for reasons of anticipation and obviousness. In particular, Dr. Jaeger has suggested that the asserted claims of Secure Computing's '010 patent are anticipated by a paper referring to a SESAME computer system ("the SESAME reference"). Likewise, Dr. Jaeger asserts that the SESAME reference, the SAM reference, the Apache reference and the RBAC reference in combination render the asserted claims obvious.

Again, Secure Computing's patent is presumed valid in all respects, and Finjan must establish invalidity by clear and convincing evidence. 35 U.S.C. § 282; Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1570 (Fed. Cir. 1996). Cross examination of Dr. Jaeger will demonstrate that Finjan cannot meet this burden. In particular, Finjan will not be able to show that each limitation of the asserted claims is taught by the cited references as required by the

Federal Circuit. See, e.g., Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1375 (Fed. Cir. 2005). Moreover, the evidence will show that Finjan is unable to prove that the Apache reference constitutes prior art.

**B.    Damages Resulting from Finjan's Infringement**

Secure Computing is seeking a reasonable royalty on infringing sales pursuant to 35 U.S.C. § 284. A reasonable royalty is that amount which would have been set in a hypothetical negotiation between a willing patent owner and a willing potential user as of the date when the infringement began, and on the assumption that the patent was valid and entitled to respect. State Indus., Inc. v. Mor-Flor Indus., Inc., 883 F.2d 1573, 1581 (Fed. Cir. 1989).

Secure Computing's damages expert, Carl Degen, will explain how the appropriate rate is derived and the factors that are taken into account by willing parties negotiating a license. See Ex. 7, Degen Opening Report. An oft-cited case, Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), has widely been accepted as identifying economic factors that may be considered in determining a reasonable royalty.

Secure Computing will present the expert opinion testimony of Carl Degen regarding the appropriate amount of the reasonable royalty at issue in this case.

REDACTED

Upon a finding of liability, Secure Computing intends to show that a permanent injunction against Finjan is necessary and may move for attorney's fees under 35 U.S.C. § 285 to the extent this is an exceptional case.

6

## III.  FINJAN'S CLAIMS AGAINST SECURE COMPUTING

### A.  Secure Computing's Primary Defenses to Finjan's Claims

Secure Computing intends to show proof of non-infringement, invalidity, and unenforceability, with respect to Finjan's patents.

#### 1.  Secure Computing Does Not Infringe the '194 patent

In general, the various claims of the '194 patent describe an analysis of webpage content by a server that "serves as a gateway to the client." The critical portion of the invention, according to the inventors, was that it discloses analyzing the webpage content and creating a "list of suspicious computer operations" that may be performed by the downloaded webpage content.

##### a.  Webwasher Does Not Infringe the '194 patent

Finjan's technical expert, Dr. Wallach, will testify that Secure Computing's Webwasher product does not perform each limitation of the asserted claims as required. While Dr. Wallach is expected to testify on many noninfringement arguments, a few are outlined below.

###### i.  Webwasher is not "a server that serves as a gateway to the client"

Dr. Wallach will testify that the Webwasher product, in certain deployments, does not meet the "gateway" limitation. For example, the Webwasher device is not always deployed by customers as a proxy server. Instead, Webwasher's witnesses will testify that large customers tend to deploy the Webwasher product as an ICAP server that communicates with the proxy server without affecting the client's access to a network. This deployment is called an "off box" deployment because the Webwasher product is not operating on the proxy server appliance. In an "off-box" deployment, Webwasher does not meet the "gateway" limitation.

ii.    Webwasher Does Not Create a List of Suspicious
       Computer Operations

Likewise, the evidence will show that the inventor distinguished the alleged invention of

the '194 patent over prior art because the alleged invention requires the program to create "a list

of suspicious computer operations" that are found in incoming code. According to the patent, a

"code scanner" decomposes the code and lists each operation that exists in the code. The '194

patent gives examples of suspicious computer operations such as "Read, Write, Listen, and

Connect."

REDACTED

Finjan has not identified any step in which Webwasher

makes a list of suspicious computer operations that it has identified in incoming code, and in

fact, no such list exists.

b.    Cyberguard TSP does not infringe the '194 patent

Based on Finjan's infringement contentions, Secure Computing understands Finjan's

claim against Cyberguard TSP to be limited to the Cyberguard TSP product with a Webwasher

implementation.

REDACTED

Second, the non-infringement arguments related to Webwasher apply in the same manner

with respect to CyberGuard TSP.

      c.     **Many instances of Webwasher do not infringe because the accused functions are unlicensed, locked, and disabled in most cases.**

REDACTED

    2.     **The '194 patent is Invalid**

Secure Computing's technical expert, Dr. Wallach, will testify that the asserted claims of the '194 patent are anticipated and/or obvious As discussed above, the '194 patent simply discloses a "gateway" firewall that scans webpage content for potentially suspicious operations. Several references, the evidence will show, anticipate and/or render the invention obvious. Secure Computing also intends to prove that the '194 patent may not benefit from the filing date of the provisional application. A small set of these pieces of prior art are described below:

    a.     **U.S. patent No. 6,571,338 (Shaio) (filed Dec. 20, 1995) anticipates the '194 patent**

The Shaio patent describes an "intelligent firewall" that resides directly between an external and internal network. The purpose of the firewall is to scan incoming code such as Java applets. Shaio discloses that "intelligent firewall" may provide security by including a "byte code verifier [that] may parse the executable portion of the packet to eliminate invalid and/or non-conforming instructions in an attempt to reduce the probability of viruses." Col. 5, ll.7-11.

    b.     **The Beta Firewall Toolkit (FWTK) anticipates the '194 patent**

The Firewall Toolkit (FWTK) was a firewall that allowed administrators to specify whether or not particular clients could open and use Java Applets, Javascript, VBscript, and ActiveX controls. As Dr. Wallach will testify, the firewall was able to identify these suspicious activities by scanning the HTML code and eliminating any operations that caused the computer to open those particular programs on the client's machine.

9

    c.    **U.S. patent No. 5,623,600 (Ji) (filed Sep. 26, 1995) or U.S. patent No. 5,414,833 (Hershey) in combination with several known client-side security scanning techniques render the '194 patent obvious**

As Dr. Wallach will testify, the Ji patent and Hershey patent both disclose scanning for viruses on the gateway. For example, Ji describes analyzing downloaded files on a gateway by "invoking a virus checking program." Col. 7, ll. 58-59.

Many virus checking programs that existed prior to the filing of the '194 patent included the steps of parsing the code to identify suspicious computer operations. One example among many is the virus checking method disclosed by Raymond W. Lo et. al. in 1994. Lo described a security method that "slices" through program code and identifies various "tell-tale" signs that the code may be malicious. The method includes identifying the following "tell-tale" signs of potentially malicious operations: "File Read," "File Write," "Process Creation," "Program Execution," "Network Accesses," etc. Consequently, Lo described parsing code in order to identify particular operations. When combined with Ji, the '194 patent is rendered obvious. Dr. Wallach also relies on two alternative references that can each be combined with Ji or Hershey: Lo 1991 and 5,951,681 (Chen).

    d.    **Claims 8-11 and 33-36 of the '194 Patent are invalid for indefiniteness**

Claims 8-11 and 33-36 are invalid for indefiniteness because they claim trademarks in the limitations. As a matter of law, these claims are invalid under 35 U.S.C. § 112; see Ex parte Simpson, 218 USPQ 1020 (Bd. App. 1982).

    3.    **Secure Computing Does Not Infringe the '780 patent**

Dr. Wallach will testify that Finjan's '780 patent simply discloses using a well-known function called a "hashing" function in order to uniquely identify code. Hashing is old and was well-known long before the filing date of the '780 patent. A hashing function converts a set of

10

data to a simple value that can uniquely identify that set of data. In an attempt to preserve validity, the applicant wrote his claims and clearly described in the prosecution history that a single "hashing" function must be performed on both downloaded code together with other code that is referenced by the downloaded code.

REDACTED

### 4. The '780 Patent is Invalid

Dr. Wallach is expected to testify that to the extent that Finjan claims that the '780 patent claims performing a hashing function on any downloaded information as Webwasher does, then the '780 patent is clearly invalid. Prior art related to performing hashing functions on computer data for identification purposes dates back decades. Even Finjan's employees admit that simple hashing has been well-known for years. Dr. Wallach will testify that known methods of signing code, such as Authenticode and Signed Java render the asserted claims obvious.

### 5. Secure Computing Does Not Infringe the '822 patent

Dr. Wallach will testify that the '822 patent describes a method of wrapping executable code. Wrapping is an old technique that describes the process of inserting executable code in, for example, downloaded code. Finjan's '822 patent describes using this process in order to wrap executable code that is downloaded from the Internet. One example of executable code in Finjan's patent is a Java applet.

Secure Computing will offer evidence of noninfringement on several grounds. Dr Wallach will testify that the '822 patent contains a disclaimer that indicates that the patented

11

invention must perform its invention against all types of code, not merely on subset such as java applets. Secure Computing's Webwasher product does not cause mobile protection code to be communicated to a client every time executable code is identified, as required by the claims in light of the specification

### 6.    The '822 Patent is Invalid

#### a.    Claims 9, 12, 13, and 15 are invalid for indefiniteness

Dr. Wallach will testify that several limitations in claim 9, 12, 13, and 15 have no ordinary meaning and the specification discloses no structure for those terms. Secure Computing will show that these terms are only expressed in term of their functions, so they are in means-plus-function claim format. 35 U.S.C. § 112. Based on this evidence, Secure Computing will show that the asserted claims are indefinite and thus invalid.

#### b.    The '822 patent Is Anticipated By U.S. patent No. 5,983,348 (Ji II) (filed Sept. 10, 1997), and in the Alternative, Invalid for Lack of Enablement.

As Dr. Wallach will show, Finjan has another validity problem with respect to the '822 patent. In particular, U.S. Patent No. 5,983,348 (Ji II), describes a network scanner that "identifies suspicious instructions" in Java applets and ActiveX controls and either wraps the suspicious code in an additional function or replaces the code with an alternate function. This reference anticipates each and every claim in the '822 patent

To the extent that Finjan claims that the claims are not invalid over Ji II, Secure Computing intends to show evidence through cross examination that the '822 patent is invalid for lack of enablement under 35 U.S.C. § 112.

### 7.    Unenforceability Due to Inequitable Conduct

Secure Computing intends to show at trial through cross examination that Finjan committed inequitable conduct. Secure Computing's inequitable conduct claims are two-fold: (1)

12

Finjan improperly claimed small-entity status to the PTO; and (2) Finjan made material misrepresentations to the PTO regarding prior art.

With respect to the small-entity issue, the patent regulations provide that "[i]mproperly, and with intent to deceive, establishing status as a small entity, or paying fees as a small entity, shall be considered as a fraud practiced or attempted on the Office." 37 C.F.R. § 1.27(h)(2). Finjan improperly, and with intent to deceive, claimed small-entity status during the prosecution of the '194 and '780 patents.

## REDACTED

Consequently, Finjan was obligated to pay fees as a large entity. The evidence will show, however, that Finjan repeatedly made improper small entity fee payments on the '194 patent and '780 patent after small-entity status was no longer proper. Finjan's improper payments make the '194 and '780 patents unenforceable. See Nillsen v. Osram Sylvania, Inc., 440 F.Supp.2d 884, 905 (N.D. Ill. 2006) (finding plaintiff's patent unenforceable due to improper small entity claim during prosecution).

### 8.    Finjan Cannot Meet the High Burden of Proving Willful Infringement

To prove willful infringement, the patent holder must prove by clear and convincing evidence that it is highly probable that, prior to the filing date of the complaint, the alleged infringer acted with reckless disregard of the claims of the patent holder's patent. In re Seagate Tech., L.L.C., 497 F.3d 1360, 1371 (Fed. Cir. 2007). Finjan will not be able to produce testimony or evidence to satisfy this burden.

13

9.    **Finjan's Potential Damages are Minimal**

REDACTED

Through testimony of Carl Degen and cross examination of Mr. Paar, Secure Computing will show that Mr. Paar committed several errors in his calculation. Secure Computing will show that Finjan's claims to rest solely on portions of Secure Computing's "proactive scanning" functionality in the Webwasher product introduced in October 2004. Damages should be calculated only on sales to customers who purchase a license that includes the proactive scanning function. In general, Webwasher consists of various modules, including URL filter, Anti-Malware, SSL Scanner, Anti-Virus, Instant Message Filter, and Anti-Spam. All of these Webwasher modules are sold separately, so customers can pick and choose the level and type of protection they need.                          REDACTED

Moreover, under 28 U.S.C. section 1498(a), Secure Computing's sales to the U.S. government are not subject to Finjan's claims against Secure Computing. Section 1498(a) states that "[w]herever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States . . . ." The Federal Circuit has stated, "[i]n addition to restricting suit against the United States to monetary compensation for infringing uses, section 1498 relieves a federal contractor of liability where the contractor uses or manufactures an infringing invention for the United States." Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1381 (Fed. Cir. 2002)).

REDACTED                          Jill Putman, Secure Computing's Rule 30(b)(6)

designee regarding Secure Computing's past, current, and projected sales, revenues, gross profits, and net profits generated from accused products, will testify

REDACTED

Foreign sales should also be excluded from damages. Similarly, Finjan licensed its patents to Microsoft, so sales of Secure Computing products to customers should not be included in damages if the customer uses the Secure Computing product in combination with a Microsoft product based on the doctrine of patent exhaustion. LG Electronics v. BizCom, 453 F.3d 1370 (Fed. Cir. 2006), cert. granted, 128 S. Ct. 28 (2007).

## IV.    POTENTIAL DIRECTED VERDICT MOTIONS

Secure Computing reserves its right to move for a directed verdict during trial on any issue, but to assist the Court in its preparation for trial, Secure Computing expects that it may move for a directed verdict on the following issues: (1) That Finjan has failed to meet its burden of proving Secure Computing's asserted claims are invalid by clear and convincing evidence; (2) That Finjan has failed to meet its burden of proving Secure Computing infringed any of Finjan's asserted claims willfully; (3) That Secure Computing met its burden of proving that Finjan's asserted claims are invalid by clear and convincing evidence; (4) Finjan has waived or abandoned any claims of indirect infringement; and (5) That Finjan can not make out a case of infringement under the doctrine of equivalents.

OF COUNSEL:

Ronald J. Schutz
Jake M. Holdreith
Christopher A. Seidl
Trevor J. Foster
ROBINS, KAPLAN, MILLER &
CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

Dated: January 7, 2008

_Kelly E. Farnan_

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Secure Computing*

16

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 7, 2008, I electronically filed the foregoing with the Clerk of Court using CM/ECF and caused the same to be served on the defendant at the addresses and in the manner indicated below:

### HAND DELIVERY AND E-MAIL

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street,
Hercules Plaza, 6th Floor
Wilmington, DE 19899-0951

I further certify that on January 7, 2008, the foregoing document was sent to the following non-registered participants in the manner indicated:

### E-MAIL

Paul J. Andre
Radhika Tandon
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114

Kelly E. Farnan

Kelly E. Farnan (#4395)

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 14, 2008, I electronically filed the foregoing with the Clerk of Court using CM/ECF and caused the same to be served on the defendant at the addresses and in the manner indicated below:

### HAND DELIVERY

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street,
Hercules Plaza, 6th Floor
Wilmington, DE  19899-0951

I further certify that on Januar y 14, 2008, the foregoing document was sent to the following non-registered participants in the manner indicated:

### FEDERAL EXPRESS

Paul J. Andre
Radhika Tandon
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA  94025-1114

*Kelly E. Farnan*

Kelly E. Farnan (#4395)