# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, <br><br> Plaintiff-Counterdefendant, <br><br> v. <br><br> SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, <br><br> Defendants-Counterclaimants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )     C. A. No. 06-369-GMS |

## JOINT PROPOSED FINAL JURY INSTRUCTIONS

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff


OF COUNSEL:

Paul J. Andre
Lisa Kobialka
King & Spalding LLP
1000 Bridge Parkway
Redwood City, CA 94065
(650) 590-0700

Dated: March 5, 2008

Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com

Attorneys for Defendants


OF COUNSEL:

Ronald J. Schutz
Jake M. Holdreith
Christopher A. Seidl
Trevor J. Foster
Robins, Kaplan, Miller & Ciresi L.L.P.
3800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

# TABLE OF CONTENTS

STIPULATED JURY INSTRUCTION NO. 1 INTRODUCTION.................................................. 1

STIPULATED JURY INSTRUCTION NO. 2 EVIDENCE DEFINED ........................................ 3

STIPULATED JURY INSTRUCTION NO. 3 DIRECT AND CIRCUMSTANTIAL
EVIDENCE........................................................................................................................... 4

STIPULATED JURY INSTRUCTION NO. 4 CONSIDERATION OF EVIDENCE ................. 5

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 4.1 OFFICIAL
TRANSLATION.................................................................................................................... 6

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION
NO. 4.1................................................................................................................................. 7

STIPULATED JURY INSTRUCTION NO. 5 STATEMENTS OF COUNSEL ........................ 8

STIPULATED JURY INSTRUCTION NO. 6 CREDIBILITY OF WITNESSES...................... 9

STIPULATED JURY INSTRUCTION NO. 7 EXPERT TESTIMONY.................................... 11

STIPULATED JURY INSTRUCTION NO. 8 NUMBER OF WITNESSES............................. 12

STIPULATED JURY INSTRUCTION NO. 9  BURDEN OF PROOF ..................................... 13

STIPULATED JURY INSTRUCTION NO. 10 DEPOSITIONS AS SUBSTANTIVE
EVIDENCE......................................................................................................................... 14

FINJAN'S PROPOSED PROVISIONAL JURY INSTRUCTION NO. 10.1. THE PARTIES
AND NATURE OF THE CASE........................................................................................... 15

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED PROVISIONAL JURY
INSTRUCTION NO. 10.1. .................................................................................................. 16

SECURE COMPUTING'S PROPOSED  JURY INSTRUCTION NO. 10.1............................. 17

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED  JURY INSTRUCTION
NO. 10.1............................................................................................................................. 19

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 11 SUMMARY OF
PATENT ISSUES................................................................................................................ 20

STIPULATED JURY INSTRUCTION NO. 12 CLAIM CONSTRUCTION ........................... 23

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED  JURY INSTRUCTION
NO. 13............................................................................................................................... 25

SECURE COMPUTING'S PROPOSED  JURY INSTRUCTION NO. 13................................. 26

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED  JURY INSTRUCTION
NO. 13............................................................................................................................... 28

STIPULATED JURY INSTRUCTION NO. 14 INDEPENDENT AND DEPENDENT CLAIMS
............................................................................................................................................ 30

FINJAN'S PROPOSED JURY INSTRUCTION NO. 15 MEANS PLUS FUNCTION CLAIM
LIMITATIONS.................................................................................................................... 31

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION NO. 15..............................................................................................................32

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 15. ................................33

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 15..............................................................................................................34

FINJAN'S PROPOSED JURY INSTRUCTION NO. 16 PATENT INFRINGEMENT GENERALLY – DIRECT INFRINGEMENT ............................................................................35

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION NO. 16..............................................................................................................37

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 16 ..................................38

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 16..............................................................................................................40

STIPULATED JURY INSTRUCTION NO. 17 OPEN ENDED OR "COMPRISING" CLAIMS ................................................................................................................................................41

STIPULATED JURY INSTRUCTION NO. 18 DIRECT INFRINGEMENT - LITERAL INFRINGEMENT – EVERY CLAIM LIMITATION MUST BE PRESENT ............................42

STIPULATED JURY INSTRUCTION NO. 19 INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS......................................................................................................................43

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 19.1 INFRINGEMENT - FUNCTIONALITIES ..................................................................................................................45

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 19.1...........................................................................................................46

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 19.2 Indirect Infringement ................................................................................................................................................47

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 19.2...........................................................................................................48

FINJAN'S PROVISIONAL PROPOSED JURY INSTRUCTION NO. 19.3 Inducing Patent Infringement......................................................................................................................49

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 19.3 Inducing Patent Infringement......................................................................................................................51

FINJAN'S OBJECTIONS TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 19.3...........................................................................................................53

......................................................................................................................................................54

FINJAN'S OBJECTIONS TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 19.4...........................................................................................................55

STIPULATED JURY INSTRUCTION NO. 20 INFRINGEMENT – MEANS PLUS FUNCTION CLAIMS ..................................................................................................................56

FINJAN'S PROPOSED JURY INSTRUCTION NO. 21 WILLFUL INFRINGEMENT ...........59

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION NO. 21...................................................................................................... 61

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 21. ............................... 62

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 21.......................................................................................................... 64

STIPULATED JURY INSTRUCTION NO. 22 VALIDITY – IN GENERAL ........................... 65

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 23 SUMMARY OF INVALIDITY DEFENSE........................................................................................... 66

STIPULATED INSTRUCTION PENDING FOOTNOTED OBJECTIONS JURY INSTRUCTION NO. 24 THE PRIOR ART.................................................................. 67

FINJAN'S PROVISIONAL PROPOSED JURY INSTRUCTION NO. 25 PRIOR ART - DATE OF INVENTION – PRIORITY DATE ........................................................................ 69

SECURE COMPUTING'S OBJECTIONS TO FINJAN'S PROVISIONAL PROPOSED JURY INSTRUCTION NO. 25. ............................................................................................ 69

SECURE COMPUTING'S OBJECTIONS TO FINJAN'S PROVISIONAL PROPOSED JURY INSTRUCTION NO. 25. ............................................................................................ 70

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 25................................... 71

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 25.......................................................................................................... 72

FINJAN'S PROPOSED JURY INSTRUCTION NO. 26 ANTICIPATION/ LACK OF NOVELTY................................................................................................................ 73

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION NO. 27.......................................................................................................... 75

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 27.......................................................................................................... 78

FINJAN'S PROPOSED JURY INSTRUCTION NO. 27 OBVIOUSNESS ................................ 80

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION NO. 28.......................................................................................................... 83

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 28. ............................... 84

STIPULATED JURY INSTRUCTION NO. 28 THE SCOPE AND CONTENT OF THE PRIOR ART............................................................................................................. 88

FINJAN'S PROPOSED JURY INSTRUCTION NO. 29 DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART ....................................... 89

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION NO. 30.......................................................................................................... 91

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 30................................... 92

iii

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 30.................................................................................................................. 93

STIPULATED JURY INSTRUCTIONS 31 LEVEL OF ORDINARY SKILL ........................ 94

STIPULATED JURY INSTRUCTION NO. 31.1 OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS ................................................................................................................ 95

STIPULATED INSTRUCTION PENDING FOOTNOTED OBJECTIONS JURY INSTRUCTION NO. 32 WRITTEN DESCRIPTION ................................................................ 96

FINJAN'S PROVISIONAL PROPOSED JURY INSTRUCTION NO. 33 ENABLEMENT ..... 97

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION NO. 33.................................................................................................................................. 99

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 33.............................. 100

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 33................................................................................................................................ 102

FINJAN'S PROPOSED JURY INSTRUCTION NO. 34 INDEFINITENESS .......................... 103

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 34. .............................. 105

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 34................................................................................................................................ 107

STIPULATED INSTRUCTION PENDING FOOTNOTED OBJECTIONS JURY INSTRUCTION NO. 35 Inequitable Conduct—in General........................................................ 109

FINJAN'S PROVISIONAL PROPOSED JURY INSTRUCTION NO. 36 SMALL ENTITY STATUS .............................................................................................................................. 111

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROVISIONAL PROPOSED JURY INSTRUCTION NO. 36. ..................................................................................................... 112

JURY INSTRUCTION NO. 36 ............................................................................................ 113

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 36................................................................................................................................ 114

STIPULATED INSTRUCTION PENDING FOOTNOTED OBJECTIONS JURY INSTRUCTION NO. 37 MATERIALITY............................................................................. 115

STIPULATED INSTRUCTION PENDING FOOTNOTED OBJECTIONS JURY INSTRUCTION NO. 38 INTENT......................................................................................... 116

STIPULATED INSTRUCTION PENDING FOOTNOTED OBJECTIONS JURY INSTRUCTION NO. 39 BALANCING OF MATERIALITY AND INTENT ......................... 117

FINJAN'S PROPOSED JURY INSTRUCTION NO. 40 DAMAGES – GENERALLY .......... 118

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION NO. 41................................................................................................................................ 120

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 41............................... 121

FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION
NO. 41.................................................................................................... 123

STIPULATED JURY INSTRUCTION NO. 41 DATE DAMAGES BEGIN ........................... 124

STIPULATED JURY INSTRUCTION NO. 42 REASONABLE ROYALTY ........................ 126

STIPULATED JURY INSTRUCTION NO. 43 REASONABLE ROYALTY – DEFINITION127

STIPULATED JURY INSTRUCTION NO. 44 REASONABLE ROYALTY – RELEVANT
FACTORS................................................................................................... 128

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 45 DESIGN AROUND130

FINJAN'S OBJECTIONS TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION
NO. 46..................................................................................................... 131

STIPULATED JURY INSTRUCTION NO. 46 REASONABLE ROYALTY – TIMING ....... 132

FINJAN'S PROVISIONAL PROPOSED JURY INSTRUCTION NO. 46.1 PATENT
EXHAUSTION.............................................................................................. 133

SECURE COMPUTING'S OBJECTIONS TO FINJAN'S PROPOSED JURY INSTRUCTION
NO. 46.1.................................................................................................. 134

SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 46.1........................... 135

FINJAN'S OBJECTIONS TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION
NO. 46.1.................................................................................................. 136

FINJAN'S PROPOSED JURY INSTRUCTION NO. 47 GOVERNMENT SALES................. 138

SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION
NO. 48..................................................................................................... 139

JURY INSTRUCTION NO. 48. ....................................................................... 141

FINJAN'S OBJECTIONS TO SECURE COMPUTING'S PROPOSED.................................. 142

STIPULATED JURY INSTRUCTION NO. 49 DELIBERATION AND VERDICT.............. 143

**STIPULATED**
**JURY INSTRUCTION NO. 1**
**INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, the defendants are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you,

even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**AUTHORITY:**
Uniform Jury Instructions in the United States District Court for the District of Delaware
Sample: Miscellaneous Jury Instructions (GMS) Rev: 1/18/06

## STIPULATED
## JURY INSTRUCTION NO. 2
### EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**AUTHORITY:**
Uniform Jury Instructions in the United States District Court for the District of Delaware
Sample: Miscellaneous Jury Instructions (GMS)
Rev: 1/18/06

**STIPULATED**
**JURY INSTRUCTION NO. 3**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it way that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**AUTHORITY:**
Uniform Jury Instructions in the United States District Court for the District of Delaware
Sample: Miscellaneous Jury Instructions (GMS)
Rev: 1/18/06

4

**STIPULATED**
**JURY INSTRUCTION NO. 4**
**CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**AUTHORITY:**
Uniform Jury Instructions in the United States District Court for the District of Delaware
Sample: Miscellaneous Jury Instructions (GMS)
Rev: 1/18/06

**SECURE COMPUTING'S PROPOSED**
**JURY INSTRUCTION NO. 4.1**
**OFFICIAL TRANSLATION**

You may have heard German or Hebrew being used during this trial, including during deposition testimony presented at trial. You are to consider only that evidence provided through translator or interpreter. Although some of you may know the German or Hebrew language, it is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English translation. You must ignore any different meaning of the non-English words.

## FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 4.1

This instruction is unnecessary.  Finjan is not aware of any depositions that would be played with a German translation.  This instruction seems to be intended to highlight the fact that one of Finjan's inventors testified in a videotaped deposition in Hebrew, because he wanted to be deposed in his native language.  To the extent this is the only witness whose deposition might be played where a translation is involved, it is prejudicial to Finjan.  Federal Rules of Evidence 403.

**STIPULATED**
**JURY INSTRUCTION NO. 5**
**STATEMENTS OF COUNSEL**

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

**AUTHORITY:**
Uniform Jury Instructions in the United States District Court for the District of Delaware
Sample: Miscellaneous Jury Instructions (GMS)
Rev: 1/18/06

**STIPULATED**
**JURY INSTRUCTION NO. 6**
**CREDIBILITY OF WITNESSES**

You are the sole judges of each witness's credibility. You should consider each witness' means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

**AUTHORITY:**

9

Uniform Jury Instructions in the United States District Court for the District of Delaware
Sample: Miscellaneous Jury Instructions (GMS)
Rev: 1/18/06

**STIPULATED**
**JURY INSTRUCTION NO. 7**
**EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

**AUTHORITY:**
Modified Uniform Jury Instructions in the United States District Court for the District of Delaware
Sample: Miscellaneous Jury Instructions (GMS)
Rev: 1/18/06

**STIPULATED**
**JURY INSTRUCTION NO. 8**
**NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

**AUTHORITY:**

Uniform Jury Instructions in the United States District Court for the District of Delaware
Sample: Miscellaneous Jury Instructions (GMS)
Rev: 1/18/06

**STIPULATED
JURY INSTRUCTION NO. 9
BURDEN OF PROOF**

In this case, each party has the burden to prove its claims of patent infringement and damages by a preponderance of the evidence. That means each party must produce evidence that, when considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on the opposite sides of a scale, the evidence supporting the party claiming patent infringement and damages would have to make the scales tip somewhat on that party's side.

In addition, each party must prove its respective claim of willful infringement and invalidity by clear and convincing evidence and not by a preponderance of the evidence, the standard that applies to the other claims in this case. In addition, Secure Computing must prove its inequitable conduct claim against Finjan by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you therefore should not consider it at all in your deliberations.

**AUTHORITY:**
Modified Preliminary Jury Instructions–Patent (Sleet, J.) (rev. January 18, 2006); Uniform Jury Instructions for Patent Cases in the United States Court for the District of Delaware § 1.3 (March 1993).

13

**STIPULATED**
**JURY INSTRUCTION NO. 10**
**DEPOSITIONS AS SUBSTANTIVE EVIDENCE**

During this trial, you have heard testimony from the playing of videotape excerpts or the reading of written excerpts from depositions. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness testified in person here in the courtroom.

**AUTHORITY:**
Fed. R. Civ. P. 32; 4 Leonard B. Sand *et al., Modern Federal Jury Instructions,* Inst. 74-14 (2006).

14

# FINJAN'S PROPOSED PROVISIONAL
## JURY INSTRUCTION NO. 10.1.
### THE PARTIES AND NATURE OF THE CASE

[Finjan does not believe this instruction is necessary. *See* Finjan's Objection.]

As I have told you, this is a patent case. The parties in this case are the plaintiff-counterdefendant, Finjan Software, Limited, and counterdefendant Finjan Software, Inc. on the one hand, and the defendants-counterclaimants, Secure Computing Corporation, Cyberguard Corporation and Webwasher AG on the other hand, who I will refer to collectively as Secure Computing.

Finjan Software Limited owns three United States patents which it alleges that Secure Computing infringes. Secure Computing owns two United States patents which it alleges Finjan infringes. Finjan Software, Ltd.'s patents are United States Patent No. 6,092,194, United States Patent No. 6,804,780 and United States Patent No.7,058,822. Secure Computing's patents are U.S. Patent Nos. 7,185,361 and 6,357,010. Because these numbers are so long, patents are usually referred to by their last three digits. For example, Patent No. 6,092,194 is called simply "the '194 Patent" and Patent No. 7,185,361 is called simply "the '361 Patent." Finjan contends that Secure Computing makes, uses, sells, imports and offers for sale the Webwasher and Cyberguard TSP products that infringes its patents and that such infringement is willful. Finjan seeks damages for Secure Computing's infringement.

Secure Computing contends that Finjan makes, uses, sells, imports, and offers for sale Vital Security NG appliances that infringe Secure Computing's '361 patent. Secure Computing also contends that Finjan's Vital Security™ for Documents (aka Finjan Mirage) product infringes Secure Computing's '010 patent. Secure Computing contends that Finjan's alleged infringement is willful. Secure Computing seeks damages for Finjan's alleged infringement.

**AUTHORITY:**
Modified from Preliminary Jury Instructions – Patent (GMS – revised 1/18/2006)(The Parties and Their Contentions); Modified from Uniform Jury Instructions for Patent Cases in the United States Court for the District of Delaware §§ 2.1-2.3 (March 1993).

**SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED PROVISIONAL JURY INSTRUCTION NO. 10.1.**

Secure Computing objects to Finjan's proposed provisional instruction because it does not provide the jury with sufficient specific guidance regarding Finjan's infringement claims against Secure Computing's accused products. Specifically, it does not explain that Finjan's has specifically accused Secure Computing's "proactive scanning functionality" of infringement. Secure Computing's proposed instruction, below, correctly identifies the functionality at issue. Identifying the functionality will provide clarity and consistency – at trial, as revealed by Finjan's experts, Finjan will attempt to prove infringement by Secure Computing's "proactive scanning functionality." Therefore, the jury should be instructed appropriately regarding Finjan's claims so the jury can appropriately address the alleged infringement and damages. *See* Secure Computing's Proposed Jury Instruction – Infringement – Functionalities; *see also Southwest Software, Inc. v. Harlequin, Inc.*, 226 F.3d 1280, 1291 (Fed. Cir. 2000); *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 506-07 (D. Del. 2003)(Sleet., J.).

Further, Secure Computing objects to Finjan's proposed provisional instruction because it appears to limit Secure Computing's infringement claims relating to the '361 patent to Finjan's Vital Security NG appliances. Secure Computing's infringement claims relating to the '361 patent are against all of Finjan's Vital Security NG products and against Finjan's Internet 1Box. *See* Joint Proposed Final Pretrial Order, Schedule B, Stipulation of Contested Issues of Fact and/or Law, ¶¶ 24, 26. Secure Computing proposed instruction, below, more accurately describes Secure Computing's claims.

16

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 10.1.

As I have told you, this is a patent case. The parties in this case are the plaintiff-counterdefendant, Finjan Software, Limited, and counterdefendant Finjan Software, Inc. on the one hand, and the defendants-counterclaimants, Secure Computing Corporation, Cyberguard Corporation and Webwasher AG on the other hand, who I will refer to collectively as Secure Computing.

Finjan Software, Limited owns three United States patents which it alleges that Secure Computing infringes. Secure Computing owns two United States patents which it alleges Finjan infringes. Finjan Software, Ltd.'s patents are United States Patent No. 6,092,194, United States Patent No. 6,804,780 and United States Patent No.7,058,822. Secure Computing's patents are U.S. Patent Nos. 7,185,361 and 6,357,010. Because these numbers are so long, patents are usually referred to by their last three digits. For example, Patent No. 6,092,194 is called simply "the '194 Patent" and Patent No. 7,185,361 is called simply "the '361 Patent." Finjan contends that Secure Computing makes, uses, sells, imports and offers for sale the Webwasher and Cyberguard TSP products, and specifically Webwasher and Cyberguard TSP products with an alleged "proactive scanning" feature, that allegedly infringes its patents and that such alleged infringement is willful. Finjan seeks damages for Secure Computing's alleged infringement. Secure Computing contends that Finjan makes, uses, sells, imports, and offers for sale Vital Security NG products and Vital Security Internet 1Box™ products that infringe Secure Computing's '361 patent. Secure Computing also contends that Finjan's Vital Security™ for Documents (aka Finjan Mirage) product infringes Secure Computing's '010 patent. Secure Computing contends that Finjan's alleged infringement is willful. Secure Computing seeks damages for Finjan's alleged infringement.

Companies sued for allegedly infringing a patent can deny infringement. They can also defend a charge of infringement by proving the patent is invalid. In this case, both parties deny that they infringe the other party's patents and both parties assert what are called affirmative

17

defenses to the charges of infringement.  I will tell you more about infringement in a few minutes.  I will instruct you as to defenses to a charge of infringement and possible damages resulting from a finding of infringement.

**AUTHORITY:**
Modified from Preliminary Jury Instructions – Patent (GMS – revised 1/18/2006)(The Parties and Their Contentions); Modified from Uniform Jury Instructions for Patent Cases in the United States Court for the District of Delaware §§ 2.1-2.3 (March 1993).

## FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 10.1

Finjan objects to this instruction as unnecessary and duplicative of other instructions provided in the case to the jury. Secure Computing's proposed instruction is improper because it attempts to limit the patents to "a proactive scanning feature," thereby making a requirement in the instruction that Finjan's patents include a specific feature as part of the instruction.

By adding this limitation, Secure Computing is putting its argument into the instruction and attempting to point out and characterize an alleged specific feature of Finjan's Patents, which is unnecessary and improper in what is supposed to be an instruction of the law, not an instruction on Secure Computing's argument. Doing so will only confuse and mislead the jury. Federal Rules of Evidence 402 and 403. Finjan's asserted claims are not limited to just the proactive scanning functionality.

Additionally, Secure Computing does not have an expert witness who disclosed an opinion of infringement regarding the Internet 1 Box, such that there is no need to refer to this product in the jury instructions. Secure Computing's expert witnesses referred to Finjan's Vital Security NG products as Finjan's Vital Security NG appliances.

The remainder of Secure Computing's instruction is duplicative of other instructions. Federal Rule of Evidence 403.To the extent the Court elects to read an instruction, Finjan has provided a counter proposal.

19

**SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 11
SUMMARY OF PATENT ISSUES**

[Finjan does not believe this instruction is necessary and that it is duplicative of other instructions provided in the case to the jury.  Federal Rule of Evidence 403.]

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues:

1.    Whether Finjan Software, Ltd. has proved that Secure Computing literally infringes, or in the alternative infringes under the Doctrine of Equivalence,[1] claims 1-14, 24-30, 32-36 and 65 of United States Patent No. 6,092,194.

2.    Whether Secure Computing has proved that claims 1-14, 24-30, 32-36 and 65 of United States Patent No. 6,092,194 are invalid.

3.    Whether Finjan Software, Ltd. has proved that Secure Computing literally infringes, or in the alternative infringes under the Doctrine of Equivalence,[2] claims 1-6, 9-14, and 18 of United States Patent No. 6,804,780.

4.    Whether Secure Computing has proved that claims 1-6, 9-14, and 18 of United States Patent No. 6,804,780 are invalid.

5.    Whether Finjan Software, Ltd. has proved that Secure Computing literally infringes, or in the alternative infringes under the Doctrine of Equivalence,[3] claims 4, 6, 8, 12, and 13 of United States Patent No. 7,058,822.

6.    Whether Secure Computing has proved that claims 4, 6, 8, 12 and 13 of United States Patent No. 7,058,822 are invalid.

7.    If you find any of the claims of any of the Finjan Patents in Suit are infringed,

---

[1] Secure Computing objects to any instruction regarding infringement of Finjan's patents under the Doctrine of Equivalents.  Finjan should not be allowed to assert Doctrine of Equivalents based on prosecution history estoppel.  Secure Computing incorporates this objection throughout these instructions with respect to any instruction relating to infringement of Finjan's patents under the Doctrine of Equivalents.
[2] See Footnote 1.
[3] See Footnote 1.

20

valid, and enforceable, whether Finjan Software, Ltd. has proved the amount of damages adequate to compensate Finjan Software, Ltd. for alleged infringement.

8.    If you find any of the claims of any of the Finjan Patents in Suit are infringed, valid, and enforceable, whether Finjan Software, Ltd. has proved that the alleged infringement by Secure Computing of United States Patent Nos. 6,092,194, 6,804,780 and 7,058,822 was willful.

9.    Whether Secure Computing has proved that Finjan Software, Ltd.'s claims are barred and/or limited under 28 U.S.C. § 1498.[4]

10.    Whether Secure Computing has proved that Finjan Software, Ltd.'s claims are barred and/or limited by the doctrine of patent exhaustion.[5]

11.    Whether Secure Computing has proved that Finjan literally infringes claims 1-5, 7-12 and 14-15 of United States Patent No. 7,185,361.

12.    Whether Finjan has proved that claims 1-5, 7-12 and 14-15 of United States Patent No. 7,185,361 are invalid.

13.    Whether Secure Computing has proved that Finjan literally infringes claim 37 of United States Patent No. 6,357,010.

14.    Whether Finjan has proved that claim 37 of United States Patent No. 6,357,010 is invalid.

15.    If you find any of the claims of any of the Secure Computing Patents in Suit are infringed and valid, whether Secure Computing has proved the amount of damages adequate to compensate Secure Computing Corporation for Finjan's alleged infringement, if any.

16.    If you find any of the claims of any of the Secure Computing Patents in Suit are infringed and valid, whether Secure Computing has proved that the alleged infringement by Finjan of United States Patent No. 7,185,361 and United States Patent No. 6,357,010 was

---

[4] Finjan objects to the inclusion of this paragraph pending ruling on its other objections on specific jury instructions on this issue.
[5] Finjan objects to the inclusion of this paragraph pending ruling on its other objections on specific jury instructions on this issue.

willful.

I will now give you more detailed instructions about each of these issues and the patent

laws as they specifically relate to this case. If you would like to review my instructions at any

time during your deliberations, they will be available to you in the jury room.

**AUTHORITY:**
Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

**STIPULATED**
**JURY INSTRUCTION NO. 12**
**CLAIM CONSTRUCTION**

Before you decide any issues in this case, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are found at the end of patents involved in this lawsuit. The claims are "word pictures" intended to define, in words, the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually.

**AUTHORITY:**

35 U.S.C. § 112; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277 (Fed. Cir. 2000); *Tanabe Seiyaku Co. v. United States Int'l Trade Comm'n*, 109 F.3d 726 (Fed. Cir. 1997); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820 (Fed. Cir. 1989); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878 (Fed. Cir. 1988); *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329 (Fed. Cir. 1987); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538 (Fed. Cir. 1987).

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

**FINJAN'S PROPOSED
JURY INSTRUCTION NO. 13
CLAIM CONSTRUCTION FOR THE CASE**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

1.      The '194 patent term "downloadable" is construed as "an executable application program, which is downloaded from a source computer and run on the destination computer.

2.      The '780 patent term "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" is construed as "performing a hashing function on the Downloadable together with its fetched software components to generate a Downloadable ID."

3.      The '822 patent term "information-destination" is construed as "client."

4.      The '822 patent term "information-recommunicator" is construed as "server."

5.      The '010 patent term "role" is construed as "membership in a group of one or more."

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

**AUTHORITY:**
*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878 (Fed. Cir. 1988); Order Construing The Terms of U.S. Patent Nos. 6,092,194; 6,804,780; 7,058,822; 6,357,010; and 7,185,361 (D.I. 142, dated 12/11/07)' '822 patent.

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

24

## SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
## JURY INSTRUCTION NO. 13

Secure Computing objects to Finjan's proposed instruction because it does not accurately reflect the Court's Order Construing The Terms of U.S. Patent Nos. 6,092,194; 6,804,780; 7,058,822; 6,357,010; and 7,185,361 (D.I. 142, dated 12/11/07). Specifically, Finjan's proposed instruction does not include examples of "client" and "server" that were included in the Court's claim construction order. See footnotes 7 and 8 to the Court's Order Construing The Terms of U.S. Patent Nos. 6,092,194; 6,804,780; 7,058,822; 6,357,010; and 7,185,361 (D.I. 142, dated 12/11/07). Further, Finjan's proposed instruction that claims should be given "their ordinary meaning in the context of the patent specification and prosecution history" will only confuse the jury. Secure Computing's proposed instructions simply states that the plain and ordinary meaning should be the English language meaning.

25

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 13

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

1.    The '194 patent term "downloadable" is construed as "an executable application program, which is downloaded from a source computer and run on the destination computer."

2.    The '780 patent term "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" is construed as "performing a hashing function on the Downloadable together with its fetched software components to generate a Downloadable ID."

3.    The '822 patent term "information-destination" is construed as "client." Examples of a "client" include a device or process (such as email, browser, or other clients).

4.    The '822 patent term "information-recommunicator" is construed as "server." Examples of a "server"  include a network server, firewall, smart router, a resource server serving deliverable third-party/manufacturer postings, a user device operating as a firewall/server, or other information-suppliers or intermediaries for servicing one or more further interconnected devices or processes or interconnected levels of devices or processes.

5.    The ''010 patent term "role" is construed as "membership in a group of one or more."

The parties have stipulated to the following meanings:

The '194 patent term "access control" is construed as "criteria indicating whether or not to prevent execution of the Downloadable."

The '822 patent term "mobile protection code" is construed as "code capable of monitoring or intercepting potentially malicious code."

The '822 patent term "protection policies" is construed as "rules or policies for causing one or more predetermined operations to be performed if malicious code is intercepted."

The '822 patent term "sandboxed package" is construed as "protective environment."

The '010 patent term "authenticates/authenticating" is construed as "validating the identity of a user."

The '010 patent term "authorization" is construed as "approval for a request."

The '010 patent term "data owner interface" is construed as "an interface that is managed by one or more trusted individuals within an organization."

The '010 patent term "go list" is construed as "a list which is unique to each role and used by the document control server to determine which documents an authenticated business partner may be allowed to display."

The '361 patent term "network resource requests" is construed as "a request for an application or resource on an external server."

You should give the rest of the words in the claims in Finjan's Patents and Secure Computing's Patents their plain and ordinary English language meaning..

**AUTHORITY:**

27

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.,*
52 F.3d 967 (Fed. Cir. 1995) (en banc); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859
F.2d 878 (Fed. Cir. 1988); Order Construing The Terms of U.S. Patent Nos. 6,092,194;
6,804,780; 7,058,822; 6,357,010; and 7,185,361 (D.I. 142, dated 12/11/07)' '822 patent; Final
Joint Claim Construction Chart dated August 24, 2007.

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED**
**JURY INSTRUCTION NO. 13.**

Finjan objects to Secure Computing's proposed instruction as it relates to the terms "information-destination" and "information-recommunicator" from the '822 Patent and with regard to its instruction that the remaining words in the claims should be given their "plain and ordinary English language meaning."

Finjan objects to Secure Computing's instruction with respect to the terms "information-destination" and "information-recommunicator" from the '822 Patent because it will confuse and mislead the jury, and it is contrary to this Court's Order Construing The Terms Of U.S. Patent Nos. 6,092,194; 6,804,780, 7,058,822; 6,357,010 And 7,185,361 ("Claim Construction Order") and well established precedent. Federal Rules of Evidence 402 and 403. Secure Computing's proposed instruction includes alleged "[e]xamples of a 'client' and "[e]xamples of a 'server.'" These alleged "examples" are not explicitly recited in the Court's Claim Construction Order, nor do these "examples" appear as elements in the claim language of the '822 Patent. In fact, the Court's Claim Construction Order explicitly states in footnote 7, for example, that "the specification contemplates broad meaning for this and the following term." Inclusion of specific examples, particularly without the language that the specification contemplates a broad meaning for these terms will confuse the jury. This order makes the same conclusion in footnote 8 regarding the broad meaning contemplated in the specification with respect to the term "server."

Secure Computing's proposed instruction is essentially reading embodiments from the specification into the claims, which is improper. *See* Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("claims are not to be interpreted by adding limitations appearing only in the specification").

Additionally, the remaining words in the claims should be given ordinary meaning in the context of the patent specification and prosecution history, and not merely the "plain and ordinary English language meaning" taken out of the context of the patent, as suggested by Secure Computing. *See* Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir.

2005) ("We cannot look at the ordinary meaning of the term…in a vacuum.  Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history").  The instruction that only the plain and ordinary English language meaning would apply is misstatement of the law and is not supported by the cited authority.

Finjan further objects to the inclusion of claim terms that were not construed by the Court or are not contained in the asserted claims.

30

**STIPULATED**
**JURY INSTRUCTION NO. 14**
**INDEPENDENT AND DEPENDENT CLAIMS**

Patent claims may exist in two forms, referred to as independent and dependent claims. An independent claim does not refer to any other claim of the patent. Thus it is not necessary to look at any other claim to determine what an independent claim covers. Claim 1 of the '194 Patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, Claim 2 of the '194 Patent is a dependent claim. It refers to Claim 1 of the '194 Patent. To determine what this dependent claim covers, the words of that claim and the words of Claim 1 must be read together.

**AUTHORITY:**
Modified The Federal Circuit Bar Association
Model Patent Jury Instructions
2007

**FINJAN'S PROPOSED PROVISIONAL
JURY INSTRUCTION NO. 15
MEANS PLUS FUNCTION CLAIM LIMITATIONS**

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function. For example, let's say that a patent describes a table in which the legs are glued to the tabletop. One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop. Another to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop." This second type of claim limitation is called a means-plus-function limitation. It describes a means for performing the function of securing the legs to the tabletop, rather than reciting the glue per se.

**AUTHORITY**
Modified ABA Model Jury Instructions: Patent Litigation.

32

**SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
JURY INSTRUCTION NO. 15**

Finjan's proposed instruction does not provide the jury with sufficient specific guidance. For example, Finjan's proposed instruction fails to address the insubstantial difference assessment. Secure Computing's proposed instruction, below, is complete, clear and concise, and is based directly on the ABA model instructions.

33

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 15.

Some patent claim limitations may be written in what is known as a "means-plus-function" format. A means-plus-function element is a claim element that claims a means for performing a specific function. For example, a table could be claimed in a patent as being a tabletop, legs and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop."

I will now explain the special rules that apply to this type of claim language. First, the accused device must perform the specified function. Second, if an accused product does not perform the required function, you must identify the structure in the accused product that actually performs this function. Finally, you must determine whether that accused structure is the same as or equivalent to the structure identified in the patent for performing the required function. If the structure of the accused device is the same as, or equivalent to, the structure in the patent, then the means-plus-function element of the claim is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.

**AUTHORITY:**
Modified ABA Model Jury Instructions: Patent Litigation, § 6.4 (2005).

34

## FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 15.

Finjan objects to Secure Computing's Proposed Instruction No. 15 to the extent it includes statements regarding infringement, which are addressed later and do not need to be addressed at this point of the jury instructions. All this instruction needs to do is inform the jury that there are means-plus-function claim limitations and generally what they are, as opposed to providing an instruction on infringement of such a claim element, as that is explicitly addressed later in a separate jury instruction dedicated to infringement analysis of a means-plus-function claim limitation.

Finjan further objects to this instruction to the extent there are no means-plus-function claim limitations being asserted in the case, as Finjan has withdrawn asserted claims which included means-plus-function claim langauge. Any attempt by Secure Computing to assert that any remaining claims contain means-plus-function should have been presented earlier to the Court and appear to be a repackaged version of Secure Computing's challenges under 35 U.S.C. § 112.

**FINJAN'S PROPOSED**
**JURY INSTRUCTION NO. 16**
**PATENT INFRINGEMENT GENERALLY – DIRECT INFRINGEMENT**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells or offers to sell or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. For Finjan's infringement claims, you must compare Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent, Claims 1-6, 9-14, 18 of the '780 Patent, and Claims 4, 6, 8, 12, 13 of the '822 Patent, as I have defined them, to the Webwasher and CyberGuard TSP products, and determine whether or not there is infringement. For Secure Computing's infringement claims, you must compare Claims 1-5, 7-12 and 14-15 of United States Patent No. 7,185,361 to the Vital Security NG appliances, and determine whether or not there is infringement, and you must compare Claim 37 of United States Patent No. 6,357,010 to the Vital Security™ for Documents (aka Finjan Mirage) product, and determine whether or not there is infringement. You should not compare the accused products with any specific example set out in the asserted patent or with the patentee's products. The only correct comparisons are with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. I will first discuss direct infringement.

Whether or not Secure Computing or Finjan knew that what it was doing was an infringement does not matter. A person may be found to be an infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not even know of the patent.

In this case, Finjan asserts that Secure Computing's Webwasher and CyberGuard TSP

36

products directly infringes Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent, Claims 1-6, 9-14, 18 of the '780 Patent, and Claims 4, 6, 8, 12, 13of the '822 Patent.  In this case, Secure Computing asserts that Finjan's Vital Security NG appliances infringe the '361 patent, and that Finjan's Vital Security™ for Documents (aka Finjan Mirage) product infringes the '010 patent. It is your job to determine whether or not the patentee has proved by the preponderance of the evidence standard that the accused has infringement of the asserted patent claims by a preponderance of evidence standard.

**AUTHORITY:**
35 U.S.C. §§ 271 - 281 (1984 & Supp. 2001); *Warner-Jenkins Co.* v. *Hilton Davis Chemical Co.,* 520 U.S. 17, 36 (1997); *Fla. Prepaid Postesecondary Educ. Expense Bd.* v. *College Sav. Bank* 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc.* v. *Worth, Inc.,* 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Payless Shoesource, Inc.* v. *Reebok Int'l Ltd.,* 998 F.2d 985. 990 (Fed. Cir. 1993); *Alt. Thermoplastics Co.* v. *Faytex Corp.,* 974 F.2d 1299. 1300 (Fed. Cir. 1992); Intel Corp. v. *United States Int'l Trade Comm'n,* 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp.* v. *Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985).

Modified The Federal Circuit Bar Association
Model Patent Jury Instructions
2007

## SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
## JURY INSTRUCTION NO. 16

Secure Computing objects to Finjan's proposed provisional instruction because it does not provide the jury with sufficient specific guidance regarding Finjan's infringement claims against Secure Computing's accused products. Specifically, it does not explain that Finjan's has specifically accused Secure Computing's "proactive scanning functionality" of infringement. Secure Computing's proposed instruction, below, correctly identifies the functionality at issue. Identifying the functionality will provide clarity and consistency – at trial, as revealed by Finjan's experts, Finjan will attempt to prove infringement by Secure Computing's "proactive scanning functionality." Therefore, the jury should be instructed appropriately regarding Finjan's claims so the jury can appropriately address the alleged infringement and damages. *See* Secure Computing's Proposed Jury Instruction – Infringement – Functionalities; *see also Southwest Software, Inc. v. Harlequin, Inc.*, 226 F.3d 1280, 1291 (Fed. Cir. 2000); *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 506-07 (D. Del. 2003)(Sleet., J.).

Further, Secure Computing objects to Finjan's proposed provisional instruction because it appears to limit Secure Computing's infringement claims relating to the '361 patent to Finjan's Vital Security NG appliances. Secure Computing's infringement claims relating to the '361 patent are against all of Finjan's Vital Security NG products and against Finjan's Internet 1Box. *See* Joint Proposed Final Pretrial Order, Schedule B, Stipulation of Contested Issues of Fact and/or Law, ¶¶ 24, 26. Secure Computing proposed instruction, below, more accurately describes Secure Computing's claims.

Finally, Finjan's proposed instruction fails to specifically mention that this instruction pertains to "direct infringement."

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 16

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells or offers to sell or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement". In addition to enforcing a patent against a direct infringement, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers".

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. For Finjan's infringement claims, you must compare Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent, Claims 1-6, 9-14, and 18 of the '780 Patent, and Claims 4, 6, 8, 12, and 13 of the '822 Patent, as I have defined them, to the Webwasher and CyberGuard TSP products, and specifically to the "proactive scanning functionality," and determine whether or not there is infringement. For Secure Computing's infringement claims, you must compare Claims 1-5, 7-12 and 14-15 of United States Patent No. 7,185,361 to the Vital Security NG and Internet 1Box products, and determine whether or not there is infringement, and you must compare Claim 37 of United States Patent No. 6,357,010 to the Vital Security™ for Documents (aka Finjan Mirage) product, and determine whether or not there is infringement. You should not compare the accused products with any specific example set out in the asserted patents or with the patentee's products. The only correct comparisons are with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. I will first discuss direct infringement.

Whether or not Secure Computing or Finjan knew that what it was doing was an infringement does not matter. A person may be found to be a direct infringer of a patent even if

39

he or she believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not even know of the patent.

In this case, Finjan asserts that Secure Computing's Webwasher and CyberGuard TSP products, and specifically an alleged "proactive scanning" feature, directly infringes Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent, Claims 1-6, 9-14, and 18 of the '780 Patent, and Claims 4, 6, 8, 12 and 13of the '822 Patent. In this case, Secure Computing asserts that Finjan's Vital Security NG products and the Vital Security Internet 1Box™ product, directly infringe the '361 patent, and that Finjan's Vital Security™ for Documents (aka Finjan Mirage) product directly infringes the '010 patent. It is your job to determine whether or not the patentee has proved by the preponderance of the evidence standard that the accused has directly infringed the asserted claims.

**AUTHORITY:**
35 U.S.C. §§ 271 - 281 (1984 & Supp. 2001); Warner-Jenkins Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 36 (1997); Fla. Prepaid Postesecondary Educ. Expense Bd. v. College Sav. Bank 527 U.S. 627, 644 (1999); DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1330 (Fed. Cir. 2001); Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985. 990 (Fed. Cir. 1993); Alt. Thermoplastics Co. v. Faytex Corp., 974 F.2d 1299. 1300 (Fed. Cir. 1992); Intel Corp. v. United States Int'l Trade Comm'n, 946 F.2d 821, 832 (Fed. Cir. 1991); Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 867 (Fed. Cir. 1985); Modified The Federal Circuit Bar Association Model Patent Jury Instructions 2007)

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 16**

The parties' instruction is virtually the same with the exception that Secure Computing is attempting to include a requirement in the instruction that Finjan's patents include a specific feature, as part of the infringement instruction.  Below is an example of the language at issue:

> "For Finjan's infringement claims, you must compare Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent, Claims 1-6, 9-14, and 18 of the '780 Patent, and Claims 4, 6, 8, 12 and 13of the '822 Patent, as I have defined them, to the Webwasher and CyberGuard TSP products, and *specifically to the "proactive scanning functionality,"* and determine whether or not there is infringement." (emphasis added)

As can be seen from this section, Secure Computing is attempting to include its argument in the instruction and inappropriately characterize an alleged specific feature of Finjan's Patents, which is unnecessary and improper.  This is supposed to be an instruction of the law, not an instruction on Secure Computing's argument.  Doing so will only confuse and mislead the jury.  Federal Rules of Evidence 402 and 403.  Additionally, Finjan's asserted claims are not limited to just the "proactive scanning functionality."

Additionally, Secure Computing does not have an expert witness who disclosed an opinion of infringement regarding the Internet 1 Box.  Secure Computing's expert witnesses referred to Finjan's Vital Security NG products as Vital Security NG appliances.

**STIPULATED**
**JURY INSTRUCTION NO. 17**
**OPEN ENDED OR "COMPRISING" CLAIMS**

The beginning portion, or preamble, of some of the asserted claims have the word "comprising".    The word "comprising" means "including the following but not excluding others." A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that add additional elements.

If you find, for example, that an accused product includes all of the elements of a claim, the fact that the accused product might include additional steps would not avoid literal infringement of a claim that uses "comprising" language.

**AUTHORITY:**
Modified ABA, *Model Jury Instructions: Patent Litigation* § 6.5.1 (2005); *Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.*, 123 F.3d 1445, 1451 (Fed. Cir. 1997) ("The claim term 'including' is synonymous with 'comprising' thereby permitting the inclusion of the unnamed components."); *Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244 (Fed. Cir. 2001); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986); *AB Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983); Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

**FINJAN'S PROPOSED**
**JURY INSTRUCTION NO. 18**
**DIRECT INFRINGEMENT - LITERAL INFRINGEMENT – EVERY CLAIM**
**LIMITATION MUST BE PRESENT**

In order to infringe a patent claim, a product must include every limitation or element of the claim. If an accused product omits even a single element recited in a patent claim, then you must find that that accused product has not infringed that claim. If, however, an accused product includes each element of a claim, then you must find that that accused product infringed that claim. You must consider each of the patent claims separately.

A claim limitation may be present in an accused product in one of two ways: either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused product just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

**AUTHORITY:**
Modified ABA Model Jury Instructions: Patent Litigation (2005), § 7.2 and 7.3; *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).

**SECURE COMPUTING'S OBJECTION TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 18**

Secure Computing objects to Finjan's Proposed Jury Instruction No. 18 because it

does not include an instruction regarding infringement of method claims, which are at issue

in this case.

44

**SECURE COMPUTING'S PROPOSED**
**JURY INSTRUCTION NO. 18**
**DIRECT INFRINGEMENT - LITERAL INFRINGEMENT – EVERY CLAIM**
**LIMITATION MUST BE PRESENT**

In order to infringe a patent claim, a product must include every limitation or element of the claim. If an accused product omits even a single element recited in a patent claim, then you must find that that accused product has not infringed that claim. If, however, an accused product includes each element of a claim, then you must find that that accused product infringed that claim. You must consider each of the patent claims separately.

A method claim of a patent is directly infringed only by one practicing or performing the patented method. In other words, a party that does not practice or perform the claimed method cannot be liable for direct infringement. A party that does not practice the claimed method can still be liable for inducement infringement, which I will discuss later.

A claim limitation may be present in an accused product in one of two ways: either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused product just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

**AUTHORITY:**
Modified ABA Model Jury Instructions: Patent Litigation (2005), § 7.2 and 7.3; *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).

45

## FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 18

Finjan objects to the inclusion of a proposed instruction regarding type of claims. There are many different types of claims involved in this case, including program code claims, system claims as well as method claims. To the extent there are going to be any instructions on the types of claims, then all the types of claims involved in the case should be addressed, not just method claims, otherwise it is confusing and misleading. Additionally, the proposal by Defendants is phrased to favor Defendants' non-infringement arguments.

To the extent the Court will include a method claim instruction, then Finjan proposed the following:

"A method claim of a patent is directly infringed if a product practices or performs the patented method. A party or product that does not practice the claimed method can still be liable for inducement, which I will discuss later."

46

**FINJAN'S PROPOSED**

**JURY INSTRUCTION NO. 19**

**INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[6]**

As I said, an accused infringer can directly infringe a claim of a patent either literally or under the doctrine of equivalents.

Under the doctrine of equivalents, an accused product can infringe an asserted patent claim if it performs steps that are identical or equivalent to the requirements of the claim. If the accused product does not perform an identical or equivalent step to even one step of that particular asserted patent claim, the accused product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the accused product performs an identical or equivalent step to that individual claim requirement.

A step performed by an accused product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the step and the requirement were not substantial as of the time of the alleged infringement. One way to decide whether any difference between a requirement of an asserted claim and a step performed by the accused product is not substantial is to consider whether, as of the time of the alleged infringement, the step of the accused product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the accused product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the step with the claimed requirement. The known interchangeability between the claim requirement and the step

---

[6] Secure Computing objects to any instruction regarding alleged infringement by Secure Computing under the Doctrine of Equivalents. Finjan should be barred from asserted Doctrine of Equivalents based on prosecution history estoppel.

of the accused product is not necessary to find infringement under the doctrine of equivalents. The same step of the accused product may satisfy more than one element of a claim.

**AUTHORITY:**

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997);  *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Johnson & Johnson Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

### SECURE COMPUTING'S PROPOSED
### JURY INSTRUCTION NO. 19.2
### INFRINGEMENT - FUNCTIONALITIES

In this case, Finjan contends that Secure Computing's Webwasher software, and Webwasher and Cyberguard TSP appliances, infringe the '194, '780, and '822 patents. Finjan contends that these products infringe because they incorporate an allegedly infringing functionality called "proactive scanning."

Software and appliances that have an allegedly infringing functionality in the software source code, do not infringe if the user cannot access or use the accused functionality, or if the accused functionality is locked or not enabled.

Therefore, if the Webwasher software, and the Webwasher and Cyberguard TSP appliances, have the allegedly infringing proactive scanning functionality in its source code, but users cannot access or use the proactive scanning functionality, or if the proactive scanning functionality is locked or not enabled for users, then the Webwasher software, and the Webwasher and Cyberguard TSP appliances, do not infringe.   If you find that Secure Computing's proactive scanning feature infringes, you should not include any sales of products to customers for whom the proactive scanning functionality was locked and/or unavailable to the customer, and you should exclude such sales from any calculation of damages.

### AUTHORITY:
*Southwest Software, Inc. v. Harlequin, Inc.*, 226 F.3d 1280, 1291 (Fed. Cir. 2000); *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 506-07 (D. Del. 2003)(Sleet., J.); *Storage Computer Corp. v. Veritas Software Corp.*, No. 3:01-CV-2078-N, 2004 U.S. Dist. LEXIS 3887 (N.D. Tex. March 12, 2004)..

## FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED JURY INSTRUCTION NO. 19.2.

Finjan objects to this proposed instruction as it is misleading and is likely to confuse the jury. Federal Rules of Evidence 402 and 403. This proposal, which is not based on any model jury instructions, is a proposal Secure Computing concocted that recites its arguments in this case. This instruction attempts to improperly characterize Finjan's Patents, which is unnecessary and improper in jury instructions. This is supposed to be an instruction of the law, not an instruction of Secure Computing's argument. Additionally, it misstates Finjan's claims because it states that Finjan's infringement case is only against the proactive scanning feature, when Finjan's asserted patents cover much more material.

**SECURE COMPUTING'S PROPOSED**
**JURY INSTRUCTION NO. 19.3**
**INDIRECT INFRINGEMENT**

In addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. One type of indirect infringement is inducing infringement. The act of encouraging or inducing others to infringe a patent is called "inducing infringement."

There can be no indirect infringement unless someone is directly infringing the patent. Thus, in order to prove that Finjan is inducing another person to infringe, Secure Computing must prove by a preponderance of the evidence that the other person is directly infringing at least one claim of the patent.

In this case, Secure Computing accuses Finjan of inducing infringement of the asserted claims of the '361 and '010 patents. Secure Computing must prove by a preponderance of the evidence that Finjan has induced infringement of any of these claims.

**AUTHORITY:**
Modified ABA Model Jury Instructions: Patent Litigation § 7.12 (2005).

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 19.3.**

Finjan objects to Secure Computing's Instruction No. 19.3 because this instruction does not include the most recent Federal Circuit case law regarding indirect infringement, <u>BMC Resources, Inc. v. Paymentech, L.P.</u>, 498 F.3d 1373 (Fed. Cir. 2007). Indirect infringement requires evidence of "specific intent" to induce infringement. <u>Id.</u> at 1381. Also, Secure Computing's proposed instruction is confusing and misleading because it does not make clear that indirect infringement of a particular claim cannot be found if that particular claim was not found to be directly infringed.

## FINJAN'S PROVISIONAL PROPOSED
## JURY INSTRUCTION NO. 19.4
## INDUCING PATENT INFRINGEMENT

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as I've told you, can occur unintentionally. In order to induce infringement, there must first be an act of direct infringement and proof that the defendant knowingly induced infringement with the intent to encourage the infringement. Intent to cause the acts that produce direct infringement is not enough to show inducement of infringement. Finjan must have affirmatively intended to cause direct infringement and must have known or should have known that its action would induce actual infringement. It must be established that Finjan possessed specific intent to encourage another's infringement and not merely that Finjan had knowledge of the acts alleged to constitute inducement. Secure Computing has the burden of showing that Finjan induced infringing acts and that Finjan knew or should have known their actions would induce actual infringement.

**AUTHORITY:**
Modified ABA Model Jury Instructions: Patent Litigation § 7.12.1 (2005); 35 U.S.C. § 271; BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373 (Fed. Cir. 2007); DSU Medical Corp. v. JMS Co., Ltd., 471 F.3d 1293 (Fed. Cir. 2006).

### SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
### JURY INSTRUCTION NO. 19.4.

Secure Computing objects to Finjan's proposed jury instruction No. 19.4. As opposed to Finjan's proposed instruction, Secure Computing's proposed instruction (below) is based directly on the ABA Model Instructions, and is a complete and accurate statement of the law, even in light of BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373 (Fed. Cir. 2007). In this case, it is not necessary to instruct the jury on any law from BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373 (Fed. Cir. 2007). With respect to Finjan's concern regarding experts, Secure Computing is not required to have an expert opine on indirect infringement in order to preserve its claim of indirect infringement.

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 19.4
## INDUCING PATENT INFRINGEMENT

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as I've told you, can occur unintentionally. In order to induce infringement, there must first be an act of direct infringement and proof that the defendant knowingly induced infringement with the intent to encourage the infringement. Finjan must have intended to cause the acts that constitute the direct infringement and must have known or should have known that it s action would cause the direct infringement. It must be established that Finjan possessed specific intent to encourage another's infringement and not merely that Finjan had knowledge of the acts alleged to constitute inducement. Secure Computing has the burden of showing that Finjan's actions induced infringing acts and that Finjan knew or should have known their actions would induce actual infringements.

Secure Computing asserts that Finjan induced patent infringement. Secure Computing must prove four things by a preponderance of the evidence:

First, Finjan encouraged or instructed another person how to use a product in a manner that you, the jury, find infringes the '361 and/or '010 patent asserted claims.

Second, Finjan knew of the '361 and/or '010 patents at the time that they allegedly induced direct infringement.

Third, Finjan knew or should have known that its encouragement or instructions would likely result in the other person directly infringing the '361 and/or '010 patents.

Fourth, the other person's activities directly infringed the patents.

If, and only if, you are persuaded of each of these four things may you find that Finjan induced patent infringement.

**AUTHORITY:**

Modified ABA Model Jury Instructions: Patent Litigation § 7.12.1 (2005); 35 U.S.C. § 271; *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Circ. 2006); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544 (Fed. Cir. 1990).

**FINJAN'S OBJECTIONS TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 19.4.**

Finjan objects to Secure Computing's proposed instruction because it fails to address the law specifically set forth regarding the intent requirement. According to <u>DSU Medical Corp. v. JMS Co., Ltd.</u>, 471 F.3d 1293, 1306 (Fed. Cir. 2006), intent to cause the acts that produce direct infringement is not enough to show inducement of infringement. Finjan must have affirmatively intended to cause direct infringement and must have known or should have known that its action would induce actual infringement.

To the extent that the Court determines that this instruction is necessary, Secure Computing's proposed instruction does not take into consideration the recent Federal Circuit decision, <u>BMC Resources, Inc. v. Paymentech, L.P.,</u> 498 F.3d 1373 (Fed. Cir. 2007). Additionally, it unnecessarily and improperly recites four steps at the end of the instruction.

**SECURE COMPUTING'S PROPOSED**
**JURY INSTRUCTION NO. 20**
**INFRINGEMENT – MEANS PLUS FUNCTION CLAIMS**

As I told you, a means-plus-function limitation describes a means for performing a particular function. A means-plus-function may be present in an accused product literally or under the doctrine of equivalents.

To prove that an accused product includes a structure that is literally covered by a means-plus-function limitation, a patent owner must prove two things by a preponderance of the evidence. First, that the accused product contains a structure that performs the identical function to the function recited in the means-plus-function limitation.

Second, that the structure of the accused product that performs that function is either the same or equivalent to the corresponding structure disclosed in the patent specification.

If the function performed by the structure is not identical to the function recited in the means-plus-function limitation, the patent owner may prove that the accused product is covered by the means-plus-function limitation under the doctrine of equivalents. To prove equivalents, the patent owner must prove, first, that the accused product contains a structure that performs an equivalent function to the one recited in the claim limitation, and second, that the structure that performs that function is identical or equivalent to the structure described in the patent specification.

Whether or not the structure or function is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the art. A structure or function is equivalent if such an ordinary skilled person would consider the differences between the accused structure or function and the structure or function in the patent to be insubstantial.

One way of determining whether the structure of the accused product is equivalent to the structure disclosed in the specification is to determine whether or not persons of ordinary skill in the art believe that the structure disclosed in the specification and the structure of the accused

product are interchangeable. Another way is to determine whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.

Let's go back to our example of the claim reciting three limitations – first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The patent in our example discloses glue to secure the legs to the tabletop. Let's assume that the accused device uses nails. They both perform the claimed function of securing the legs to the tabletop. The fact that nails and glue are different does not mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as the importance of the glue to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, whether in the patent or prosecution history the two are referred to as equivalent, and so on.

Finjan is asserting means plus function claims in the '822 Patent against Secure Computing. For those claims, equivalents is determined as of the issuance of the patent, in this case, June 6, 2006. In deciding whether or not a structure in Secure Computing's products is included in the means-plus-function limitation of the claims of the '822 Patent, you must first decide whether or not the technology used in the structure of Secure Computing's products that relates to the means-plus-function limitation was known on the date the '822 Patent issued. Under the patent laws, a structure that incorporates technology that was developed after the issuance of the patent cannot be literally included in the means-plus-function limitations of that patent.

Thus, if you find that the technology incorporated in the structure of Secure Computing's product was developed after the '822 Patent was issued, then you can only consider whether or not the means-plus-function limitations of the '822 Patent claims are included in Secure Computing's products under the doctrine of equivalents.

**AUTHORITY:**

ABA Model Jury Instructions: Patent Litigation # 8.8; ABA, *Model Jury Instructions: Patent Litigation* § 7.6 (2005); *Applied Medical Res. Corp. v. U.S. Surgical Corp.*, 448 F. 3d 1324, 1334 (Fed. Cir. 2006); *J&M Corp. v. Harley-Davidson, Inc.*, 269 F. 3d 1360, 1367 (Fed. Cir. 2001); *IMS Tech., v. Haas Automation, Inc.,* 206 F. 3d 1422, 1435-37 (Fed. Cir. 2000).

**FINJAN'S OBJECTION TO
SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 20.**

Finjan objects to this instruction to the extent there are no means-plus-function claim elements left in the remaining asserted claims in the case. In addition to being unnecessary, any instruction on means-plus-function elements would be confusing and misleading to the jury.

61

**FINJAN'S PROPOSED
JURY INSTRUCTION NO. 21
WILLFUL INFRINGEMENT**

Finjan contends that Secure Computing has willfully infringed the claims of its patents and Secure Computing contends that Finjan has willfully infringed the claims its patents.  If you find on the basis of the evidence and the law as I have explained it, that Secure Computing infringes at least one claim of the '194 Patent, the '780 Patent or the '822 Patent, you must then decide whether or not Secure Computing's infringement was willful.  If you find on the basis of the evidence and the law as I have explained it, that Finjan directly infringes at least one asserted claim of the '361 Patent or the '010 Patent, you must then decide whether or not Finjan's infringement was willful.

When an entity becomes aware that a patent may have relevance to its activities, that entity has willfully infringed the patent when it acted in the face of an unjustifiably high risk of harm that is either known or so obvious that it should have known.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which the patent owner is entitled.  A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages.  For example, if you decide that Secure Computing willfully infringed one or more of Finjan's patent claims, then it is my job to decide whether or not to award increased damages to Finjan.

Although the patent owner must prove infringement by the more probable than not standard, the burden of proving that the infringement was willful is the highly probable standard.

In determining whether or not the accused infringer acted in good faith, you should consider all of the circumstances.  One factor you should consider in determining willfulness is whether or not, in designing the product accused of infringement Secure Computing copied the disclosures of the asserted patent, or whether or not Secure Computing instead tried to "design around" the patent by designing a product that it believed did not infringe the patent claims.  Evidence of copying a patent is evidence of willful infringement.  On the other hand, evidence

62

that Secure Computing attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that infringement was not willful.

**AUTHORITY:**

*In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007); 35 U.S.C. § 284 (Supp. 2001); *WMS Gaming Inc. v. Int' Game Tech.,* 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.;* 195 F.3d 1322, 1334 (Fed. Cir. 1999); *John's Hopkins University v. Cellpro,* 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm, Inc. v. Harris Corp.,* 156 F.3d 1182, 1191 (Fed. Cir. 1998); *SRI Int'l Inc. v. Advanced Tech. Labs.,* 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *Nat'l Presto Indus. v. W. Bend Co.,* 76 F.3d 1185, 1192-93 (Fed. Cir. 1996); Stryker Corp. v. Intermedics Orthopedics Inc., 93 F.3d 1409, 1414 (Fed. Cir. 1996); *Graco, Inc. v. Binks Mfg. Co.,* 60 F.3d 785, 792 (Fed. Cir. 1995); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 180 (Fed. Cir. 1994); *Westvaco Corp. v. Int'l Paper Co.,* 991 F 2.d 735, 745 (Fed. Cir. 1993); *Minnesota Mining & Mfg. v. Johnson and Johnson Orthopedics, Inc.,* 976 F.2d 1559, 1580 (Fed. Cir. 1992); *Ortho Pham, Corp. v. Smith,* 959 F.2d 936, 944 (Fed. Cir. 1992); *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826-30 (Fed. Cir. 1992); *Studiengesellschaft Kohle v. Dart Indus., Inc.,* 862 F.2d 1564, 1579 (Fed. Cir. 1988).

Modified The Federal Circuit Bar Association
Model Patent Jury Instructions
2007

**SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
JURY INSTRUCTION NO. 21**

Finjan's proposed instruction does not accurately reflect the Federal Circuit's holding in *In re Seagate Tech.*, L.L.C., 497 F.3d 1360 (Fed. Cir. 2007). For example, Finjan's proposed instruction does not describe the three separate factors described in Secure Computing's proposed instruction: (1) that the alleged infringer was aware of the patent prior to the filing of the complaint; (2) that the alleged infringer proceeded with the activities that are accused of infringement despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent; and (3) that the objectively high risk or likelihood of infringement was either known, or so obvious that it should have been known, to the accused infringer. Finjan's proposed instruction improperly places emphasis on awareness of the patent. Secure Computing's proposed instruction more accurately reflects the "reckless disregard" standard from *In re Seagate Tech.*, L.L.C., 497 F.3d 1360 (Fed. Cir. 2007). Secure Computing's proposed instruction is based on the new Model Patent Jury Instructions for the Northern District of California (October 2007), which reflect the holding in *In re Seagate Tech.*, L.L.C., 497 F.3d 1360 (Fed. Cir. 2007).

Secure Computing further objects to Finjan's proposed instruction because it does not accurately describe Secure Computing's infringement claims. Secure Computing has asserted direct and indirect infringement against Finjan, not only direct infringement.

Secure Computing further objects to Finjan's proposed instruction because Finjan's proposed instruction uses the "highly probable" burden of proof as opposed to the "clear and convincing" standard (which is used consistently in all other instructions).

64

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 21.

Finjan contends that Secure Computing has willfully infringed the claims of its patents, and Secure Computing contends that Finjan has willfully infringed the claims its patents. If you find on the basis of the evidence and the law as I have explained it, that Secure Computing directly or indirectly infringes at least one asserted claim of the '194 Patent, the '780 Patent or the '822 Patent, you must then decide whether or not Secure Computing's infringement was willful. If you find on the basis of the evidence and the law as I have explained it, that Finjan directly or indirectly infringes at least one asserted claim of the '361 Patent or the '010 Patent, you must then decide whether or not Finjan's infringement was willful.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which the patent owner is entitled. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages. For example, if you decide that Secure Computing willfully infringed one or more of Finjan's patent claims, then it is my job to decide whether or not to award increased damages to Finjan, and if you decide that Finjan willfully infringed one or more of Secure Computing's patent claims, then it is my job to decide whether or not to award increased damages to Secure Computing.

Although the patent owner must prove infringement by the preponderance of the evidence standard, the burden of proving that the infringement was willful is the clear and convincing standard.

To establish willful infringement, a patent owner must prove three things by clear and convincing evidence: (1) that the alleged infringer was aware of the patent prior to the filing of the complaint; (2) that the alleged infringer proceeded with the activities that are accused of infringement despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent; and (3) that the objectively high risk or likelihood of infringement was either known, or so obvious that it should have been known, to the accused infringer. The

65

state of mind of the accused infringer is not relevant to this objective inquiry.

To prove the second factor, the patent holder must prove by clear and convincing evidence that it is highly probably that, prior to the filing date of the complaint, the alleged infringer acted with reckless disregard of the claims of the patent holder's patent. To demonstrate such "reckless disregard," the patent owner must satisfy a two-part test. The first part of the test is objective. The patent holder must persuade you that the alleged infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. The state of mind of the alleged infringer is not relevant to this inquiry. You should focus on whether a reasonable person in the position of the alleged infringer, after learning of the patent, if it is proven that the alleged infringer knew of the patent, could have reasonably believed that it did not infringe or reasonably believed the patent was invalid.

The fact that you may have determined that the infringer was wrong and that the patent is infringed does not alone mean that the infringement was willful.

**AUTHORITY:**
ABA Model Jury Instructions: Patent Litigation § 8 (modified)(2005); *In re Seagate Tech.,* L.L.C., 497 F.3d 1360, 1371 (Fed. Cir. 2007); Modified Model Patent Jury Instructions for the Northern District of California 3.11 (October 2007).

## FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 21.

Finjan objects to Secure Computing's instruction because it fails to correctly state the law under In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007). Secure Computing states three requirements for establishing willful infringement when the holding in Seagate articulates only two. Id. at 1371. Contrary to Secure Computing's proposed instruction, there is no separate requirement that the patentee show the alleged infringer was aware of the patent prior to the filing of the complaint. Id.

Also, Secure Computing's instruction fails to clearly instruct that the state of mind of the accused infringer is, in fact, relevant to the second requirement of the willful infringement test. Id. Secure Computing's instruction includes a lengthy, confusing explanation of the definition of "reckless disregard" by referencing a "two-part test" for determining "reckless disregard" that does not exist under Seagate. It overemphasizes the reckless disregard factor over the other requirements for establishing willful infringement. Also, the second part of this test is never mentioned in Secure Computing's instruction, such that this entire explanation is confusing for the jury.

Secure Computing also includes indirect infringement in this instruction, which is the subject of Finjan's motion *in limine*.

**STIPULATED
JURY INSTRUCTION NO. 22
VALIDITY – IN GENERAL**

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "nonobvious" have special meanings under the patent laws.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.[7]

A patent is presumed to be valid. Thus, the challenging party must prove that the patents are invalid by clear and convincing evidence.

I will now explain to you each of the asserted grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

**AUTHORITY:**
Modified ABA Model Jury Instructions: Patent Litigation § 9 (2005); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1370-1371 (Fed. Cir. 2003); *Nat'l Presto Indus. Inc. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996); *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992); *Trans World Mfg. Corp. v. Al Nyman & Sons*, 750 F.2d 1552 (Fed. Cir. 1984); 35 U.S.C. §§ 253, 282; 35 U.S.C. § 253.

---

[7] Finjan reserves its objections to this paragraph subject to Finjan's motion *in limine* and its objections to the specific jury instructions on the issues of 35 U.S.C. § 112.

### SECURE COMPUTING'S PROPOSED
### JURY INSTRUCTION NO. 23
### SUMMARY OF INVALIDITY DEFENSE

[Finjan does not believe this instruction is necessary.  Federal Rule of Evidence 403.]

Finjan contends that Claims 1-5, 7-12 and 14-15 of the '361 Patent and Claim 37 of the '010 Patent are invalid.  Finjan has the burden of proving by clear and convincing evidence that each claim is invalid.

Secure Computing contends that Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent,[8] Claims 1-6, 9-14, and 18 of the '780 Patent, and Claims 4, 6, 8, 12, and 13 of the '822 Patent are invalid.

Claims of an issued patent may be found to be invalid.  Thus, you must determine individually whether these asserted claims are invalid.

Finjan and Secure Computing contend that all of the asserted patent claims are invalid because they are either anticipated or obvious in light of prior art.

Secure Computing also contends that the '194 Patent, the '780 Patent and the '822 Patent are invalid for lack of enablement, indefiniteness, and inadequate description.[9]  I will explain those concepts shortly.

I will now instruct you in more detail what is prior art and why Finjan and Secure Computing allege that the asserted claims are invalid for anticipation or obviousness.

**AUTHORITY:**
Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

---

[8] Finjan reserves its objections to this instruction the extent it is the subject of its motion *in limine* pending before the Court.
[9] Finjan reserves its objections to this instruction the extent it is the subject of its motion *in limine* pending before the Court and its objections in the specific instructions on issues surrounding 35 U.S.C. § 112.

69

**FINJAN'S PROPOSED INSTRUCTION PENDING FOOTNOTED OBJECTIONS**
**JURY INSTRUCTION NO. 24**
**THE PRIOR ART**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art." Prior art includes any of the following items received into evidence during trial:

1.    any product or method that was publicly known or used by others in the United States before the patented inventions were made;

2.    patents that issued more than one year before the filing date of the patents or before the inventions were made;

3.    publications having a date more than one year before the filing date of the patent[s] or before the inventions were made;

4.    any product or method that was in public use or on sale in the United States more than one year before the patents were filed.

In this case, Finjan contends that the following items are prior art:

1.  Check Point Firewall-1 System or CP system, Check Point Firewall-1 or the CP Firewall, and a typical CP firewall implementation, as described in Check Point FireWall-1 Architecture and Administrative or the CP reference[10]

2.  Lightweight Directory Access Protocol or the LDAP reference

3.  Authentication Method for LDAP or the LDAP authentication reference

4.  Windows 2000 Active Directory or the AD reference

5.    SESAME security architecture for open distributed systems as described in "SESAME: The solution to security in open distributed systems" or the SESAME reference

6.    Schumann Security Software, Inc.'s Security Administration Manager system as described in "Role-Based Access Control with the Security Administration Manager" or the

---

[10]  Secure Computing objects to Finjan's characterization of this prior art because it is vague and ambiguous and/or because it describes prior art that was not disclosed to Secure Computing.

SAM reference

7.    Apache HTTP Server Version 1.3 – Authentication, Authorization, and Access Control" or the Apache reference

8.    Role-Based Access Control Models or the RBAC reference

In this case, Secure Computing contends that the following items are prior art:

1.    U.S. Patent No. 6,571,338, or the Shaio reference

2.    Firewall Toolkit (FWTK) 2.0 Beta Release, or the FWTK reference

3.    U.S. Patent No. 5,414,833, or the Hershey reference

4.    Raymond W. Lo. et. al., *Towards a Testbed for Malicious Code Detection*, Compcon Spring 1991, Digest of Papers, or the Lo 1991 reference

5.    Raymond W. Lo. et. al., *MCF: A Malicious Code Filter*, or the Lo 1994 reference

6.    U.S. Patent No. 5,951,698 or the Chen reference

7.    U.S. Patent No. 5,623,600 or the Ji 1995 reference

8.    Microsoft Authenticode, or the Authenticode reference

9.    U.S. Patent No. 5,983,348, or the Ji 1997 reference

10.    U.S. Patent No. 6,263,442 or the Signed Java reference[11]

In this case, Finjan contends that the following items are prior art:

1.   Check Point Firewall-1 System or CP system, Check Point Firewall-1 or the CP Firewall, and a typical CP firewall implementation, as described in Check Point FireWall-1 Architecture and Administrative or the CP reference

2.  Lightweight Directory Access Protocol or the LDAP reference

3.  Authentication Method for LDAP or the LDAP authentication reference

4.  Windows 2000 Active Directory or the AD reference

5.   SESAME security architecture for open distributed systems as described in "SESAME: The solution to security in open distributed systems" or the SESAME reference

---

[11] Finjan objects to Secure Computing's inclusion of this prior art and characterization. Additionally, Secure Computing's alleged prior art references are subject to Finjan's pending motion *in limine*.

      6.    Schumann Security Software, Inc.'s Security Administration Manager system as described in "Role-Based Access Control with the Security Administration Manager" or the SAM reference

      7.    Apache HTTP Server Version 1.3 – Authentication, Authorization, and Access Control" or the Apache reference

      8.    Role-Based Access Control Models or the RBAC reference

You must determine whether these items are in fact prior art based on the evidence.

**AUTHORITY:**
Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

Modified ABA Model Jury Instructions: Patent Litigation § 9.3

72

### SECURE COMPUTING'S PROPOSED INSTRUCTION
### JURY INSTRUCTION NO. 24
### THE PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art." Prior art includes any of the following items received into evidence during trial:

1.  any product or method that was publicly known or used by others in the United States before the patented inventions were made;

2.  patents that issued more than one year before the filing date of the patents or before the inventions were made;

3.  publications having a date more than one year before the filing date of the patent[s] or before the inventions were made;

4.  any product or method that was in public use or on sale in the United States more than one year before the patents were filed;

5.  any product or method that was made by anyone before the named inventors created the patented product where the product was not abandoned, suppressed, or concealed.

In this case, Secure Computing contends that the following items are prior art:

1.  U.S. Patent No. 6,571,338, or the Shaio reference

2.  Firewall Toolkit (FWTK) 2.0 Beta Release, or the FWTK reference

3.  U.S. Patent No. 5,414,833, or the Hershey reference

4.  Raymond W. Lo. et. al., *Towards a Testbed for Malicious Code Detection*, Compcon Spring 1991, Digest of Papers, or the Lo 1991 reference

5.  Raymond W. Lo. et. al., *MCF: A Malicious Code Filter*, or the Lo 1994 reference

6.  U.S. Patent No. 5,951,698 or the Chen reference

7.  U.S. Patent No. 5,623,600 or the Ji 1995 reference

8.    Microsoft Authenticode, or the Authenticode reference

9.    U.S. Patent No. 5,983,348, or the Ji 1997 reference

10.    U.S. Patent No. 6,263,442 or the Signed Java reference

In this case, Finjan contends that the following items are prior art:

1.    Check Point Firewall-1 System or CP system, Check Point Firewall-1 or the CP Firewall, and a typical CP firewall implementation, as described in Check Point FireWall-1 Architecture and Administrative or the CP reference[12]

2.    Lightweight Directory Access Protocol or the LDAP reference

3.    Authentication Method for LDAP or the LDAP authentication reference

4.    Windows 2000 Active Directory or the AD reference

5.    SESAME security architecture for open distributed systems as described in "SESAME: The solution to security in open distributed systems" or the SESAME reference

6.    Schumann Security Software, Inc.'s Security Administration Manager system as described in "Role-Based Access Control with the Security Administration Manager" or the SAM reference

7.    Apache HTTP Server Version 1.3 – Authentication, Authorization, and Access Control" or the Apache reference

8.    Role-Based Access Control Models or the RBAC reference.

You must determine whether these items are in fact prior art based on the evidence.

**AUTHORITY:**
Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

Modified ABA Model Jury Instructions: Patent Litigation § 9.3

---

[12] Secure Computing objects to Finjan's characterization of this prior art because it is vague and ambiguous and/or because it describes prior art that was not disclosed to Secure Computing.

**FINJAN'S PROVISIONAL PROPOSED
JURY INSTRUCTION NO. 25
PRIOR ART - DATE OF INVENTION – PRIORITY DATE**

[Finjan does not believe it needs this instruction. *See* Objection.]

To determine whether or not a particular reference constitutes prior art, you need to establish the invention or priority date for a patent. References dated before the priority date of a patent are deemed prior art. For a non-provisional patent to claim the filing date of an earlier provisional application date as its priority date, the two applications must share at least one common inventor and the written description of the provisional application must adequately support the claims of the non-provisional application. Such a provisional application need only include a specification and at least one drawing.

**AUTHORITY:**

75

*New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290 (Fed.Cir. 2002); 35 U.S.C. § 111.

**SECURE COMPUTING'S OBJECTIONS TO FINJAN'S PROVISIONAL PROPOSED
JURY INSTRUCTION NO. 25.**

Secure Computing objects to Finjan's provisional proposed instruction because it is an
incomplete statement of the law under *New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d
1290 (Fed.Cir. 2002) and *Eli Lilly & Co. v. Barr Labs.*, 251 F.3d 955 (Fed. Cir. 2001).
Therefore, Finjan's provisional proposed instruction would be prejudicial, misleading, and
distracting to the jury.  The instruction does not focus on the appropriate issue, which is whether
the provisional adequately supports the claims of the non-provisional application.  Secure
Computing's proposed instruction, below, is a complete and accurate statement of the law and
provides the jury with a statement of the "priority date" issue specific to this case.

**SECURE COMPUTING'S PROPOSED**
**JURY INSTRUCTION NO. 25.**

To determine whether or not a particular reference, patent, or article is prior art, you must consider the invention date, or the "priority date." Art that is dated before the patent owner's invention date, or priority date, is prior art. To determine the invention date, you must determine the patent application filing date. For a non-provisional patent application to claim the benefit of the earlier filing date of the a provisional application, the specification of the provisional application must contain a written description of the invention and the manner and process of making and using it, in such full, clear, and concise, and exact terms, to enable an ordinarily skilled person in the art to practice the invention claimed in the non-provisional application. Further, if a patentee wishes to claim the benefit of the earlier filing date of the earlier filed provisional patent application, the non-provisional application must not claim the invention of a broader subject matter than was disclosed in the provisional application.

In this case, Secure Computing contends that the "priority date" of the '194 patent is the filing date of the non-provisional application, or November 6, 1997; the "priority date" of the '780 patent is the filing date of the non-provisional application, or March 30, 2000; and the "priority date" of the '822 patent is filing date of the non-provisional application, or May 17, 2001.

**AUTHORITY:**
*New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002); *Eli Lilly & Co. v. Barr Labs.*, 251 F.3d 955, 974 (Fed. Cir. 2001).

78

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 25.**

Finjan objects to Secure Computing's proposed instruction in its entirety as irrelevant. Secure Computing's expert Dan Wallach, in his expert report, contends that, rather than the provisional filing date of November 8, 1996, Finjan's '194 and '780 Patents' priority dates are their respective filing dates of November 6, 1997 and March 30, 2000. *See* Opening Technical Expert Report of Dan Wallach at 4-6. In addition, the Wallach report also states that Finjan's '822 Patent has a priority date as of its filing on May 17, 2001 rather than its provisional filing date of May 17, 2000. *See Id.* at 6-7. The report further sets forth alleged prior art that purportedly either anticipates or otherwise renders obvious Finjan's '194, '780, and '822 Patents. *See Id.* at 7-8. Specifically, the latest purported prior art set forth in the report against the '194 and the '780 Patents are dated in October of 1996 and the latest purported prior art against the '822 Patent is dated in September of 1997. As such, all the prior art set forth in the Wallach report predate the corresponding Finjan patent-in-suit, regardless of whether the particular patent-in-suit has its provisional filing date or application filing date as the priority date. Consequently, this instruction is irrelevant and is highly likely to lead to confusion. Federal Rule of Evidence 402 and 403. Furthermore, the '780 patent is a continuation of the '194 patent and therefore shares its priority date.

To the extent the Court is permitting an instruction, Finjan has provided a counter proposal.

**FINJAN'S PROPOSED**
**JURY INSTRUCTION NO. 26**
**ANTICIPATION/ LACK OF NOVELTY**

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by the clear and convincing standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person. Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done

so.

In this case, Finjan contends that Claims 1-5, 7-12, 14 and 15 of the '361 Patent are invalid because they are anticipated by the CP system, CP Firewall and a typical CP firewall implementation, as described in the CP reference and that Claim 37 of the '010 Patent is invalid because it is anticipated by the SESAME reference. If you find that Finjan has proved by clear and convincing evidence that these claims are anticipated, then you must find that the claims are invalid.

In this case, Secure Computing contends that Claims 1-14, 24-30, 32-36, and 65 of the '194 Patent, are invalid because they are anticipated by the FWTK reference, that Claims 1-6, 9-14, and 18 of the '780 Patent are invalid because they are anticipated by the Authenticode reference, and that Claims 4, 6, 8, 12, and 13 of the '822 Patent are invalid because they are anticipated by the Ji 1997 reference. If you find that Secure Computing has proved by clear and convincing evidence that these claims are anticipated, then you must find that the claims are invalid.

**AUTHORITY:**
*Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. v. Geneva Pharms, Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *C. R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983).

Modified The Federal Circuit Bar Association
Model Patent Jury Instructions 2007

**SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
JURY INSTRUCTION NO. 27**

Secure Computing objects to Finjan's proposed instruction because it does not include Secure Computing's Shaio reference.  It is an improper attempt to move to exclude proper evidence after motions in limine have already been briefed.  Finjan did not move to exclude Secure Computing's Shaio reference prior to trial and is now trying to write a motion in limine into the jury instructions.

Secure Computing also objects to Finjan's proposed instruction because the Shaio reference can anticipate all of the asserted claims regardless of whether United States Patent No. 5,740,441 ("441 patent") is properly considered part of the single Shaio reference.

Secure Computing also objects to Finjan's proposed instruction because the '441 patent is properly incorporated by reference into the Shaio reference. The Shaio reference specifically refers to the '441 patent and the particular subject matter of that reference. See Ultradent Prods. v. Life-Like Cosmetics, 127 F.3d 1065, 1069 (Fed. Cir. 1997).

Secure Computing also objects to Finjan's proposed instruction because its refers to "the CP system, CP Firewall and a typical CP firewall implementation, as described in the CP reference" as prior art.  Secure Computing objects to Finjan's characterization of this "prior art" because it is vague and ambiguous and/or because it describes prior art that was not disclosed to Secure Computing.

82

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 27

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by the clear and convincing standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person. Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done

so.

In this case, Secure Computing contends that Claims 1-14, 24-30, 32-36, and 65 of the '194 Patent, are invalid because they are anticipated by the Shaio reference and the FWTK reference, that Claims 1-6, 9-14, and 18 of the '780 Patent are invalid because they are anticipated by the Authenticode reference and the Signed Java reference, and that Claims 4, 6, 8, 12, and 13 of the '822 Patent are invalid because they are anticipated by the Ji 1997 reference. If you find that Secure Computing has proved by clear and convincing evidence that these claims are anticipated, then you must find that the claims are invalid.

In this case, Finjan contends that Claims 1-5, 7-12, 14 and 15 of the '361 Patent are invalid because they are anticipated by the CP system as described in the CP reference and that Claim 37 of the '010 Patent is invalid because it is anticipated by the SESAME reference. If you find that Finjan has proved by clear and convincing evidence that these claims are anticipated, then you must find that the claims are invalid.

**AUTHORITY:**
*Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. v. Geneva Pharms, Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *C. R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983).

Modified The Federal Circuit Bar Association Model Patent Jury Instructions 2007

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED**
**JURY INSTRUCTION NO. 27.**

Finjan objects to this jury instruction because it will cause confusion and is improper under the law. Anticipation requires each and every element of a claim to be present in a *single* reference. Advanced Display Systems, Inc. v. Kent State University, 212 F.3d 1272, 1283 (Fed. Cir. 2000). Secure Computing has indicated that Shaio anticipates the '194 reference. However, their anticipation argument is based on the fact that Shaio incorporates by reference United States Patent 5,740,441. It is clear from the case law that "whether and to what extent material has been incorporated by reference into a host document is a question of law." Advanced Display Systems, 212 F.3d 1272 at 1283; *see also* Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446, 1453-54 (Fed.Cir.1984). Further, to incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents. Advanced Display Systems, 212 F.3d at 1283; *see also* In re Seversky, 474 F.2d 671, 674 (C.C.P.A. 1973) (providing that incorporation by reference requires a statement "clearly identifying the subject matter which is incorporated and where it is to be found"). The Shaio reference provides only one line which incorporates by reference a pending application. This single line does not meet the particularity requirements of the case law. Id. In any case, this Court has not made a determination as to whether the Shaio reference properly incorporates by reference its pending application, thus any instruction to the jury stating that the Shaio reference anticipates the '194 patent would be improper conclusion of law.

Finjan further objects to Secure Computing using an obviousness standard for anticipation. Obviousness requires some suggestion or motivation to combine two or more references. KSR Intern. Co. v. Teleflex Inc., 127 S.Ct. 1727, 1739 (2007). Secure Computing's instruction provides that the '780 Patent is anticipated by "the knowledge of one of ordinary skill in the art in combination with known methods of applying digital signature to code, such as the Authenticode reference." As shown with this quote, Secure Computing is setting forth the

obviousness standard, not the anticipation standard, because it describes the combination of two references. Because this instruction is strictly limited to anticipation, Secure Computing's instruction would lead to error. Finjan reserves additional objections to this instruction pending ruling on its motion *in limine* on the issues of validity of its patents.

Finjan further objects to the order of the prior art references to the extent it is unnecessary and confusing.

FINJAN'S PROPOSED
JURY INSTRUCTION NO. 27
OBVIOUSNESS

As I mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Finjan has the burden of proving by the clear and convincing standard that Claims 1-5, 7-12, 14 and 15 of the '361 Patent are invalid for obviousness and Claim 37 of the '010 Patent is invalid for obviousness. Secure Computing has the burden of proving by the clear and convincing standard that Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent are invalid for obviousness, Claims 1-6, 9-14, and 18 of the '780 Patent are invalid for obviousness, and Claims 4, 6, 8, 12,and 13of the '822 Patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made. In determining whether or not these claims would have been obvious, you should

87

make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time of the invention was made?

Fourth, are there any objective indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the patent claims of Finjan's patents and Secure Computing's patents would have been obvious.

In this case, Finjan contends that Claims 1-5, 7-12 and 14-15 of the '361 Patent are invalid because they are rendered obvious by the CP reference, the LDAP reference, the LDAP authentication reference, and the AD reference. Finjan contends that claim 37 of the '010 Patent is invalid because they are rendered obvious by the SESAME reference, the SAM reference, the Apache reference and the RBAC reference.

In this case, Secure Computing contends that contends that Claims 1-14, 24-30, 32-36, and 65 of the '194 Patent, are invalid because they are rendered obvious by the Shaio reference; the FWTK reference; the Hershey reference, the Lo 1991 reference; the Lo 1994 reference; the Ji 1995 reference and the Chen reference. Secure Computing contends Claims 1-6, 9-14, and 18 of the '780 Patent are invalid because they are rendered obvious by the knowledge of one of ordinary skill in the art in combination with known methods of applying digital signature to code, such as the Authenticode reference. Secure Computing contends that Claims 4, 6, 8, 12, and 13 of the '822 Patent are invalid because they are rendered obvious by the Ji 1997 reference.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

**AUTHORITIES**:

*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); *Graham v. John Deere Co.*, 383 U.S.

1, 27-28 (1966); *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1359 (2001); *Ruiz v. A.B. Chance Co.,* 234 F.3d 654. 662-68 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994-998-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *In re Deuel*, 51 F.3d 1552, 1557-60 (Fed. Cir. 1995); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1574-75 (Fed. Cir. 1986).

Modified The Federal Circuit Bar Association
Model Patent Jury Instructions
2007

**SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
JURY INSTRUCTION NO. 28**

Secure Computing objects to Finjan's proposed instruction because it does not properly reflect the U.S. Supreme Court's holding in *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).    In addition, Finjan's proposed instruction contains improper and incorrect characterizations of Secure Computing's prior art and invalidity contentions.    Secure Computing's proposed instruction, below, provides a proper and accurate description of Secure Computing's prior art and invalidity contentions.

90

**SECURE COMPUTING'S PROPOSED**
**JURY INSTRUCTION NO. 28.**

As I mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Finjan has the burden of proving by the clear and convincing standard that Claims 1-5, 7-12, 14 and 15 of the '361 Patent are invalid for obviousness and Claim 37 of the '010 Patent is invalid for obviousness. Secure Computing has the burden of proving by the clear and convincing standard that Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent are invalid for obviousness, Claims 1-18 of the '780 Patent are invalid for obviousness, and Claims 1, 2, 4, 6, 8, 9, 12, 13, 15-18, 20-22, 24, 26-29, 31, 32, 34 and 35 of the '822 Patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

A patent claim can be proved obvious by showing that that a combination of known elements was obvious to try. When there is a need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the result of ordinary skill and common sense, not innovation. Therefore, in that instance, the fact that a combination was obvious to try shows it was obvious.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use

91

the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time of the invention was made?

Fourth, are there any objective indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the patent claims of Finjan's patents would have been obvious.

In this case, Secure Computing contends that contends that Claims 1-14, 24-30, 32-36, and 65 of the '194 Patent, are invalid because they are rendered obvious by each of the following: the Shaio reference; the FWTK reference; a combination of the Hershey reference and the Lo 1991 reference; a combination of the Hershey reference and the Lo 1994 reference; a combination of the Ji 1995 reference and the Lo 1991 reference; a combination of the Ji 1995 reference and the Lo 1994 reference; a combination of the Chen reference and the Hershey reference; and a combination of the Chen reference and the Ji 1995 reference. Secure Computing contends Claims 1-6, 9-14, and 18 of the '780 Patent are invalid because they are rendered obvious by the knowledge of one of ordinary skill in the art in combination with known methods of applying digital signature to code, such as the Authenticode reference. Secure Computing contends that Claims 4, 6, 8, 12, and 13 of the '822 Patent are invalid because they are rendered obvious by the Ji 1997 reference. If you find that Secure Computing has proved by clear and convincing evidence that these claims are obvious, then you must find that the claims are invalid.

In this case, Finjan contends that Claims 1-5, 7-12 and 14-15 of the '361 Patent are

92

invalid because they are rendered obvious by the CP reference, the LDAP reference, the LDAP authentication reference, and the AD reference. Finjan contends that claim 37 of the '010 Patent is invalid because they are rendered obvious by the SESAME reference, the SAM reference, the Apache reference and the RBAC reference. If you find that Finjan has proved by clear and convincing evidence that these claims are obvious, then you must find that the claims are invalid.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

**AUTHORITY:**

*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1359 (2001); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654. 662-68 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994-998-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *In re Deuel*, 51 F.3d 1552, 1557-60 (Fed. Cir. 1995); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1574-75 (Fed. Cir. 1986).

Modified The Federal Circuit Bar Association
Model Patent Jury Instructions
2007

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 28.**

Finjan objects to Secure Computing's proposed instruction because it does not believe it properly reflects the U.S. Supreme Court's holding in *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007). Additionally, Secure Computing's proposed instruction contains an improper discussion of the prior art combinations, which are Secure Computing's contentions.

# STIPULATED
## JURY INSTRUCTION NO. 28
### THE SCOPE AND CONTENT OF THE PRIOR ART

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Finjan and Secure Computing. You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

**AUTHORITY:**

*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991).

Modified The Federal Circuit Bar Association
Model Patent Jury Instructions
2007

FINJAN'S PROPOSED
JURY INSTRUCTION NO. 29
DIFFERENCES BETWEEN THE INVENTION OF
THE CLAIMS AND THE PRIOR ART

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of the prior art to a person of ordinary skill at the time of the invention.

It is common sense that familiar items may have been obvious beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple prior art together like pieces of a puzzle. Multiple references in the prior art can be combined to show that a claim of a patent is obvious. Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed. To determine whether there was an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation of the person of ordinary skill in the art nor the alleged purpose of the patentee controls. One of ordinary skill in art is not confined only to prior art that attempts to solve the same problem as the patent claim.

In deciding whether to combine what is described in various items of prior art, you should consider whether there was an apparent reason for a skilled person to combine the known elements in the fashion claimed by the patent at issue.

96

**AUTHORITY:**

*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991).

Modified The Federal Circuit Bar Association
Model Patent Jury Instructions
2007

## SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
## JURY INSTRUCTION NO. 30.

Secure Computing objects to Finjan's proposed instruction because it does not properly reflect the U.S. Supreme Court's holding in *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 30.

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all the prior art.

It is common sense that familiar items may have been obvious beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple prior art together like pieces of a puzzle. Multiple references in the prior art can be combined to show that a claim of a patent is obvious. Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed. To determine whether there was an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation of the person of ordinary skill in the art nor the alleged purpose of the patentee controls. One of ordinary skill in art is not confined only to prior art that attempts to solve the same problem as the patent claim.

In deciding whether to combine what is described in various items of prior art, you should consider whether there was an apparent reason for a skilled person to combine the known elements in the fashion claimed by the patent at issue.

## AUTHORITY:
*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991).

Modified The Federal Circuit Bar Association
Model Patent Jury Instructions
2007

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED**
**JURY INSTRUCTION NO. 30**

Finjan objects to Secure Computing's proposed instruction because it is contrary to applicable law. The last sentence of the first paragraph requires the jury to consider whether the "claimed invention as a whole" would be obvious in light of "all prior art." The law on proving obviousness does not require that *all* prior art references be used in combination to render an invention obvious. Furthermore, it must be obvious to one of ordinary skill in the art at the time of the invention, not using hindsight. *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).

## STIPULATED
## JURY INSTRUCTIONS 31
## LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

**AUTHORITY:**
*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Circ. 1991).

Modified The Federal Circuit Bar Association
Model Patent Jury Instructions
2007

101

**STIPULATED**
**JURY INSTRUCTION NO. 31.1**
**OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS**

As I indicated, you should consider what are referred to as objective indications of non-obviousness. Some of these indications are:

1.    Commercial success or lack of commercial success of products covered by the patent claims or made by a process covered by the patent claims;

2.    A long-felt need for the invention;

3.    Failed attempts by others to make the invention;

4.    Copying of the invention by others in the field;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by the infringer or others in the field;

7.    The taking of licenses under the patents by others;

8.    Expressions of surprise by experts and those skilled in the art at the making of the invention; and

9.    The patentee proceeded contrary to accepted wisdom of prior art.

These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

**AUTHORITY:**
Modified ABA Model Patent Jury Instructions, § 10.9.4 (found at the District of Delaware's website at http://www.ded.uscourts.gov/MPTforms-1.htm); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Circ. 2000); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

STIPULATED INSTRUCTION PENDING FOOTNOTED OBJECTIONS
JURY INSTRUCTION NO. 32
WRITTEN DESCRIPTION

A patent must contain a written description of the process claimed in the patent. In order to satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used. The written description requirement is satisfied by the patentee's disclosure of such descriptive means as words, structures, figures, diagrams, or formulas that fully set forth the claimed invention. At a minimum, this written description must clearly demonstrate to persons of ordinary skill in the art that the inventor actually invented what is claimed in the patent claims.

Secure Computing contends that one or more of asserted claims of the '194 Patent, the '780 Patent, and the '822 Patent are invalid for lack of an adequate written description of the claimed invention. If you find that Secure Computing has proved by clear and convincing evidence that one or more of asserted claims of the '194 Patent, the '780 Patent, and the '822 Patent does not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.

**AUTHORITY:**
Modified ABA Model Jury Instructions: Patent Litigation § 9.1.1 (2005); *Pandrol USA, LP v. Airboss Ry. Prod., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005); *Crown Operations Intern., LTD. v. Solutia, Inc.*, 289 F.3d 1367, 1376 (Fed. Cir. 2002) (quoting *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562-63 (Fed. Cir. 1991).

**FINJAN'S PROVISIONAL PROPOSED**
**JURY INSTRUCTION NO. 33**
**ENABLEMENT**

The written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the invention. This is referred to as the enablement requirement. If the patent does not enable a skilled person to practice the process of a patent claim, then the claim is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention. In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. Secure Computing bears the burden of establishing lack of enablement by clear and convincing evidence.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement. A written description is enabling so long as undue experimentation is not needed to make or use the invention. A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

Secure Computing contends that one or more of asserted claims of the '194 Patent, the '780 Patent, and the '822 Patent are invalid for lack of enablement. The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement. Factors that you may consider in determining whether the written description would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

104

**AUTHORITY:**
Modified AIPLA Model Patent Jury Instructions; Modified ABA Model Jury Instructions: Patent
Litigation § 9.1.2; *Andersen Corp. v. Fiber Composites L.L.C.*, 474 F.3d 1361 (Fed. Cir. 2007);
*Rasmussen v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1323 (Fed. Cir. 2005); *In re Cortright*,
165 F.3d 1353, 1356 (Fed. Cir. 1999); *Nat'l Presto Indus. Inc. v. West Bend Co.*, 76 F.3d 1185,
1189 (Fed. Cir. 1996); *Envirotech v. Al George, Inc.*, 730 F.3d 753, 762 (Fed. Cir. 1984).

**SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
JURY INSTRUCTION NO. 33.**

Secure Computing objects to Finjan's provisional instruction to the extent Finjan is attempting to remove the '194 and '780 patents from this instruction (See Finjan's objection to Secure Computing's Enablement instruction). Secure Computing's has appropriately challenged the validity of the '194 and '780 patents on enablement grounds. Therefore, it is appropriate to include them in this instruction. Further, Finjan's provisional instruction is not a correct statement of the law – it does not include a correct statement of the law regarding plausibility that the invention will work for its intended purpose.

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 33.

The written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the invention. This is referred to as the enablement requirement. If the patent does not enable a skilled person to practice the process of a patent claim, then the claim is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention. In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. Secure Computing bears the burden of establishing lack of enablement by clear and convincing evidence.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement. A written description is enabling so long as undue experimentation is not needed to make or use the invention. A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field. Factors that you may consider in determining whether the written description would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

A written description cannot meet the enablement requirement when it does not disclose any data supporting the statements in the patent claims. A written description that merely shows that it is plausible that the invention will work for its intended purpose does not satisfy the enablement requirement.

Secure Computing contends that one or more of asserted claims of the '194 Patent, the '780 Patent, and the '822 Patent are invalid for lack of enablement. If you find that Secure Computing has proved by clear and convincing evidence that the written description of one or more of asserted claims of the '194 patent, the '780 patent, and the '822 patent does not enable a skilled person to make and use a process covered by any of these claims without undue experimentation, then you must find that the claim is invalid.

**AUTHORITY:**
Modified AIPLA Model Patent Jury Instructions; Modified ABA Model Jury Instructions: Patent Litigation § 9.1.2; *Andersen Corp. v. Fiber Composites L.L.C.*, 474 F.3d 1361 (Fed. Cir. 2007); *Rasmussen v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1323 (Fed. Cir. 2005); *In re Cortright*, 165 F.3d 1353, 1356 (Fed. Cir. 1999); *Nat'l Presto Indus. Inc. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996); *Envirotech v. Al George, Inc.*, 730 F.3d 753, 762 (Fed. Cir. 1984).

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 33.**

Finjan objects to Secure Computing's instruction as it addresses the '194 and '780 patent, which were never challenged on enablement grounds. Additionally, their instruction is an improper and argumentative statement of the law, whereby it is requiring that there must be data disclosed in a patent to support the patent claims. There is no legal requirement that data must be disclosed for enablement purposes.

FINJAN'S PROPOSED
JURY INSTRUCTION NO. 34
INDEFINITENESS

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of invention what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

Claims are not necessarily indefinite when they include as an element a trademarked product as a limitation. Use of a trademarked product in a claim is sufficiently definite if the limitation is something that is understood by one of skill in the art. If the trademarked product as a limitation in the claim is not understood by one of skill in the art, then you must find that those claims are indefinite.

**AUTHORITY:**
Modified ABA Model Jury Instructions: Patent Litigation § 9.1.4; Manual of Patent Examining Procedure (MPEP) § 2173.05(u) (2006); *Ex parte Simpson*, 218 USPQ 1020 (Bd. App. 1982); 35 U.S.C. § 112, paragraphs 2 and 6; *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007); Polyvision Corp. v. Smart Techs. Whittaker Corp., 2007 WL 1596425 at *17 (W.D.Mich. 2007); Technibilt Div. v. UNR Indus., Inc., 911 F.2d 709, 712 (Fed.Cir.1990); Ex Parte William Z. Goldstein, 2005 WL 4773193, at *2 (Bd. Pat. App. June 7, 2005); Ex Parte Jerry Kitten, 1999 WL 33134953, at *2 (Bd. Pat. App. Sept. 16, 1999); MPEP § 2173.05.

**SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
JURY INSTRUCTION NO. 34**

Secure Computing objects to Finjan's proposed instruction because it does not provide the correct law regarding indefiniteness involving trademarked terms that serve as claim limitation. See Secure Computing's proposed instruction below and Patent Litigation § 9.1.4; Manual of Patent Examining Procedure (MPEP) § 2173.05(u) (2006); *Ex parte Simpson*, 218 USPQ 1020 (Bd. App. 1982). Further, Finjan's proposed instruction does not provide any instruction regarding Secure Computing's claim that claims 9, 12, 13, and 28 of the '822 Patent are invalid because they are drafted in "means-plus-function" format but they not recite sufficient structure for the corresponding function within the specification. See Secure Computing's proposed instruction below.

**SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 34.**

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. A person of ordinary skill is a person of average education and training in the field. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of invention what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

A patent claim is indefinite if a trademark serves as a claim limitation. If the trademark is used in a claim as a limitation to identify or describe a particular material or product, the claim is invalid for indefiniteness.

If a patent claim is written in the "mean plus function" format, which I explained to you earlier, and there is no structure in the specification corresponding to the means plus function limitation in the claim, the claim is invalid for indefiniteness.

Secure Computing contends that claims 8-11 of the '194 Patent are invalid because the language of the claims is indefinite because they improperly include trademarked products as limitations. If you find that Secure Computing has proved by clear and convincing evidence that Claims 8-11 of the '194 Patent are indefinite because they improperly include trademarked products as limitations, you must then find that those claims are invalid.

Secure Computing contends that Claims 12 and 13 of the '822 Patent are invalid because they are drafted in "means-plus-function" format but they are indefinite because they do not recite sufficient structure for the corresponding function within the specification. Specifically,

Secure Computing contends that, in Claim 9 of the '822 Patent, the phrases "content inspection engine," "packaging engine," and "inspection controller" do not have a corresponding structure recited in the specification; in Claim 12 of the '822 Patent, the phrases "linking engine," "transfer engine," and "MPC generator," do not have a corresponding structure recited in the specificationand in Claim 13 of the '822 Patent, the phrase "policy generator" does not have a corresponding structure recited in the specification; and in Claim 28 of the '822 Patent, the phrase "mobile codes means" does not have a corresponding structure recited in the specification. If you find that Secure Computing has proved by clear and convincing evidence that Claims 12 and13of the '822 Patent are indefinite because they are drafted in "means-plus-function" format but they do not recite sufficient structure for the corresponding function within the specification, you must then find that those claims are invalid

**AUTHORITY:**
Modified ABA Model Jury Instructions: Patent Litigation § 9.1.4; Manual of Patent Examining Procedure (MPEP) § 2173.05(u) (2006); *Ex parte Simpson*, 218 USPQ 1020 (Bd. App. 1982); 35 U.S.C. § 112, paragraphs 2 and 6; *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007).

113

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 34.**

Finjan objects to this jury instruction because it does not reflect the controlling case law or the MPEP. The controlling case law provides that "[a]s a general matter, it is well-established that the determination whether a claim is invalid as indefinite 'depends on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the specification.'" Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374 (Fed. Cir. 1999). Thus, a trademarked product is sufficiently definite if the trademark is understood by one of skill in the art. Polyvision Corp. v. Smart Techs. Whittaker Corp., 2007 WL 1596425 at *17 (W.D.Mich. 2007); Technibilt Div. v. UNR Indus., Inc., 911 F.2d 709, 712 (Fed.Cir.1990); Ex Parte William Z. Goldstein, 2005 WL 4773193, at *2 (Bd. Pat. App. June 7, 2005); Ex Parte Jerry Kitten, 1999 WL 33134953, at *2 (Bd. Pat. App. Sept. 16, 1999). In any case, a trademarked product is not indefinite per se. MPEP § 2173.05.

Thus, this instruction would case confusion and lead to error because it implies that if a trademark is a claim limitation, it is per se improper. In addition, the instruction does not have any discussion that if a trademark is present in a claim element and is understood by one of skill in the art, then the claim element is not indefinite.

Furthermore, Finjan objects to this instruction as it is improper for a jury to decide whether the disputed terms are in fact means-plus-function terms. The Federal Circuit has held that the Court must determine whether §112 applies to disputed terms. Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 1361 (Fed. Cir. 2000). In making this determination, when a phrase does not refer to the word "means," a presumption existing that the limitations inherent to §112 is inapplicable. See Phillips, 415 F.3d at 1311 ("we have held that the absence of that term creates a rebuttable presumption that section 112, paragraph 6, does not apply."); see also LG Electronics, Inc. v. Bizcom Electronics, Inc., 453 F.3d 1364, 1372 (Fed. Cir. 2006) ("[A] claim term that does not use 'means' will trigger the rebuttable presumption that §112, ¶ 6 does not apply.") This presumption is strong and can be overcome only where the claim phrase is

114

functional, does not have a "reasonably well understood meaning in the art," and does not recite sufficient structure for performing the function. *See* <u>Linear Tech. Corp. v. Impala Linear Corp.</u>, 379 F.3d 1311, 1320 (Fed. Cir. 2004). Thus, Secure Computing is attempting to get an advisory opinion from the jury regarding whether a claim limitation should be considered a means-plus-function element, which is not proper subject matter for the jury to decide how to interpret a claim element.

**FINJAN'S PROPOSED**
**JURY INSTRUCTION NO. 40**
**DAMAGES – GENERALLY**

I have now instructed you as to the law governing patent infringement. If you find that Webwasher or CyberGuard TSP, infringes any of the claims of Finjan's Patents, and that these claims are not invalid, you must determine the amount of damages, if any, to be awarded to Finjan for the infringement. If you find that Finjan's Vital Security NG appliances, or Vital Security™ for Documents (aka Finjan Mirage) products infringe any of the claims of Secure Computing's Patents, and that these claims are not invalid, you must determine the amount of damages, if any, to be awarded to Secure Computing for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations. The amount of those damages must be adequate to compensate the patentee for the infringement. Your damage award should put the patentee in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty. You must consider the amount of injury suffered by the patentee without regard to the accused infringer's gain or losses from the infringement. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

The patentee has the burden of proving each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Finjan or Secure Computing.

116

**AUTHORITY:**

35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.,* 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.,* 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987).

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

### SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED
### JURY INSTRUCTION NO. 41

Secure Computing objects to Finjan's proposed instruction because it does not provide the jury with sufficient specific guidance regarding Finjan's infringement claims against Secure Computing's accused products. Specifically, it does not explain that Finjan's has specifically accused Secure Computing's "proactive scanning functionality" of infringement. Secure Computing's proposed instruction, below, correctly identifies the functionality at issue. Identifying the functionality will provide clarity and consistency – at trial, as revealed by Finjan's experts, Finjan will attempt to prove infringement by Secure Computing's "proactive scanning functionality." Therefore, the jury should be instructed appropriately regarding Finjan's claims so the jury can appropriately address the alleged damages. *See* Secure Computing's Proposed Jury Instruction – Infringement – Functionalities; *see also Southwest Software, Inc. v. Harlequin, Inc.*, 226 F.3d 1280, 1291 (Fed. Cir. 2000); *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 506-07 (D. Del. 2003)(Sleet., J.).

Further, Secure Computing objects to Finjan's proposed provisional instruction because it appears to limit Secure Computing's infringement claims relating to the '361 patent to Finjan's Vital Security NG appliances. Secure Computing's infringement claims relating to the '361 patent are against all of Finjan's Vital Security NG products and against Finjan's Internet 1Box. *See* Joint Proposed Final Pretrial Order, Schedule B, Stipulation of Contested Issues of Fact and/or Law, ¶¶ 24, 26. Secure Computing proposed instruction, below, more accurately describes Secure Computing's claims.

118

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 41.

I have now instructed you as to the law governing patent infringement. If you find that Webwasher or CyberGuard TSP, and specifically the alleged "proactive scanning functionality," infringes any of the claims of Finjan's Patents, and that these claims are not invalid, you must determine the amount of damages, if any, to be awarded to Finjan for the infringement by the alleged "proactive scanning functionality." If you find that Finjan's Vital Security NG products, Vital Security Internet 1Box™, or Vital Security™ for Documents (aka Finjan Mirage) products infringe any of the claims of Secure Computing's Patents, and that these claims are not invalid, you must determine the amount of damages, if any, to be awarded to Secure Computing for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations. The amount of those damages must be adequate to compensate Finjan and Secure Computing for the infringement. Your damage award should put Finjan and Secure Computing in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty. You must consider the amount of injury suffered by Finjan and Secure Computing without regard to Secure Computing's and Finjan's gain or losses from the infringement. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

Finjan has the burden of proving each element of its damages by a preponderance of the evidence, and Secure Computing has the burden of proving each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Finjan or Secure Computing.

119

**AUTHORITY:**

35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.,* 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.,* 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987).

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

**FINJAN'S OBJECTION TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 41.**

Finjan objects to Secure Computing's proposed instruction because it is attempting to include a requirement in the instruction that Finjan's patents include a specific feature, as part of the damages instruction. Below is an example of the language at issue:

> "If you find that Webwasher or CyberGuard TSP, and specifically the alleged *"proactive scanning functionality,"* infringes any of the claims of Finjan's Patents, and that these claims are not invalid and not unenforceable, you must determine the amount of damages, if any, to be awarded to Finjan for the infringement by the alleged *"proactive scanning functionality."* (emphasis added).

As can be seen from this section, Secure Computing is attempting to include its argument in the instruction and inappropriately characterize an alleged specific feature of Finjan's Patents, which is unnecessary and improper. This is supposed to be an instruction of the law, not an instruction on Secure Computing's argument. Doing so will only confuse and mislead the jury. Federal Rules of Evidence 402 and 403. Additionally, Finjan's asserted damages claims are not limited to just the "proactive scanning functionality."

Additionally, Secure Computing does not have an expert witness who disclosed an opinion of infringement or damages regarding the Internet 1 Box, such that this product should not be referred to in this instruction. Secure Computing's expert witnesses referred to Finjan's Vital Security NG products as Vital Security NG appliances.

**STIPULATED**
**JURY INSTRUCTION NO. 41**
**DATE DAMAGES BEGIN**

The date that Finjan first gave notice to Secure Computing of its claim of patent infringement is the date at which patent damages begin to be calculated for Finjan, and the date Secure Computing gave notice to Finjan of its claim of patent infringement is the date at which patent damages begin to be calculated for Secure Computing.

It is the patent owner's burden to prove by the preponderance of the evidence standard that it gave notice. A patent owner can give notice in two ways.

The first way is to give notice to the public in general. The patent owner can do this by placing the word "patent" or the abbreviation "PAT." with the number of the patent on substantially all the products it sold that included the patented invention. The patent owner's licensees who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number. This type of notice is effective from the date the patent owner and its licensees began to mark substantially all of the products that use the patented invention with the patent number. If the patent owner and its licensees did not mark substantially all of the products that use the patented invention with the patent number, then the patent owner did not provide notice in this way.

A second way the patent owner can provide notice of its patent is to tell accused infringer that they are infringing the patent and to identify the accused infringer's product that was infringing. This type of notice is effective from the time it is given. Filing a lawsuit against an accused infringer constitutes notice.

As I said, the patent owner may recover damages only from the time it gave notice of its patent, either by the marking of products or by telling the accused infringer of its infringement. In this case, if you find that patent owner did not do either of these before beginning this lawsuit, then patent owner can only recover damages for infringement that occurred after date it sued the accused infringer.

**AUTHORITY:**

122

Modified ABA Model Jury Instructions: Patent Litigation § 11.3 (2005); 35 U.S.C. § 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062-1066 (Fed. Cir. 1987).

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

**STIPULATED**
**JURY INSTRUCTION NO. 42**
**REASONABLE ROYALTY**

The patent law specifically provides that the amount of damages that Secure Computing must pay Finjan for infringing Finjan's Patents and the amount of damages that Finjan must pay Secure Computing for infringing Secure Computing's Patents, may not be less than a reasonable royalty. A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.

**AUTHORITY:**
35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989).

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

**STIPULATED**
**JURY INSTRUCTION NO. 43**
**REASONABLE ROYALTY – DEFINITION**

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

**AUTHORITY:**
*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified and aff'd sub nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

125

**STIPULATED**
**JURY INSTRUCTION NO. 44**
**REASONABLE ROYALTY – RELEVANT FACTORS**

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.    Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.    The rates paid by the licensee to license other patents comparable to the patents in suit.

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.    The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.    The duration of the patent and the term of the license.

8.    The established profitability of the product made under the patent, its commercial success, and its current popularity.

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

126

11.    The extent to which the infringer has made use of the invention; and any evidence that shows the value of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.    The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.    The opinion testimony of qualified experts.

15.    The amount that a licensor (such as the patent owner) and a licensee (such as the accused infringer) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## AUTHORITY:

Tec Air, Inc. v. Denso Mfg. Mich., Inc., 192 F.3d 1353, 1362 (Fed. Cir. 1999); Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1580 (Fed. Cir. 1989); TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 898-900 (Fed. Cir. 1986); Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1079 (Fed. Cir. 1983); Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970), modified and aff'd sub nom., Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc., 446 F.2d 295 (2d Cir. 1971).

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 45
## DESIGN AROUND

Another factor you may consider is whether there were any non-infringing alternatives that would have been available to Secure Computing, such as designing around the patents.

It is not necessary that the alternative actually was implemented or used. For example, a design around alternative could be considered even if no design around was actually implemented by the alleged infringer. However, to qualify as a noninfringing alternative that could be considered in a hypothetical negotiation, the accused infringer would have to show two things.

First, the accused infringer has the burden to show that a non-infringing alternative could have been available during the time period of the alleged infringement, at the time of the hypothetical negotiation. Second, the noninfringing alternative must be shown to offer the same competitive advantages of the products covered by the patents in suit. In other words, the alternative or design around must have attributes of the product actually sold that were important to customers. Important factors in deciding whether a product is an acceptable alternative are consumers' intended use for the product, similarity of the functional attributes of the product to alleged competing products, economic market data, and price.

If you find that Secure Computing had the option of developing and implementing an acceptable non-infringing alternative or design around, then you may consider the additional production and other costs that would have been incurred in developing, manufacturing, and advertising the non-infringing alternative as representing the maximum amount that Secure Computing would have been willing to pay for a license to the patents in suit.

**AUTHORITY:**
*Grain Processing Corp. v. American-Maize Prod.*, 185 F.3d 1341 (Fed. Cir. 1999); *In re Ecast, Inc.*, 96 Fed. Appx. 710, 711 (Fed. Cir. 2004); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

## FINJAN'S OBJECTIONS TO SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 46.

Finjan objects to this instruction in its entirety as an improper statement of the law with respect to damages in this case and requests that it not be given to the jury. Secure Computing's proposed instruction sets forth design around as a "noninfringing alternative that could be considered in a hypothetical negotiation," presumably for the purpose of damages calculation. Secure Computing's reliance on its single citation to *Grain Processing Corp. v. American-Maize Prod.*, however, is misplaced. While the Court in *Grain Processing* emphasized the existence of an acceptable substitute, the relevant dispute was based on lost profits, not a reasonable royalty. *See* 185 F.3d 1341, 1349-1351; *see also* <u>Micro-Chemical, Inc. v. Lextron, Inc.</u>, 317 F.3d 1387, 1393 (Fed. Cir. 2003) (distinguishing <u>Grain Processing</u> as applying to lost profits and not reasonable royalty damages). In fact, the court there discussed acceptable substitutes only within the context of a "but for" market associated with lost profits calculation. *Id.* To the extent there is any consideration of a non-infringing alternative, it cannot be a hypothetical one, but must be an actual competitive noninfringing alternative. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996). Also, Secure Computing's first paragraph is misleading and prejudicial to Finjan as evidence of a design-around actually "weighs against a finding of availability." <u>Micro Chemical, Inc. v. Lextron, Inc.</u>, 381 F.3d 1119, 1123 (Fed. Cir. 2003).

To the extent any jury instruction on the subject is read to the jury, Finjan reserves the right to provide a counterproposal.

**STIPULATED**
**JURY INSTRUCTION NO. 46**
**REASONABLE ROYALTY – TIMING**

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by the alleged infringer after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time. You may only consider this information, however, if it was foreseeable at the time that the infringement began.

**AUTHORITY:**
*Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446, 1448 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.*, 862 F.2d 1564, 1571-72 (Fed. Cir. 1988).

Modified AIPLA's Model Patent Jury Instructions
2005, American Intellectual Property Law Association
Version 1.1, February 2006

130

FINJAN'S PROVISIONAL PROPOSED
JURY INSTRUCTION NO. 46.1
PATENT EXHAUSTION

[Finjan does not believe this instruction is necessary. *See* Finjan's Objection.]

The patent exhaustion doctrine is applied when a patentee has unconditionally sold his patented invention, such that it has exhausted its right to control further sale and use of that article by enforcing the patent under which it was first sold. The patent exhaustion principle applies only where the sale or license of the patented invention is absolute and without any conditions. Conditions and restrictions on sale or license can take any form that is reasonably within the reward which the patentee by the grant of the patent is entitled to secure. For example, a patentee may restrict the license of a patented product for specified use. In addition, the patentee can impose more onerous conditions on someone who purchases the patented device from a licensee than on the licensee. Where the sale is conditional, it is more reasonable to infer that the parties negotiated for a price that reflects only the value of the use right conferred by the patentee.

**AUTHORITY:**
*Jazz Photo Corporation v. ITC*, 264 F.3d 1094 (Fed.Cir. 2001); *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419 (Fed.Cir. 1997); *Monsanto Co. v. Scruggs*, 249 F.Supp.2d 746 (N.D. Miss. 2001); *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed.Cir. 1992); *General Talking Pictures Corp. v. Western Elec. Co.*, 305 U.S. 124 (1938); *LG Electronics, Inc. v. Asustek Computer, Inc.*, 248 F.Supp.2d 912 (N.D. Cal. 2003).

**SECURE COMPUTING'S OBJECTIONS TO FINJAN'S PROPOSED
JURY INSTRUCTION NO. 46.1.**

Secure Computing objects to Finjan's proposed instruction because it is contrary to law, specifically as it relates to the issue of conditions and restrictions on the sale of the patented good. Once a patentee sells and/or licenses his article, his monopoly in that article is exhausted and he cannot thereafter control the use or disposition of the article.    *See LG Electronics v. BizCom*, 453 F.3d 1370 (Fed. Cir. 2006), *cert. granted*, 128 S. Ct. 28 (2007); *United States v. Univis Lens Co.*, 316 U.S. 241 (1942).

132

# SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 46.1

Secure Computing has asserted the defense of patent exhaustion against Finjan's patent infringement claims. Patent exhaustion means when a patent owner licenses a patent, this exhausts the patent owner's right to control further sale of a patented article sold under that patent. In this case, Finjan licensed its patents to Microsoft. If you find that Secure Computing sold Webwasher or Cyberguard TSP to customers who have used Webwasher or Cyberguard TSP in combination with any Microsoft product, those customers have a license from Finjan, and you should exclude those sales from any calculation of damages based on the doctrine of patent exhaustion.

**AUTHORITY:**
*Anton/Bauer, Inc. v. PAGE, Ltd.*, 329 F.3d 1342 (Fed. Cir. 2003); *United States v. Masonite Corp.*, 316 U.S. 265, 278 (1942); *Intel Corp. v. ULSI System Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993); *Jazz Photo Corp. v. ITC*, 264 F.3d 1094, 1105 (Fed. Cir. 2001); *LG Electronics v. BizCom*, 453 F.3d 1370 (Fed. Cir. 2006), <u>*cert. granted*</u>, 128 S. Ct. 28 (2007); *United States v. Univis Lens Co.*, 316 U.S. 241 (1942). .

133

**FINJAN'S OBJECTIONS TO SECURE COMPUTING'S PROPOSED
JURY INSTRUCTION NO. 46.1.**

Finjan objects to Secure Computing's instruction as unnecessary and not a proper statement of the law. Patent exhaustion occurs when someone is seeking to obtain licensing fees for the same product that was licensed and sold. Under Secure Computing's theory of the case, if you buy a copy of Windows, you would have somehow fall under the doctrine of patent exhaustion for any technology that has ever been licensed to Microsoft. There is untold numbers of patents and intellectual property that Microsoft has a license to and such a result is neither equitable, nor a proper interpretation of the law.

Finjan further objects to Secure Computing's proposed instruction in its entirety as it is an inappropriate subject matter for the jury, misleading, and presents an incomplete statement of the law. This instruction states that "[p]atent exhaustion means when a patent owner licenses a patent" and makes the unqualified statement that "[i]n this case, Finjan licensed its patents to Microsoft." Nowhere, however, does the instruction state that the defense does not affect a patentee's rights where the patentee has placed "express restrictions" on the use of a product. Anton/Bauer, Inc. v. PAG, Ltd., 329 F.3d 1343, 1351 (Fed. Cir. 2003). Even more prejudicial is the statement, without limitation, that the jury must exclude sales derived from "Webwasher or Cyberguard TSP products in combination with *any* Microsoft product." (Emphasis added). This proposal does not bring to attention the fact that the patentee could "impose more onerous conditions on someone who purchases the patented device from a licensee than on the licensee." LG Electronics, Inc. v. Asustek Computer, Inc., 248 F.Supp.2d 912, 916 (N.D. Cal. 2003). As such, the proposed instruction is misleading, highly prejudicial, and biased in Secure Computing's favor.

Finally, whether a license agreement is unrestricted may depend on whether the agreement was "'designed" to contract out of the patent exhaustion doctrine," a question of law for the Court where the matter "concerns the construction of the relevant provisions of the contract." Minebea Co., Ltd. v. Papst, 2004 WL 3507908, *10 (D.D.C. 2004). There is also a

134

significant risk that this instruction would leave the jury with an impression that the Court somehow endorses or is advocating for Secure Computing's position in this matter.

**FINJAN'S PROPOSED**
**JURY INSTRUCTION NO. 47**
**GOVERNMENT SALES**

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Claims Court for the recovery of his reasonable and entire compensation for such use and manufacture. For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

This defense requires two elements to be proven by Secure Computing. First, Secure Computing must prove that the use of the infringing product must be "for the government." In other words, there must be a clear government directive with some specific benefit accruing to the government.

Second, the use of the infringing product must be "with authorization or consent of the Government." In other words, Secure Computing must show explicit acts or extrinsic evidence sufficient to prove the government's intention to accept liability for a specific act of infringement.

**AUTHORITY:**

136

**28 U.S.C. § 1498; Sevenson Envtl. Serv. v. Shaw Envtl., Inc., 477 F.3d 1361, 1365 (Fed.Cir.2007); TVI Energy Corp. v. Blane, 806 F.2d 1057 (Fed.Cir.1986), Larson v. United States, 26 Cl.Ct. 365, 369-70 (Cl.Ct.1992); Carrier Corporation v. United States, 534 F.2d 244 (Ct. Cl. 1976)SECURE COMPUTING'S OBJECTION TO FINJAN'S PROPOSED JURY INSTRUCTION NO. 48.**

Secure Computing objects to Finjan's proposed instruction because it does not provide a plain and accurate statement of the law and will confuse the jury. The law is simply that whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States government without license, the patent owner's only remedy shall be an action against the United States. *See* 28 U.S.C. § 1498(a).  The Congressional intent of section 1498 was "to allow the Government to procure whatever it wished regardless of possible patent infringement." *TVI Energy Corp. v. Blane Enterprises, Inc.*, 806 F.2d 1057, 1060 (Fed. Cir. 1986). "The coverage of § 1498 should be broad so as not to limit the Government's freedom in procurement by considerations of private patent infringement." *Id.*

Finjan's proposed instruction provides inaccurate statements of law regarding the alleged requirement that the use or manufacture of the infringing product must be "for the government" and that the use of the infringing product must be "with authorization or consent of the Government."  Finjan is attempting to confuse the straightforward applications of section 1498(a). The law is clear - when a company sells an infringing product to the U.S. government, those sales are per se immune from patent infringement claims. *See Bereslavsky v. Esso Standard Oil Co.*, 175 F.2d 148 (4th Cir. 1949); *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1282-83 (Fed. Cir. 1988)("[i]n short, use or manufacture for the United States is immune from suit for patent infringement in the district courts against the user or manufacturer."); *see also* Chisum on Patents, Vol. 5, § 16.06 [3] (2007). The mere acceptance by the government of an accused product manufactured by a contractor or subcontractor brings the sale within section 1498. *Bereslavsky,* 175 F.2d at 151. Authorization and consent is required only when the use or manufacture of the patented invention is <u>by</u> contractor, subcontractor, or any person, firm or corporation for the Government." *See* § 1498(a), second paragraph. In other words, authorization and consent is required for parties that use an invention

137

to provide services to the U.S. government or are subcontractors or material providers to vendors of the U.S. government (ie., they do not sell to the U.S. government). Finally, even if the Court accepts Finjan's position that the jury should be instructed regarding "for the government" and "authorization and consent," Finjan's proposed language is too restrictive under applicable case law. *See e.g., Hughes Aircraft Co. v. U.S.,* 29 Fed. Cl. 197 (1993)(authorization can be implied); *Croll-Reynolds Co. v. Perini,* 399 F.2d 913 (5th Cir. 1968).

## SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 48.

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States government without license, the patent owner's only remedy shall be an action against the United States. Therefore, if you find that Secure Computing infringes, sales of an infringing product by Secure Computing to the United States government should not be included in any damages calculation you perform.

**AUTHORITY:**
28 U.S.C. § 1498; Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1381 (Fed. Cir. 2002); Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 343 (1928); W.L. Gore & Assoc., Inc. v. Garlock, Inc., 842 F.2d 1275 (Fed. Cir. 1988); Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell, 399 F.2d 913 (5th Cir. 1968); Bereslavsky v. Esso Standard Oil Co., 175 F.2d 148 (4th Cir. 1949); Trojan, Inc. v. Shat-R-Shield, Inc., 885 F.2d 854, 856-57 (Fed. Cir. 1989); Chisum on Patents, Vol. 5, § 16.06 [3] (2007).

## FINJAN'S OBJECTIONS TO SECURE COMPUTING'S PROPOSED
## JURY INSTRUCTION NO. 48.

Finjan objects to this instruction in its entirety and requests that it not be given to the jury. Whether 28 U.S.C. § 1498 is applicable in this case is not a question of fact for the jury but rather a question of law subject to the Court's statutory interpretation. In addition, it is inappropriate for the Court to instruct the jury on any contentions of the parties – the jury is to be instructed on the law to apply to the facts. Such an instruction takes the fact finding function away from the jury. Secure Computing's proposed language invites the jury to conclude that facts are not in dispute, when in fact they are in dispute. For instance, Secure Computing's propose language "if you find that Secure Computing infringes, sales of an infringing product by Secure Computing to the United States government should not be include in any damages calculation you perform" presupposes that Secure Computing made sales to the United States government that falls within the provisions of 28 U.S.C. § 1498. Finjan further objects to Secure Computing's proposed instruction as misleading, prejudicial, and biased in favor of Secure Computing.

Further, Finjan objects to this instruction because it does not provide the jury with a proper description of 28 U.S.C. § 1498. Section 1498 requires the accused infringer to demonstrate that its sales to the government of the accused product meet specific requirements established by the statute in order for those sales to be disregarded from a damage award in federal District Court. The accused infringer must demonstrate that the government sales were of a product used or manufactured *for the government*. In order to obtain damages from the United States government under Section 1498, the patent owner need only demonstrate that the accused product is used or manufactured by or for the government. In order for Finjan to be barred from seeking compensation for the infringing manufacture of the accused products, Secure Computing must also demonstrate that its manufacture of the accused products was "by a contractor. . . with the *authorization and consent of the* Government.

140

## STIPULATED
## JURY INSTRUCTION NO. 49
## DELIBERATION AND VERDICT

That concludes that part of my instructions explaining the law that governs your deliberations over the patent issues in this case. Now let me finish up by explaining some things about how to conduct your deliberations in the jury room.

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts, not me. Your sole interest is to seek the truth from the evidence in that case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the

141

testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented, and as I have already said, your verdict in this case must be unanimous.

**AUTHORITY:**
Modified Uniform Jury Instructions in the United States District Court for the District of Delaware
Sample: Miscellaneous Jury Instructions (GMS)
Rev: 1/18/06
850373