# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

FINJAN SOFTWARE, LTD., an Israel
corporation,

    Plaintiff,

    v.

SECURE COMPUTING CORPORATION,
a Delaware corporation, CYBERGUARD,
CORPORATION, a Delaware corporation,
WEBWASHER AG, a German corporation and
DOES 1 THROUGH 100,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 06-369 GMS

---

**PLAINTIFF FINJAN SOFTWARE, LTD.'S OPENING BRIEF
IN SUPPORT OF ITS POST-TRIAL MOTION FOR INVALIDITY
OF U.S. PATENT NO. 7,185,361 PURSUANT TO FED. R. CIV.P. 50(b)**

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
1000 Bridge Parkway
Suite 1000
Redwood City, CA 94065
(650) 590-0700

Dated: April 25, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff
Finjan Software, Ltd.

# TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.  SUMMARY OF ARGUMENT ...................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................. 2

IV. ARGUMENT .................................................................................................................. 2

    A.   THE APPLICABLE LEGAL STANDARD UNDER RULE 50(b) SUPPORTS
        FINJAN'S MOTION FOR JUDGMENT AS A MATTER OF LAW .......................... 2

    B.   THE EVIDENCE PRESENTED BY FINJAN AT TRIAL CONCLUSIVELY
        PROVES THE ASSSERTED CLAIMS OF THE '361 PATENT ARE
        INVALID BY ANTICIPATION. ................................................................................. 3

        1.   Finjan Conclusively Demonstrated The '361 Patent Was Anticipated By The
            Check Point Reference ....................................................................................... 4

            a.   Independent Claim 1 Of The '361 Patent Was Anticipated by the
                Check Point Reference. .......................................................................... 5

            b.   Dependent Claims 2-5 and 7 Of The '361 Patent Were Anticipated by
                the Check Point Reference. .................................................................... 7

            c.   Independent Claim 8 Of The '361 Patent Was Anticipated by the
                Check Point Reference. .......................................................................... 9

            d.   Dependent Claims 9-12 and 14 Of The '361 Patent Were Anticipated
                by the Check Point Reference. ............................................................. 12

            e.   Independent Claim 15 Of The '361 Patent Was Anticipated by the
                Check Point Reference. ........................................................................ 13

        2.   Defendants Presented No Rebuttal Whatsoever To Finjan's
            Anticipation Defense. ..................................................................................... 15

        3.   There are no Genuine Issues about the Content of the Prior Art ........................... 16

    C.   THE EVIDENCE PRESENTED BY FINJAN AT TRIAL CONCLUSIVELY
        PROVES THE ASSERTED CLAIMS OF THE '361 PATENT ARE INVALID
        FOR OBVIOUSNESS. .............................................................................................. 16

1.  The Evidence Finjan Presented at Trial Conclusively Demonstrated the Asserted Claims of the '361 Patent were Rendered Obvious by the Check Point Reference. ................................................................................................................... 17

2.  Defendants Presented No Rebuttal To Finjan's Obviousness Defense. .................. 18

V.  CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Colorado v. New Mexico,*
467 U.S. 310 (1984)................................................................................................3

*Door-Master Corp. v. Yorktowne, Inc.,*
256 F.3d 1308 (Fed. Cir. 2001)..............................................................................2

*Graham v. John Deere Co. of Kansas City,*
383 U.S. 1 (1966)..................................................................................................17

*KSR International Co. v. Teleflex Inc.,*
127 S. Ct. 1727 (2007)..........................................................................................17

*Merck & Co. v. Teva Pharms. USA, Inc.,*
395 F.3d 1364 (Fed. Cir. 2005)............................................................................16

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,*
806 F.2d 1565 (Fed. Cir. 1986)............................................................................16

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.,*
411 F.3d 1332 (Fed. Cir. 2005).......................................................................2, 15

*Reeves v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133 (2000)............................................................................................2, 3

*Robotic Vision Sys., Inc. v. View Eng'g, Inc.,*
189 F.3d 1370 (Fed. Cir. 1999)..............................................................................3

*Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.,*
443 F. Supp. 2d 836 (S.D. Tex. 2006) ...................................................................3

*Verdegaal Bros., Inc. v. Union Oil Co. of California,*
814 F.2d 628 (Fed. Cir. 1987)................................................................................3

## STATUTES

35 U.S.C. § 102................................................................................................................1, 3

35 U.S.C. § 103................................................................................................................2, 16

35 U.S.C. § 282.................................................................................................................3

## RULES

Fed. R. Civ. P. 50(b) ..................................................................................................... 1-3, 16

## I.      NATURE AND STAGE OF PROCEEDINGS

On March 12, 2008, after a seven day trial, the jury reached a unanimous verdict on Plaintiffs Finjan Software, Ltd. and Finjan Software, Inc.'s ("Finjan") claims of patent infringement.  The jury found that defendants Secure Computing Corporation ("Secure Computing"), Cyberguard Corporation ("Cyberguard") and Webwasher AG ("Webwasher") (collectively "Defendants") infringed all of the asserted claims of Finjan's United States Patent Nos. 6,092,194, 6,804,780 and 7,058,822.  In addition, the jury found that Finjan did not infringe claims 1-5, 7-12 and 14-15 of United States Patent No. 7,185,361 ("'361 Patent") (*see* Declaration of Kris Kastens in Support of Finjan Software Ltd.'s Opening Brief in Support of Its Motion for Invalidity of U.S. Patent No. 7,185,361 ("Kastens Decl."), Ex. 1) and claim 37 of United States Patent No. 6,357,010 ("'010 Patent"), the two patents asserted by Defendants against Finjan.  The jury found the asserted claims of the '361 and '010 Patents were not invalid.  The Court entered judgment on March 28, 2008.

## II.      SUMMARY OF ARGUMENT

Finjan seeks judgment as a matter of law under Federal Rule of Civil Procedure 50(b) invalidating the '361 Patent.  The reasons, which are explained in greater detail below, are as follows:

1)      The "Check Point Firewall-1 Architecture and Administration Version 4.0" reference ("Check Point Reference") was shown at trial to anticipate the '361 Patent by clear and convincing evidence under 35 U.S.C. § 102 and invalidates the asserted claims of the '361 Patent as a matter of law.

2)    The Check Point Reference was shown at trial to render the '361 Patent obvious by clear and convincing evidence under 35 U.S.C. § 103 and invalidates the asserted claims of the '361 Patent as a matter of law.

3)    Defendants presented no rebuttal case whatsoever disputing the invalidity of the '361 Patent. In fact, Defendants did not even cross-examine Finjan's expert on his invalidity opinion regarding the '361 Patent and did not mention the '361 Patent in their closing arguments.

### III.    STATEMENT OF FACTS

The relevant facts are set forth in the Argument section below.

### IV.    ARGUMENT

### A.    THE APPLICABLE LEGAL STANDARD UNDER RULE 50(b) SUPPORTS FINJAN'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Under Federal Rule of Civil Procedure 50(b), the Court can set aside a jury verdict and "direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). A court must determine whether the jury had substantial evidence upon which to conclude that the party challenging a patent met its burden of demonstrating invalidity by clear and convincing evidence. *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1335 (Fed. Cir. 2005) (holding JMOL of patent proper when there was substantial evidence showing invalidity of patent by clear and convincing evidence). A court may overturn a jury's finding of validity as a matter of law if reasonable jurors could not have determined that the patent was valid. *See Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001) (citing *Perkins-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (a court should grant a renewed motion for judgment as a matter of law and overturn the jury verdict if there is no legally sufficient basis for a reasonable jury to find for the nonmoving party on an issue). When deciding upon a renewed

2

motion for judgment as a matter of law, the Court "must draw all reasonable inferences in favor of the nonmoving party," but should review all the evidence in the record "taken as a whole." *Reeves*, 530 U.S. at 150 (citation and quotation omitted).

A patent is presumed valid, and a party must overcome this presumption by clear and convincing evidence to prove the patent invalid. *See* 35 U.S.C. § 282; *see also Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999). Clear and convincing evidence exists when the movant places in the mind of "the ultimate fact finder an abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (quotation omitted). However, when a party challenging a patent comes "forward with evidence establishing a *prima facie* case of invalidity, the patentee must produce sufficient rebuttal evidence to prevent the party challenging the patent's validity from meeting its burden of proving invalidity by clear and convincing evidence." *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 443 F. Supp. 2d 836, 845 (S.D. Tex. 2006) (citing *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d. 1306, 1316 (Fed. Cir. 2005)). Here, Defendants did not even attempt to rebut the *prima facie* evidence of invalidity of the '361 Patent.

**B.      THE EVIDENCE PRESENTED BY FINJAN AT TRIAL CONCLUSIVELY PROVES THE ASSSERTED CLAIMS OF THE '361 PATENT ARE INVALID BY ANTICIPATION.**

Pursuant to Federal Rule of Civil Procedure 50(b), Finjan seeks entry of judgment that the Check Point Reference anticipates the asserted claims of the '361 Patent as a matter of law. A claim is anticipated when every element of the claim is found in a single prior art reference. *See* 35 U.S.C. § 102; *see also Verdegaal Bros., Inc. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987) ("[a] claim is anticipated only if each and every element as set forth in

3

the claim is found, either expressly or inherently described, in a single prior art reference")

(citations omitted). At trial, Finjan provided substantial and clear and convincing evidence that

the Check Point Reference discloses all of the elements of the '361 Patent. *See* Kastens Decl.,

Ex. 2 (Trial Transcript ("T.T.") at 1493:19-1513:9). Defendants presented absolutely no rebuttal

case. They did not present a fact or expert witness to rebut the *prima facie* case of invalidity

presented by Finjan's expert. They did not cross-examine Finjan's expert witness *at all* on his

testimony regarding his opinion that the asserted claims were invalid. In light of the substantial

evidence presented by Finjan at trial, discussed below, and Defendants' failure to even challenge

Finjan's invalidity case, there was no legally sufficient basis for the jury to conclude that the

asserted claims of the '361 Patent were not anticipated and therefore invalid.

### 1. Finjan Conclusively Demonstrated The '361 Patent Was Anticipated By The Check Point Reference

At trial, Finjan set forth how every element of the asserted claims of the '361 Patent is

disclosed in the Check Point Reference. Through the direct examination of Dr. Trent Jaeger,

Finjan's expert who opined that the asserted claims of the '361 Patent were invalid, Finjan

presented in detail substantial and conclusive evidence that the Check Point Reference

anticipated the '361 Patent. *See id.* Dr. Jaeger ultimately concluded that the Check Point

Reference disclosed all the elements of the asserted claims of the '361 Patent.

> Q.    So I just want to be clear. Is it your opinion then the Check-Point
> reference disclosed all the elements of the asserted claims of the '361?
> A.    It is my opinion that the Check-Point reference asserts all of the elements
> of this claim, yes.

*See id.* (T.T. at 1513:5-9). In reaching this conclusion, Dr. Jaeger testified that he relied upon the

Court's Claim Construction Order. *Id.* (T.T. at 1461:19-22); D.I. 142.

Dr. Jaeger was the only witness who provided testimony at trial regarding what the Check Point Reference discloses. He testified that the '361 Patent discloses the same type of technology as disclosed in the Check Point Reference. *See id.*, Ex. 2 (T.T. at 1462:6-14; 1495:16-1496:2). Both describe a firewall authorizing outgoing requests from an internal network. *Id.* Dr. Jaeger testified that the '361 Patent describes "a system where you have a firewall and you have a directory server that the firewall uses to help it make its decisions about whether requests from the client computer, in this case individual packets, can be submitted through the firewall to the Internet." *Id.* (T.T. at 1462:6-14). He testified as follows that the Check Point Reference discloses a firewall with the same functionality which:

> ... looks at individual packets, and so this reference describes how this particular firewall works, to authorize, a Check-Point authorizes both outgoing packets. We talked in the patent, the patent talks about outgoing packets. . . . [A]nd the Check-Point firewall has rules which determine, in this case what the rules do is they describe for a particular entity or group of entities what the authentication requirements are for that entity to enter the system.

*Id.* (T.T. at 1495:16-1496:2).

### a.    Independent Claim 1 Of The '361 Patent Was Anticipated by the Check Point Reference.

Dr. Jaeger presented clear and convincing evidence that claim 1 of the '361 Patent was anticipated by the Check Point Reference. The Check Point Reference is "a system for authorizing client access to a network resource." Kastens Decl., Ex. 2 (T.T. at 1496:16-22).

As in claim 1, Check Point Reference discloses "a server having at least one directory that can be accessed using a network protocol, said at least on directory being configured to store information concerning an entity's organization." *See id.*, Ex. 1 ('361 Patent at col. 7, ls. 20-23); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1496:23-1497:4). Dr. Jaeger specifically pointed out where a directory accessed using a network protocol is disclosed in the Check Point Reference, stating that starting on page 135 is a "chapter describing how you can use the Check-Point firewall to

5

leverage the information in a directory server, in this case this LDAP, or lightweight directory access protocol server, this board chart like directory server." *Id.*, Ex. 2 (T.T. at 1497:5-12); Ex. 3 (PTX-188 at 135-54). Dr. Jaeger described another example of where this element is disclosed on page 138 of the Check Point Reference, explaining the process of how a firewall "London" contacts a LDAP server "BigBen" to determine where authentication is granted. *Id.*, Ex. 2 (T.T. at 1497:13-25); Ex. 3 (PTX-188 at 138).

As in claim 1, the Check Point Reference also discloses "a firewall that is configured to intercept network resource requests from a plurality of client users on an internal network, said firewall being operative to authorize a network resource request based upon a comparison of the contents of at least part of one or more entries in said at least one directory to an authorization filter, wherein said authorization filter is generated based on a directory schema that is predefined by said entity." *See id.*, Ex. 1 ('536 Patent at col. 7, ls. 24-31); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1498:5-11). Dr. Jaeger testified that the Check Point Reference discloses on page 32 the intercepting of a network resource request. *Id.*, Ex. 1 (T.T. at 1498:24-1499:3); Ex. 3 (PTX-188 at 32). In this example, a "user who is trying to use this particular service called TELLNET, -- this is for logging into a computer -- is going to be intercepted by the firewall module, which is this entity called London that we took down." *Id.* Next, Dr. Jaeger explained how the Check Point Reference discloses "account units," each of which is an LDAP database and "part of your company, if you will, part of your user base is captured in each of these account unit directories." *Id.*, Ex. 2 (T.T. at 1499:15-18). Dr. Jaeger then proceeded to explain how on page 143 the Check Point Reference discloses steps of using these account units for authorizing a network resource request. *Id.*, Ex. 2 (T.T. at 1499:19-25); Ex. 3 (PTX-188 at 143). Next, Dr. Jaeger described

6

how the comparison of the entries in the directory to an authorization filter is disclosed in the

Check Point Reference. *Id.,* Ex. 2 (T.T. at 1500:5-1501:6). Dr. Jaeger testified that:

> Q.   How does the comparison work in the Check-Point reference?
> …
> A.   So what's going to happen, they use the user name Jim in this example.
>      So what's going to happen is, in the earlier steps, Jim made a network request that was intercepted by the firewall module. So the firewall module had looked in its local database, but it didn't see anything about Jim in its local database.
>      So it will go out to these account units and see if there is an account unit that knows something about Jim. . . . ***If there is an account unit that knows something about Jim, it will return Jim's directory entry from that account unit.***
>      So based on that directory entry, it will then determine what group Jim belongs to. So most of the rules in Check-Point are written in terms of groups. And so they will determine what group Jim belongs to. And then the LDAP entry also contains information about how to authenticate that Jim is really Jim. ***So will use that then to determine whether Jim is going to get access through an authorization code.***

*Id.,* Ex. 2 (T.T. at 1500:5-1501:6) (emphasis added); Ex. 3 (PTX-188 at 143-44). Using "Jim" as

an example, Dr. Jaeger testified at trial how the Check Point Reference discloses this element of

claim 1.

Dr. Jaeger's testimony and opinion regarding the invalidity of claim 1 went unchallenged

at trial. Thus, the Check Point Reference and Dr. Jaeger's testimony constitute substantial and

clear and convincing evidence that the Check Point Reference anticipates claim 1 of the '361

Patent.

### b.   Dependent Claims 2-5 and 7 Of The '361 Patent Were Anticipated by the Check Point Reference.

Claims 2-5 and 7 of the '361 Patent are dependent upon claim 1. As discussed above, all

the elements of claim 1 are disclosed in the Check Point Reference. Claims 2-5 and 7 are

anticipated for the reasons discussed above, and the additional reasons discussed below.

For claim 2, the Check Point Reference discloses a directory, and "wherein said at least one directory is a lightweight directory access protocol directory." *See* Kastens Decl., Ex. 1 ('361 Patent at col. 7, ls. 32-33); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1501:9-13). At trial, Dr. Jaeger described how page 142 of the Check Point Reference discloses servers which include lightweight directory access protocol directories ("LDAP") and how these are included in the "account units" used for authorization. *Id.*, Ex. 2 (T.T. at 1499:4-18, 1501:7-16); Ex. 3 (PTX-188 at 142). The LDAP directories disclosed in the Check Point Reference are examples of lightweight directory access protocol directories. As a result, this element is disclosed in the Check Point Reference.

For claim 3, the Check Point Reference discloses an authorization filter, and "wherein said authorization filter is specified using a graphical user interface." *See id.*, Ex. 1 ('361 Patent at col. 7, ls. 34-35); Ex. 3 (PTX-188). At trial, Dr. Jaeger described how on page 141, the Check Point Reference discloses a graphical user interface ("GUI") which is used to edit "the group to write an authorization filter." *Id.*, Ex. 2 (T.T. at 1501:24-1502:14); Ex. 3 (PTX-188 at 141). The GUI disclosed in the Check Point Reference allows the user to edit "what group you belong to, which is the source, and then there is information about what kind of network request you can perform." *Id.*, Ex. 2 (T.T. at 1502:11-14).

For claims 4 and 5, the Check Point Reference discloses multiple ways the "authorization filter implements" different authentication schemes. *See id.*, Ex. 1 ('361 Patent at col. 7, ls. 36-39); Ex. 3 (PTX-188). For claim 4, one of the schemes disclosed is "a per-user authentication scheme." *See id.*, Ex. 1 ('361 Patent at col. 7, l. 37); Ex. 3 (PTX-188). Additionally, for claim 5, the Check Point Reference discloses " a per-service authentication scheme." *See id.*, Ex. 1 ('361 Patent at col. 7, l. 39); Ex. 3 (PTX-188). Dr. Jaeger testified that on page 28, the Check Point

8

Reference provides for different schemes. *Id.*, Ex. 2 (T.T. at 1502:23-1503:7); Ex. 3 (PTX-188 at 28). One of the schemes discloses a scheme "called user authentication. And this corresponds to a per-user authentication scheme." *Id.*, Ex. 2 (T.T. at 1503:4-5). He further testified that on page 28, there is a "third one at the bottom [which] is called session authentication." *Id.* (T.T. at 1503:2-7); Ex. 3 (PTX-188 at 28). Dr. Jaeger further described how major sections of the Check Point Reference describe these two authentication methods, such that these elements are disclosed in the Check Point Reference. *Id.*, Ex. 2 (T.T. at 1503:17-23).

For claim 7, the Check Point Reference discloses a firewall, "wherein said firewall is configured to query multiple directories." *See id.*, Ex. 1 ('361 Patent at col. 7, ls. 43-44); Ex. 3 (PTX-188). At trial, Dr. Jaeger described how on page 139, the Check Point Reference discloses four account units, each one of which is an LDAP directory, and each of which can be queried by the firewall. *Id.*, Ex. 2 (T.T. at 1504:9-15); Ex. 3 (PTX-188 at 139). The Check Point Reference discloses multiple account units, each a directory, and each queried by a single firewall, thereby meeting this claim element. *Id.*

Thus, with great specificity, Dr. Jaeger provided testimony regarding how the Check Point Reference anticipates claims 2-5 and 7 of the '361 Patent. Defendants did not even attempt to challenge, let alone successfully rebut, this overwhelming evidence. Thus, the Check Point Reference and Dr. Jaeger's testimony constitute substantial and clear and convincing evidence that the Check Point Reference anticipates claims 2-5 and 7 of the '361 Patent.

        c.      **Independent Claim 8 Of The '361 Patent Was Anticipated by the Check Point Reference.**

Dr. Jaeger presented clear and convincing evidence that independent claim 8 of the '361 Patent was anticipated by the Check Point Reference. The Check Point Reference describes "an

authentication method at a firewall." *See* Kastens Decl., Ex. 1 ('361 Patent at col. 7, l. 45); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1504:16-19).

As in element (a) of claim 8, the Check Point Reference discloses "receiving a network resource request from a client user at an internal network." *See id.*, Ex. 1 (361 Patent at col. 7, ls. 47-48); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1504:20-24). At trial, Dr. Jaeger described how the Check Point Reference this element as it discloses that the "firewall can intercept requests emanating from inside the network or from outside the network." *Id.*, Ex. 2 (T.T. at 1504:22-24). Additionally, Dr. Jaeger testified that page 32 of the Check Point Reference discloses intercepting a network resource request from a client user at an internal network by disclosing a "user who is trying to use this particular service called TELLNET, -- this is for logging into a computer -- is going to be intercepted by the firewall module, which is this entity called London that we took down." *Id.*, Ex. 2 (T.T. at 1498:24-1499:3); Ex. 3 (PTX-188 at 32).

As in element (b) of claim 8, the Check Point Reference discloses, "querying, using a network protocol, at least one directory that is configured to store information concerning an entity's organization, wherein said query is based upon an authorization filter that is generated based on a directory schema that is predefined by said entity." *See id.*, Ex. 1 ('361 Patent at col. 7, ls. 49-54; Ex. 3 (PTX-188); Ex. 2 (T.T. at 1505:3-5). Using the previously discussed "Jim" example, Dr. Jaeger testified as follows:

> ... when Jim submits a network request ... If Jim were inside the network and submitting a request, the firewall would intercept that request and look for information about Jim if it didn't know him in the local database.

*Id.*, Ex. 2 (T.T. at 1505:6-12); Ex. 3 (PTX-188 at 143-44). Dr. Jaeger testified that on page 145, the Check Point Reference discloses looking for the information about "Jim" in an LDAP directory. *Id.*, Ex. 2 (T.T. at 1505:6-12); Ex. 3 (PTX-188 at 145). The directory has a predefined

10

"LDAP schema, that is the structure, the form of the information stored in the LDAP directory

for the Check-Point firewall." *Id.*, Ex. 2 (T.T. at 1505:25-1506:2); Ex. 3 (PTX-188 at 145).

Thus, the Check Point Reference discloses claim element (b) of claim 8, because the reference

discloses the LDAP directory being queried using the LDAP protocol, and the form of the query

is based on the pre-defined LDAP directory schema being queried.

As in element (c) of claim 8, the Check Point Reference discloses, "determining, based

on the results of said query, whether the contents of at least part of one or more entries in said at

least one directory satisfy said authorization filter." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 1-4);

Ex. 3 (PTX-188); Ex. 2 (T.T. at 1507:3-7). The Check Point Reference also discloses element

(d) of claim 8, "permitting said network resource requests though said firewall if said

authorization filter is satisfied." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 5-6); Ex. 3 (PTX-188);

Ex. 2 (T.T. at 1507:3-7). At trial, Dr. Jaeger described how on page 145, the Check Point

Reference discloses "the LDAP schema, that is the structure, the form of the information stored

in the LDAP directory for the Check-Point firewall." *Id.*, Ex. 2 (T.T. at 1505:25-1506:2); Ex. 3

(PTX-188 at 145). He further testified regarding how steps 8 through 12 on page 143 of the

Check Point Reference discloses authenticating "Jim" by using his LDAP entry. *Id.*, Ex. 2 (T.T.

at 1506:10-1507:2); Ex. 3 (PTX-188 at 143). His testimony was as follows:

> ... [The Check Point Reference] found an LDAP entry for Jim, from some
> account unit somewhere. So this LDAP entry has information describing what
> groups Jim belongs to, and the firewall is going to determine based on these
> groups what the authentication requirements are for Jim.
>     I think we will see that in the LDAP scheme later. There will be specific
> authentication requirements for Jim in order to satisfy gaining entry through the
> request that he made. So Jim has to prove that he is Jim. And he will use this
> LDAP entry in order to -- the system will use the LDAP entry in order to describe
> what Jim has to do to prove that he is Jim so he can submit this request.
>     So 11 says that the firewall is going to implement the authentication
> scheme. So it is going to use this information that it found in its LDAP entry in

11

order to determine how to authenticate Jim, and *if Jim successfully authenticates, then the connection will be allowed* it says at the bottom.

*Id.*, Ex. 2 (T.T. at 1506:10-1507:2) (emphasis added); Ex. 3 (PTX-188 at 143). Thus, the Check Point Reference discloses element (c) of claim 8, because the reference discloses determining whether the contents of the LDAP entry for "Jim" satisfies the authorization filter.

The Check Point Reference and Dr. Jaeger's testimony constitute substantial and clear and convincing evidence that the Check Point Reference anticipates claim 8 of the '361 Patent.

### d.    Dependent Claims 9-12 and 14 Of The '361 Patent Were Anticipated by the Check Point Reference.

Claims 9-12 and 14 of the '361 Patent are dependent upon claim 1. As discussed above, all the elements of claim 1 are disclosed in the Check Point Reference. Claims 9-12 and 14 are anticipated for the reasons discussed above, and the additional reasons discussed below.

As in claim 9, the Check Point Reference discloses "wherein step (b) comprises the step of querying said at least one directory using a lightweight directory access protocol." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 8-10); Ex. 4 (PTX-188); Ex. 3 (T.T. at 1507:8-11). Claim 9 is substantially identical to claim 2. *Id.*, Ex. 2 (T.T. at 1507:12-13). Dr. Jaeger testified that the Check Point Reference discloses this element for the same reasons as claim 2, as discussed above. *Id.* (T.T. at 1507:8-16).

As in claim 10, the Check Point Reference discloses "further comprising the step of specifying an authorization filter using a graphical user interface." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 11-13); Ex. 4 (PTX-188); Ex. 2 (T.T. at 1507:20-22). Claim 10 is substantially identical to claim 3. *Id.*, Ex. 2 (T.T. at 1507:23-25). Dr. Jaeger testified that this element was disclosed in the Check Point Reference for the same reasons as claim 3 was disclosed, as discussed above. *Id.* (T.T. at 1507:23-1508:3).

12

As in claim 11 and 12, the Check Point Reference discloses both where the "specifying step comprises the step of specifying an authorization filter that implements a per-user authentication scheme" and the "specifying step comprises the step of specifying an authorization filter that implements a per-service authentication scheme." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 14-20); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1508:4-9). Claims 11 and 12 are substantially identical to claims 4 and 5, respectively. *Id.*, Ex. 2 (T.T. at 1508:4-6). Dr. Jaeger testified that this element was disclosed in the Check Point Reference for the same reasons as claims 4 and 5 were disclosed. *Id.* (T.T. at 1508:4-9).

As in claim 14, the Check Point Reference discloses "wherein step (b) comprises the step of querying multiple directories." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 24-25); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1508:10-16). Claim 14 is substantially identical to claim 7. *Id.*, Ex. 2 (T.T. at 1508:10-12). Dr. Jaeger testified that this element was disclosed in the Check Point Reference for the same reasons as claim 7 was disclosed. *Id.* (T.T. at 1508:13-16).

The Check Point Reference and Dr. Jaeger's testimony constitute substantial and clear and convincing evidence that the Check Point Reference anticipates claims 9-12 and 14 of the '361 Patent.

      **e.**    **Independent Claim 15 Of The '361 Patent Was Anticipated by the Check Point Reference.**

Dr. Jaeger presented clear and convincing evidence that claim 15 of the '361 Patent was anticipated by the Check Point Reference. The Check Point Reference describes "[a] computer program product for enabling a processor in a computer system to implement an authentication process." *See* Kastens Decl., Ex. 1 ('361 Patent at col. 8, ls. 27-29); Ex. 4 (PTX-188); Ex. 2 (T.T. at 1509:6-16).

As in claim 15, the Check Point Reference discloses "a computer usable medium having computer readable program code embodied in said medium for causing a program to execute in the computer system." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 30-33); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1509:17-22).  Dr. Jaeger testified that the Check Point Reference discloses "a computer-usable medium meeting these requirements." *Id.,* Ex. 2 (T.T. at 1509:21-22).

As in claim 15, the Check Point Reference discloses a "first computer readable program code for enabling the computer system to receive a network resource request from a client user at an internal network." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 34-36); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1509:23-1510:12).  Dr. Jaeger testified that this was the computer code implementing claim element 8(a) and was disclosed for similar reasons.  *Id.*, Ex. 2 (T.T. at 1510:2-12).

As in claim 15, the Check Point Reference discloses a "second computer readable program code for enabling the computer system to query, using a network protocol, at least one directory that is configured to store information concerning an entity's organization, wherein said query is based upon an authorization filter that is generated based on a directory schema that is predefined by said entity." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 37-43); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1510:13-23).  Dr. Jaeger testified that this was the computer code implementing claim element 8(b) and was disclosed for similar reasons.  *Id.*, Ex. 2 (T.T. at 1510:19-23).

As in claim 15, the Check Point Reference discloses a "third computer readable program code for enabling the computer system to determine, based on the results of said query, whether the contents of at least part of one or more entries in said at least one directory satisfy said authorization filter." *See id.*, ¶2 ('361 Patent at col. 8, ls. 44-48); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1510:24-1511:7).  Dr. Jaeger testified how the Check Point Reference discloses this element as follows:

14

...the account units store these LDAP entries about the individual. So it will store an entry about Jim. ***And the authorization filter says that Jim has to authenticate, if in that case it does, then the Check-Point firewall will look at the authentication information in Jim's entry in order to determine whether Jim really is Jim.***

*Id.*, Ex. 2 (T.T. at 1511:20-25) (emphasis added); Ex. 3 (PTX-188 at 136). This testimony described how the Check Point Reference discloses how the information queried from Jim's entry is used to determine if Jim satisfies the authorization filter. *Id.*

As in claim 15, the Check Point Reference discloses a "fourth computer readable program code for enabling the computer system to permit said network resource request through a firewall if said authorization filter is satisfied." *See id.*, Ex. 1 ('361 Patent at col. 8, ls. 49-52); Ex. 3 (PTX-188); Ex. 2 (T.T. at 1512:19-24). Dr. Jaeger testified that, "[s]o then Jim, if he possesses the secret, he is authenticated, then he can -- the Check-Point system will allow him to enter the network." *Id.*, Ex. 2 (T. T. at 1512:15-18). This testimony described how the Check Point Reference discloses permitting the resource request if the authorization filter is satisfied. *Id.* Dr. Jaeger testified that this was the computer code implementing claim element 8(d) and was disclosed for similar reasons. *Id.* (T.T. at 1512:19-1513:4).

The Check Point Reference and Dr. Jaeger's testimony constitute substantial and clear and convincing evidence that the Check Point Reference anticipates claim 15 of the '361 Patent.

## 2. Defendants Presented No Rebuttal Whatsoever To Finjan's Anticipation Defense.

Finjan presented a detailed analysis of how every element of every asserted claim of the '361 Patent was included in the Check Point Reference, while Defendants presented absolutely no rebuttal case. The lack of a rebuttal case is an important factor to consider in determining whether a patent is invalid. *See Princeton*, 411 F.3d at 1338. Additionally, when a challenger to a patent has presented a *prima facie* case to the invalidity of a patent the patentee "would be well

advised to introduce evidence sufficient to rebut that of the challenger." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed. Cir. 1986). Defendants presented absolutely no rebuttal evidence. Indeed, they never even attempted to argue that the '361 Patent was valid. Defendants presented no rebuttal expert, introduced no rebuttal evidence, ***and did not even attempt to cross Dr. Jaeger regarding his testimony regarding the invalidity of the '361 Patent***. Finally, Defendants never even mentioned the '361 Patent in their closing argument. The utter failure to defend against the *prima facie* invalidity challenge speaks volumes regarding the invalidity of the '361 Patent. Defendants' failure to address in any manner Dr. Jaeger's opinion of invalidity is further evidence that the Check Point Reference anticipates the '361 Patent, and that the '361 Patent is invalid as a matter of law. There is simply no legally sufficient basis for a reasonable jury to find for Defendants on this issue.

### 3. There are no Genuine Issues about the Content of the Prior Art

There are no genuine issues regarding the content of the Check Point Reference because the content disclosed by the prior art reference, as described above, is also undisputed. In the examination of Dr. Jaeger, the Check Point Reference was established to include every element of the '361 Patent. Defendants did not challenge ***any*** of the evidence of invalidity of the '361 Patent in light of the Check Point Reference.

### C. THE EVIDENCE PRESENTED BY FINJAN AT TRIAL CONCLUSIVELY PROVES THE ASSERTED CLAIMS OF THE '361 PATENT ARE INVALID FOR OBVIOUSNESS.

Pursuant to Federal Rule of Civil Procedure 50(b), Finjan seeks, in the alternative, entry of judgment that the asserted claims of the '361 Patent rendered obvious by the Check Point Reference as a matter of law. An invention is obvious when it would have been obvious to a person of ordinary skill at the time of the invention. *See* 35 U.S.C. § 103. Obviousness is a question of law based on underlying factual inquiries. *Merck & Co. v. Teva Pharms. USA, Inc.*,

395 F.3d 1364, 1369 (Fed. Cir. 2005) (citation omitted). The factual inquiries required for an

obviousness finding are as follows:

> (A) the scope and content of the prior art;
>
> (B) the differences between the claimed invention and the prior art; and
>
> (C) the level of ordinary skill in the pertinent art.

*KSR International Co. v. Teleflex Inc.,* 127 S.Ct. 1727, 1729-30 (2007) (quoting *Graham v. John*

*Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). The court may also consider any proffered

objective indicia of non-obviousness. *Id.* (quoting *Graham*, 383 U.S. at 18). These factors are

collectively referred to as the "Graham Factors."

### 1. The Evidence Finjan Presented at Trial Conclusively Demonstrated the Asserted Claims of the '361 Patent were Rendered Obvious by the Check Point Reference.

As discussed above, the Check Point Reference anticipates the asserted claims of the '361

Patent as a matter of law. As Dr. Jaeger testified, the '361 Patent is, at the very least, rendered

obvious by the Check Point Reference. Kastens Decl., Ex. 2 (T.T. at 1513:10-15).

Applying the *Graham* factors to the '361 Patent in light of the Check Point Reference

requires the conclusion that the asserted claims of the '361 Patent are obvious. Dr. Jaeger

demonstrated for the jury at trial that the '361 Patent was obvious by clear and convincing

evidence. As discussed above, Defendants did not dispute at trial that every element in the

asserted claims of the '361 Patent is contained in the Check Point Reference, thereby proving

that the scope and content of the Check Point Reference renders the '361 Patent obvious.

Indeed, the only testimony at trial was Dr. Jaeger's testimony that the '361 Patent and the Check

Point Reference describe the same type of firewall functionality. *See id.*, Ex. 2 (T.T. at 1462:6-

14, 1495:16-1496:2).

17

Furthermore, the level of ordinary skill in the art for these patents would certainly make the differences, if any were found, to be obvious. The level of ordinary skill in the art, as testified to by Dr. Jaeger and unchallenged by Defendants, was explained by Dr. Jaeger as being:

> Q.   Now, you say one of ordinary skill in the art. What do you mean by that?
> A.   So what I mean by that would be either someone with, you know, like a computer science degree, or maybe, you know, about three, four years of professional computer science experience without a degree. That person, additionally, having maybe a couple of years in networking and security. About that level. It would be someone at that level.

*Id.*, Ex. 2 (T.T. at 1513:16-24). Dr. Jaeger's undisputed testimony was that the asserted claims of the '361 Patent are obvious given the Check Point Reference and this level ordinary skill in the art. *Id.* (T.T. at 1514:13-17).

Furthermore, Defendants presented no evidence of any kind regarding the objective factors of non-obviousness. *See, generally,* Trial Transcript.

Finjan proved at trial that the asserted claims of the '361 Patent would have been obvious to a person of ordinary skill in the art at the time of the invention, given the Check Point Reference. There was no legally sufficient basis for the jury to conclude that the asserted claims of the '361 were not obvious. Furthermore, as discussed above, Defendants did not rebut any of the obviousness evidence presented by Finjan.

### 2.    Defendants Presented No Rebuttal To Finjan's Obviousness Defense.

A discussed above, Dr. Jaeger presented a detailed analysis of how every element of every asserted claim of the '361 Patent was included in the Check Point Reference. Dr. Jaeger further testified that given the scope of what was disclosed in the Check Point Reference, the asserted claims of the '361 Patent would certainly be obvious to a person of ordinary skill at the time of the invention. Defendants did not challenge Dr. Jaeger's testimony in cross-examination and did not present any fact or expert witness to rebut Dr. Jaeger's opinion. Defendants

presented no invalidity rebuttal expert, no rebuttal evidence, and did not cross Dr. Jaeger on the invalidity of the '361 Patent. They did not even address the '361 Patent in their closing arguments. The clear and convincing evidence, which was the *only* evidence regarding the invalidity or validity of the '361 Patent at trial, established that the '361 Patent is invalid and, at the very least, rendered obvious by the Check Point Reference.

**V.    CONCLUSION**

In light of the foregoing, Finjan respectfully requests that the Court grant its motion for judgment as a matter of law that the asserted claims of the '361 Patent are invalid, either as anticipated or rendered obvious, in light of the Check Point Reference.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
King & Spalding LLP
1000 Bridge Parkway
Redwood City, CA 94065
(650) 590-0700

Dated: April 25, 2008
861695

By: _____
    Philip A. Rovner (#3215)
    Hercules Plaza
    P. O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com

*Attorneys for Plaintiff*
*Finjan Software, Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 25, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com; farnan@rlf.com

I hereby certify that on April 25, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

Jake M. Holdreith, Esq.
Christopher A. Seidl, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
jmholdreith@rkmc.com; caseidl@rkmc.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | Civil Action No. 06-369 GMS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### ORDER GRANTING FINJAN SOFTWARE, LTD.'S POST-TRIAL MOTION FOR INVALIDITY OF U.S. PATENT NO. 7,185,361 PURSUANT TO FED.R.CIV.P. 50(b)

WHEREAS, on March 12, 2008, the jury found Plaintiff Finjan Software, Ltd did not infringe Claims 1-5, 7-12, and 14-15 of Defendants' Secure Computing Corporation, Cyberguard Corporation, and Webwasher AG (collectively, "Defendants") U.S. Patent No. 7,185,361 Patent ("the '361 Patent");

WHEREAS, on March 12, 2008, the jury found Defendant's '361 Patent not invalid;

WHEREAS, on March 28, 2008, the Court, entered judgment in accordance with the jury's verdict;

WHEREAS, on April 25, 2008 Finjan moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) to overturn the jury's verdict and find the asserted claims of the '361 patent invalid;

WHEREAS, the Court considered the arguments made in the briefs from Finjan and Defendants with regard to this motion;

WHEREAS, the "Check Point Firewall-1 Architecture and Administration Version 4.0" reference ("Check Point Reference") was shown at trial to anticipate the '361 patent by clear and convincing evidence under 35 U.S.C. § 102;

WHEREAS, the Check Point Reference was shown at trial to render the '361 patent obvious by clear and convincing evidence under 35 U.S.C. § 103;

WHEREAS, Defendants did not rebut the invalidity of the '361 patent;

IT IS HEREBY ORDERED as follows:

1. The Court grants Finjan's motion for judgment as a matter of law that Claims 1-5, 7-12, and 14-15 of the '361 patent are invalid.  The jury's verdict of March 12, 2008 and the judgment entered March 28, 2008 with respect to the validity of the '361 patent is, hereby, overturned.

SO ORDERED:

Dated: _____        _____
                                     Honorable Gregory M. Sleet

861813

2