# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | |
| | ) | C. A. No. 06-369-GMS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) | PUBLIC VERSION |
| Defendants. | ) ) | |

## DECLARATION OF HANNAH LEE IN SUPPORT OF PLAINTIFF FINJAN SOFTWARE, LTD.'S POST-TRIAL MOTION TO AMEND JUDGMENT AND FOR AN ACCOUNTING OF SALES

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
King & Spalding LLP
1000 Bridge Parkway
Redwood City, CA 94065
(650) 590-0700

Dated: April 25, 2008
Public Version: May 2, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff
Finjan Software, Ltd.

I, HANNAH LEE, declare:

1.     I am an attorney with the law firm of King & Spalding LLP, counsel of record for Finjan Software, Ltd ("Finjan"). I have personal knowledge of the facts set forth in this declaration and can testify competently to those facts.

2.     Attached hereto as Exhibit A is a true and correct copy of the Joint Special Verdict Form (D.I. 226) filed on March 12, 2008.

3.     Attached hereto as Exhibit B is a true and correct copy of the Judgment in favor of Finjan against Cyberguard Corporation, Secure Computing Corporation ("Secure Computing"), Webwasher AG (D.I. 242) entered by this Court on March 28, 2008.

4.     Attached hereto as Exhibit C is a true and correct copy of the Amended Complaint for Patent Infringement (D.I. 43) filed on April 10, 2007.

5.     Attached hereto as Exhibit D is a true and correct copy of Finjan's Trial Brief (D.I. 180) filed on January 14, 2008.

6.     Attached hereto as Exhibit E is a true and correct copy of Secure Computing's website printout regarding sale of Webwasher product, viewed on April 25, 2008 from http://www.securecomputing.com/index.cfm?skey=22&lang=en.

7.     Attached hereto as Exhibit F is a true and correct copy of a press release entitled "Secure Computing Files Motion to Set Aside Previous Infringement Verdict," dated March 28, 2008, viewed from http://www.marketwire.com/mw/rel_us_print.jsp?id=837445.

8.     Attached hereto as Exhibit G is a true and correct copy of press releases entitled "Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict," and "Correction - Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict," dated March 13, 2008, viewed from http://biz.yahoo.com/iw/080313/0374571.html?printer=1 and http:///biz.yahoo.com/iw/080313/0374787.html?printer=1, respectively.

9.     Attached hereto as Exhibit H is a true and correct copy of a press release entitled "Correction - Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict,"

dated March 13, 2008, viewed from

http://money.cnn.com/news/newsfeeds/articles/marketwire/0374787.htm.

10.    Attached hereto as Exhibit I is a true and correct copy of an e-mail from counsel for Finjan, Paul Andre, to counsel for Secure Computing, Christopher Seidl and Jake Holdreith, regarding Secure Computing's press release, dated March 13, 2008.

11.    Attached hereto as Exhibit J is a true and correct copy of a press release entitled "Jury rules for Finjan in patent lawsuit against Secure Computing," dated March 13, 2008, viewed from

http://www.computerworld.com/action/article.do?command=viewArticleBasic&taxonomyName =security_hardware_and_software&articleId=9068405&taxonomyId=145&intsrc=kc_top.

12.    Attached hereto as Exhibit K is a true and correct copy of Secure Computing's Responses to Finjan's Third Set of Requests for Production of Documents, served on June 8, 2007.

13.    Attached hereto as Exhibit L is a true and correct copy of Secure Computing's Supplemental Answers to Finjan's Interrogatory Nos. 6, 7, 8, 10, 11, 12, 13, 14, 15, 23, 25, 27, 28, and 29, served on November 14, 2007.

14.    Attached hereto as Exhibit M is a true and correct copy of a letter dated May 1, 2007, from counsel for Secure Computing, Christopher Seidl, to counsel for Finjan, James Hannah.

15.    Attached hereto as Exhibit N is a true and correct copy of the Expert Report of Russell Parr, Finjan's damages expert.

16.    Attached hereto as Exhibit O is a true and correct copy of pages 646-648 from the transcript of trial proceedings on March 5, 2008.

17.    Attached hereto as Exhibit P is a true and correct copy of a table of prejudgment interest.

- 3 -

Executed on April 25, 2008, in Redwood Shores, California.

Hannah Lee

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 2, 2008, the within document was

filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com; farnan@rlf.com

I hereby certify that on May 2, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

Jake M. Holdreith, Esq.
Christopher A. Seidl, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
jmholdreith@rkmc.com; caseidl@rkmc.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | Civil Action No. 06-369 GMS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## JOINT SPECIAL VERDICT FORM

A.  **Finjan Software Ltd.'s ("Finjan Software") Patent Infringement Claims Against Secure Computing Corporation, Cyberguard Corporation, Webwasher AG ("Secure Computing")**

**Literal Infringement**

1.  Do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing literally infringes any of the asserted claims of U.S. Patent No. 6,092,194? *Answer this question regarding infringement of the '194 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

    YES __✓__                    NO _____

    If you answered "NO," please proceed to Question No. 2.

    If you answered "YES," please mark the claims you found to be infringed:

    | | | | |
    |---|---|---|---|
    | Claim 1: ✓ | Claim 2: ✓ | Claim 3: ____ | Claim 4: ✓ |
    | Claim 5: ✓ | Claim 6: ✓ | Claim 7: ✓ | Claim 8: ✓ |
    | Claim 9: ✓ | Claim 10: ✓ | Claim 11: ✓ | Claim 12: ✓ |
    | Claim 13: ✓ | Claim 14: ✓ | Claim 24: ✓ | Claim 25: ✓ |
    | Claim 26: ✓ | Claim 27: ✓ | Claim 28: ✓ | Claim 29: ✓ |
    | Claim 30: ✓ | Claim 32: ✓ | Claim 33: ✓ | Claim 34: ✓ |
    | Claim 35: ✓ | Claim 36: ✓ | Claim 65: ✓ | |

2.  Do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing literally infringes any of the asserted claims of U.S. Patent No. 6,804,780? *Answer this question regarding infringement of the '780 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

    YES _____                    NO __✓__

    If you answered "NO", please proceed to Question No. 3.

    If you answered "YES," please mark the claims you found to be infringed:

    | | | | |
    |---|---|---|---|
    | Claim 1: ____ | Claim 2: ____ | Claim 3: ____ | Claim 4: ____ |
    | Claim 5: ____ | Claim 6: ____ | Claim 9: ____ | Claim 10: ____ |
    | Claim 11: ____ | Claim 12: ____ | Claim 13: ____ | Claim 14: ____ |
    | Claim 18: ____ | | | |

2

3.    Do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing literally infringes any of the asserted claims of U.S. Patent No. 7,058,822? *Answer this question regarding infringement of the '822 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

YES __✓__                    NO_____

If you answered "NO," please proceed to Question No. 4.

If you answered "YES," please mark the claims you found to be infringed:

Claim 4: __✓__      Claim 6: __✓__      Claim 8: __✓__      Claim 12: __✓__

Claim 13: __✓__

3

**Infringement Under The Doctrine of Equivalents**

<u>**Skip Question 4 if you answered "YES" to Question 1 and found literal infringement of all asserted claims of U.S. Patent No. 6,092,194.**</u>

4.    If you did not find that Secure Computing literally infringes some or all of the claims of U.S. Patent No. 6,092,194 under Question 1, do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing infringes any of those claims under the doctrine of equivalents? *Answer this question regarding infringement of the '194 patent under the doctrine of equivalents with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

YES ___✓___                    NO_____

If you answered "NO", please proceed to Question No. 5.

If you answered "YES," please mark the claims you found to be infringed under the doctrine of equivalents:

| | | | |
|---|---|---|---|
| Claim 1: _____ | Claim 2: _____ | Claim 3: __✓__ | Claim 4: ____ |
| Claim 5: _____ | Claim 6: _____ | Claim 7: _____ | Claim 8: ____ |
| Claim 9: _____ | Claim 10:_____ | Claim 11:_____ | Claim 12:____ |
| Claim 13:____ | Claim 14: _____ | Claim 24:_____ | Claim 25:____ |
| Claim 26:____ | Claim 27: _____ | Claim 28: _____ | Claim 29:____ |
| Claim 30:____ | Claim 32:_____ | Claim 33:_____ | Claim 34:____ |
| Claim 35:____ | Claim 36:_____ | Claim 65:_____ | |

4

**Skip Question 5 if you answered "YES" to Question 2 and found literal infringement of all asserted claims of U.S. Patent No. 6,804,780.**

5.    If you did not find that Secure Computing literally infringes some or all of the claims of U.S. Patent No. 6,804,780 under Question 2, do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing infringes any of those claims under the doctrine of equivalents? *Answer this question regarding infringement of the '780 patent under the doctrine of equivalents with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

YES ____✓____          NO_____

If you answered "NO," please proceed to Question No. 6.

If you answered "YES," please mark the claims you found to be infringed under the doctrine of equivalents:

Claim 1: __✓__      Claim 2: __✓__      Claim 3: __✓__      Claim 4: __✓__

Claim 5: __✓__      Claim 6: __✓__      Claim 9: __✓__      Claim 10: __✓__

Claim 11: __✓__     Claim 12: __✓__     Claim 13: __✓__     Claim 14: __✓__

Claim 18: __✓__

**Skip Question 6 if you answered "YES" to Question 3 and found literal infringement of all asserted claims of U.S. Patent No. 7,058,822.**

6.    If you did not find that Secure Computing literally infringes some or all of the claims of U.S. Patent No. 7,058,822 under Question 3, do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing infringes any of those claims under the doctrine of equivalents? *Answer this question regarding infringement of the '822 patent under the doctrine of equivalents with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

YES _____          NO_____

If you answered "NO," please proceed to Question No. 7.

If you answered "YES," please mark the claims you found to be infringed under the doctrine of equivalents:

Claim 4: ____      Claim 6: ____      Claim 8: ____      Claim 12:____

Claim 13:____

5

**Willful Infringement**

7.    If your answer was "YES" for any of Questions 1, 2, 3, 4, 5, or 6, was Secure
Computing's infringement willful?

YES __✓__              NO_____

**B.      Secure Computing's Patent Invalidity Claims Against Finjan Software**

**Anticipation**

8.      Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 6,092,194 are invalid because they are anticipated by prior art?  *Answer this question regarding validity of the '194 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

YES _____                    NO___✓___

If you answered "NO," please proceed to Question No. 9.

If you answered "YES," please mark the claims you found to be anticipated by prior art:

| Claim 1: _____ | Claim 2: _____ | Claim 3: _____ | Claim 4: _____ |
| Claim 5: _____ | Claim 6: _____ | Claim 7: _____ | Claim 8: _____ |
| Claim 9: _____ | Claim 10:_____ | Claim 11:_____ | Claim 12:____ |
| Claim 13:____ | Claim 14: _____ | Claim 24:_____ | Claim 25:____ |
| Claim 26:____ | Claim 27: _____ | Claim 28: _____ | Claim 29:____ |
| Claim 30:____ | Claim 32:_____ | Claim 33:_____ | Claim 34:____ |
| Claim 35:____ | Claim 36:_____ | Claim 65:_____ | |

9.      Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 6,804,780 are invalid because they are anticipated by prior art?  *Answer this question regarding validity of the '780 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

YES _____                    NO___✓___

If you answered "NO," please proceed to Question No. 10.

If you answered "YES," please mark the claims you found to be anticipated by prior art:

| Claim 1: _____ | Claim 2: _____ | Claim 3: _____ | Claim 4: _____ |
| Claim 5: _____ | Claim 6: _____ | Claim 9: _____ | Claim 10:____ |
| Claim 11:_____ | Claim 12:_____ | Claim 13:_____ | Claim 14:____ |
| Claim 18:_____ | | | |

10. Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 7,058,822 are invalid because they are anticipated by prior art? *Answer this question regarding validity of the '822 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

    YES _____            NO ___✓___

If you answered "NO," please proceed to Question No. 11.

If you answered "YES," please mark the claims you found to be anticipated by prior art:

Claim 4: _____      Claim 6: _____      Claim 8: _____      Claim 12:_____

Claim 13:_____

**Obviousness**

11. Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 6,092,194 are obvious in light of the prior art? *Answer this question regarding validity of the '194 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

    YES _____            NO ___✓___

If you answered "NO", please proceed to Question No. 12.

If you answered "YES," please mark the claims you found to be obvious in light of the prior art:

| | | | |
|---|---|---|---|
| Claim 1: _____ | Claim 2: _____ | Claim 3: _____ | Claim 4: _____ |
| Claim 5: _____ | Claim 6: _____ | Claim 7: _____ | Claim 8: _____ |
| Claim 9: _____ | Claim 10:_____ | Claim 11:_____ | Claim 12:_____ |
| Claim 13:_____ | Claim 14: _____ | Claim 24:_____ | Claim 25:_____ |
| Claim 26:_____ | Claim 27: _____ | Claim 28: _____ | Claim 29:_____ |
| Claim 30:_____ | Claim 32:_____ | Claim 33:_____ | Claim 34:_____ |
| Claim 35:_____ | Claim 36:_____ | Claim 65:_____ | |

12. Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 6,804,780 are obvious in light of the prior art? *Answer this question regarding validity of the '780 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

      YES _____          NO __✓__

If you answered "NO", please proceed to Question No. 13.

If you answered "YES," please mark the claims you found to be obvious in light of the prior art:

| Claim 1: _____ | Claim 2: _____ | Claim 3: _____ | Claim 4: _____ |
|---|---|---|---|
| Claim 5: _____ | Claim 6: _____ | Claim 9: _____ | Claim 10:_____ |
| Claim 11:_____ | Claim 12:_____ | Claim 13:_____ | Claim 14:_____ |

Claim 18:_____

13. Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 7,058,822 are obvious in light of the prior art? *Answer this question regarding validity of the '822 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

      YES _____          NO __✓__

If you answered "NO", please proceed to Question No. 14.

If you answered "YES," please mark the claims you found to be obvious in light of the prior art:

| Claim 4: _____ | Claim 6: _____ | Claim 8: _____ | Claim 12:_____ |
|---|---|---|---|

Claim 13:_____

C.    **Damages for Finjan Software's Patent Infringement Claims Against Secure Computing**

**Webwasher Software**

14.    If you have found that one or more of the asserted claims of U.S. Patent No. 6,092,194, U.S. Patent No. 6,804,780, and/or U.S. Patent No. 7,058,822 are valid and infringed by Secure Computing's Webwasher Software, then what is the reasonable royalty rate to which Finjan Software has proven by a preponderance of the evidence and the amount of sales of the Webwasher Software that the royalty rate should be applied to?

_16_ %  $ _49,000,000_

**Webwasher Hardware Appliances**

15.    If you have found that one or more of the asserted claims of U.S. Patent No. 6,092,194, U.S. Patent No. 6,804,780, and/or U.S. Patent No. 7,058,822 are valid and infringed by Secure Computing's Webwasher Hardware Appliances, then what is the reasonable royalty rate to which Finjan Software has proven by a preponderance of the evidence and the amount of sales of the Webwasher Hardware Appliances that the royalty rate should be applied to?

_8_ %  $ _3,250,000_

**Cyberguard TSP Hardware Appliances**

16.    If you have found that one or more of the asserted claims of U.S. Patent No. 6,092,194, U.S. Patent No. 6,804,780, and/or U.S. Patent No. 7,058,822 are valid and infringed by Secure Computing's Cyberguard TSP Hardware Appliances, then what is the reasonable royalty rate to which Finjan Software has proven by a preponderance of the evidence and the amount of sales of the Cyberguard TSP Hardware Appliances that the royalty rate should be applied to?

_8_ %  $ _13,500,000_

**D.**  **Secure Computing Corporation's ("Secure Computing") Patent Infringement Claims Against Finjan Software, Ltd. and Finjan Software, Inc. ("Finjan")**

### Literal Infringement

17.  Do you find that Secure Computing has proven by a preponderance of the evidence that Finjan literally infringes any of the asserted claims of U.S. Patent No. 7,185,361? *Answer this question regarding infringement of the '361 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

        YES _____                    NO _✓_____

If you answered "NO," please proceed to Question No. 18.

If you answered "YES," please mark the claims you found to be infringed:

Claim 1: _____      Claim 2: _____      Claim 3: _____      Claim 4: _____

Claim 5: _____      Claim 7: _____      Claim 8: _____      Claim 9: _____

Claim 10: _____     Claim 11: _____     Claim 12: _____     Claim 14: _____

Claim 15: _____

18.  Do you find that Secure Computing has proven by a preponderance of the evidence that Finjan literally infringes Claim 37 of U.S. Patent No. 6,357,010? *Answer this question regarding infringement of the '010 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

        YES _____                    NO _✓_____

**Inducing Infringement**

**Skip Question 19 if you answered "NO" to Question 17 and did not find literal infringement of the '361 patent.**

19.    Do you find that Secure Computing has proven by a preponderance of the evidence that Finjan has induced infringement of any of the asserted claims of U.S. Patent No. 7,185,361? *Answer this question regarding inducing infringement of the '361 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

   YES _____              NO_____

   If you answered "NO," please proceed to Question No. 20.

   If you answered "YES," please mark the claims you found to be infringed by inducement:

   Claim 1: _____     Claim 2: _____     Claim 3: _____     Claim 4: ____

   Claim 5: _____     Claim 7: _____     Claim 8: _____     Claim 9: ____

   Claim 10:_____     Claim 11:_____     Claim 12:____     Claim 14:____

E.    **Finjan's Patent Invalidity Claims Against Secure Computing**

**Anticipation**

20.    Do you find that Finjan has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 7,185,361 are invalid because they are anticipated by prior art? *Answer this question regarding validity of the '361 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

   YES _____              NO___✓___

   If you answered "NO," please proceed to Question No. 21.

   If you answered "YES," please mark the claims you found to be anticipated by prior art:

   Claim 1: _____     Claim 2: _____     Claim 3: _____     Claim 4: ____

   Claim 5: _____     Claim 7: _____     Claim 8: _____     Claim 9: ____

   Claim 10:_____     Claim 11:_____     Claim 12:____     Claim 14:____

   Claim 15:_____

12

21.  Do you find that Finjan has proven by clear and convincing evidence that Claim 37 of U.S. Patent No. 6,357,010 is invalid because it is anticipated by prior art? *Answer this question regarding validity of the '010 patent with "Yes" or "No." A "Yes" is a finding for Finjan.  A "No" is a finding for Secure Computing.*

YES _____          NO___✓___

If you answered "NO", please proceed to Question No. 22.

**Obviousness**

22.  Do you find that Finjan has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 7,185,361 are obvious in light of the prior art?  *Answer this question regarding validity of the '361 patent with "Yes" or "No." A "Yes" is a finding for Finjan.  A "No" is a finding for Secure Computing.*

YES _____          NO___✓___

If you answered "NO," please proceed to Question No. 23.

If you answered "YES," please mark the claims you found to be obvious in light of the prior art:

Claim 1: _____      Claim 2: _____      Claim 3: _____      Claim 4: _____

Claim 5: _____      Claim 7: _____      Claim 8: _____      Claim 9: _____

Claim 10: _____     Claim 11: _____     Claim 12: _____     Claim 14: _____

Claim 15: _____

23.  Do you find that Finjan has proven by clear and convincing evidence that Claim 37 of U.S. Patent No. 6,357,010 is invalid because it is obvious in light of the prior art?

YES _____          NO___✓___

F.  **Damages for Secure Computing's Patent Infringement Claims Against Finjan**

24.  If you have found that one or more of the asserted claims of U.S. Patent No. 7,185,361 are valid and infringed by Finjan's Vital Security NG Appliances, then what is the reasonable royalty rate to which Secure Computing has proven by a preponderance of the evidence and the amount of sales that the royalty rate should be applied to?

_____ %   $_____

25.  If you have found that Claim 37 of U.S. Patent No. 6,357,010 is valid and infringed by Finjan's Vital Security for Documents, then what is the reasonable royalty rate to which Secure Computing has proven by a preponderance of the evidence and the amount of sales that the royalty rate should be applied to?

_____ %   $_____

REDACTED

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FINJAN SOFTWARE, LTD.,                      )
                                            )
            Plaintiff-Counterdefendant,     )
                                            )
    v.                                      )    Civil Action No. 06-369 (GMS)
                                            )
SECURE COMPUTING                            )
CORPORATION, CYBERGUARD                     )
CORPORATION and WEBWASHER AG                )
                                            )
            Defendants-                      )
            Counterclaimants.               )
_____  )

## JUDGMENT

This action came before the Court for a trial by jury. The issues have been tried and the jury

rendered its verdict on March 12, 2008. The verdict was accompanied by a verdict form (D.I. 226),

a copy of which is attached hereto. Therefore,

IT IS HEREBY ORDERED AND ADJUDGED that judgment be and is hereby entered in

favor of the plaintiff, FINJAN SOFTWARE, LTD., and against the defendants, SECURE

COMPUTING CORPORATION, CYBERGUARD CORPORATION and WEBWASHER AG (the

"SECURE Defendants"), that the SECURE Defendants literally infringe Claims 1, 2, 4, 5, 6, 7, 8,

9, 10, 11, 12, 13, 14, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, and 65 of U.S. PATENT NO.

6,092,194, that the SECURE Defendants infringe Claim 3 of U.S. PATENT NO. 6,092,194 under

the doctrine of equivalents, that the SECURE Defendants infringe Claims 1, 2, 3, 4, 5, 6, 9, 10, 11,

12, 13, 14, 18 of U.S. PATENT NO. 6,804,780 under the doctrine of equivalents, that the SECURE

Defendants literally infringe Claims 4, 6, 8, 12, and 13 of U.S. PATENT NO. 7,058,822, that the SECURE Defendants' infringement was willful, and that the SECURE Defendants' infringement is in the amount of the reasonable royalty rate of 16 PERCENT (16%) regarding Webwasher Software applied to FORTY-NINE MILLION DOLLARS ($49,000,000) in sales, 8 PERCENT (8%) regarding Webwasher Hardware Appliances applied to THREE MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($3,250,000) in sales, and 8 PERCENT (8%) regarding Cyberguard TSP Hardware Appliances applied to THIRTEEN MILLION FIVE HUNDRED THOUSAND ($13,500,000) in sales.

Dated: March 27, 2008

CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FINJAN SOFTWARE, LTD., an Israel          )
corporation,                             )
                                         )          Civil Action No. 06-369 GMS
            Plaintiff,                   )
                                         )
            v.                           )
                                         )
SECURE COMPUTING CORPORATION,            )
a Delaware corporation, CYBERGUARD,      )
CORPORATION, a Delaware corporation,     )
WEBWASHER AG, a German corporation       )
and DOES 1 THROUGH 100,                  )
                                         )
            Defendants.                  )

## JOINT SPECIAL VERDICT FORM

**A.**   **Finjan Software Ltd.'s ("Finjan Software") Patent Infringement Claims Against Secure Computing Corporation, Cyberguard Corporation, Webwasher AG ("Secure Computing")**

**Literal Infringement**

1.   Do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing literally infringes any of the asserted claims of U.S. Patent No. 6,092,194? *Answer this question regarding infringement of the '194 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

YES ___✓___          NO_____

If you answered "NO," please proceed to Question No. 2.

If you answered "YES," please mark the claims you found to be infringed:

Claim 1: ✓     Claim 2: ✓      Claim 3: _____     Claim 4: ✓

Claim 5: ✓     Claim 6: ✓      Claim 7: ✓      Claim 8: ✓

Claim 9: ✓     Claim 10: ✓     Claim 11: ✓     Claim 12: ✓

Claim 13: ✓    Claim 14: ✓     Claim 24: ✓     Claim 25: ✓

Claim 26: ✓    Claim 27: ✓     Claim 28: ✓     Claim 29: ✓

Claim 30: ✓    Claim 32: ✓     Claim 33: ✓     Claim 34: ✓

Claim 35: ✓    Claim 36: ✓     Claim 65: ✓

2.   Do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing literally infringes any of the asserted claims of U.S. Patent No. 6,804,780? *Answer this question regarding infringement of the '780 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

YES _____          NO__✓___

If you answered "NO", please proceed to Question No. 3.

If you answered "YES," please mark the claims you found to be infringed:

Claim 1: _____     Claim 2: _____     Claim 3: _____     Claim 4: _____

Claim 5: _____     Claim 6: _____     Claim 9: _____     Claim 10:_____

Claim 11:_____     Claim 12:_____     Claim 13:_____     Claim 14:_____

Claim 18:_____

2

3.  Do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing literally infringes any of the asserted claims of U.S. Patent No. 7,058,822? *Answer this question regarding infringement of the '822 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

    YES __✓__                    NO _____

If you answered "NO," please proceed to Question No. 4.

If you answered "YES," please mark the claims you found to be infringed:

Claim 4: __✓__     Claim 6: __✓__     Claim 8: __✓__     Claim 12: __✓__

Claim 13: __✓__

**Infringement Under The Doctrine of Equivalents**

**Skip Question 4 if you answered "YES" to Question 1 and found literal infringement of all asserted claims of U.S. Patent No. 6,092,194.**

4.  If you did not find that Secure Computing literally infringes some or all of the claims of U.S. Patent No. 6,092,194 under Question 1, do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing infringes any of those claims under the doctrine of equivalents? *Answer this question regarding infringement of the '194 patent under the doctrine of equivalents with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

    YES __✓__          NO _____

    If you answered "NO", please proceed to Question No. 5.

    If you answered "YES," please mark the claims you found to be infringed under the doctrine of equivalents:

| | | | |
|---|---|---|---|
| Claim 1: _____ | Claim 2: _____ | Claim 3: __✓__ | Claim 4: _____ |
| Claim 5: _____ | Claim 6: _____ | Claim 7: _____ | Claim 8: _____ |
| Claim 9: _____ | Claim 10:_____ | Claim 11:_____ | Claim 12:_____ |
| Claim 13:_____ | Claim 14: _____ | Claim 24:_____ | Claim 25:_____ |
| Claim 26:_____ | Claim 27: _____ | Claim 28: _____ | Claim 29:_____ |
| Claim 30:_____ | Claim 32:_____ | Claim 33:_____ | Claim 34:_____ |
| Claim 35:_____ | Claim 36:_____ | Claim 65:_____ | |

4

**Skip Question 5 if you answered "YES" to Question 2 and found literal infringement of all asserted claims of U.S. Patent No. 6,804,780.**

5.  If you did not find that Secure Computing literally infringes some or all of the claims of U.S. Patent No. 6,804,780 under Question 2, do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing infringes any of those claims under the doctrine of equivalents? *Answer this question regarding infringement of the '780 patent under the doctrine of equivalents with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

    YES ___✓___                    NO_____

    If you answered "NO," please proceed to Question No. 6.

    If you answered "YES," please mark the claims you found to be infringed under the doctrine of equivalents:

    Claim 1: __✓__    Claim 2: __✓__    Claim 3: __✓__    Claim 4: __✓__

    Claim 5: __✓__    Claim 6: __✓__    Claim 9: __✓__    Claim 10: __✓__

    Claim 11: __✓__   Claim 12: __✓__   Claim 13: __✓__   Claim 14: __✓__

    Claim 18: __✓__

**Skip Question 6 if you answered "YES" to Question 3 and found literal infringement of all asserted claims of U.S. Patent No. 7,058,822.**

6.  If you did not find that Secure Computing literally infringes some or all of the claims of U.S. Patent No. 7,058,822 under Question 3, do you find that Finjan Software has proven by a preponderance of the evidence that Secure Computing infringes any of those claims under the doctrine of equivalents? *Answer this question regarding infringement of the '822 patent under the doctrine of equivalents with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

    YES _____                    NO_____

    If you answered "NO," please proceed to Question No. 7.

    If you answered "YES," please mark the claims you found to be infringed under the doctrine of equivalents:

    Claim 4: ____    Claim 6: ____    Claim 8: ____    Claim 12:____

    Claim 13:____

**Willful Infringement**

7.    If your answer was "YES" for any of Questions 1, 2, 3, 4, 5, or 6, was Secure Computing's infringement willful?

YES __✓__                NO_____

B.      **Secure Computing's Patent Invalidity Claims Against Finjan Software**

**Anticipation**

8.      Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 6,092,194 are invalid because they are anticipated by prior art?  *Answer this question regarding validity of the '194 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing.  A "No" is a finding for Finjan.*

          YES _____              NO____✓_____

If you answered "NO," please proceed to Question No. 9.

If you answered "YES," please mark the claims you found to be anticipated by prior art:

Claim 1: _____      Claim 2: _____      Claim 3: _____      Claim 4: _____

Claim 5: _____      Claim 6: _____      Claim 7: _____      Claim 8: _____

Claim 9: _____      Claim 10:_____      Claim 11:_____      Claim 12:_____

Claim 13:_____      Claim 14: _____     Claim 24:_____      Claim 25:_____

Claim 26:_____      Claim 27: _____     Claim 28:_____      Claim 29:_____

Claim 30:_____      Claim 32:_____      Claim 33:_____      Claim 34:_____

Claim 35:_____      Claim 36:_____      Claim 65:_____

9.      Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 6,804,780 are invalid because they are anticipated by prior art? *Answer this question regarding validity of the '780 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing.  A "No" is a finding for Finjan.*

          YES _____              NO____✓_____

If you answered "NO," please proceed to Question No. 10.

If you answered "YES," please mark the claims you found to be anticipated by prior art:

Claim 1: _____      Claim 2: _____      Claim 3: _____      Claim 4: _____

Claim 5: _____      Claim 6: _____      Claim 9: _____      Claim 10:_____

Claim 11:_____      Claim 12:_____      Claim 13:_____      Claim 14:_____

Claim 18:_____

7

**10.** Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 7,058,822 are invalid because they are anticipated by prior art? *Answer this question regarding validity of the '822 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

YES _____                    NO ___✓___

If you answered "NO," please proceed to Question No. 11.

If you answered "YES," please mark the claims you found to be anticipated by prior art:

Claim 4: _____     Claim 6: _____     Claim 8: _____     Claim 12: _____

Claim 13: _____

**Obviousness**

**11.** Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 6,092,194 are obvious in light of the prior art? *Answer this question regarding validity of the '194 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

YES _____                    NO ___✓___

If you answered "NO", please proceed to Question No. 12.

If you answered "YES," please mark the claims you found to be obvious in light of the prior art:

Claim 1: _____     Claim 2: _____     Claim 3: _____     Claim 4: _____

Claim 5: _____     Claim 6: _____     Claim 7: _____     Claim 8: _____

Claim 9: _____     Claim 10: _____     Claim 11: _____     Claim 12: _____

Claim 13: _____     Claim 14: _____     Claim 24: _____     Claim 25: _____

Claim 26: _____     Claim 27: _____     Claim 28: _____     Claim 29: _____

Claim 30: _____     Claim 32: _____     Claim 33: _____     Claim 34: _____

Claim 35: _____     Claim 36: _____     Claim 65: _____

12. Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 6,804,780 are obvious in light of the prior art? *Answer this question regarding validity of the '780 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

YES _____          NO ___✓___

If you answered "NO", please proceed to Question No. 13.

If you answered "YES," please mark the claims you found to be obvious in light of the prior art:

Claim 1: _____    Claim 2: _____    Claim 3: _____    Claim 4: _____

Claim 5: _____    Claim 6: _____    Claim 9: _____    Claim 10:_____

Claim 11:_____    Claim 12:_____    Claim 13:_____    Claim 14:_____

Claim 18:_____

13. Do you find that Secure Computing has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 7,058,822 are obvious in light of the prior art? *Answer this question regarding validity of the '822 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

YES _____          NO _✓___

If you answered "NO", please proceed to Question No. 14.

If you answered "YES," please mark the claims you found to be obvious in light of the prior art:

Claim 4: _____    Claim 6: _____    Claim 8: _____    Claim 12:_____

Claim 13:_____

9

C.   **Damages for Finjan Software's Patent Infringement Claims Against Secure Computing**

**Webwasher Software**

14.   If you have found that one or more of the asserted claims of U.S. Patent No. 6,092,194, U.S. Patent No. 6,804,780, and/or U.S. Patent No. 7,058,822 are valid and infringed by Secure Computing's Webwasher Software, then what is the reasonable royalty rate to which Finjan Software has proven by a preponderance of the evidence and the amount of sales of the Webwasher Software that the royalty rate should be applied to?

_____16_____ %   $ __49,000,000__

**Webwasher Hardware Appliances**

15.   If you have found that one or more of the asserted claims of U.S. Patent No. 6,092,194, U.S. Patent No. 6,804,780, and/or U.S. Patent No. 7,058,822 are valid and infringed by Secure Computing's Webwasher Hardware Appliances, then what is the reasonable royalty rate to which Finjan Software has proven by a preponderance of the evidence and the amount of sales of the Webwasher Hardware Appliances that the royalty rate should be applied to?

_____8_____ %   $ __3,250,000__

**Cyberguard TSP Hardware Appliances**

16.   If you have found that one or more of the asserted claims of U.S. Patent No. 6,092,194, U.S. Patent No. 6,804,780, and/or U.S. Patent No. 7,058,822 are valid and infringed by Secure Computing's Cyberguard TSP Hardware Appliances, then what is the reasonable royalty rate to which Finjan Software has proven by a preponderance of the evidence and the amount of sales of the Cyberguard TSP Hardware Appliances that the royalty rate should be applied to?

_____8_____ %   $ __13,500,000__

**D.**    **Secure Computing Corporation's ("Secure Computing") Patent Infringement Claims Against Finjan Software, Ltd. and Finjan Software, Inc. ("Finjan")**

### Literal Infringement

17.    Do you find that Secure Computing has proven by a preponderance of the evidence that Finjan literally infringes any of the asserted claims of U.S. Patent No. 7,185,361? *Answer this question regarding infringement of the '361 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

YES _____            NO __✓__

If you answered "NO," please proceed to Question No. 18.

If you answered "YES," please mark the claims you found to be infringed:

Claim 1: _____    Claim 2: _____    Claim 3: _____    Claim 4: _____

Claim 5: _____    Claim 7: _____    Claim 8: _____    Claim 9: _____

Claim 10:_____    Claim 11:_____    Claim 12:_____    Claim 14:_____

Claim 15:_____

18.    Do you find that Secure Computing has proven by a preponderance of the evidence that Finjan literally infringes Claim 37 of U.S. Patent No. 6,357,010? *Answer this question regarding infringement of the '010 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

YES _____            NO __✓__

11

**Inducing Infringement**

**Skip Question 19 if you answered "NO" to Question 17 and did not find literal infringement of the '361 patent.**

19.  Do you find that Secure Computing has proven by a preponderance of the evidence that Finjan has induced infringement of any of the asserted claims of U.S. Patent No. 7,185,361? *Answer this question regarding inducing infringement of the '361 patent with "Yes" or "No." A "Yes" is a finding for Secure Computing. A "No" is a finding for Finjan.*

YES _____        NO_____

If you answered "NO," please proceed to Question No. 20.

If you answered "YES," please mark the claims you found to be infringed by inducement:

Claim 1: _____        Claim 2: _____        Claim 3: _____        Claim 4: _____

Claim 5: _____        Claim 7: _____        Claim 8: _____        Claim 9: _____

Claim 10:_____        Claim 11:_____        Claim 12:_____        Claim 14:_____

E.    **Finjan's Patent Invalidity Claims Against Secure Computing**

**Anticipation**

20.  Do you find that Finjan has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 7,185,361 are invalid because they are anticipated by prior art? *Answer this question regarding validity of the '361 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

YES _____        NO__✓____

If you answered "NO," please proceed to Question No. 21.

If you answered "YES," please mark the claims you found to be anticipated by prior art:

Claim 1: _____        Claim 2: _____        Claim 3: _____        Claim 4: _____

Claim 5: _____        Claim 7: _____        Claim 8: _____        Claim 9: _____

Claim 10:_____        Claim 11:_____        Claim 12:_____        Claim 14:_____

Claim 15:_____

21.   Do you find that Finjan has proven by clear and convincing evidence that Claim 37 of U.S. Patent No. 6,357,010 is invalid because it is anticipated by prior art? *Answer this question regarding validity of the '010 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

YES _____          NO___✓___

If you answered "NO", please proceed to Question No. 22.

**Obviousness**

22.   Do you find that Finjan has proven by clear and convincing evidence that any of the asserted claims of U.S. Patent No. 7,185,361 are obvious in light of the prior art? *Answer this question regarding validity of the '361 patent with "Yes" or "No." A "Yes" is a finding for Finjan. A "No" is a finding for Secure Computing.*

YES _____          NO___✓___

If you answered "NO," please proceed to Question No. 23.

If you answered "YES," please mark the claims you found to be obvious in light of the prior art:

| Claim 1: _____ | Claim 2: _____ | Claim 3: _____ | Claim 4: _____ |
| Claim 5: _____ | Claim 7: _____ | Claim 8: _____ | Claim 9: _____ |
| Claim 10: _____ | Claim 11: _____ | Claim 12: _____ | Claim 14: _____ |
| Claim 15: _____ | | | |

23.   Do you find that Finjan has proven by clear and convincing evidence that Claim 37 of U.S. Patent No. 6,357,010 is invalid because it is obvious in light of the prior art?

YES _____          NO___✓___

13

**F.   Damages for Secure Computing's Patent Infringement Claims Against Finjan**

24.   If you have found that one or more of the asserted claims of U.S. Patent No. 7,185,361 are valid and infringed by Finjan's Vital Security NG Appliances, then what is the reasonable royalty rate to which Secure Computing has proven by a preponderance of the evidence and the amount of sales that the royalty rate should be applied to?

_____ %   $_____

25.   If you have found that Claim 37 of U.S. Patent No. 6,357,010 is valid and infringed by Finjan's Vital Security for Documents, then what is the reasonable royalty rate to which Secure Computing has proven by a preponderance of the evidence and the amount of sales that the royalty rate should be applied to?

_____ %   $_____



# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-369-GMS |
| v. | ) ) ) | |
| SECURE COMPUTING CORPORATION, a Delaware corporation; CYBERGUARD CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) | |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan Software, Ltd. ("Plaintiff" or "Finjan") alleges as follows:

### THE PARTIES

1. Plaintiff Finjan is a corporation organized and existing under the laws of Israel, with its principal place of business at Hamachshev St. 1, New Industrial Area, Netanya, 42504, Israel.

2. On information and belief, Defendant Secure Computing Corporation ("Secure Computing") is a corporation organized and existing under the laws of the State of Delaware, with its corporate headquarters at 4810 Harwood Road, San Jose, California 95124.

3. On information and belief, Defendant Cyberguard Corporation ("Cyberguard") is a corporation organized and existing under the laws of the State of Delaware and a wholly owned subsidiary of Secure Computing, with its corporate headquarters at 4810 Harwood Road, San Jose, California 95124.

4. On information and belief, Defendant Webwasher AG ("Webwasher") is a corporation organized and existing under the laws of Germany and a wholly owned subsidiary of Cyberguard, with a branch office at 5201 Great America Parkway, Suite 432, Santa Clara, CA 95054.

## JURISDICTION AND VENUE

5. This action arises under the Patent Act, 35 U.S.C. §271 *et seq.* This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§1331 and 1338.

6. Venue in this judicial district is proper under 28 U.S.C. §§ 1391 (b) and (c) and/or 28 U.S.C. § 1400(b). Personal jurisdiction over defendants comports with the United States Constitution and § 3104 of the Delaware Code because defendants are Delaware corporations and/or have and continue to infringe, contributorily infringe and/or induce the infringement of U.S. Patent No. 6,092,194, U.S. Patent No. 6,804,780 and U.S. Patent No. 7,058,822 in this district.

## PLAINTIFF'S PATENT

7. On July 18, 2000, United States Patent No. 6,092,194 ("the '194 Patent"), entitled SYSTEM AND METHOD FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Shlomo Touboul. Finjan was assigned all ownership rights to the '194 Patent. A true and correct copy of the '194 Patent is attached to this complaint as Exhibit A and is incorporated by reference herein.

8. On October 12, 2004, United States Patent No. 6,804,780 ("the '780 Patent"), entitled SYSTEM AND METHOD FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Shlomo Touboul. Finjan was assigned all

ownership rights to the '780 Patent. A true and correct copy of the '780 Patent is attached to this complaint as Exhibit B and is incorporated by reference herein.

9. On June 6, 2006, United States Patent No. 7,058,822 ("the '822 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered and David R. Kroll. Finjan was assigned all ownership rights to the '822 Patent. A true and correct copy of the '822 Patent is attached to this complaint as Exhibit C and is incorporated by reference herein.

10. The '194 Patent, '780 Patent and '822 Patent are directed to a system and method for protecting networks and computers from hostile downloadable executable application programs.

## PATENT INFRINGEMENT

11. On information and belief, defendant Secure Computing is in the business of developing and distributing network and systems security solutions to organizations. Secure Computing has and continues to infringe the '194 Patent, '780 Patent and '822 Patent by making, using, selling, distributing, advertising and marketing products, including but not limited to the Webwasher Secure Content Management ("SCM") suite, that infringe the '194 Patent, '780 Patent and '822 Patent.

12. On information and belief, defendant Cyberguard is in the business of developing and distributing information security solutions. Cyberguard has and continues to infringe the '194 Patent, '780 Patent and '822 Patent by making, using, selling, distributing, advertising and marketing products, including but not limited to the Webwasher Secure Content Management ("SCM") suite, that infringe the '194 Patent, '780 Patent and '822 Patent.

13. On information and belief, defendant Webwasher is in the business of developing and distributing Internet and email content security and filtering solutions. Webwasher has and

continues to infringe the '194 Patent, '780 Patent and '822 Patent by making, using, selling, distributing, advertising and marketing products, including but not limited to the Webwasher Secure Content Management ("SCM") suite, that infringe the '194 Patent, '780 Patent and '822 Patent.

### FIRST CAUSE OF ACTION

#### (Infringement of the '194 Patent)

14. Finjan realleges each and every allegation set forth in Paragraphs 1 through 13, inclusive, and incorporates them herein by reference.

15. Defendants Secure Computing, Cyberguard and Webwasher have been and continue to infringe, contributorily infringe, and/or induce the infringement of the '194 Patent by making, using, selling and/or offering to sell products which infringe the '194 Patent, including but not limited to the Webwasher SCM suite, and will continue to do so until enjoined by this Court.

16. Defendants' infringement of the '194 Patent has been and continues to be willful and deliberate.

17. Defendants' infringement of the '194 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

### SECOND CAUSE OF ACTION

#### (Infringement of the '780 Patent)

18. Finjan realleges each and every allegation set forth in Paragraphs 1 through 17, inclusive, and incorporates them herein by reference.

19. Defendants Secure Computing, Cyberguard and Webwasher have been and continue to infringe, contributorily infringe, and/or induce the infringement of the '780 Patent by making, using, selling and/or offering to sell products which infringe the '780 Patent, including but not limited to the Webwasher SCM suite, and will continue to do so until enjoined by this Court.

20. Defendants' infringement of the '780 Patent has been and continues to be willful and deliberate.

21. Defendants' infringement of the '780 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Infringement of the '822 Patent)

22. Finjan realleges each and every allegation set forth in Paragraphs 1 through 21, inclusive, and incorporates them herein by reference.

23. Defendants Secure Computing, Cyberguard and Webwasher have been and continue to infringe, contributorily infringe, and/or induce the infringement of the '822 Patent by making, using, selling and/or offering to sell products which infringe the '822 Patent, including but not limited to the Webwasher SCM suite, and will continue to do so until enjoined by this Court.

24. Defendants' infringement of the '822 Patent has been and continues to be willful and deliberate.

25. Defendants' infringement of the '822 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Finjan prays that the Court grant the following relief and judgment:

A.    A preliminary and permanent injunction against Defendants Secure Computing, Cyberguard and Webwasher and its respective officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing, contributorily infringing, or inducing the infringement of the '194 Patent, '780 Patent and '822 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. §283;

-5-

B.    An award to Finjan of such damages as it shall prove at trial against Defendants Secure Computing, Cyberguard and Webwasher, that are adequate to fully compensate it for their infringement of the '194 Patent, '780 Patent and '822 Patent, said damages to be no less than a reasonable royalty;

C.    An award to Finjan for willful infringement against Defendants Secure Computing, Cyberguard and Webwasher of three times the damages so determined, as provided by 35 U.S.C. §284, together with prejudgment interest from the date infringement of the '194 Patent, '780 Patent and/or '822 Patent began;

D.    A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorney's fees, as provided by 35 U.S.C. §285;

E.    Such further and other relief as the Court and/or jury may deem proper and just.

### DEMAND FOR JURY TRIAL

Plaintiff Finjan Software, Ltd. hereby demands a trial by jury on all issues triable by a jury.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. Andre                              By  /s/ Philip A. Rovner
Perkins Coie LLP                               Philip A. Rovner (#3215)
101 Jefferson Drive                            Hercules Plaza
Menlo Park, California  94025-1114             P. O. Box 951
(650) 838-4300                                 Wilmington, DE  19899
                                               (302) 984-6000
                                               provner@potteranderson.com
Dated:  April 5, 2007
787724                                     Attorneys for Plaintiff
                                           Finjan Software, Ltd.

-6-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 10, 2007, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY

Frederick L. Cottrell, III, Esq.
Gregory E. Stuhlman, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com;
stuhlman@rlf.com

I hereby certify that on April 10, 2007 I have sent by Federal Express the

foregoing document to the following non-registered participants:

Jake M. Holdreith, Esq.
Christopher A. Seidl, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
jmholdreith@rkmc.com
caseidl@rkmc.com

      /s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 06-369 GMS |
| v. | ) ) ) | **PUBLIC VERSION** |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S TRIAL BRIEF

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
(650) 838-4300

Dated: January 7, 2008
Public Version: January 14, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiff/Counterdefendant
Finjan Software, Ltd., and Counterdefendant
Finjan Software, Inc.*

## TABLE OF CONTENTS

I.    THE NATURE OF THE CASE ................................................................................1

II.   THE FACTS AT ISSUE........................................................................................2

    A.    The Finjan Patents.................................................................................2

    B.    Defendants' Patents ..............................................................................4

III.  FACTS AND THEORIES REGARDING CLAIMS AND DEFENSES ...........................4

    A.    The Webwasher Product Infringes the Finjan Patents ...............................4

        1.    The Webwasher Product Infringes the '194 Patent .......................5

        2.    The Webwasher Product Infringes the '780 Patent .......................6

        3.    The Webwasher Product Infringes the '822 Patent .......................7

        4.    Defendants Willfully Infringed the Finjan Patents ........................8

    B.    The Finjan Patents are Valid and Enforceable.........................................8

        1.    Prior Art Does Not Invalidate the Finjan Patents .........................9

        2.    Defendants Put Forth No Evidence Regarding
            the Section 112 Claims .............................................................9

        3.    Defendants Put Forth No Evidence of Inequitable Conduct
            by Finjan ...............................................................................10

        4.    The Priority Date of Finjan's Provisional Patent Applications
            is Irrelevant ..........................................................................10

    C.    No Finjan Product Infringes Defendants' Patents ...................................11

        1.    Finjan Does Not Infringe the '361 Patent..................................11

        2.    Finjan Did Not Infringe the '010 Patent. ..................................11

    D.    Defendants' Patents are Invalid ...........................................................12

        1.    Prior Art Invalidates the Defendants' Patents.............................12

        2.    Defendants Will Present No Rebuttal Evidence Showing Validity...........13

    E.    Miscellaneous Defenses......................................................................13

IV.   DAMAGES.......................................................................................................13

V.    ANTICIPATED MOTIONS FOR DIRECTED VERDICT ...........................................14

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Al-Site Corp. v. VSI Intern., Inc.,*
    174 F.3d 1308 (Fed. Cir. 1999)...................................................................................9

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.,*
    55 F.3d 615 (Fed. Cir. 1995)....................................................................................7, 8

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,*
    229 F.3d 1120 (Fed. Cir. 2000)..................................................................................9

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,*
    381 F.3d 1371 (Fed. Cir. 2004).................................................................................10

*FMC Corp. v. Manitowoc Co.,*
    835 F.2d 1411 (Fed. Cir. 1987).................................................................................10

*In re Seagate Tech., L.L.C.,*
    497 F.3d 1360 (Fed. Cir. 2007)..................................................................................8

*Lewmar Marine, Inc. v. Barient, Inc.,*
    827 F.2d 744 (Fed. Cir. 1987)....................................................................................9

*nCube Corp. v. Seachange Intern., Inc.,*
    436 F.3d 1317 (Fed. Cir. 2006)..................................................................................4

*Paice LLC v. Toyota Motor Corp.,*
    504 F.3d 1293 (Fed. Cir. 2007)..................................................................................4

*Ruiz v. A.B. Chance Co.,*
    234 F.3d 654 (Fed. Cir. 2000)....................................................................................9

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.,*
    204 F.3d 1360 (Fed. Cir. 2000)..................................................................................8

## STATUTES

35 U.S.C. §§ 102................................................................................................................8

35 U.S.C. §§ 103................................................................................................................8

35 U.S.C. § 112...........................................................................................................8, 9, 14

## I.    THE NATURE OF THE CASE

Finjan Software, Ltd. And Finjan Software, Inc. (collectively "Finjan") will present evidence at trial proving that Defendants Secure Computing Corporation, Cyberguard Corporation and Webwasher AG ("Defendants") willfully infringed Finjan's three patents-in-suit: U.S. Patent Nos. 6,092,194 ("the '194 Patent"), 6,804,780 ("the '780 Patent), and 7,058,822 ("the '822 Patent") (collectively the "Finjan Patents"). Finjan will further present evidence of the damages that Finjan is entitled to recover as a result of Defendants' infringement of these patents.

The Finjan Patents are in the field of computer network security and specifically relate to systems for analyzing incoming files at a gateway and, where malicious behavior is detected, blocking those files at the gateway level. Under the Finjan Patents, in situations where the system is unable to determine whether the behavior is malicious, the system creates and sends a protective sandbox to the client with the file to allow for further analysis when the file is actually executed. Finjan has asserted Claims 1-14, 24-30, 32-36 and 65 of the '194 Patent, Claims 1-18 of the '780 Patent and Claims 1, 2, 4, 6, 8, 9, 12, 13, 15-18, 20-22, 24, 26-29, 31, 32, 34, and 35 of the '822 Patent.

Defendants counterclaimed seeking a declaratory judgment that Defendants do not infringe the Finjan Patents and/or that the Finjan Patents are invalid and/or unenforceable.

Defendants counterclaimed for patent infringement of U.S. Patent Nos. 7,185,361 ("the '361 Patent") and 6,357,010 ("the '010 Patent") (collectively "Defendants' Patents") owned by Defendants. Generally, the '361 Patent involves a system for allowing a firewall to authenticate users without using a local database while the '010 Patent involves controlling access to documents.

Finjan counterclaimed seeking a declaratory judgment that Finjan does not infringe the Defendants' Patents and/or that Defendants' Patents are invalid.

## II.    THE FACTS AT ISSUE

### A.    The Finjan Patents

The Finjan Patents are pioneering patents in the field of behavior based network security. In a typical network security system, an external network such as the Internet is coupled to an internal network through a server containing a network security system known as a gateway. A user at a computer connected to the internal network accesses content on an external network, such as an Internet webpage, by clicking on a link for a desired webpage. When the user clicks the link, a request is sent from the user's computer, or client, to the gateway. The gateway then forwards the request to the server hosting the webpage. In response, the content on the webpage is delivered to the gateway which sends the content to the client. During the delivery of the webpage to the client, the network security system at the gateway intercepts the response and determines whether or not the content of the webpage is in any way malicious.

The interception of the webpage by the gateway is a typical method for protecting a network from threats on the Internet. These threats are commonly referred to as viruses because they infect and damage the computer network in the same way that a cold or flu infects a person. Viruses come in a variety of shapes and pose a serious threat to the integrity of every computer network connected to the Internet.

The traditional method for protecting a network against viruses at the gateway is signature-based scanning. A signature is a unique "fingerprint" that identifies a particular virus. Traditional network security systems maintain a database of virus signatures. These databases are periodically updated on a subscription basis. When a file is received at the gateway, the security system scans the file to determine whether or not it contains one of the signatures stored in the database. If the file contains a signature matching one in the database, the file is flagged as having a virus and appropriate measures are taken, including denying the file access to the network.

Unfortunately, signature-based scanning only protects a network from known viruses corresponding to identifiable signatures. When a new virus is created and unleashed onto the

Internet, network security systems using signature-based scanning are unable to protect the network until a new signature is developed for the virus and uploaded to the signature database through an update. Meanwhile, between the release of the virus and the creation and distribution of the corresponding signature, the network is vulnerable to the new virus because there is no way for the network security system to detect the virus.

To address this issue, the inventors of the Finjan Patents created a revolutionary invention. Rather than examining a file to determine whether it includes a virus signature, the Finjan invention detects a virus by observing the file's behavior. While each virus is written differently (and therefore requires a different signature), the vast majority of viruses attempt similar types of operations. In a network security system, the Finjan invention examines the behavior of the incoming file, rather than the signature, and determines whether or not the file is malicious based on that analysis. Therefore, the computer network is protected against all viruses, whether known or unknown, that perform malicious operations.

For instance, several thousand viruses known today attempt to delete all the files stored on a computer. In order to prevent a new virus of this type from deleting all the files stored on the computers in a network, the computer network's gateway security database must contain a signature for the newly created virus so that the scanner can identify and block the virus. If the computer network's security database does not contain a signature for the new virus, the computer will be vulnerable until a signature is created to identify the virus. A system employing Finjan's novel technology will not have that problem because the system will analyze the behavior of the file containing the new virus using Finjan's technology and will determine that the received file performs an operation to delete all of the files stored on the computer. Consequently, since deleting all files stored on a computer is a behavior typically associated with a virus, the security system will block the file even though the virus has not yet been identified and does not correspond to a known signature.

The asserted claims of Finjan's '194 Patent generally relate to the behavior-based scanning feature discussed above. These claims cover the prevention of a file from executing on

3

a network if its behavior is determined to be malicious or potentially malicious. *See generally* the '194 Patent. Building on that concept, the asserted claims of Finjan's '780 Patent increase the efficiency of the system implementing the technology disclosed in the '194 Patent by assigning a unique ID to the file found to be malicious. Once the unique ID has been assigned to the malicious file, the system will identify the malicious file based on this ID without having to analyze the behavior of the file in subsequent download attempts. *See generally* the '780 Patent. Once again building on the concept in the '194 Patent, the asserted claims of Finjan's '822 Patent allow a system that does not block the file at the gateway to identify suspicious files and form and send a sandbox to the client surrounding the file which monitors the operations of the file. *See generally* the '822 Patent.

### B.    Defendants' Patents

Defendants' Patents are directed to various administrative tasks typically associated with a company. For instance, the '361 Patent involves a system that allows a firewall to use the database of an existing server rather than importing the data on to the firewall itself. The '010 Patent is directed to a system that controls access to documents. Both of these technologies have been known in the field for quite sometime and are very limited in scope.

## III.    FACTS AND THEORIES REGARDING CLAIMS AND DEFENSES

### A.    The Webwasher Product Infringes the Finjan Patents.

Finjan will present evidence showing that Defendants' Webwasher product (and the Cyberguard TSP product including the infringing Webwasher technology) (collectively "Webwasher product") satisfies each of the elements of the asserted claims of the Finjan Patents and therefore infringes either literally or under the doctrine of equivalents the Finjan Patents. *See e.g., nCube Corp. v. Seachange Intern., Inc.,* 436 F.3d 1317, 1323 (Fed. Cir. 2006); *Paice LLC v. Toyota Motor Corp.,* 504 F.3d 1293, 1305-7 (Fed. Cir. 2007).

To prove infringement, Finjan will show by a preponderance of the evidence that the Webwasher product infringes at least one claim of the Finjan Patents. Finjan's primary sources of evidence are as follows:

(1) Defendants' internal documents such as source code, white papers, manuals, internal
    memoranda and communications;

(2) the sworn testimony of Defendants including past and present employees;

(3) the sworn testimony of technical expert witnesses; and

(4) publicly available information such as Defendants' marketing and promotional
    materials and information found on Defendant Secure Computing Corporation's
    website.

### 1.    The Webwasher Product Infringes the '194 Patent.

The claims of Finjan's '194 Patent are generally directed to a method, system and
program code for receiving a Downloadable addressed to a client at a gateway, comparing
Downloadable security profile data pertaining to the Downloadable to a security policy (where
the Downloadable security profile data includes a list of suspicious computer operations) and
blocking the Downloadable if the security policy is violated.[1]  Defendants' documents and
testimony unambiguously                         REDACTED


        Specifically, Defendants' documents indicate        REDACTED

            Further, Defendants' documents
                                REDACTED
                                                    In order to make this determination, the

Webwasher product analyzes                  REDACTED
                                The Webwasher product then
                            REDACTED

---

[1] Due to the space constraints, only aspects of certain independent claims will be discussed.

5

Based on this Court's claim construction order as well as the technical expert reports and Defendants' technical expert's testimony in this case, it appears that Defendants' only non-infringement position is that the Webwasher product          REDACTED

Defendants' technical expert witness

REDACTED

However, Finjan will demonstrate that Defendants' proposed definition of "list" is inconsistent with the patent claims, specification and prosecution history. Further, Finjan will show that Defendants' position regarding the definition of "list" is inconsistent with Defendants' technical expert witness' own report and testimony as well as the Webwasher product source code and other documentary evidence. Moreover, even if Defendants' proposed narrow definition of "list" was accepted, there is abundant evidence that the Webwasher product would still infringe the claims of the '194 Patent.

**2.    The Webwasher Product Infringes the '780 Patent.**

The claims of Finjan's '780 Patent are generally directed to a method, system and program code for generating a Downloadable ID. The network security system generates the Downloadable ID by obtaining a Downloadable that includes one or more references to software components and then hashing the Downloadable together with its software components.

Defendants' documents

REDACTED

As such, the Webwasher product    REDACTED

Defendants'

non-infringement argument is that          REDACTED

6

REDACTED                    .[2] However, Defendants'

REDACTED

### 3.    The Webwasher Product Infringes the '822 Patent.

Finjan's '822 patent is generally directed at methods and systems that check downloadable information for executable code.  Further, the methods and system disclosed in Finjan's '822 Patent form a sandbox around the executable code and send it to the client.  The sandbox is used as a protective environment in which malicious and potentially malicious operations are intercepted and further analyzed by the system.

The Webwasher product infringes the '822 Patent in part        REDACTED

Defendants'

REDACTED

Defendants do not deny that the Webwasher product has the functionality described in the claims of Finjan's '822 Patent.  Rather, Defendants' position is that the Webwasher product does not infringe because        REDACTED

In other words,

REDACTED                                This interpretation is not supported by the patent claims, specification or prosecution history.

---

2        REDACTED

Defendants' position is also inconsistent             REDACTED

                                              Further, Defendants' position is incorrect as

a matter of law because the Webwasher product need only perform the steps of the method

sometimes in order to be found infringing. *Bell Commc'ns*, 55 F.3d at 622-23.

### 4.    Defendants Willfully Infringed the Finjan Patents.

Finjan will present evidence demonstrating that Defendants were aware of the Finjan

Patents, and understood that the Webwashwer product fell within the scope of the Finjan Patents.

Despite being aware that the Webwasher product was infringing valid Finjan Patents, Defendants

continued their business in reckless disregard of its infringing activity with no good faith basis

for believing that they were not infringing the Finjan Patents. *See e.g., In re Seagate Tech., LLC,*

497 F.3d 1360 (Fed. Cir. 2007). Defendants have not provided any evidence in this case that it

acted as a responsible company with respect to the Finjan Patents, and did not even obtain

opinions of counsel to guide it in its activity.

### B.    The Finjan Patents are Valid and Enforceable.

Defendants assert that Sections 102, 103, and 112 of the Patent Act invalidate the Finjan

Patents. *See* 35 U.S.C. §§ 102, 103, and 112. Defendants further assert that the '194 Patent and

'780 Patent are unenforceable due to inequitable conduct.

Defendants have a particularly difficult burden of proof for their invalidity defense

because they "must overcome the statutory presumption of validity that attaches to an issued

patent by proving invalidity by facts supported by clear and convincing evidence." *Ultra-Tex*

*Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000). Ultimately,

Defendants have "the added burden of overcoming the deference that is due to a qualified

government agency presumed to have properly done its job, which includes one or more

examiners who are assumed to have some expertise in interpreting the references and to be

familiar from their work with the level of skill in the art and whose duty it is to issue only valid

patents." *Id.*

1.    **Prior Art Does Not Invalidate the Finjan Patents.**

Defendants rely on insubstantial anticipation challenge and different combinations of references in support of their obviousness challenge for the '194 Patent and the '780 Patent. Defendants rely upon a single reference for their anticipation challenge of the '822 Patent, even though their expert admits that not all of the elements are found in the reference. Many of the obviousness challenges are based on combinations of references that are not specifically addressed in the arguments of Defendants' technical expert witnesses' expert report, but were included only in the exhibits attached to his report. Finjan has addressed and refuted the arguments Defendants' expert presents in his technical expert report in the rebuttal technical expert report of Finjan's expert witness. *See e.g., Lewmar Marine, Inc. v. Barient*, Inc., 827 F.2d 744 (Fed. Cir. 1987); *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1323-5 (Fed. Cir. 1999).

Furthermore, Finjan will present extensive evidence of objective indications of non-obviousness of the Finjan patents also known as secondary considerations of non-obviousness. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000). "Court precedents clearly hold that secondary considerations, when present, must be considered in determining obviousness." *Ruiz*, 234 F.3d at 668. Finjan will present evidence of: (1) commercial success, (2) a long-felt need for the invention, (3) copying of the invention by others in the field, and (4) the licensing of the patent by third parties. *Id.* at 663; *Brown*, 229 F.3d at 1129-31.

2.    **Defendants Put Forth No Evidence Regarding the Section 112 Claims.**

Defendants' claims that the Finjan Patents are invalid because they are indefinite, lack an adequate written description and/or are not enabled pursuant to Section 112 are not supported by evidence disclosed during discovery. *See* 35 U.S.C. § 112. Defendants have provided absolutely no support for these claims in their technical expert report, and there has been no testimony from any expert witness in this case that any claim of the Finjan Patents is invalid pursuant to 35 U.S.C. § 112.

### 3.     Defendants Put Forth No Evidence of Inequitable Conduct by Finjan.

Defendants allege that the Finjan '194 Patent and '780 Patent were obtained by inequitable conduct.  To establish a claim of inequitable conduct, Defendants must show by clear and convincing evidence that: "(1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411 (Fed. Cir. 1987).  Defendants have not provided any expert testimony to support their claim of inequitable conduct based on prior art.

Defendants also allege inequitable conduct by contending that Finjan was required to file as a large entity after entering an agreement to have Cisco bundle Finjan's software with another product.  An otherwise qualifying small entity patent holder is only required to claim a large entity status if it licenses the actual patent to another entity that has over 500 employees.  *See e.g., Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371 (Fed. Cir. 2004). Following the bundling agreement with Cisco, Finjan maintained small entity status because the agreement was to bundle software, not to license the patents.  Further, Defendants have not provided any evidence that Finjan acted in a manner to intentionally mislead the PTO, and did not even attempt to depose the attorney(ies) that prosecuted any of the Finjan Patents.

### 4.     The Priority Date of Finjan's Provisional Patent Applications is Irrelevant.

Defendants assert that the Finjan Patents cannot claim the benefit of the filing date of their respective provisional applications.  The benefit of the priority date from the provisional applications is irrelevant and presents a moot question because no prior art reference put forth by Defendants is after the dates contained in the provisional applications.  Nonetheless, all of the evidence presented in this case supports Finjan's position that its patents are entitled to claim the benefit of the provisional application filing date.

### C.    No Finjan Product Infringes Defendants' Patents.

Defendants continue to allege literal infringement of Defendants' Patents under theories of direct and indirect (inducing and contributory) infringement. However, Defendants have not even attempted to put forward any evidence of indirect infringement, and its only technical expert has not even offer an opinion regarding indirect infringement. Accordingly, these claims are not expected to make it to the jury. Likewise, Defendants continue to assert infringement under the doctrine of equivalents, even though there is absolutely no expert testimony presented in this case regarding such claims.

#### 1.    Finjan Does Not Infringe the '361 Patent.

Defendants allege that Finjan infringes claims 1-5, 7-12 and 14-15 of the '361 Patent. Defendants' technical expert witness opined that he "find[s] every limitation of the asserted claims of the '361 Patent in [Finjan's] Vital Security NG appliances." However, Finjan will present evidence that Defendants' infringement argument contains numerous errors. One of those errors is fatal because Defendants' own technical expert witness admitted that an element of the asserted claims is not contained within the Vital Security NG appliances. Moreover, the Vital Security Appliances are not firewalls – a required element of the claims of the '361 Patent. Further, Defendants' technical expert witnesses admitted that the NG appliances do not perform the method claim of the '361 Patent as required by the claims, specification and prosecution history. Finally, and as set forth in Finjan's motion *in limine*, Defendants' technical expert witness should be precluded from testifying as to why he believes the Vital Security NG appliances infringe each element because such discussion is not disclosed in his report.

In addition, Finjan will present conclusive evidence of non-infringement of the '361 Patent from internal company documents, sworn testimony and expert opinion testimony.

#### 2.    Finjan Did Not Infringe the '010 Patent.

Defendants allege that Finjan infringes claim 37 of the '010 Patent. The Finjan product which Defendants accuse of infringing the '010 Patent is no longer sold by Finjan. Finjan will present evidence that several elements of Claim 37 are not found in the discontinued Finjan

product. Moreover, because such an opinion is not disclosed in his expert report, Defendants'

technical expert should not be able to testify as to his opinion that the discontinued Finjan

product infringes Claim 37. Further, Defendants' infringement claim regarding the '010 Patent

will be shown to be without merit because Defendants' expert uses only three marketing flyers in

his analysis, one of which is about a different product and another that was published by a

different company. Defendants' expert chose not to examine the Finjan product's source code or

review technical documents, and as such his proposed testimony is unreliable.

In addition, Finjan will present conclusive evidence of non-infringement of the '010

Patent from internal company documents, sworn testimony and expert opinion testimony.

**D.     Defendants' Patents are Invalid.**

Finjan is required to prove by clear and convincing evidence that Defendants' Patents are

invalid. As detailed below, several products that include all of the limitations of the asserted

claims existed at least one year prior to the filing date of Defendants' Patents and thereby render

Defendants' Patents invalid.

**1.     Prior Art Invalidates the Defendants' Patents**

In regard to the '361 Patent, there are several prior art references that invalidate the

asserted claims. For example, the CheckPoint Firewall product introduced in the market more

than one year prior to the filing date of the '361 Patent contains all of the limitations of the

asserted claims in the '361 Patent. In particular, the CheckPoint manual discloses a server which

has an LDAP database and a firewall that uses the information stored in the LDAP database to

authorize network resource requests. In addition to evidence regarding the CheckPoint Firewall,

Finjan will present evidence that several other references can be combined to invalidate all of the

asserted claims of the '361 Patent.

The '010 Patent is also invalid in light of the prior art and Defendant cannot offer

evidence to the contrary. The SESAME system introduced over a year prior to the filing date of

the '010 Patent contains the exact same limitations found in the asserted claim of the '010 Patent.

Specifically, Finjan will introduce into evidence a technical paper which discloses that SESAME

is a role-based authorization system which controls access to documents. In addition to the SESAME system, Finjan will present evidence that several other references disclose the role-based access control to documents claimed in the '010 Patent.

### 2. Defendants Will Present No Rebuttal Evidence Showing Validity.

Finjan served Defendants with an expert report disclosing evidence of the invalidity of the Defendants' Patents. Defendants did not submit a technical expert report rebutting Finjan's expert opinion that Defendants' Patents are invalid. Therefore, Defendants cannot offer rebuttal testimony at trial on the topic.

### E. Miscellaneous Defenses

During the course of preparing the pre-trial order and accompanying schedules and documents, Defendants raised a couple of defenses that have never been at issue in this case. Defendants contend that Finjan is barred from alleging infringement by inducement and/or contributory infringement because the underlying alleged direct infringement is licensed and/or released. Finjan is not alleging indirect infringement against Defendants, so it is uncertain why this defense is being raised. Further, Defendants assert that Finjan's infringement claims are barred by the doctrine of patent exhaustion. Defendants have no reasonable grounds for this defense. However, because there has been no evidence of this nature presented in this case, it is expected that Defendants will present no evidence regarding these defenses at trial.

## IV. DAMAGES

Finjan seeks an 18% royalty on past sales of Defendants' infringing software products and 11% on Defendants past sales of infringing hardware appliances. Finjan's evidence includes, *inter alia*, expert testimony, Defendants' financial documents and the fact that the Finjan Patents are pioneering patents in the field of behavior-based network security. Finjan will also offer evidence that it is entitled to other damages, including pre-judgment interest, treble damages, attorneys' fees and costs.

Defendants seek a 2% royalty on Finjan's allegedly infringing products.

## V.   ANTICIPATED MOTIONS FOR DIRECTED VERDICT

Finjan anticipates that it will file the following motions for directed verdict:

(1)   Motion that Defendants infringe the Finjan Patents, and that such infringement was willful.

(2)   Motion that the Finjan Patents are valid in light of the prior art because Defendants cannot prove that each element of the asserted claims are found in the prior art.

(3)   Motion that the Finjan Patents are valid because Defendants cannot provide evidence of invalidity pursuant to 35 U.S.C. § 112.

(4)   Motion that the Finjan Patents are enforceable because Defendants cannot provide evidence of inequitable conduct.

(5)   Motion that Finjan does not infringe the '361 Patent because Defendants cannot prove that the Finjan Vital Security NG appliances contains each limitation of the '361 Patent.

(6)   Motion that Finjan does not infringe the '010 Patent because Defendants cannot prove that the discontinued Finjan products contain each limitation on the '010 Patent.

(7)   Motion that the Defendants' Patents are invalid in light of the prior art.

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Paul J. Andre
Lisa Kobialka
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA  94025-1114
(650) 838-4300

Dated: January 7, 2008
Public Version:  January 14, 2008
842582

By:  /s/ Philip A. Rovner
        Philip A. Rovner (#3215)
        Hercules Plaza
        P. O. Box 951
        Wilmington, DE  19899
        (302) 984-6000
        provner@potteranderson.com

*Attorneys for Plaintiff/Counterdefendant
Finjan Software, Ltd., and
Counterdefendant Finjan Software, Inc.*

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 14, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com; farnan@rlf.com

I hereby certify that on January 14, 2008 I have sent by E-mail the

foregoing document to the following non-registered participants:

Jake M. Holdreith, Esq.
Christopher A. Seidl, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
jmholdreith@rkmc.com ; caseidl@rkmc.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# EXHIBIT E

# secure
computing

+1.800.379.4944 Toll Free
+1.408.979.6572 International

Select Language

Company

Resources | Products | Try/Buy | Support | Partners

Snatch

Secure Web | Secure Mail | Secure Firewall | Secure SafeWord®

Home >> Secure Web

Secure Web

## Secure Web (Webwasher/SmartFilter)

| Secure Web (Webwasher) | Secure Web SmartFilter |

**Secure Web Products**

Anti-Malware / Anti-Virus
Web Filter / IM
SSL Scanner
Secure Web Cache
Secure Content Reporter

**Secure Web**

Secure Web Cache
Secure Web IM Appliances
Features / Benefits
Inbound Security
Outbound Security
Product Family / Models
Resources/Papers/FAQ
Certs/Testing/Compliance
Internet Database Information
URL Checker
Technologies
Awards/Recognition/News
Support and Education
How to Try/Buy

Next Steps

Printable Version
Try and Buy
Attend a Webinar



WHITE PAPER

USEFUL
TECHNOLOGIES
CREATE THREATS

Download Now!

WEBCAST
Preparing for
Web 2.0 Security
Threats with
Forrester

Sign up for our weekly webinar LIVE DEMO

## Security challenges in a Web 2.0 world

Organizations can do more over the Web today than ever before. As use of the Web continues to grow and evolve with adoption of Web 2.0 applications, virus outbreaks and other forms of Web-borne threats known as "malware" continue to grow as well. Are you adequately protected?

Widely deployed reactive security solutions based on a negative security model of blocking "known bad" behavior and content (such as signature-based anti-virus and category-only URL filtering), while providing vital security, were not designed to combat malicious software code or cleverly blended threats, hidden inside seemingly good HTTP or HTTPS traffic. Furthermore, today's malware attacks are rarely Web wide, rather they are targeted at individual organizations. While organizations need the Web, they need to be protected from Web-related attacks targeted at them.

Web Security for anti-spam and anti-virus protection, spam blocking, and content protection: Secure Computing

Site Map



**Webwasher Video Demo**

The adoption of Web 2.0 applications by the enterprise requires a security solution for Web 2.0. Secure Computing has taken a fresh look at today's Web security needs and has solved this growing problem: Secure Web (*Webwasher*) line of security appliances.

Learn more about Web 2.0 threats at the Secure Computing **SWAT site**.



**Web Gateway Security: Protect. Enforce. Comply.**

## Secure Web (*Webwasher*) Solutions

Secure Web delivers a comprehensive security solution for all aspects of Web 2.0 traffic. When a user is requesting content from a Web 2.0 application, he is implicitly asking for active content to be delivered to, and executed by, his computer. Furthermore, the same user is required to provide content to the Web 2.0 application, making the security concerns both inbound and outbound in nature.

Secure Web (*Webwasher*) provides immediate protection for user-initiated Web traffic against threats such as malware hidden in blended content or hidden in encrypted SSL traffic. Secure Web analyzes the intent of all content entering the network – even new web pages before they have content and before they are categorized. It also protects organizations from outbound threats such as potential loss of confidential information that can leak

out on all key Web protocols (HTTP, HTTPS, and FTP).

## Ten ways Secure Web (*Webwasher*) can help your company

1. Combination of local behavior and global reputation security technology
2. #1 rated anti-malware solution
3. **Protection for encrypted traffic: Secure Web SSL Scanning with certificate updates**
4. Reputation-based URL filtering provides advanced security, powered by TrustedSource™
5. High performance proxy
6. Innovative Secure Web Cache for today's Web 2.0 environment
7. Inbound and outbound defenses
8. Protection against data leaks on all Web protocols
9. Flexible deployment options
10. Multiple Secure Web security solutions in a single appliance



| Secure Web Filter | Secure Web Anti-Malware | Secure Web Anti-Virus | Secure Web SSL Scanner |
|---|---|---|---|

First reputation based URL Filter eliminating security exposure, limiting legal risks and productivity losses caused by in adverted or unauthorized employee access to inappropriate, malicious or distracting Web content.

Secure Web Anti-Malware ensures that your systems are protected against Malware, Spyware, Trojans and myriads of other threats transported in Web traffic, including HTTPS and FTP.

Secure Web's unique Anti-Virus Multi-Scan technology combines the strength of multiple anti-virus engines concurrently scanning all Web traffic.

Fills a serious security gap in the corporate IT wall of defense, denying hackers, viruses and other malicious content hidden in SSL - encrypted traffic access to your network.

| Secure Web Content Reporter | Secure Web Instant Message and Peer-to-peer security | Secure Web Cache | |
|---|---|---|---|

Web Security for anti-spam and anti-virus protection, spam blocking, and content protection: Secure Computing



Provides an in-depth view of the peaks, trends, and events relating to all network activity, including cache, streaming media, Web and e-mail usage.



A solution that detects, reports, and selectively blocks the unauthorized use of high-risk Peer-to-Peer file sharing (P2P) and public Instant Messaging (IM) from your network.

 

Offers a revolutionary new design that employs proactive scanning and security reputation prior to delivering a cached object to an end-user.

Secure Computing provides advanced Secure Web security appliance and URL filtering solutions in our Secure Web (Webwasher) and Secure Web SmartFilter products. Our Internet security solutions help protect enterprises and small businesses from malware, spam, viruses, spyware, phishing attacks, Trojans, worms, zombies, data leakage, and other Internet threats. Security features include content protection, proactive scanning, and assistance in ensuring policy enforcement, productivity, and regulatory compliance.

Home | Contact | Privacy Policy | Disclaimer | Sitemap

Copyright © 2008 Secure Computing Corporation. All Rights Reserved.

Access Control | Anti-malware | Anti-phishing | Anti-spam | Anti-spyware | Anti-virus | Application Firewall | Auditing & Reporting | Authentication | CIPA Compliance | Common Criteria | Content Filtering | Data Leakage | Email Security | Enterprise Gateway Security | Firewall | Global Intelligence | Identity Management | Internet Security | Internet Security Solutions | Intrusion Detection | Messaging Gateway Security | Messaging Security | Network Gateway Security | Network Management | Network Security | Network security software | Online Banking | Password | PCI DSS | Radius Authentication | Regulations Compliance | Remote Access | Reputation Score | Reputation System | Security Appliance | Security Audit | Security Policy | Security Software | Spam Blocker | Spam Filter | Spam Prevention | Strong Authentication | TrustedSource | Unified Threat Management | UTM Security | Virus Blocker | Virus Protection | Virus Signature | VPN | Web 2.0 Threats | Web Filtering | Web Gateway Security | Web Reputation | Web Security | Wireless Network Security

© Secure Computing Corporation. All Rights Reserved. Secure Computing, SafeWord, Type Enforcement, MobilePass, SecureSupport, SecureOS, SnapGear and Strikeback are trademarks of Secure Computing Corporation, registered in the U.S. Patent and Trademark Office and in other countries. SecureWire, TrustedSource, SmartReporter, and SecurityReporter are trademarks of Secure Computing Corporation.

# EXHIBIT F

Marketwire

**SOURCE: Secure Computing Corporation**

**Mar 28, 2008 09:00 ET**

## Secure Computing Files Motion to Set Aside Previous Infringement Verdict

## Secure Computing to Oppose Finjan's Request for an Injunction

**Highlighted Links**

Secure Home Page

SAN JOSE, CA--(Marketwire - March 28, 2008) - Secure Computing Corporation (NASDAQ: SCUR), a leading enterprise gateway security provider, today announced that its Webwasher products will continue to be available to protect against Web-borne threats. Secure Computing filed a motion in the District Court in Delaware on March 26th to set aside the jury verdict of infringement and to enter judgment that Finjan's patents are invalid and are not infringed by any Secure Computing product. Secure Computing will oppose Finjan's request for an injunction.

"We do not believe that we infringe any of Finjan's patents, and we believe Finjan's patents are invalid," said Mike Gallagher, Secure Computing's senior vice president, product development and support. "We will oppose all efforts by Finjan to limit the availability of Webwasher, a product that we believe provides superior protection against Web-borne threats. We hope and expect the courts will reject Finjan's request for an injunction to limit the availability of a small set of functions in Webwasher while they consider the validity of Finjan's patents. But we do have plans in place to address the specific functions that Finjan has targeted that will allow us to continue to sell and support Webwasher in any event."

Secure Computing previously announced on March 13, 2008 that Secure Computing does not believe that it infringes upon Finjan's patents in any way, and the Company further believes that Finjan's patents are invalid. Webwasher's proactive scanning technology accused of infringement by Finjan uses heuristic rules to categorize the behavior of executable code. The use of heuristics in general to analyze code was known and in use prior to the filing of any of Finjan's patents. The specific complex heuristics in the proactive scanning module were developed by Webwasher and are the product of Webwasher's original research. Secure Computing has requested that the trial court set aside the jury verdict and, if necessary, the Company intends to appeal to the Federal Circuit Court of Appeals.

Secure Computing's separate patent infringement suit against Finjan's load balancing technology remains pending in the District Court for the Federal District of Delaware.

"The District Court Judge in Delaware has not had any opportunity yet to rule on the validity of Finjan's patents, an opportunity the Court will now have based on the motion we have filed today," said Mary Budge, senior vice president, secretary and general counsel, Secure Computing. "We firmly believe that we have substantial grounds for relief in the trial court, and if necessary, for appeal, and we intend to proceed with the suit against Finjan on our load balancing patent. We are extremely motivated to challenge this result and we plan to take all the necessary steps to over-turn it."

About Secure Computing Corporation

Secure Computing Corporation (NASDAQ: SCUR), a leading provider of enterprise gateway security, delivers a comprehensive set of solutions that help customers protect their critical Web, email and network assets. Over half the Fortune 50 and Fortune 500 are part of our more than 22,000 global customers, supported by a worldwide network of more than 2,000 partners. The company is headquartered in San Jose, Calif., and has offices worldwide. For more information, see http://www.securecomputing.com.

This press release contains forward-looking statements relating to the appeal to the Federal Circuit Court of Appeals and any potential outcome or result of such statements involve a number of risks and uncertainties. Among the important factors that could cause actual results to differ materially from those indicated by such forward-looking statements are the likelihood of success at the trial court and at the appellate level, general economic conditions and the risk factors detailed from time to time in Secure Computing's periodic reports and registration statements filed with the Securities and Exchange Commission.

Marketwire

UK)

# EXHIBIT G

Yahoo!  My Yahoo!  Mail    **Make Y! your home page**          Search:          **Web Search**

**YAHOO!** FINANCE    Sign In    Finance Home – Help    marketwire
New User? Sign Up

**Welcome** [Sign in]                                To track stocks & more, Register

**Financial News**

Enter symbol(s)              Basic              Get    Symbol Lookup

**Press Release**                                                    Source: Secure Computing

# Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict

Thursday March 13, 10:14 am ET

SAN JOSE, CA—(MARKET WIRE)—Mar 13, 2008 -- Secure Computing Corporation (NasdaqGS: SCUR - News), a leading enterprise gateway security provider, today issued a response to the verdict announced March 12, 2008 regarding the company's lawsuit with Finjan. Secure Computing does not believe that it infringes upon Finjan's patents in any way, and the Company further believes that Finjan's patents are invalid. Webwasher's proactive scanning technology accused of infringement by Finjan uses heuristic rules to categorize the behavior of executable code. The use of heuristics in general to analyze code was known and in use prior to the filing of any of Finjan's patents. The specific complex heuristics in the proactive scanning module were developed by Webwasher and are the product of Webwasher's original research. Secure Computing intends to request that the trial court set aside the jury verdict and, if necessary, the Company intends to appeal to the Federal Circuit Court of Appeals.

The jury rejected Finjan's accusation of infringement with respect to the hashing function in Webwasher and therefore found no infringement of one of the three patents asserted by Finjan. Another accused feature accused of infringement under another of the three Finjan patents known as script code mitigation has been replaced with other technology for filtering malicious scripts in the latest release of Webwasher.

The only technology accused of infringement in the latest release of Webwasher is the proactive scanning feature of a single module of Webwasher. Other modules, including Webwasher's URL-filtering technology, do not use the behavior categories accused by Finjan. Nevertheless, Secure Computing intends to defend and support its unique heuristic scanning technology.

Secure Computing's separate patent infringement suit against Finjan's load balancing technology remains pending in the District Court for the Federal District of Delaware.

"While we're clearly disappointed in yesterday's verdict, we firmly believe that we have substantial grounds for appeal and we intend to proceed with the suit against Finjan on our load balancing patent," said Mary Budge, Senior Vice President, Secretary and General Counsel, Secure Computing. "We are extremely motivated to challenge this result and we plan to take all the necessary steps to over-turn it."

About Secure Computing Corporation

Secure Computing Corporation (NasdaqGS: SCUR - News), a leading provider of enterprise gateway security, delivers a comprehensive set of solutions that help customers protect their critical Web, email and network assets. Over half the Fortune 50 and Fortune 500 are part of our more than 22,000 global customers, supported by a worldwide network of more than 2,000 partners. The company is headquartered in San Jose, Calif., and has offices worldwide. For more information, see http://www.securecomputing.com.

This press release contains forward-looking statements relating to the appeal to the Federal Circuit Court of Appeals and any potential outcome or result, the and such statements involve a number of risks and uncertainties. Among the important factors that could cause actual results to differ materially from those indicated by such forward-looking statements are the likelihood of success at the trial court and at the appellate levelgeneral economic conditions and the risk factors detailed from time to time in Secure Computing's periodic reports and registration statements filed with the Securities and Exchange Commission.

*Contact:*

Contact:
**Shawn Wolfe**
**Secure Computing**
**(408) 979-6165**
Email Contact

Jane Underwood
Secure Computing
(408) 979-6186
Email Contact

Source: Secure Computing

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 Marketwire. All rights reserved. All the news releases provided by Marketwire are copyrighted. Any forms of copying
other than an individual user's personal reference without express written permission is prohibited. Further distribution of these materials
is strictly forbidden, including but not limited to, posting, emailing, faxing, archiving in a public database, redistributing via a computer
network or in a printed form.

Yahoo!  My Yahoo!  Mail    Make Y! your home page    Search:    Web Search

**YAHOO!** FINANCE    **Sign In**    Finance Home - Help    marketwire
New User? Sign Up

**Welcome [Sign In]**    To track stocks & more, Register
**Financial News**

Enter symbol(s)    Basic    Get    Symbol Lookup

**Press Release**    Source: Secure Computing

# / CORRECTION - Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict

Thursday March 13, 5:48 pm ET

SAN JOSE, CA--(MARKET WIRE)--Mar 13, 2008 -- In the news release, "Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict," issued earlier today by Secure Computing (NasdaqGS:SCUR - News), we are advised by the company that the first sentence of the second paragraph should read "The jury rejected Finjan's accusation of literal infringement with respect to the hashing function in Webwasher and therefore found no literal infringement of one of the three patents asserted by Finjan but only infringement under the doctrine of equivalents" rather than "The jury rejected Finjan's accusation of infringement with respect to the hashing function in Webwasher and therefore found no infringement of one of the three patents asserted by Finjan" as originally issued. An additional sentence, "Secure Computing believes that this doctrine is legally unavailable to Finjan and that the '780 patent is invalid," has been added to the second paragraph. Complete corrected text follows.

Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict

SAN JOSE, CA --(March 13, 2008) - Secure Computing Corporation (NasdaqGS:SCUR - News), a leading enterprise gateway security provider, today issued a response to the verdict announced March 12, 2008 regarding the company's lawsuit with Finjan. Secure Computing does not believe that it infringes upon Finjan's patents in any way, and the Company further believes that Finjan's patents are invalid. Webwasher's proactive scanning technology accused of infringement by Finjan uses heuristic rules to categorize the behavior of executable code. The use of heuristics in general to analyze code was known and in use prior to the filing of any of Finjan's patents. The specific complex heuristics in the proactive scanning module were developed by Webwasher and are the product of Webwasher's original research. Secure Computing intends to request that the trial court set aside the jury verdict and, if necessary, the Company intends to appeal to the Federal Circuit Court of Appeals.

The jury rejected Finjan's accusation of literal infringement with respect to the hashing function in Webwasher and therefore found no literal infringement of one of the three patents asserted by Finjan but only infringement under the doctrine of equivalents. Secure Computing believes that this doctrine is legally unavailable to Finjan and that the '780 patent is invalid. Another accused feature accused of infringement under another of the three Finjan patents known as script code mitigation has been replaced with other technology for filtering malicious scripts in the latest release of Webwasher.

The only technology accused of infringement in the latest release of Webwasher is the proactive scanning feature of a single module of Webwasher. Other modules, including Webwasher's URL-filtering technology, do not use the behavior categories accused by Finjan. Nevertheless, Secure Computing intends to defend and support its unique heuristic scanning technology.

Secure Computing's separate patent infringement suit against Finjan's load balancing technology remains pending in the District Court for the Federal District of Delaware.

"While we're clearly disappointed in yesterday's verdict, we firmly believe that we have substantial grounds for appeal and we intend to proceed with the suit against Finjan on our load balancing patent," said Mary Budge, Senior Vice President, Secretary and General Counsel, Secure Computing. "We are extremely motivated to challenge this result and we plan to take all the necessary steps to over-turn it."

**About Secure Computing Corporation**

Secure Computing Corporation (NasdaqGS:SCUR - News), a leading provider of enterprise gateway security, delivers a comprehensive set of solutions that help customers protect their critical Web, email and network assets. Over half the Fortune 50 and Fortune 500 are part of our more than 22,000 global customers, supported by a worldwide network of more than 2,000 partners. The company is headquartered in San Jose, Calif., and has offices worldwide. For more information, see http://www.securecomputing.com.

This press release contains forward-looking statements relating to the appeal to the Federal Circuit Court of Appeals and any potential outcome or result, the and such statements involve a number of risks and uncertainties. Among the important factors that could cause actual results to differ materially from those indicated by such forward-looking statements are the likelihood of success at the trial court and at the appellate levelgeneral economic conditions and the risk factors detailed from time to time in Secure Computing's periodic reports and registration statements filed with the Securities and Exchange Commission.

*Contact:*

```
Contact:
Shawn Wolfe
Secure Computing
(408) 979-6165
Email Contact

Jane Underwood
Secure Computing
(408) 979-6186
Email Contact
```

Source: Secure Computing

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 Marketwire. All rights reserved. All the news releases provided by Marketwire are copyrighted. Any forms of copying other than an individual user's personal reference without express written permission is prohibited. Further distribution of these materials is strictly forbidden, including but not limited to, posting, emailing, faxing, archiving in a public database, redistributing via a computer network or in a printed form.

# EXHIBIT H







Symbol    [Get Quote]    Keyword

Home    Business News    Markets    Personal Finance    Real Estate    Technology    Small Business    Luxury    Fortune

TRADING CENTER     Active Traders     Click to use SmartText!    AMERITRADE    Trade free for 30 days

# / CORRECTION - Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict

March 13, 2008: 05:48 PM EST

marketwire



**Top Stories**

Issue #1 - Tai

Stocks: right l

The Fed may

Oil drop bigge

Alibaba wants

In the news release, "Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict," issued earlier today by Secure Computing (NASDAQ: SCUR), we are advised by the company that the first sentence of the second paragraph should read "The jury rejected Finjan's accusation of literal infringement with respect to the hashing function in Webwasher and therefore found no literal infringement of one of the three patents asserted by Finjan but only infringement under the doctrine of equivalents" rather than "The jury rejected Finjan's accusation of infringement with respect to the hashing function in Webwasher and therefore found no infringement of one of the three patents asserted by Finjan" as originally issued. An additional sentence, "Secure Computing believes that this doctrine is legally unavailable to Finjan and that the '780 patent is invalid," has been added to the second paragraph. Complete corrected text follows.

Secure Computing Responds to Finjan Patent Infringement Lawsuit Verdict

SAN JOSE, CA --(March 13, 2008) - Secure Computing Corporation (NASDAQ: SCUR), a leading enterprise gateway security provider, today issued a response to the verdict announced March 12, 2008 regarding the company's lawsuit with Finjan. Secure Computing does not believe that it infringes upon Finjan's patents in any way, and the Company further believes that Finjan's patents are invalid. Webwasher's proactive scanning technology accused of infringement by Finjan uses heuristic rules to categorize the behavior of executable code. The use of heuristics in general to analyze code was known and in use prior to the filing of any of Finjan's patents. The specific complex heuristics in the proactive scanning module were developed by Webwasher and are the product of Webwasher's original research. Secure Computing intends to request that the trial court set aside the jury verdict and, if necessary, the Company intends to appeal to the Federal Circuit Court of Appeals.

The jury rejected Finjan's accusation of literal infringement with respect to the hashing function in Webwasher and therefore found no literal infringement of one of the three patents asserted by Finjan but only infringement under the doctrine of equivalents. Secure Computing believes that this doctrine is legally unavailable to Finjan and that the '780 patent is invalid. Another accused feature accused of infringement under another of the three Finjan patents known as script code mitigation has been replaced with other technology for filtering malicious scripts in the latest release of Webwasher.

The only technology accused of infringement in the latest release of Webwasher is the proactive scanning



HSBC Dire

TRY

Inves Guide

Outside the I Canada, cl

feature of a single module of Webwasher. Other modules, including Webwasher's URL-filtering technology, do not use the behavior categories accused by Finjan. Nevertheless, Secure Computing intends to defend and support its unique heuristic scanning technology.

Secure Computing's separate patent infringement suit against Finjan's load balancing technology remains pending in the District Court for the Federal District of Delaware.

"While we're clearly disappointed in yesterday's verdict, we firmly believe that we have substantial grounds for appeal and we intend to proceed with the suit against Finjan on our load balancing patent," said Mary Budge, Senior Vice President, Secretary and General Counsel, Secure Computing. "We are extremely motivated to challenge this result and we plan to take all the necessary steps to over-turn it."

About Secure Computing Corporation

Secure Computing Corporation (NASDAQ: SCUR), a leading provider of enterprise gateway security, delivers a comprehensive set of solutions that help customers protect their critical Web, email and network assets. Over half the Fortune 50 and Fortune 500 are part of our more than 22,000 global customers, supported by a worldwide network of more than 2,000 partners. The company is headquartered in San Jose, Calif., and has offices worldwide. For more information, see http://www.securecomputing.com.

This press release contains forward-looking statements relating to the appeal to the Federal Circuit Court of Appeals and any potential outcome or result, the and such statements involve a number of risks and uncertainties. Among the important factors that could cause actual results to differ materially from those indicated by such forward-looking statements are the likelihood of success at the trial court and at the appellate levelgeneral economic conditions and the risk factors detailed from time to time in Secure Computing's periodic reports and registration statements filed with the Securities and Exchange Commission.

```
Contact:
Shawn Wolfe
Secure Computing
(408) 979-6165
Email Contact
Jane Underwood
Secure Computing
(408) 979-6186
Email Contact
```

**More Markets**

Stocks: right back down

The Fed may be done - Get over it

Gold plummets as dollar inches higher

## The Hot List

Six months after the first rate cut: No help yet

Extreme job hunting

Getting in on the gold rush

© 2008 Cable News Network. A Time Warner Company. All Rights Reserved. Terms under which this service is provided

Home    Portfolio    Calculators    Contact us    Newsletters    Podcasts    RSS    Mobile    Press Center

Advertise with Us    Magazine Customer Service    Download Fortune Lists    Reprints    Career Opportunities    Special Sections

Live Quotes automatically refresh, but individual equities are delayed 15 minutes for Nasdaq, and 20 minutes for other exchanges. Market indexes
shown as delayed by two minutes. All times are ET.

Time reflects local markets trading time. † - Intraday data delayed 15 minutes for Nasdaq, and 20 minutes for other ex
Copyright © 2008 BigCharts.com Inc. All rights reserved. Please see our Terms of Use MarketWatch, the MarketWatch logo, and BigCharts a
the intraday data delayed 15 minutes for Nasdaq, and 20 minutes for other exchanges. All times are ET. Intraday data provided by ComStock, an
Terms of Use. Historical, current end-of-day data, and settle data provided by FT Interactive Data Fundamental data provided by Hemscott SEC Filin
data provided by FactSet Research LLC

# EXHIBIT I

-----Original Message-----
From: Holdreith, Jake M. [mailto:JMHoldreith@rkmc.com]
Sent: Thursday, March 13, 2008 11:18 AM
To: Andre, Paul
Subject: RE: Finjan v. Secure - Press Release

>>>>  Please read the confidentiality statement below  <<<<
Paul, I just landed in Minneapolis. I understand a corrected press release will be going
out.

-----Original Message-----
From: Andre, Paul [mailto:pandre@KSLAW.com]
Sent: Thursday, March 13, 2008 9:40 AM
To: Seidl, Christopher A.; Holdreith, Jake M.
Cc: Schutz, Ronald J.; Foster, Trevor J.
Subject: Finjan v. Secure - Press Release

Jake:

I just saw Secure Computing's press release about the jury verdict, and note that there is
a material false statement regarding the '780 patent.
As you know, the jury did not reject Finjan's claim of infringement regarding the hashing
function, but instead did find infringement under the doctrine of equivalence.  Please
have your client pull the current release, and issue a correction immediately.

Sincerely,
Paul Andre

            Confidentiality Notice This message is being sent by or on behalf of a
lawyer.  It is intended exclusively for the individual or entity to which it is addressed.
This communication may contain information that is proprietary, privileged or confidential

1

or otherwise legally exempt from disclosure.  If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

---

Information contained in this e-mail transmission may be privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com

---

# EXHIBIT J



# Jury rules for Finjan in patent lawsuit against Secure Computing

**Jaikumar Vijayan**

**March 13, 2008** (Computerworld) IT security vendor Finjan Inc. yesterday won a patent-infringement lawsuit that it filed two years ago against Secure Computing Corp. and two other companies that Secure Computing had previously acquired. But Secure Computing insisted that it hasn't infringed on Finjan's patents and said that it will seek to overturn the verdict in the case.

In fact, the two vendors didn't even agree on the number of patents that Secure Computing was found to have infringed upon. Finjan said a federal jury in Delaware ruled that Secure Computing and the two companies it acquired had willfully infringed on three patents related to Finjan's Web gateway appliances. In return, Secure Computing said that the jury had rejected Finjan's infringement claims on one of the three patents — prompting Finjan to say it was standing by its assertion that the infringement ruling covered all three patents.

According to a statement issued by Finjan, the jury ordered Secure Computing to pay Finjan 16% of the revenue from past sales of its Webwasher software and 8% of the revenue from both a Webwasher appliance and its CyberGuard TSP gateway device.

Secure Computing, which like Finjan is based in San Jose, acquired firewall and VPN vendor CyberGuard Corp. in 2005 for about $295 million in cash and stock. A year earlier, CyberGuard had bought Webwasher AG, a Germany-based company that sold Web filtering products.

JOIN US.
CLICK HERE FOR A FREE
60-DAY TRIAL OF
KASPERSKY ENDPOINT SECURITY.


On A Mission.

In an interview today, Yuval Ben-Itzhak, Finjan's chief technology officer, said the patents in question all have to do with proactive, real-time malware detection and mitigation capabilities that are built into his company's Web security products.

One of the patents covers a technology developed by Finjan for detecting previously unknown malware on networks, Ben-Itzhak said, adding that the technology eliminates the need for existing malware signatures in order to detect and block malicious code.

The second patent under dispute covers a "sandboxing" technology that is designed to mitigate the effects of malicious code if it is executed on a computer, while the third patent is related to a hashing function, according to Ben-Itzhak.

In a statement of its own, Secure Computing contended that Finjan's patents are invalid. The company also said that, despite the jury's ruling, it still doesn't think it has infringed on the patents "in any way."

According to Secure Computing, Webwasher's proactive scanning technology uses heuristic rules to categorize how executable code is likely to behave on systems. The company said that heuristic code-analysis methods "were known and in use" before Finjan filed for any of its patents and that the specific rules used in the Webwasher product line resulted from "original research" done at Webwasher.

Secure Computing added that the only disputed technology still being used in the latest version of Webwasher's software is a proactive-scanning feature employed in a single module. Nonetheless, the vendor vowed to continue defending itself, initially by asking the trial judge to set aside the jury verdict. If that fails, Secure Computing said it plans to appeal the ruling.

In addition, the company noted that a separate patent-infringement suit it has filed against Finjan over load-balancing technology is still pending in U.S. District Court in Delaware.

In response to a request for comment about the patent disputes, a spokeswoman for Secure Computing simply sent a copy of the company's statement via e-mail.

As part of the statement, Mary Budge, Secure Computing's senior vice president, secretary and general counsel, said company officials are "clearly disappointed" by the jury verdict on Finjan's suit but think they have "substantial grounds" for pursuing an appeal. "We are extremely motivated to challenge this result, and we plan to take all the necessary steps to overturn it," Budge said.

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FINJAN SOFTWARE, LTD., an Israel
corporation,

        Plaintiff-Counterdefendant,

        v.

SECURE COMPUTING CORPORATION, a
Delaware corporation; CYBERGUARD
CORPORATION, a Delaware corporation,
WEBWASHER AG, a German corporation and
DOES 1 THROUGH 100,

        Defendants-Counterclaimants.

C. A. No. 06-369 GMS

### SECURE COMPUTING'S RESPONSES TO FINJAN'S THIRD
### SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 26 and 34, Defendants-Counterclaimants Secure Computing
Corporation, Cyberguard Corporation, and Webwasher AG ("Secure Computing") make the
following Responses to Finjan Software, Ltd.'s Third Set of Requests for Production of
Documents ("Third Set").

### GENERAL OBJECTIONS

1.      Secure Computing hereby incorporates by reference each and every general
objection set forth below into each and every specific response.  From time to time, a specific
response may repeat a general objection for emphasis or some other reason.  The failure to
include any general objection in any specific response shall not be interpreted as a waiver of any
general objection to that response.

2.      Secure Computing objects to Finjan's Third Set to the extent it calls for the
disclosure of information or communications protected by the attorney-client privilege or any

other applicable privilege, rule of law, or statute, on the grounds that such matters are exempt from discovery.

3.    Secure Computing objects to Finjan's Third Set to the extent that it calls for the disclosure of information protected by the work product doctrine, including the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Secure Computing concerning the above-captioned litigation, on the grounds that such information is exempt from discovery.

4.    Secure Computing objects to Finjan's Third Set to the extent it is overbroad, vague, and ambiguous, and also to the extent it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that such Third Set exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate with Finjan's legitimate discovery needs.

5.    Secure Computing objects to Finjan's Third Set to the extent that it purports to seek information or materials from Secure Computing that are not within its possession, custody, and/or control, on the grounds that such discovery exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure.

6.    Secure Computing objects to the "Definitions" and "Instructions" sections of Finjan's Third Set of document requests to the extent that the same attempts to imposes objections over and above or inconsistent with the Federal Rules of Civil Procedure and the local rules of this Court.

- 2 -

7.    Secure Computing objects to the Definitions of the terms "you," "your," and "Defendants" to the extent that definition does not accurately reflect the corporation structures of the respective Defendants or the previous mergers, acquisitions, purchases, sales or other corporation documents involving the Defendants.

8.    Secure Computing objects to Finjan's Third Set to the extent it seeks "source code" as being overbroad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

9.    Secure Computing will timely provide a log of documents and things not produced based upon a claim of privilege or attorney work produce in accordance with the Protective Order.

10.    Secure Computing objects to Finjan's Third Set to the extent it is premature, since discovery is continuing. Furthermore, Secure Computing reserves the right to supplement its responses to Finjan's Third Set of document requests and to introduce at trial such additional facts and documents as are uncovered, developed, or relied upon by Secure Computing and its counsel in their continuing discovery and investigation of the issues in this action. Secure Computing notes that discovery is continuing in this case and expressly reserves the right to amend and modify any information disclosed herein.

11.    By stating in these responses that Secure Computing will produce documents, Secure Computing does not intend to represent that any responsive documents actually exist, but rather that Secure Computing has made, and will continue to make, a reasonable, good faith search and attempt to ascertain whether responsive documents do in fact exist.

- 3 -

12.    Secure Computing objects to each and every Definition, Instruction and Request for Production on the grounds and to the extent that it is vague, ambiguous and therefore unintelligible.

13.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent that it seeks information beyond Secure Computing's actual knowledge, custody or control.

14.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent that it seeks information within Finjan's knowledge, custody or control, or to the extent that it seeks information in the public domain.  Finjan can ascertain answers to these Requests for Production from their own records or from other sources at least readily available as Secure Computing.

15.    Secure Computing objects to each Definition, Instruction and Request for Production to the extent that it requires interpretation and application of the legal conclusions and contentions of the parties.  Secure Computing's responses shall not be construed as providing legal conclusions concerning the meaning or application of any terms used in Finjan's Requests for Production.

16.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent that it is not reasonably calculated to lead to the discovery of admissible evidence.

17.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent it is unreasonably cumulative or duplicative, or seek information that is obtainable from some other source that is more convenient, less burdensome or less expensive.

- 4 -

18.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent it is compound with multiple subparts. Secure Computing will count each subpart as a separate request for production pursuant to Federal Rule Civil Procedure 33(a).

19.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent that it is premature, as the Court has not yet construed claim terms of the '361 Patent and '010 Patent.

20.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent that it is premature, as it seeks information that is set to be disclosed on scheduled dates directed by the Court.

21.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent it seeks expert testimony.

22.    Secure Computing's written responses are based upon information and writings available to and located by their attorneys as of the date of service of these responses. Secure Computing has not completed its investigation of the facts relating to this case, have not completed discovery in this action, and have not completed preparation for trial. All information supplied, and documents and things produced were reasonable, available and specifically known to Secure Computing and their attorneys as of the date of service of these responses. Therefore, Secure Computing's written responses and production of documents are without prejudice to its right to supplement and/or amend such written responses and to present at trial evidence disclosed hereafter.

23.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent they are unduly burdensome and oppressive on the grounds that they purport to require Secure Computing to search its facilities and inquire of its employees other

- 5 -

than those facilities and employees that would reasonably be expected to have responsive information. Secure Computing's responses are based upon: (1) a reasonable search of facilities and files that could reasonably be expected to contain responsive information; and (2) inquiries of Secure Computing's employees and/or representatives who could reasonably be expected to possess responsive information.

24.    Secure Computing objects to each and every Definition, Instruction, and Request for Production to the extent that they are unduly burdensome and oppressive, and the burden of providing such information will far outweigh the potential to elicit information relevant to the issues.

25.    Secure Computing objects to the Definition of the term "document" to the extent it purports to impose any requirement or discovery obligation greater or different than those imposed by the Federal Rules of Civil Procedure. Secure Computing further objects to this definition to the extent it calls for a legal conclusion, or seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable law, privilege, doctrine or immunity.

26.    Secure Computing objects to the Definition of the term "person" to the extent it is overly broad and burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Secure Computing further objects to these definitions to the extent it calls for a legal conclusion, or seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable law, privilege, doctrine or immunity. Secure Computing further objects to these definitions as it includes entities and persons over whom Secure Computing has no control.

27.    Secure Computing objects to the Definition of the terms "identify," "identity," or "identification" to the extent they purport to impose obligations other than those imposed by the Federal Rules of Civil Procedure.  Secure Computing further objects to these definitions to the extent it calls for a legal conclusion, or seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable law, privilege, doctrine or immunity.  Secure Computing further objects to these definitions as it includes entities and persons over whom Secure Computing has no control.

28.    Secure Computing objects to each and every Definition, Instruction and Request for Production to the extent they purport to impose obligations other than those imposed by Federal Rules of Civil Procedure 26(b)(5).

## REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 53:

All documents and things referring or relating to the '361 Patent and/or '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections.  Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity.  Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things referring and relating to" the '360 Patent and/or '010 Patent.  Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter.  Secure Computing objects to this Request to the extent that it is vague and ambiguous.  Secure Computing further

objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2). Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 54:**

All documents and things referring or relating to the preparation, filing and prosecution of the patent applications that led to the issuance of the '361 Patent and '010 Patent, including without limitation issued patents, applications, draft applications, file histories, publications, search reports, opinions, memoranda, correspondence, official actions, and documents relating to examiner interviews.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things referring or relating to the preparation, filing and prosecution of the patent applications that led to the issuance of the '361 Patent and '010 Patent." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2).

~~Subject to and without waiving the foregoing objections, Secure Computing will produce~~ relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 55:**

All documents and things referring or relating to any actions or proceedings, whether judicial or administrative, that involve the '361 Patent and/or '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things referring or relating to any actions or proceedings . . . that involve" the '361 Patent and '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because the terms "actions" and "proceedings" are not defined. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2). Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

- 10 -

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 56:**

All documents and things relating to current and past ownership of the '361 Patent and/or '010 Patent, including without limitation assignment documents.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to current and past ownership" of the '361 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties.

- 11 -

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 57:

All documents and things relating to any payment of maintenance fees, or to any failure or delay in paying maintenance fees, relating to the '361 Patent and/or '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to any payment of maintenance fees, or to any failure or delay in paying maintenance fees" relating to the '361 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the

- 12 -

extent it seeks information beyond Secure Computing's actual knowledge, custody, or control. Secure Computing objects to this Request because it is duplicative of Request No. 54 and incorporates the responses and objections stated therein.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 58:**

All licenses, assignments, contracts, agreements, settlements or other arrangements between or among Secure Computing and any other persons relating to the '361 Patent and/or '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all licenses, assignments, contracts, agreements, settlements or other arrangements between or among Secure Computing and any other persons" relating to the '361 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because the term "arrangements" is not defined. Secure Computing further objects to this Request to the extent that it seeks

- 13 -

documents in the public domain. Secure Computing further objects to this Request to the extent
it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports
to require Secure Computing to produce documents in violation of a legal or contractual
obligation of nondisclosure to a third party. Secure Computing further objects to this Request to
the extent it seeks confidential information and/or trade secrets of third parties. Secure
Computing further objects to this Request to the extent it seeks information beyond Secure
Computing's actual knowledge, custody, or control. Secure Computing objects to this Request
because it is duplicative of Request Nos. 55 and 56 and incorporates the responses and objections
stated therein. Secure Computing objects to this Request to the extent that it is compound.

Subject to and without waiving the foregoing objections, Secure Computing will produce
relevant, non-privileged, non-work product, documents responsive to this Request to the extent
such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 59:**

All documents and things relating to each effort by Secure Computing to enter into a
license, cross-license, assignment or other agreement conveying any rights under the '361 Patent
and/or '010 Patent.

**RESPONSE:**

~~Secure Computing incorporates by reference its General Objections.  Secure Computing~~
objects to this Request to the extent that it seeks discovery of information or production of
documents or things protected by the attorney-client privilege, work product immunity, or any
other privilege or immunity. Secure Computing also objects to this Request as being overbroad,
unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of
admissible evidence because it seeks "all documents and things relating to each effort by Secure

Computing to enter into a license, cross-license, assignment or other agreement conveying any rights" relating to the '361 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control. Secure Computing objects to this Request because it is duplicative of Request Nos. 55, 56 and 58 and incorporates the responses and objections stated therein. Secure Computing objects to this Request to the extent that it is compound.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

REQUEST FOR PRODUCTION NO. 60:

All documents and things relating to the conception, reduction to practice, research, development, design, testing, analyses and/or evaluation of the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent, including, but not limited to, laboratory notebooks, inventor notebooks, workbooks, inventor electronic records, invention records, calendars, datebooks, testing protocols, memoranda, notes, plans, meeting minutes, data books,

- 15 -

data sheets, technical bulletins, articles, reports, instruction manuals, booklets, invention disclosures and any revisions thereof.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to the conception, reduction to practice, research, development, design, testing, analyses and/or evaluation of the subject matter disclosed and/or claimed in" the '361 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks "all documents and things related to . . . the subject matter disclosed." Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports to require Secure Computing to ~~produce documents in violation of a legal or contractual obligation of nondisclosure to a third~~ party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control. Secure Computing objects to this Request to the extent that it is compound.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 61:

All documents and things from the files of each individual named as an inventor of the '361 Patent and/or '010 Patent which relate to the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things from the files of each individual named as an inventor of the '361 Patent and/or '010 Patent which relate to the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks "all documents and things . . . which relate to the subject matter disclosed." Secure Computing objects to this Request as vague and ambiguous because the term "files" is not defined. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure

- 17 -

Computing objects to this Request because it is duplicative of Request No. 60 and incorporates the responses and objections stated therein.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 62:

All documents and things from the files of any individual who aided in the development of the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things from the files of any individual who aided in the development of the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks "all documents and things" related to " the subject matter disclosed." Secure Computing objects to this Request as vague and ambiguous because the term "files" is not defined. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request because it is

- 18 -

duplicative of Request Nos. 60 and 61 and incorporates the responses and objections stated therein.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 63:**

All prior art that Secure Computing is aware of with regard to the '361 Patent and/or '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2).

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 64:**

All documents and things relating to any prior art searches and/or relating to any patents, patent applications, publications, publicly available materials, or other documents, things or events that Secure Computing has considered at any time to be prior art to the '361 Patent and/or '010 Patent and/or that Secure Computing has considered at any time to be prior art to any related application to the '361 Patent and/or '010 Patent, including, but not limited to, all translations of any non-English language prior art.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity,

- 20 -

and/or enforceability, pursuant to Rule 26(a)(2). Secure Computing objects to this Request as compound.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 65:

All documents and things relating to any prior art searches and/or relating to any patents, patent applications, publications, publicly available materials, or other documents, things or events that relate to the use of the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent, including without limitation all such documents or material known to Secure Computing prior to the issuance of the '361 Patent and/or '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks documents and things related to "the subject matter disclosed." Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the

- 21 -

Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2). Secure Computing objects to this Request as compound.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 66:**

All documents and things that Secure Computing or any of the named inventors have written, published or made available to the public that relate to the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things that Secure Computing or any of the named inventors have written, published or made available to the public that relate to the subject matter disclosed and/or claimed in" the '360 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous

- 22 -

because it seeks documents and things related to "the subject matter disclosed." Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 67:**

All documents and things relating to the first sale, first offer to sell, or first public use in the United States of the subject matter claimed in the '361 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to the first sale, first offer to sell, or first public use in the United States of the subject matter claimed" in the '361 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks documents related to "the subject matter claimed in the '361 Patent."

- 23 -

Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 68:**

All documents and things relating to the first sale, first offer to sell, or first public use in the United States of the subject matter claimed in the '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to the first sale, first offer to sell, or first public use in the United States of the subject matter claimed" in the '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because

- 24 -

it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks documents related to "the subject matter claimed in the '010 Patent." Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and things relating to the first disclosure of the subject matter recited in the claims of the '361 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of

- 25 -

admissible evidence because it seeks "all documents and things relating to the first disclosure of the subject matter recited in the claims of in the '361 Patent." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks documents related to "the subject matter recited in the claims of the '361 Patent." Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 70:**

All documents and things relating to the first disclosure of the subject matter recited in the claims of the '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of

- 26 -

documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to the first disclosure of the subject matter recited in the claims of in the '010 Patent." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks documents related to "the subject matter recited in the claims" of the '010 Patent. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

~~Subject to and without waiving the foregoing objections, Secure Computing will produce~~ relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 71:

All documents and things relating to Vital Security Internet Box™ that Secure Computing alleges infringes the '361 Patent.

- 27 -

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to Vital Security Internet Box™". Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous and unintelligible because it seeks documents relating to "Vital Security Internet Box™ that Secure Computing alleges infringes the '361 Patent." Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2). Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control. Secure Computing objects to this Request to the extent it seeks information in the possession of Finjan.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents in its possession, custody and control

- 28 -

relating to the "Vital Security Internet 1Box™" to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 72:

All documents and things relating to Vital Security™ that Secure Computing alleges infringes the '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to Vital Security™". Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous and unintelligible because it seeks documents relating to "Vital Security™ that Secure Computing alleges infringes the '361 Patent." Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure ~~Computing further objects to this Request to the extent it calls for a legal conclusion.~~ Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2). Secure Computing further objects to this Request to the extent it seeks information beyond Secure

- 29 -

Computing's actual knowledge, custody, or control. Secure Computing objects to this Request to the extent it seeks information in the possession of Finjan.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents in its possession, custody and control relating to "Vital Security™ for Documents" to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 73:**

All documents and things relating to any testing or evaluation of any product to determine infringement, non-infringement or validity (e.g., testing to determine inherent anticipation of prior art products) of the '361 Patent and/or '010 Patent including, but not limited to, any testing or evaluation of Vital Security Internet Box™ and Vital Security™.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to any testing or evaluation of any product to determine infringement, non-infringement or validity (e.g., testing to determine inherent anticipation of prior art products) of the '361 Patent and/or '010 Patent." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous and unintelligible because it seeks documents relating to "Vital Security

- 30 -

Internet Box™ and Vital Security™." Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2).

**REQUEST FOR PRODUCTION NO. 74:**

All documents and things relating to any communication to or from Secure Computing or disclosures between Secure Computing and any other person(s) relating to the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent, including without limitations, meetings, demonstrations, sales, marketing efforts, offers for sales, promotions, advertising, and/or trade shows.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to any communication to or from Secure Computing or disclosures between Secure Computing and any other person(s) relating to the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it

- 31 -

is vague and ambiguous.  Secure Computing objects to this Request as vague and ambiguous because the term "disclosures" is not defined.  Secure Computing objects to this Request as vague and ambiguous because it seeks communications "related to the subject matter disclosed." Secure Computing further objects to this Request to the extent that it seeks documents in the public domain.  Secure Computing further objects to this Request to the extent it calls for a legal conclusion.  Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2).  Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party.  Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties.  Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 75:**

All documents and things relating to communications between Secure Computing and any other person(s) pertaining to infringement or non-infringement of the '361 Patent and/or '010 Patent or any related applications to the '361 Patent and/or '010 Patent.

**RESPONSE:**

- 32 -

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to communications between Secure Computing and any other person(s) pertaining to infringement or non-infringement." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, and/or enforceability, pursuant to Rule 26(a)(2). Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or ~~contractual obligation of nondisclosure to a third party. Secure Computing further objects to this~~ Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 76:

All documents and things relating to communications between Secure Computing and Finjan related to the '361 Patent and/or '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to communications." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control. Secure Computing objects to this Request to the extent it seeks information in the possession of Finjan.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

- 34 -

## REQUEST FOR PRODUCTION NO. 77:

All documents and things related to any products developed by Secure Computing that are related to the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things related to any products developed by Secure Computing that are related to the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent." Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks documents "related to the subject matter disclosed." Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent ~~it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports~~ to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties.

- 35 -

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 78:**

All documents and things relating to the conception, design, engineering, development, testing, manufacture, production, marketing, regulatory approval, or sale of any product that is related to the subject matter disclosed and/or claimed in the '361 Patent and/or '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to the conception, design, engineering, development, testing, manufacture, production, marketing, regulatory approval, or sale of any product related to the subject matter disclosed and/or claimed" in the '361 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because it seeks documents "related to the subject matter disclosed." Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request to the extent it purports

- 36 -

to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing objects to this Request to the extent that it is compound. Secure Computing objects to this Request because it is duplicative of Request No. 78 and incorporates the responses and objections stated therein.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 79:

All documents and things relating to any claimed commercial success of any of the subject matter of the '361 Patent and/or '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things referring and relating to any claimed commercial success of any of the subject matter" of the '360 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent that it

- 37 -

seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request as vague and ambiguous because it seeks documents related to "the subject matter" of the '360 Patent and/or '010 Patent. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 80:**

All documents and things relating to the actual or speculated advantages, benefits, features and/or characteristics of any product embodying the subject matter of the '361 Patent and/or '010 Patent.

**RESPONSE:**

~~Secure Computing incorporates by reference its General Objections. Secure Computing~~ objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to the actual or

- 38 -

speculated advantages, benefits, features and/or characteristics of any product embodying the subject matter" of the '360 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request as vague and ambiguous because it seeks documents related to "the subject matter" of the '360 Patent and/or '010 Patent. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

REQUEST FOR PRODUCTION NO. 81:

All documents and things relating to any claimed long-felt need contended to exist for any of the subject matter of any of the claims of the '361 Patent and/or '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of

- 39 -

documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to any claimed long-felt need contended to exist for any of the subject matter" of the '360 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request as vague and ambiguous because it seeks documents related to "the subject matter" of the '360 Patent and/or '010 Patent. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

~~Subject to and without waiving the foregoing objections, Secure Computing will produce~~ relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 82:**

All documents and things relating to any claimed praise by others of any product embodying the subject matter of the '361 Patent and/or '010 Patent.

- 40 -

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to any claimed praise by others of any product embodying the subject matter" of the '360 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing objects to this Request as vague and ambiguous because it seeks documents related to "the subject matter" of the '360 Patent and/or '010 Patent. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

- 41 -

## REQUEST FOR PRODUCTION NO. 83:

All documents and things relating to or supporting any contention by Secure Computing that Finjan has willfully infringed the claims of '361 Patent and/or '010 Patent.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to or supporting any contention by Secure Computing that Finjan has willfully infringed" the '360 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of ~~counsel and expert reports, including expert reports regarding infringement, validity, and/or~~ enforceability, pursuant to Rule 26(a)(2). Secure Computing further objects to this Request to the extent it seeks information beyond Secure Computing's actual knowledge, custody, or control. Secure Computing objects to this Request to the extent it seeks information in the possession of Finjan.

- 42 -

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 84:

All documents and things relating to any alleged damages as a result of any alleged infringement of the '361 Patent and/or '010 Patent, including reasonable royalties.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to any alleged damages as a result of any alleged infringement of" the '360 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports, including expert reports regarding infringement, validity, enforceability, and/or damages pursuant to Rule 26(a)(2). Secure Computing further objects to this Request to the extent it

- 43 -

seeks information beyond Secure Computing's actual knowledge, custody, or control. Secure Computing objects to this Request to the extent it seeks information in the possession of Finjan.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 85:**

All documents and things relating to any business plans, operating plans, or financial plans relating to the '361 Patent and/or '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to any business plans, operating plans, or financial plans relating to" the '360 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties.

- 44 -

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 86:

All documents and things relating to the valuation of the '361 Patent and/or '010 Patent whether for licensing, tax accounting, litigation, or any other purpose.

## RESPONSE:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to the valuation of" the '360 Patent and/or '010 Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request to the extent it purports to require Secure Computing to produce documents in ~~violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing~~ further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing further objects to this Request as premature because the Court has not yet construed the claims of the patents and because the Court's Scheduling Order governs when Secure Computing must disclose any opinions of counsel and expert reports,

- 45 -

including expert reports regarding infringement, validity, enforceability, and/or damages pursuant to Rule 26(a)(2).

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 87:**

All documents and things relating to any agreements or understandings relating to any financial interest that anyone has in the '361 Patent and/or '010 Patent or any damages or royalties received under the '361 Patent and/or '010 Patent.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing also objects to this Request as being overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all documents and things relating to any agreements or understandings relating to any financial interest that anyone has" in the '361 Patent and/or '010 ~~Patent. Secure Computing objects to this Request as overbroad and unduly burdensome because~~ it is not limited in time and subject matter. Secure Computing objects to this Request to the extent that it is vague and ambiguous. Secure Computing objects to this Request as vague and ambiguous because the term "understandings" is not defined. Secure Computing further objects to this Request to the extent that it seeks documents in the public domain. Secure Computing further objects to this Request to the extent it calls for a legal conclusion. Secure Computing

- 46 -

objects to this Request to the extent it purports to require Secure Computing to produce documents in violation of a legal or contractual obligation of nondisclosure to a third party. Secure Computing further objects to this Request to the extent it seeks confidential information and/or trade secrets of third parties. Secure Computing objects to this Request because it is duplicative of Request Nos. 55, 56, 58, and 59 and incorporates the responses and objections stated therein. Secure Computing objects to this Request to the extent that it is compound.

Subject to and without waiving the foregoing objections, Secure Computing will produce relevant, non-privileged, non-work product, documents responsive to this Request to the extent such documents exist and that Secure Computing is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 88:**

All documents and communications that relate to any actual, planned, contemplated, proposed, or requested licensing of the Security Products, which include without limitation IronMail and CyberGuard TSP.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Moreover, Secure Computing objects to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents and communications that relate to "planned" or "contemplated" licensing of the "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not

- 47 -

reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products."   Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that it will produce non-privileged, non-work product, responsive license agreements that relate to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 89:

~~All documents, technical documents, and communications that relate to the first offer for~~ sale of the Security Products, which include without limitation IronMail and CyberGuard TSP.

## RESPONSE:

Secure Computing incorporates by reference its General Objections.  Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any

-48-

other privilege or immunity. Secure Computing objects to this Request to the extent it seeks "source code" as being overbroad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Secure Computing objects to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents, technical documents, and communications that relate to "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Defendants not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that it will produce non-privileged, non-work product, responsive documents that relate to CyberGuard

- 49 -

TSP with Webwasher that it is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 90:**

All documents, technical documents, and communications that relate to the first sale of the Security Products, which include without limitation IronMail and CyberGuard TSP.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing objects to this Request to the extent it seeks "source code" as being overbroad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Secure Computing objects to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents, technical documents, and communications that relate to "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Defendants not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not

reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that it will produce non-privileged, non-work product, responsive documents that relate to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 91:

All documents and communications that relate to all sales of and revenue generated from the Security Products, which include without limitation IronMail and CyberGuard TSP, from the date of first sale to the present.

## RESPONSE:

Defendants incorporate by reference their General Objections. Defendants object to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Defendants object to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents "that relate to all sales of and revenue generated from the Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible

- 51 -

evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Defendants not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that it will produce non-privileged, non-work product, responsive documents related to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 92:**

~~All documents and communications that relate to your costs of the Security Products,~~ which include without limitation IronMail and CyberGuard TSP, from the date of first sale to the present.

**RESPONSE:**

Defendants incorporate by reference their General Objections. Defendants object to this Request to the extent that it seeks discovery of information or production of documents or things

- 52 -

protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Defendants object to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents "that relate to your costs of the Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Defendants not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Defendants state that they will produce non-privileged, non-work product, responsive documents related to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 93:**

All documents and communications that relate to your gross profits from the sales of the Security Products, which include without limitation IronMail and CyberGuard TSP, from the date of first sale to the present.

**RESPONSE:**

Defendants incorporate by reference their General Objections. Defendants object to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Defendants object to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents "that relate to your gross profits from the sales of the Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Defendants not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which

- 54 -

are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that it will produce non-privileged, non-work product, responsive documents related to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

## REQUEST FOR PRODUCTION NO. 94:

All documents and communications that relate to your net profits from the sales of the Security Products, which include without limitation IronMail and CyberGuard TSP, from the date of first sale to the present.

## RESPONSE:

Defendants incorporate by reference their General Objections. Defendants object to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Defendants object to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents "that relate to your net profits from the sales of the Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate with Finjan's legitimate

- 55 -

discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that it will produce non-privileged, non-work product, responsive documents related to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 95:**

All documents, technical documents, and communications that market and advertise the Security Products, which include without limitation IronMail and CyberGuard TSP.

**RESPONSE:**

Defendants incorporate by reference their General Objections. Defendants object to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Defendants object to this Request to the extent that it seeks discovery of information or production of documents or things that are in the public domain and therefore of no greater burden for Finjan to obtain than Defendants. Defendants object to this Request to the extent it seeks "source code" as being overbroad and unduly burdensome and not reasonably calculated to

- 56 -

lead to the discovery of admissible evidence. Defendants object to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents, technical documents, and communications "that market and advertise the Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Defendants not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that it will produce non-privileged, non-work product, responsive documents related to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

- 57 -

**REQUEST FOR PRODUCTION NO. 96:**

All complaints by consumers and customers regarding the Security Products, which include without limitation IronMail and CyberGuard TSP.

**RESPONSE:**

Defendants incorporate by reference their General Objections. Defendants object to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Defendants object to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents and communications that relate to the "complaints" regarding the "Security Products." Moreover, Defendants object to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action,

- 58 -

and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on

the grounds that IronMail does not have, and has never had, the functionality Finjan has accused

of infringement.

## REQUEST FOR PRODUCTION NO. 97:

All advertising and marketing of any products and services sold with the Security

Products, which include without limitation IronMail and Cyberguard TSP.

## RESPONSE:

Defendants incorporate by reference their General Objections. Defendants object to this

Request because it is duplicative of Request No. 95 and incorporates the responses and

objections stated therein. Further, Defendants object to this Request to the extent that it seeks

discovery of information or production of documents or things protected by the attorney-client

privilege, work product immunity, or any other privilege or immunity. Defendants object to this

Request to the extent that it seeks discovery of information or production of documents or things

that are in the public domain and therefore of no greater burden for Finjan to obtain than

Defendants. Defendants object to this Request as vague, ambiguous, overly broad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence in

seeking "all advertising and marketing of any products and services sold with the Security

Products." Secure Computing objects to this Request because it is overly broad and unduly

burdensome and it seeks information or materials which are irrelevant or immaterial to the issues

in this action, and/or which are not reasonably calculated to lead to the discovery of admissible

evidence, on the grounds that this Request exceeds the scope of discovery permissible under the

Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome

and would cause undue time and expense to Secure Computing not commensurate with Finjan's

- 59 -

legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that it will produce non-privileged, non-work product, responsive documents related to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

**REQUEST FOR PRODUCTION NO. 98:**

All documents, technical documents, and communications that relate to the manufacture and functionality of the Security Products, which include without limitation IronMail and CyberGuard TSP.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Moreover, Secure Computing objects to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the

discovery of admissible evidence in seeking all documents and communications that relate to "manufacture" and "functionality" of the "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

~~Subject to and without waiving the foregoing objections, Secure Computing states that it~~ will produce non-privileged, non-work product, responsive documents that relate to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

- 61 -

**REQUEST FOR PRODUCTION NO. 99**:

All documents, technical documents, and communications that relate to the source code of the Security Products, which include without limitation IronMail and CyberGuard TSP.

**RESPONSE:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this Request to the extent that it seeks discovery of information or production of documents or things protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Moreover, Secure Computing objects to this Request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in seeking all documents and communications that relate to "manufacture" and "functionality" of the "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that this Request exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this Request because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or

- 62 -

immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that it will produce non-privileged, non-work product, responsive documents that relate to CyberGuard TSP with Webwasher that it is able to locate after a reasonable search.

_Kelly E. Farnan_
Fredrick L. Cottrell, III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys For Defendants*

OF COUNSEL:

Ronald J. Schutz
Jake M. Holdreith
Christopher A. Seidl
Trevor J. Foster
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

Dated: June 8, 2007

- 63 -

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2007 true and correct copies of the foregoing document

were caused to be served on counsel of record at the following addresses as indicated:

### HAND DELIVERY

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street,
Hercules Plaza, 6th Floor
Wilmington, DE 19899-0951

### FEDERAL EXPRESS

Paul J. Andre
Radhika Tandon
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114

*Kelly E. Farnan*
Kelly E. Farnan (#4395)

# EXHIBIT L

RECEIVED

NOV 14 2007

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

FINJAN SOFTWARE, LTD., an Israel
corporation,

        Plaintiff-Counterdefendant,

        v.

SECURE COMPUTING CORPORATION, a
Delaware corporation; CYBERGUARD
CORPORATION, a Delaware corporation,
WEBWASHER AG, a German corporation and
DOES 1 THROUGH 100,

        Defendants-Counterclaimants.

C. A. No. 06-369 GMS

## SECURE COMPUTING'S SUPPLEMENTAL ANSWERS TO FINJAN'S INTERROGATORY NOS. 6, 7, 8, 10, 11, 12, 13, 14, 15, 23, 25, 27, 28, AND 29

Pursuant to Fed. R. Civ. P. 26 and 33, Secure Computing Corporation, Cyberguard Corporation, and Webwasher AG (collectively "Secure Computing") make the following Supplemental Responses to Finjan Software, Ltd.'s Interrogatory Nos. 6, 7, 8, 10, 11, 12, 13, 14, 15, 23, 25, 27, 28, and 29.

## GENERAL OBJECTIONS

1.    Secure Computing hereby incorporates by reference each and every general objection set forth below into each and every specific response. From time to time, a specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

2.    Secure Computing objects to Finjan's interrogatories to the extent they call for the disclosure of information or communications protected by the attorney-client privilege or any

other applicable privilege, rule of law, or statute, on the grounds that such matters are exempt from discovery.

    3.    Secure Computing objects to Finjan's interrogatories to the extent that they call for the disclosure of information protected by the work product doctrine, including the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Secure Computing concerning the above-captioned litigation, on the grounds that such information is exempt from discovery.

    4.    Secure Computing objects to Finjan's interrogatories to the extent they are overbroad, vague, and ambiguous, and also to the extent they seek information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that such interrogatories exceed the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate with Finjan's legitimate discovery needs.

    5.    Secure Computing objects to Finjan's interrogatories to the extent that they purport to seek information or materials from Secure Computing that are not within their possession, custody, and/or control, on the grounds that such discovery exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure.

    6.    Secure Computing objects to Finjan's interrogatories to the extent they seek information which is confidential and/or proprietary to Secure Computing. To the extent such information is responsive and relevant, Secure Computing will provide the same subject to the executed Protective Order in this matter.

- 2 -

7.   Secure Computing objects to the "Definitions" and "Instructions" sections of Finjan's interrogatories to the extent that the same imposes objections or contains information not consistent with the law or other rules and directions of this Court.

8.   Secure Computing objects to the Definitions of the terms "you," "your," and "Secure Computing" to the extent that definition does not accurately reflect the corporation structures of the respective Secure Computing or the previous mergers, acquisitions, purchases, sales or other corporation documents involving the Defendants.

9.   Secure Computing objects to Finjan's interrogatories to the extent they are premature, since discovery is continuing. Furthermore, Secure Computing reserves the right to supplement its responses to Finjan's interrogatories and to introduce at trial such additional facts and documents as are uncovered, developed, or relied upon by Secure Computing and its counsel in their continuing discovery and investigation of the issues in this action.

10.   By stating in these responses that Secure Computing will produce documents, Secure Computing does not intend to represent that any responsive documents actually exist, but rather that Secure Computing has made, and will continue to make, a reasonable, good faith search and attempt to ascertain whether responsive documents do in fact exist.

11.   Secure Computing objects to each and every Definition, Instruction and Interrogatory on the grounds and to the extent that it is vague, ambiguous and therefore unintelligible.

12.   Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent that it seeks information beyond Secure Computing's actual knowledge, custody or control.

- 3 -

13.    Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent that it seeks information within Finjan's knowledge, custody or control, or to the extent that it seeks information in the public domain. Finjan can ascertain answers to these interrogatories from their own records or from other sources at least readily available as Secure Computing.

14.    Secure Computing objects to each Definition, Instruction and Interrogatory to the extent that it requires interpretation and application of the legal conclusions and contentions of the parties. Secure Computing's responses shall not be construed as providing legal conclusions concerning the meaning or application of any terms used in Finjan's interrogatories.

15.    Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent that it is not reasonably calculated to lead to the discovery of admissible evidence.

16.    Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent it is unreasonably cumulative or duplicative, or seek information that is obtainable from some other source that is more convenient, less burdensome or less expensive.

17.    Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent it is compound with multiple subparts. Secure Computing will count each subpart as a separate interrogatory pursuant to Federal Rule Civil Procedure 33(a).

18.    Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent that it is premature, as the Court has not yet construed claim terms of the '361 Patent and '010 Patent.

- 4 -

19.    Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent that it is premature, as it seeks information that is set to be disclosed on scheduled dates directed by the Court.

20.    Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent it seeks expert testimony.

21.    Secure Computing's written responses are based upon information and writings available to and located by its attorneys as of the date of service of these responses. Secure Computing has not completed its investigation of the facts relating to this case, has not completed discovery in this action, and has not completed preparation for trial. All the information supplied, and documents and things produced were reasonable, available and specifically known to Secure Computing and its attorneys as of the date of service of these responses. Therefore, Secure Computing's written responses and production of documents are without prejudice to its right to supplement and/or amend such written responses and to present at trial evidence disclosed hereafter.

22.    Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent they are unduly burdensome and oppressive on the grounds that they purport to require Secure Computing to search its facility and inquire of its employees other than those facilities and employees that would reasonably be expected to have responsive information. Secure Computing's responses are based upon: (1) a reasonable search of facilities and files that could reasonably be expected to contain responsive information; and (2) inquiries of Secure Computing's employees and/or representatives who would reasonably be expected to possess responsive information.

- 5 -

23.    Secure Computing objects to each and every Definition, Instruction, and Interrogatory to the extent that they are unduly burdensome and oppressive, and the burden of providing such information will far outweigh the potential to elicit information relevant to the issues.

24.    Secure Computing objects to the Definition of the term "document" to the extent it purports to impose any requirement or discovery obligation greater or different than those imposed by the Federal Rules of Civil Produce.  Secure Computing further objects to this definition to the extent it calls for a legal conclusion, or seeks information protected by the attorney-client, the work product doctrine, or any other applicable law, privilege, doctrine or immunity.

25.    Secure Computing objects to the Definition of the term "person" to the extent it is overly broad and burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Secure Computing further objects to these definitions to the extent it calls for a legal conclusion or seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable law, privilege, doctrine or immunity.   Secure Computing further objects to these Definitions as it includes entities and persons over whom Secure Computing has no control.

26.    Secure Computing objects to the Definition of the terms "identify," "identity," or "identification" to the extent they purport to impose obligations other than those imposed by the Federal Rules of Civil Procedure.  Secure Computing further objects to these definitions to the extent it calls for a legal conclusion, or seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable law, privilege, doctrine or

- 6 -

immunity. Secure Computing further objects to these definitions as it includes entities and persons over whom Secure Computing has no control.

27.    Secure Computing objects to each and every Definition, Instruction and Interrogatory to the extent they purport to impose obligations other than those imposed by Federal Rules of Civil Procedure 26(b)(5).

28.    Secure Computing's answers to these interrogatories are not an admission that that any documents produced by Secure Computing and identified herein are authentic business records pursuant to the Federal Rules of Evidence or otherwise admissible.

## INTERROGATORIES

### INTERROGATORY NO. 6:

Identify all licenses for patents, proprietary technology, and know how that covers the SCM Product.

### ANSWER:

Secure Computing incorporates by reference its General Objections. Secure Computing objects to Interrogatory No. 6 to the extent that it seeks discovery of information protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing objects to the request for identification of "licenses" to the extent that it requires interpretation and application of legal conclusions and contentions of the parties. Secure Computing's responses shall not be construed as providing legal conclusions concerning the meaning or application of any terms used in Finjan's interrogatories.

Subject to and without waiving the foregoing objections, Secure Computing states that, as testified to by Mike Gallagher, Secure Computing does not license its patents. See Gallagher Depo. Trans., pp. 76, 228-29. Further, subject to and without waiving the foregoing objections,

- 7 -

Secure Computing states that pursuant to Fed. R. Civ. P. 33(d), Secure Computing will produce and/or has produced documents and agreements relating to the Webwasher product. See SWMS database (inspection provided 9/10/07); SC001129-SC001137; SC001138-SC001159; SC001160-SC001190; SC001191-SC001202; SC001203-SC001245; SC001246-SC001284; SC004874-SC004876; SC070335-SC070336; SC070337; SC080499-SC080523; SC081267; SC081268-SC081292; SC081293-SC081311; SC081312-SC081334; SC081715-SC081759; SC081760-SC081786; SC146582-SC146583; SC163650-SC163645; SC170071-SC170073; SC170078-SC170083; SC170093-SC170096; SC170100-SC170122; SC170123-SC170130; SC170139-SC170162; SC170163-SC170177; SC170213-SC170215; SC170252-SC170289; SC181716-SC181717.

Further, subject to and without waiving the foregoing objections, Secure Computing responds as follows: Finjan deposed Liz Lally and Mike Gallagher and responsive information may be found in the transcripts of those depositions, and the exhibits therewith.

**INTERROGATORY NO. 7:**

For each license identified in Interrogatory No. 6, identify the payments made for the license or revenue generated by the license.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to Interrogatory No. 7 to the extent that it seeks discovery of information protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing objects to the request for identification of "payments made for the license or revenue generated by the license" to the extent that it requires interpretation and application of legal conclusions and contentions of the parties. Secure Computing's responses shall not be construed

- 8 -

as providing legal conclusions concerning the meaning or application of any terms used in Finjan's interrogatories.

Subject to and without waiving the foregoing objections, Secure Computing states that, as testified to by Mike Gallagher, Secure Computing does not license its patents. See Gallagher Depo. Trans., pp. 76, 228-29. Further, subject to and without waiving the foregoing objections, Secure Computing states that pursuant to Fed. R. Civ. P. 33(d), Secure Computing will produce and/or has produced documents and agreements and financial-related documents relating to the Webwasher product. See SWMS database (inspection provided 9/10/07); SC001129-SC001137; SC001138-SC001159; SC001160-SC001190; SC001191-SC001202; SC001203-SC001245; SC001246-SC001284; SC004874-SC004876; SC070335-SC070336; SC070337; SC080499-SC080523; SC081267; SC081268-SC081292; SC081293-SC081311; SC081312-SC081334; SC081715-SC081759; SC081760-SC081786; SC146582-SC146583; SC163650-SC163645; SC170071-SC170073; SC170078-SC170083; SC170093-SC170096; SC170100-SC170122; SC170123-SC170130; SC170139-SC170162; SC170163-SC170177; SC170213-SC170215; SC170252-SC170289; SC181716-SC181717; SC001285-SC001304; SC002553-SC002558; SC002774-SC002775; SC002864-SC002867; SC002873-SC002875; SC002962-SC002965; SC004260-SC004264; SC004265-SC004278; SC004350-SC004364; SC004365-SC004379; SC004380-SC004394; SC004395-SC004409; SC004410-SC004423; SC004689-SC004710; SC004823-SC004825; SC004830-SC004861; SC006346-SC006474; SC012223-SC012224; SC012271-SC012273; SC012373-SC012374; SC012452-SC012453; SC012514-SC012546; SC012547-SC012573; SC012574-SC012576; SC012577-SC012580; SC012618-SC012623; SC012624-SC012626; SC012814-SC012867; SC013240-SC013242; SC013428-SC013433; SC013689-SC013691; SC015359-SC016654; SC016665-SC016674; SC017320-SC017355;

- 9 -

SC018138-SC018143;   SC018310-SC018325;   SC019130-SC019133;   SC019366-SC019369;

SC019390-SC019393;   SC020390-SC020396;   SC020397-SC020403;   SC020427-SC020433;

SC022818-SC022833;   SC031809-SC031850;   SC032936-SC032957;   SC070311-SC070321;

SC070429-SC070478;   SC070479-SC070528;   SC070537-SC070557;   SC070558-SC070589;

SC070616;   SC070617;   SC071968-SC071985;   SC072106-SC072150;   SC072151-SC072194;

SC072195-SC072197;   SC072198-SC072203;   SC072213-SC072257;   SC072258-SC072994;

SC072295-SC072327;   SC076766-SC076772;   SC077596-SC077623;   SC077867-SC077906;

SC077907-SC077932;   SC077958-SC077982;   SC077983-SC078012;   SC079353-SC079359;

SC079385-SC079399;   SC080670-SC080676;   SC080934-SC080949;   SC080971-SC080996;

SC081335;   SC081401-SC081464;   SC081530-SC081598;   SC081622-SC081642;   SC081966-

SC081975;   SC113572-SC114073;   SC114078-SC114079;   SC114080-SC114081;   SC114082-

SC114083;   SC114084-SC114085;   SC114086-SC114087;   SC114088-SC1149090;   SC114091-

SC114093;   SC114094-SC114096;   SC114097-SC114099;   SC114100-SC114102;   SC114103-

SC114104;   SC114105-SC114107;   SC114108-SC114109;   SC114110-SC114111;   SC115251-

SC115263;   SC115264-SC115276;   SC133676-SC133682;   SC144584-SC144596;   SC144992-

SC144993;   SC146505-SC146516;   SC148228;   SC148229-SC148232;   SC148233-SC148242;

SC148243-SC148250;   SC160886-SC160889;   SC161076-SC161080;   SC163957-SC163962;

SC163963-SC163968;   SC163969-SC163971;   SC164137-SC164206;   SC164221-SC164227;

SC164228-SC164234;   SC164235-SC164241;   SC164266-SC164270;   SC164419-SC164424;

SC164999-SC165021;   SC165173-SC165179;   SC171154-SC171177;   SC181980-SC182028;

SC182029-SC182032;   SC182033-SC182119;   SC182120-SC185059;   SC185786-SC186821;

SC186822-SC186877;   SC186878-SC186881;   SC186882-SC186896;   SC186897-SC186945;

SC186946-SC187046;   SC187047-SC187049;   SC187264-SC187266;   SC187395-SC187395;

- 10 -

SC187399;  SC187402-SC187419;  SC187426;  SC188557-SC188570;  SC188571-SC188606;

SC188607-SC188639;  SC188640-SC188654;  SC188655-SC188683;  SC204993-SC205057;

SC205058-SC205126;  SC205127-SC205190;  SC222073-SC222456;  SC222457-SC222784;

SC222785-SC223167;  SC223168-SC223545;  SC223546-SC223975;  SC223976-SC224480;

SC224531-SC224647; SC224845-SC224866; SC224867-SC224879; SC224880-SC224901.

Further, subject to and without waiving the foregoing objections, Secure Computing

responds as follows: Finjan deposed Liz Lally, Mike Gallagher, and Jill Putman and responsive

information may be found in the transcripts of those depositions, and the exhibits therewith.

**INTERROGATORY NO. 8:**

Identify the quarterly sales for the SCM Product.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing

object to Interrogatory No. 8 to the extent that it seeks discovery of information protected by the

attorney-client privilege, work product immunity, or any other privilege or immunity. Moreover,

Secure Computing objects to this Interrogatory as vague, ambiguous, overly broad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence in

asking Secure Computing to identify "the quarterly sales for the SCM Product." Subject to and

without waiving the foregoing objections, Secure Computing states that pursuant to Fed. R. Civ.

P. 33(d), Secure Computing will produce and/or has produced documents, including but not

limited to documents in response to Finjan's Document Request No 33 and including specifically

financial-related documents, from which the answer to this interrogatory may be derived or

ascertained.    See SWMS database (inspection provided 9/10/07); SC001285-SC001304;

SC002553-SC002558;  SC004830-SC004861;  SC012223-SC012224;  SC012271-SC012273;

- 11 -

SC012373-SC012374;  SC012452-SC012453;  SC012514-SC012546;  SC012547-SC012573;

SC012574-SC012576;  SC012577-SC012580;  SC012618-SC012623;  SC012624-SC012626;

SC012814-SC012867;  SC013240-SC013242;  SC013428-SC013433;  SC013689-SC013691;

SC016665-SC016674;  SC017320-SC017355;  SC018138-SC018143;  SC018310-SC018325;

SC019130-SC019133;  SC019366-SC019369;  SC019390-SC019393;  SC020390-SC020396;

SC020397-SC020403;  SC020427-SC020433;  SC031809-SC031850;  SC070429-SC070478;

SC070479-SC070528;  SC070537-SC070557;  SC070558-SC070589;  SC070616;  SC070617;

SC072195-SC072197;  SC072198-SC072203;  SC072258-SC072994;  SC072295-SC072327;

SC077867-SC077906;  SC114078-SC114079;  SC114080-SC114081;  SC114082-SC114083;

SC114084-SC114085;  SC114086-SC114087;  SC114088-SC1149090;  SC114091-SC114093;

SC114094-SC114096;  SC114097-SC114099;  SC114100-SC114102;  SC114103-SC114104;

SC114105-SC114107;  SC114108-SC114109;  SC114110-SC114111;  SC164999-SC165021;

SC185786-SC186821;  SC187402-SC187419;  SC188557-SC188570;  SC188571-SC188606;

SC188607-SC188639; SC188640-SC188654; SC188655-SC188683; SC224531-SC224647.

Further, subject to and without waiving the foregoing objections, Secure Computing responds as follows: Finjan deposed Jill Putman and responsive information may be found in the transcript of that deposition, and the exhibits therewith.

## INTERROGATORY NO. 10:

List by product name, version or model number, manufacturer and release date, all commercial products that you have offered for sale since January 1, 1995 until the present which analyze the behavior of incoming code at the gateway in order to protect against malicious or potentially malicious coding.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to Interrogatory No. 10 to the extent that it seeks discovery of information protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in asking Secure Computing to identify "all commercial products that you have offered for sale since January 1, 1995 until the present." Secure Computing objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence because the terms "commercial products", "analyze", "behavior", "incoming code", "gateway", "protect", and "malicious or potential malicious coding" are not defined by Finjan. Secure Computing further objects to Interrogatory No. 10 as premature because the Court has not yet construed the claims of the patents at issue, including construction of terms needed to respond to this Interrogatory. To the extent this interrogatory is requesting information relating to how Secure Computing's accused products function, subject to and without waiving the foregoing objections, Secure Computing states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Secure Computing has produced and/or will produce documents, including specifically technical documents, that provide Finjan information relating to the accused Webwasher product from which Finjan can determine whether the Webwasher product "analyze[s] the behavior of incoming code at the gateway in order to protect against malicious or potentially malicious coding" within the meaning Finjan gives that phrase. See SC001360-SC001386;  SC001387-SC001418;  SC001457-SC001494;  SC001495-SC001526;

- 13 -

SC001527-SC001553;  SC002458-SC002459;  SC002524-SC002551;  SC002886-SC002923;

SC002933-SC002961;  SC003063-SC003074;  SC003075-SC003076;  SC003077-SC003078;

SC003271-SC003272;  SC003430-SC003467;  SC003468-SC003496;  SC003499-SC003500;

SC003637-SC003640;  SC003641-SC003642;  SC003643-SC003644;  SC003645-SC003646;

SC004018-SC004019;  SC004020-SC004021;  SC005081-SC005082;  SC005377-SC005394;

SC005963-SC005968;  SC006034-SC006035;  SC006036-SC006039;  SC006312-SC006329;

SC006475-SC006478;  SC006479-SC006481;  SC006482;  SC006483-SC006484;  SC006485;

SC006487-SC006489;  SC006794-SC006900;  SC007055-SC007137;  SC007619-SC007645;

SC007675-SC007730;  SC007731-SC007794;  SC007926-SC007996;  SC007997-SC008051;

SC008052-SC008104;  SC008105-SC008134;  SC008135-SC008188;  SC008311-SC008327;

SC008328-SC008386;  SC008387-SC008413;  SC008443-SC008496;  SC008497-SC008551;

SC008552-SC008568;  SC008576-SC008610;  SC008719-SC008757;  SC008758-SC008782;

SC008807-SC008831;  SC008832-SC008856;  SC008857-SC008881;  SC008882-SC008908;

SC008909-SC008934;  SC008935-SC009064;  SC009065-SC009200;  SC009201-SC009370;

SC009371-SC009550;  SC009551-SC009730;  SC009759-SC009782;  SC009787-SC009821;

SC009822-SC009842;  SC009843-SC009879;  SC009880-SC009908;  SC010024-SC010051;

SC010058-SC010086;  SC010087-SC010105;  SC010180-SC010183;  SC010184-SC010185;

SC010227-SC010237;  SC010238-SC010245;  SC011633-SC011663;  SC011664-SC011688;

SC011689-SC011690;  SC011691-SC011692;  SC011693-SC011694;  SC011695-SC011696;

SC011697-SC011698;  SC011699-SC011700;  SC011701-SC011702;  SC011704-SC011705;

SC011706-SC011707;  SC011710-SC011711;  SC011712-SC011713;  SC011714-SC011715;

SC011716-SC011717;  SC011718-SC011719;  SC011720-SC011721;  SC011722-SC011723;

SC011736-SC011737;  SC011755-SC011756;  SC011757-SC011758;  SC011759-SC011762;

MP3 20249768.1
RLF1-3224528-1

SC011763-SC011766;  SC011767-SC011770;  SC011794-SC011818;  SC011819-SC011843;

SC011844-SC011868;  SC011869-SC011893;  SC011894-SC011918;  SC011919-SC011943;

SC011944-SC011968;  SC011969-SC011970;  SC011971-SC011972;  SC011973-SC011974;

SC011975-SC011976;  SC011977-SC011978;  SC011979-SC011980;  SC011981-SC011982;

SC011983-SC011984;  SC011985-SC011986;  SC011987-SC011988;  SC011989-SC011990;

SC011991-SC011992;  SC011993-SC011994;  SC012033-SC012034;  SC012035-SC012036;

SC012037-SC012038;  SC012039-SC012040;  SC012041-SC012042;  SC012043-SC012044;

SC012045-SC012046;  SC012079-SC012080;  SC012081-SC012082;  SC012083-SC012084;

SC012085-SC012086;  SC012087-SC012088;  SC012089-SC012090;  SC029458-SC029463;

SC029855-SC029882;  SC029883-SC029914;  SC030319-SC030340;  SC031214-SC031217;

SC032271-SC032323;  SC032324-SC032338;  SC032448-SC032479;  SC032497-SC032524;

SC032552-SC032579;  SC032588-SC032602;  SC032603-SC032634;  SC032839-SC032840;

SC032875-SC032876;  SC033661-SC033676;  SC033697-SC033698;  SC034015-SC034040;

SC044694-SC044711;  SC066026-SC066040;  SC066053-SC066077;  SC066097-SC066128;

SC066232-SC066263;  SC066264-SC066294;  SC066320-SC066334;  SC066354-SC066384;

SC067833-SC067834;  SC067835-SC067846;  SC067847-SC067850;  SC067947-SC067948;

SC067956-SC067959;  SC067960-SC067964;  SC067975-SC067978;  SC067979-SC067982;

SC067983-SC067986;  SC067987-SC067990;  SC068039-SC068040;  SC068041-SC068042;

SC068043-SC068044;  SC068045-SC068046;  SC068047-SC068048;  SC068049-SC068050;

SC068051-SC068052;  SC068053-SC068054;  SC068055-SC068056;  SC068057-SC068058;

SC068059-SC068060;  SC068061-SC068062;  SC068063-SC068064;  SC068065-SC068066;

SC068067-SC068068;  SC068069-SC068070;  SC068071-SC068072;  SC068073-SC068074;

SC068075-SC068076;  SC068077-SC068078;  SC068079-SC068080;  SC068081-SC068082;

MP3 20249768.1
RLF1-3224528-1

SC068087-SC068111;  SC068112-SC068136;  SC068161-SC0680178;  SC068388-SC068389;

SC068390-SC068391;  SC068392-SC068393;  SC068394-SC068395;  SC068409-SC068410;

SC068411-SC068412;  SC068844-SC068861;  SC068904-SC068905;  SC068906-SC068917;

SC068918-SC068921;  SC069149-SC069258;  SC070618-SC070727;  SC070749-SC070774;

SC070796-SC070821;  SC070889-SC070904;  SC070937-SC070961;  SC070969-SC071029;

SC071050-SC071064;  SC071065-SC071082;  SC071083-SC071095;  SC071096-SC071109;

SC071110-SC071124;  SC071583-SC071668;  SC071937-SC071967;  SC072954-SC072971;

SC075622-SC075623;  SC076786-SC0767986;  SC079360-SC079377;  SC113213-SC113238;

SC113239-SC113266;  SC114411-SC114415;  SC114416-SC114420;  SC114787-SC114814;

SC133070-SC133101;  SC135327-SC135338;  SC138866-SC138868;  SC138871-SC138875;

SC140949-SC140950;  SC140996-SC140997;  SC140998-SC140999;  SC141000-SC141001;

SC141017-SC141123;  SC142365-SC142396;  SC142946;  SC142947-SC143326;  SC143327-

SC143727;  SC144035-SC144058;  SC144059-SC144095;  SC144113-SC144182;  SC144183-

SC144252;  SC144253-SC144270;  SC144271-SC144295;  SC144296-SC144308;  SC144309-

SC144321;  SC144322-SC144358;  SC144359-SC144374;  SC144375-SC144393;  SC144394-

SC144413;  SC144414-SC144427;  SC145414-SC145445;  SC145463-SC145490;  SC155643-

SC155654;  SC155960-SC155987;  SC156008-SC156025;  SC156486-SC156487;  SC156488-

SC156516;  SC156522-SC156549;  SC156563-SC156591;  SC158572-SC158584;  SC160165-

SC160181;  SC160460-SC160470;  SC160654-SC160665;  SC160666-SC160683;  SC160685-

SC160713;  SC160714-SC160715;  SC163602-SC163613;  SC163617-SC163631;  SC163632-

SC163646;  SC164525-SC164535;  SC164536-SC164549;  SC164607-SC164634;  SC167807-

SC167821;  SC006573-SC006793;  SC007138-SC007286;  SC007287-SC007445;  SC007446-

SC007618;  SC007646-SC007667;  SC007795-SC007925;  SC008189-SC008212;  SC008213-

- 16 -

SC008237; SC008238-SC008262; SC008263-SC008289; SC008290-SC008310; SC008414-
SC008435; SC008611-SC008646; SC008647-SC008681; SC008682-SC008718; SC008785-
SC008806; SC069487-SC0609610; SC069611-SC069787; SC069788-SC069944; SC069945-
SC070094; SC070095-SC070212; SC070775-SC070795; SC070822-SC070888; SC071125-
SC071248; SC071249-SC071425; SC071426-SC071582; SC071669-SC071818; SC071819-
SC071936; SC135134-SC135183; SC135184-SC135326; SC141124-SC141339; SC141340-
SC141556; SC141557-SC141749; SC141750-SC141943; SC141944-SC142153; SC142154-
SC142364; SC142398-SC142596; SC142597-SC142796; SC142797-SC142945; SC143728-
SC143869; SC143870-SC144015; SC144016-SC144034; SC144096-SC144103; SC144104-
SC144112. Discovery is on-going and Secure Computing will supplement its answer to this
Interrogatory as facts and circumstances require and in compliance with any order and/or
schedule of the Court.

**INTERROGATORY NO. 11:**

For all of your products listed in response to Interrogatory No. 10, describe in detail how
each of the products performs the behavior analysis in order to protect against malicious or
potentially malicious code.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing
objects to Interrogatory No. 11 because it requests information relating to Interrogatory No. 10,
which Secure Computing have objected to, and is duplicative of Interrogatory No. 11, therefore,
Secure Computing incorporates its responses and objections to Interrogatory No. 10 stated
therein. Secure Computing further objects to this Interrogatory as vague, ambiguous, overly
broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible

- 17 -

evidence because the term "behavior analysis" is not defined. As stated in Secure Computing's answer to Interrogatory No. 10, to the extent this interrogatory is requesting information relating to how Secure Computing's accused products function, subject to and without waiving the foregoing objections, Secure Computing states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Secure Computing has produced and/or will produce documents, including specifically technical documents, that provide Finjan information relating to the accused Webwasher product from which Finjan can determine whether the Webwasher product "analyze[s] the behavior of incoming code at the gateway in order to protect against malicious or potentially malicious coding" within the meaning Finjan gives that phrase.

**INTERROGATORY NO. 12:**

List by product name, version or model number, manufacturer and release date, all commercial products that you have offered for sale since January 1, 1995 until the present which perform a hashing function in order to identify code.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to Interrogatory No. 12 to the extent that it seeks discovery of information protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in asking Secure Computing to identify "all commercial products that you have offered for sale since January 1, 1995 until the present." Secure Computing objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence because the terms "commercial products", "perform", "hashing function"

- 18 -

and "identify code" are not defined by Finjan. Secure Computing further objects to Interrogatory

No. 12 as premature because the Court has not yet construed the claims of the patents at issue,

including construction of terms needed to respond to this Interrogatory. Subject to and without

waiving the foregoing objections, to the extent this interrogatory is requesting information

relating to how Secure Computing's accused products function, subject to and without waiving

the foregoing objections, Secure Computing states that pursuant to Rule 33(d) of the Federal

Rules of Civil Procedure, Secure Computing has produced and/or will produce documents,

including specifically technical documents, that provide Finjan information relating to the

accused Webwasher product from which Finjan can determine whether the Webwasher product

"perform[s] a hashing function in order to identify code" within the meaning Finjan gives that

phrase. See SC001360-SC001386; SC001387-SC001418; SC001457-SC001494; SC001495-

SC001526; SC001527-SC001553; SC002458-SC002459; SC002524-SC002551; SC002886-

SC002923; SC002933-SC002961; SC003063-SC003074; SC003075-SC003076; SC003077-

SC003078; SC003271-SC003272; SC003430-SC003467; SC003468-SC003496; SC003499-

SC003500; SC003637-SC003640; SC003641-SC003642; SC003643-SC003644; SC003645-

SC003646; SC004018-SC004019; SC004020-SC004021; SC005081-SC005082; SC005377-

SC005394; SC005963-SC005968; SC006034-SC006035; SC006036-SC006039; SC006312-

SC006329; SC006475-SC006478; SC006479-SC006481; SC006482; SC006483-SC006484;

SC006485; SC006487-SC006489; SC006794-SC006900; SC007055-SC007137; SC007619-

SC007645; SC007675-SC007730; SC007731-SC007794; SC007926-SC007996; SC007997-

SC008051; SC008052-SC008104; SC008105-SC008134; SC008135-SC008188; SC008311-

SC008327; SC008328-SC008386; SC008387-SC008413; SC008443-SC008496; SC008497-

SC008551; SC008552-SC008568; SC008576-SC008610; SC008719-SC008757; SC008758-

- 19 -

SC008782; SC008807-SC008831; SC008832-SC008856; SC008857-SC008881; SC008882-SC008908; SC008909-SC008934; SC008935-SC009064; SC009065-SC009200; SC009201-SC009370; SC009371-SC009550; SC009551-SC009730; SC009759-SC009782; SC009787-SC009821; SC009822-SC009842; SC009843-SC009879; SC009880-SC009908; SC010024-SC010051; SC010058-SC010086; SC010087-SC010105; SC010180-SC010183; SC010184-SC010185; SC010227-SC010237; SC010238-SC010245; SC011633-SC011663; SC011664-SC011688; SC011689-SC011690; SC011691-SC011692; SC011693-SC011694; SC011695-SC011696; SC011697-SC011698; SC011699-SC011700; SC011701-SC011702; SC011704-SC011705; SC011706-SC011707; SC011710-SC011711; SC011712-SC011713; SC011714-SC011715; SC011716-SC011717; SC011718-SC011719; SC011720-SC011721; SC011722-SC011723; SC011736-SC011737; SC011755-SC011756; SC011757-SC011758; SC011759-SC011762; SC011763-SC011766; SC011767-SC011770; SC011794-SC011818; SC011819-SC011843; SC011844-SC011868; SC011869-SC011893; SC011894-SC011918; SC011919-SC011943; SC011944-SC011968; SC011969-SC011970; SC011971-SC011972; SC011973-SC011974; SC011975-SC011976; SC011977-SC011978; SC011979-SC011980; SC011981-SC011982; SC011983-SC011984; SC011985-SC011986; SC011987-SC011988; SC011989-SC011990; SC011991-SC011992; SC011993-SC011994; SC012033-SC012034; SC012035-SC012036; SC012037-SC012038; SC012039-SC012040; SC012041-SC012042; SC012043-SC012044; SC012045-SC012046; SC012079-SC012080; SC012081-SC012082; SC012083-SC012084; SC012085-SC012086; SC012087-SC012088; SC012089-SC012090; SC029458-SC029463; SC029855-SC029882; SC029883-SC029914; SC030319-SC030340; SC031214-SC031217; SC032271-SC032323; SC032324-SC032338; SC032448-SC032479; SC032497-SC032524; SC032552-SC032579; SC032588-SC032602; SC032603-SC032634; SC032839-

- 20 -

SC032840; SC032875-SC032876; SC033661-SC033676; SC033697-SC033698; SC034015-SC034040; SC044694-SC044711; SC066026-SC066040; SC066053-SC066077; SC066097-SC066128; SC066232-SC066263; SC066264-SC066294; SC066320-SC066334; SC066354-SC066384; SC067833-SC067834; SC067835-SC067846; SC067847-SC067850; SC067947-SC067948; SC067956-SC067959; SC067960-SC067964; SC067975-SC067978; SC067979-SC067982; SC067983-SC067986; SC067987-SC067990; SC068039-SC068040; SC068041-SC068042; SC068043-SC068044; SC068045-SC068046; SC068047-SC068048; SC068049-SC068050; SC068051-SC068052; SC068053-SC068054; SC068055-SC068056; SC068057-SC068058; SC068059-SC068060; SC068061-SC068062; SC068063-SC068064; SC068065-SC068066; SC068067-SC068068; SC068069-SC068070; SC068071-SC068072; SC068073-SC068074; SC068075-SC068076; SC068077-SC068078; SC068079-SC068080; SC068081-SC068082; SC068087-SC068111; SC068112-SC068136; SC068161-SC0680178; SC068388-SC068389; SC068390-SC068391; SC068392-SC068393; SC068394-SC068395; SC068409-SC068410; SC068411-SC068412; SC068844-SC068861; SC068904-SC068905; SC068906-SC068917; SC068918-SC068921; SC069149-SC069258; SC070618-SC070727; SC070749-SC070774; SC070796-SC070821; SC070889-SC070904; SC070937-SC070961; SC070969-SC071029; SC071050-SC071064; SC071065-SC071082; SC071083-SC071095; SC071096-SC071109; SC071110-SC071124; SC071583-SC071668; SC071937-SC071967; SC072954-SC072971; SC075622-SC075623; SC076786-SC0767986; SC079360-SC079377; SC113213-SC113238; SC113239-SC113266; SC114411-SC114415; SC114416-SC114420; SC114787-SC114814; SC133070-SC133101; SC135327-SC135338; SC138866-SC138868; SC138871-SC138875; SC140949-SC140950; SC140996-SC140997; SC140998-SC140999; SC141000-SC141001; SC141017-SC141123; SC142365-SC142396; SC142946; SC142947-SC143326;

SC143327-SC143727;  SC144035-SC144058;  SC144059-SC144095;  SC144113-SC144182;

SC144183-SC144252;  SC144253-SC144270;  SC144271-SC144295;  SC144296-SC144308;

SC144309-SC144321;  SC144322-SC144358;  SC144359-SC144374;  SC144375-SC144393;

SC144394-SC144413;  SC144414-SC144427;  SC145414-SC145445;  SC145463-SC145490;

SC155643-SC155654;  SC155960-SC155987;  SC156008-SC156025;  SC156486-SC156487;

SC156488-SC156516;  SC156522-SC156549;  SC156563-SC156591;  SC158572-SC158584;

SC160165-SC160181;  SC160460-SC160470;  SC160654-SC160665;  SC160666-SC160683;

SC160685-SC160713;  SC160714-SC160715;  SC163602-SC163613;  SC163617-SC163631;

SC163632-SC163646;  SC164525-SC164535;  SC164536-SC164549;  SC164607-SC164634;

SC167807-SC167821;  SC006573-SC006793;  SC007138-SC007286;  SC007287-SC007445;

SC007446-SC007618;  SC007646-SC007667;  SC007795-SC007925;  SC008189-SC008212;

SC008213-SC008237;  SC008238-SC008262;  SC008263-SC008289;  SC008290-SC008310;

SC008414-SC008435;  SC008611-SC008646;  SC008647-SC008681;  SC008682-SC008718;

SC008785-SC008806;  SC069487-SC0609610;  SC069611-SC069787;  SC069788-SC069944;

SC069945-SC070094;  SC070095-SC070212;  SC070775-SC070795;  SC070822-SC070888;

SC071125-SC071248;  SC071249-SC071425;  SC071426-SC071582;  SC071669-SC071818;

SC071819-SC071936;  SC135134-SC135183;  SC135184-SC135326;  SC141124-SC141339;

SC141340-SC141556;  SC141557-SC141749;  SC141750-SC141943;  SC141944-SC142153;

SC142154-SC142364;  SC142398-SC142596;  SC142597-SC142796;  SC142797-SC142945;

SC143728-SC143869;  SC143870-SC144015;  SC144016-SC144034;  SC144096-SC144103;

SC144104-SC144112. Discovery is on-going and Secure Computing will supplement its answer

to this Interrogatory as facts and circumstances require and in compliance with any order and/or

schedule of the Court.

- 22 -

**INTERROGATORY NO. 13:**

For all of your products listed in response to Interrogatory No. 12, describe in detail how each of the products performs the hashing function in order identify code.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to Interrogatory No. 13 because it requests information relating to Interrogatory No. 12, which Secure Computing have objected to, and is duplicative of Interrogatory No. 12, therefore, Secure Computing incorporates its responses and objections to Interrogatory No. 12 stated therein. As stated in Secure Computing's answer to Interrogatory No. 12, subject to and without waiving the foregoing objections, to the extent this interrogatory is requesting information relating to how Secure Computing's accused products function, Secure Computing states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Secure Computing has produced and/or will produce documents, including specifically technical documents, that provide Finjan information relating to the accused Webwasher product from which Finjan can determine whether the Webwasher product "perform[s] a hashing function in order to identify code" within the meaning Finjan gives that phrase.

**INTERROGATORY NO. 14:**

List by product name, version or model number, manufacturer and release date, all commercial products that you have offered for sale since January 1, 1995 until the present which utilize a sandbox in order to protect against malicious or potentially malicious code.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to Interrogatory No. 14 to the extent that it seeks discovery of information protected by

- 23 -

the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing object to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in asking to identify "all commercial products that you have offered for sale since January 1, 1995 until the present." Secure Computing objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence because the terms "commercial products", "utilize", "sandbox", "protect" and "malicious or potential malicious code" are not defined by Finjan. Secure Computing further objects to Interrogatory No. 14 as premature because the Court has not yet construed the claims of the patents at issue, including construction of terms needed to respond to this Interrogatory. Subject to and without waiving the foregoing objections, to the extent this interrogatory is requesting information relating to how Secure Computing's accused products function, Secure Computing states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Secure Computing has produced and/or will produce documents, including specifically technical documents, that provide Finjan information relating to the accused Webwasher product from which Finjan can determine whether the Webwasher product "utilize[s] a sandbox in order to protect against malicious or potentially malicious code" within the meaning Finjan gives that phrase. See SC001360-SC001386; SC001387-SC001418; SC001457-SC001494; SC001495-SC001526; SC001527-SC001553; SC002458-SC002459; SC002524-SC002551; SC002886-SC002923; SC002933-SC002961; SC003063-SC003074; SC003075-SC003076; SC003077-SC003078; SC003271-SC003272; SC003430-SC003467; SC003468-SC003496; SC003499-SC003500; SC003637-SC003640; SC003641-SC003642; SC003643-SC003644; SC003645-SC003646; SC004018-SC004019; SC004020-SC004021; SC005081-SC005082; SC005377-

- 24 -

SC005394; SC005963-SC005968; SC006034-SC006035; SC006036-SC006039; SC006312-SC006329; SC006475-SC006478; SC006479-SC006481; SC006482; SC006483-SC006484; SC006485; SC006487-SC006489; SC006794-SC006900; SC007055-SC007137; SC007619-SC007645; SC007675-SC007730; SC007731-SC007794; SC007926-SC007996; SC007997-SC008051; SC008052-SC008104; SC008105-SC008134; SC008135-SC008188; SC008311-SC008327; SC008328-SC008386; SC008387-SC008413; SC008443-SC008496; SC008497-SC008551; SC008552-SC008568; SC008576-SC008610; SC008719-SC008757; SC008758-SC008782; SC008807-SC008831; SC008832-SC008856; SC008857-SC008881; SC008882-SC008908; SC008909-SC008934; SC008935-SC009064; SC009065-SC009200; SC009201-SC009370; SC009371-SC009550; SC009551-SC009730; SC009759-SC009782; SC009787-SC009821; SC009822-SC009842; SC009843-SC009879; SC009880-SC009908; SC010024-SC010051; SC010058-SC010086; SC010087-SC010105; SC010180-SC010183; SC010184-SC010185; SC010227-SC010237; SC010238-SC010245; SC011633-SC011663; SC011664-SC011688; SC011689-SC011690; SC011691-SC011692; SC011693-SC011694; SC011695-SC011696; SC011697-SC011698; SC011699-SC011700; SC011701-SC011702; SC011704-SC011705; SC011706-SC011707; SC011710-SC011711; SC011712-SC011713; SC011714-SC011715; SC011716-SC011717; SC011718-SC011719; SC011720-SC011721; SC011722-SC011723; SC011736-SC011737; SC011755-SC011756; SC011757-SC011758; SC011759-SC011762; SC011763-SC011766; SC011767-SC011770; SC011794-SC011818; SC011819-SC011843; SC011844-SC011868; SC011869-SC011893; SC011894-SC011918; SC011919-SC011943; SC011944-SC011968; SC011969-SC011970; SC011971-SC011972; SC011973-SC011974; SC011975-SC011976; SC011977-SC011978; SC011979-SC011980; SC011981-SC011982; SC011983-SC011984; SC011985-SC011986; SC011987-SC011988; SC011989-

SC011990;  SC011991-SC011992;  SC011993-SC011994;  SC012033-SC012034;  SC012035-
SC012036;  SC012037-SC012038;  SC012039-SC012040;  SC012041-SC012042;  SC012043-
SC012044;  SC012045-SC012046;  SC012079-SC012080;  SC012081-SC012082;  SC012083-
SC012084;  SC012085-SC012086;  SC012087-SC012088;  SC012089-SC012090;  SC029458-
SC029463;  SC029855-SC029882;  SC029883-SC029914;  SC030319-SC030340;  SC031214-
SC031217;  SC032271-SC032323;  SC032324-SC032338;  SC032448-SC032479;  SC032497-
SC032524;  SC032552-SC032579;  SC032588-SC032602;  SC032603-SC032634;  SC032839-
SC032840;  SC032875-SC032876;  SC033661-SC033676;  SC033697-SC033698;  SC034015-
SC034040;  SC044694-SC044711;  SC066026-SC066040;  SC066053-SC066077;  SC066097-
SC066128;  SC066232-SC066263;  SC066264-SC066294;  SC066320-SC066334;  SC066354-
SC066384;  SC067833-SC067834;  SC067835-SC067846;  SC067847-SC067850;  SC067947-
SC067948;  SC067956-SC067959;  SC067960-SC067964;  SC067975-SC067978;  SC067979-
SC067982;  SC067983-SC067986;  SC067987-SC067990;  SC068039-SC068040;  SC068041-
SC068042;  SC068043-SC068044;  SC068045-SC068046;  SC068047-SC068048;  SC068049-
SC068050;  SC068051-SC068052;  SC068053-SC068054;  SC068055-SC068056;  SC068057-
SC068058;  SC068059-SC068060;  SC068061-SC068062;  SC068063-SC068064;  SC068065-
SC068066;  SC068067-SC068068;  SC068069-SC068070;  SC068071-SC068072;  SC068073-
SC068074;  SC068075-SC068076;  SC068077-SC068078;  SC068079-SC068080;  SC068081-
SC068082;  SC068087-SC068111;  SC068112-SC068136;  SC068161-SC0680178;  SC068388-
SC068389;  SC068390-SC068391;  SC068392-SC068393;  SC068394-SC068395;  SC068409-
SC068410;  SC068411-SC068412;  SC068844-SC068861;  SC068904-SC068905;  SC068906-
SC068917;  SC068918-SC068921;  SC069149-SC069258;  SC070618-SC070727;  SC070749-
SC070774;  SC070796-SC070821;  SC070889-SC070904;  SC070937-SC070961;  SC070969-

- 26 -

SC071029; SC071050-SC071064; SC071065-SC071082; SC071083-SC071095; SC071096-SC071109; SC071110-SC071124; SC071583-SC071668; SC071937-SC071967; SC072954-SC072971; SC075622-SC075623; SC076786-SC0767986; SC079360-SC079377; SC113213-SC113238; SC113239-SC113266; SC114411-SC114415; SC114416-SC114420; SC114787-SC114814; SC133070-SC133101; SC135327-SC135338; SC138866-SC138868; SC138871-SC138875; SC140949-SC140950; SC140996-SC140997; SC140998-SC140999; SC141000-SC141001; SC141017-SC141123; SC142365-SC142396; SC142946; SC142947-SC143326; SC143327-SC143727; SC144035-SC144058; SC144059-SC144095; SC144113-SC144182; SC144183-SC144252; SC144253-SC144270; SC144271-SC144295; SC144296-SC144308; SC144309-SC144321; SC144322-SC144358; SC144359-SC144374; SC144375-SC144393; SC144394-SC144413; SC144414-SC144427; SC145414-SC145445; SC145463-SC145490; SC155643-SC155654; SC155960-SC155987; SC156008-SC156025; SC156486-SC156487; SC156488-SC156516; SC156522-SC156549; SC156563-SC156591; SC158572-SC158584; SC160165-SC160181; SC160460-SC160470; SC160654-SC160665; SC160666-SC160683; SC160685-SC160713; SC160714-SC160715; SC163602-SC163613; SC163617-SC163631; SC163632-SC163646; SC164525-SC164535; SC164536-SC164549; SC164607-SC164634; SC167807-SC167821; SC006573-SC006793; SC007138-SC007286; SC007287-SC007445; SC007446-SC007618; SC007646-SC007667; SC007795-SC007925; SC008189-SC008212; SC008213-SC008237; SC008238-SC008262; SC008263-SC008289; SC008290-SC008310; SC008414-SC008435; SC008611-SC008646; SC008647-SC008681; SC008682-SC008718; SC008785-SC008806; SC069487-SC0609610; SC069611-SC069787; SC069788-SC069944; SC069945-SC070094; SC070095-SC070212; SC070775-SC070795; SC070822-SC070888; SC071125-SC071248; SC071249-SC071425; SC071426-SC071582; SC071669-SC071818;

- 27 -

SC071819-SC071936;   SC135134-SC135183;   SC135184-SC135326;   SC141124-SC141339;

SC141340-SC141556;   SC141557-SC141749;   SC141750-SC141943;   SC141944-SC142153;

SC142154-SC142364;   SC142398-SC142596;   SC142597-SC142796;   SC142797-SC142945;

SC143728-SC143869;   SC143870-SC144015;   SC144016-SC144034;   SC144096-SC144103;

SC144104-SC144112. Discovery is on-going and Secure Computing will supplement its answer

to this Interrogatory as facts and circumstances require and in compliance with any order and/or

schedule of the Court.

**INTERROGATORY NO. 15:**

For all of your products listed in response to Interrogatory No. 14, describe in detail how

each of the products utilizes the sandbox in order to protect against malicious or potentially

malicious code.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing

objects to Interrogatory No. 15 because it requests information relating to Interrogatory No. 14,

which Secure Computing has objected to, and is duplicative of Interrogatory No. 14, therefore,

Secure Computing incorporates its responses and objections to Interrogatory No. 14 stated

therein. As stated in Secure Computing's answer to Interrogatory No. 14, subject to and without

waiving the foregoing objections, to the extent this interrogatory is requesting information

relating to how Secure Computing's accused products function, Secure Computing states that

pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Secure Computing has produced

and/or will produce documents, including specifically technical documents, that provide Finjan

information relating to the accused Webwasher product from which Finjan can determine

- 28 -

whether the Webwasher product "utilize[s] a sandbox in order to protect against malicious or potentially malicious code" within the meaning Finjan gives that phrase.

**INTERROGATORY NO. 23:**

For each claim of the '361 Patent and '010 Patent, state the date when and location where the subject matter was (i) conceived, (ii) first observed experimentally, (iii) first described in a document, (iv) first reduced to practice, and (v) first disclosed to a person other than the inventors, and identify each person who contributed to the conception and reduction of practice of the claimed subject matter and described his or her contribution.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this interrogatory to the extent it requires a legal interpretation or conclusion to which no response is required. Secure Computing further objects to this interrogatory to the extent it is overly broad, unduly burdensome and oppressive. Secure Computing objects to this interrogatory to the extent that it is compound amounting to at least five (5) separate interrogatories because it is comprised of multiple discrete subparts. Secure computing further objects to this interrogatory to the extent that it seeks documents that are protected by the attorney-client privilege, the work product immunity doctrine and/or any other applicable privilege.

Subject to and without waiving the foregoing general and specific objections, Secure Computing responds as follows: Finjan has not identified prior art that puts conception or reduction to practice at issue. Absent any specific reliance on prior art by Finjan, this interrogatory is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably

- 29 -

calculated to lead to the discovery of admissible evidence. At this time, Secure Computing states that, for the '361 Patent, the date of conception and reduction to practice is no later than January 31, 2000, and for the '010 Patent, the date of conception and reduction to practice is no later than February 17, 1998. Secure Computing's investigation of this matter is continuing and its response to this interrogatory will be supplemented as additional information becomes known to it, and, specifically, in the event Finjan specifically references prior art that puts conception or reduction to practice at issue, Secure Computing reserves the right to supplement its response to this interrogatory. The persons most knowledgeable about the conception and reduction to practice are the inventors listed on the '361 and '010 Patents. To the extent that they exist, Secure Computing has produced and/or will produce non-privileged documents, and non-work product documents that are in its possession, custody or control from the files of Paula Greve and Steve Chew and from the patent file histories from which an answer to this interrogatory may be derived or ascertained pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, including in response to Finjan Document Request No. 60. See SC171697-SC172208; SC181353-SC181633; SC181634-SC181637; SC181638-SC181641; SC181642-SC181643; SC181644-SC181665; SC181666-SC181693; SC181694-SC181696; SC181697-SC181715; SC181718-SC181784; SC181785-SC181789; SC181790-SC181791; SC181792; SC181793; SC181794; SC181795; SC181796; SC181797; SC181798; SC181799; SC181800; SC181801; SC181802; SC181803; SC181804-SC181805; SC181806; SC181807; SC181808-SC181809; SC181810-SC181811; SC181812; SC181813-SC181814; SC181815; SC181816; SC181817-SC181818; SC181819; SC181820; SC181821; SC181822; SC181823; SC181824-SC181825; SC181826-SC181827; SC181828-SC181829; SC181830; SC181831; SC181832; SC181833; SC181834-SC181839; SC181840-SC181841; SC181842-SC181843; SC181844; SC181845-SC181846;

- 30 -

SC181847-SC181906; SC181907-SC181910; SC181911-SC181940; SC181941; SC181942-SC181943; SC181944-SC181945; SC202889-SC202901; SC172219-SC172488; SC172489-SC172871.

Further, subject to and without waiving the foregoing objections, Secure Computing responds as follows: Finjan deposed Steve Chew and Paula Greve and responsive information may be found in the transcripts of those depositions, and the exhibits therewith.

**INTERROGATORY NO. 25:**

Identify each and every person involved in the research, development, design, troubleshooting, manufacture, marketing, distribution, sale, or licensing of the Security Products, which include without limitations IronMail and CyberGuard TSP, and describe in detail the role that each such person played in the research, development, design, troubleshooting, manufacture, marketing, distribution, sale, or licensing of such products.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Secure Computing further objects to this interrogatory as compound, since it asks in a single interrogatory for separate answers relating to: (1) Secure Computing's research, development, and design of the "Security Products"; (2) Secure Computing's troubleshooting of the "Security Products"; (3) Secure Computing's manufacture of the "Security Products"; and (4) Secure Computing's manufacture, marketing, distribution, sale, and licensing of the "Security Products"; therefore, this interrogatory should be treated as four separate Interrogatories. Secure Computing objects to this interrogatory to the extent it is overbroad, vague, and ambiguous, and

- 31 -

also to the extent it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that such interrogatory exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products."  Secure Computing objects to this interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP."  Secure Computing objects to this interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that Cyberguard TSP with Webwasher is not, and has never been, available for purchase by customers, as the Webwasher functionality is locked and not available to customers. In other words, Secure Computing will not take an order for Webwasher on Cyberguard TSP, therefore, no customer will ever run Webwasher on Cyberguard TSP. Secure Computing objects to this interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that

- 32 -

pursuant to Fed. R. Civ. P. 33(d), Secure Computing has and/or will produce documents related to Cyberguard TSP with Webwasher from which the answer to this interrogatory may be derived or ascertained.    See  SC001080-SC001081;  SC001082-SC001109;  SC001554-SC001563;  SC003099-SC003101;  SC003102-SC003104;  SC003105-SC003107;  SC003108-SC003110;  SC003111-SC003114;  SC003115-SC003117;  SC003118-SC003120;  SC003121-SC003123;  SC003124-SC003125;  SC170354-SC170391;  SC156782-SC156824;  SC170610-SC170612;  SC171191-SC171192;  SC171207-SC171209;  SC171210-SC171212;  SC171299-SC171331;  SC172887-SC172891;  SC172894;  SC209527-SC209534;  SC209550-SC209580;  SC209730-SC209760;  SC210584-SC210589;  SC210790-SC210797;  SC212380-SC212423;  SC212424-SC212469;  SC212505-SC212550; SC212551-SC212596.

**INTERROGATORY NO. 27:**

Identify all licenses for patents, proprietary technology, and know how that cover the Security Products, which include without limitations IronMail and CyberGuard TSP.

**ANSWER:**

Secure Computing incorporates by reference its General Objections.  Secure Computing object to this interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege, work product immunity, or any other privilege or immunity.  Secure Computing objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in asking Secure Computing to identify "all licenses for patents, proprietary technology, and know how that cover the Security Products."    Secure Computing objects to this interrogatory to the extent it is overbroad, vague, and ambiguous, and also to the extent it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably

- 33 -

calculated to lead to the discovery of admissible evidence, on the grounds that such interrogatory exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that Cyberguard TSP with Webwasher is not, and has never been, available for purchase by customers, as the Webwasher functionality is locked and not available to customers. In other words, Secure Computing will not take an order for Webwasher on Cyberguard TSP, therefore, no customer will ever run Webwasher on Cyberguard TSP. Secure Computing objects to this interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement. Secure Computing objects to the request for identification of "licenses" to the extent that it requires interpretation and application of legal conclusions and contentions of the parties. Secure Computing's responses shall not be construed

- 34 -

as providing legal conclusions concerning the meaning or application of any terms used in Finjan's interrogatories.

Subject to and without waiving the foregoing objections, Secure Computing states that, as testified to by Mike Gallagher, Secure Computing does not license its patents. See Gallagher Depo. Trans., pp. 76, 228-29. Further, Secure Computing states that pursuant to Fed. R. Civ. P. 33(d), Secure Computing has endeavored to find and produce agreements relating to the CyberGuard TSP with Webwasher product, however, no such documents exist.

**INTERROGATORY NO. 28:**

Identify the quarterly sales for the Security Products, which include without limitations IronMail and CyberGuard TSP.

**ANSWER:**

Secure Computing incorporates by reference its General Objections. Secure Computing objects to this interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Moreover, Secure Computing objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in asking Defendants to identify "the quarterly sales for the Security Products." Secure Computing objects to this interrogatory to the extent it is overbroad, vague, and ambiguous, and also to the extent it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that such Third Set exceeds the scope of discovery permissible under the Federal Rules of Civil Procedure and that compliance therewith would be unduly burdensome and would cause undue time and expense to Secure Computing not commensurate

- 35 -

with Finjan's legitimate discovery needs because it seeks information relating to Secure Computing's "Security Products." Secure Computing objects to this interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects to this interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that Cyberguard TSP with Webwasher is not, and has never been, available for purchase by customers, as the Webwasher functionality is locked and not available to customers. In other words, Secure Computing will not take an order for Webwasher on Cyberguard TSP, therefore, no customer will ever run Webwasher on Cyberguard TSP. Secure Computing objects to this interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that IronMail does not have, and has never had, the functionality Finjan has accused of infringement.

Subject to and without waiving the foregoing objections, Secure Computing states that Cyberguard TSP with Webwasher is not, and has never been, available for purchase by customers, as the Webwasher code is locked and not available to customers. In other words, Secure Computing will not take an order for Webwasher on Cyberguard TSP, therefore, no customer will ever run Webwasher on Cyberguard TSP. Subject to and without waiving the foregoing objections, Secure Computing states that pursuant to Fed. R. Civ. P. 33(d), to extent

- 36 -

the information exists, Secure Computing has and/or will produce documents from which the answer to this interrogatory may be derived or ascertained relating to CyberGuard TSP with Webwasher.    See SWMS database (inspection provided 9/10/07); SC156782-SC156824; SC170610-SC170612; SC171191-SC171192; SC171207-SC171209; SC171210-SC171212; SC171299-SC171331; SC172887-SC172891; SC172894; SC209527-SC209534; SC209550-SC209580; SC209730-SC209760; SC210584-SC210589; SC210790-SC210797; SC212380-SC212423; SC212424-SC212469; SC212505-SC212550; SC212551-SC212596.

Further, subject to and without waiving the foregoing objections, Secure Computing responds as follows: Finjan deposed Jill Putman and responsive information may be found in the transcript of that deposition, and the exhibits therewith.

**INTERROGATORY NO. 29:**

List by version or model number, manufacturer and release date, the Webwasher, IronMail, and CyberGuard TSP products you sold or offered for sale since January 1, 1995 until the present.

**ANSWER:**

Secure Computing incorporates by reference its General Objections.  Secure Computing objects to this interrogatory to the extent that is seeks information that is protected by the attorney-client privilege, the work product immunity doctrine and/or any other applicable privilege.  Secure Computing objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Secure Computing objects to this Interrogatory because it is overly broad and unduly burdensome and it seeks information or materials which are irrelevant or immaterial to the issues in this action, and/or which are not reasonably calculated to lead to the discovery of admissible

- 37 -

evidence in that it seeks information relating to "Cyberguard TSP." Secure Computing objects

to this interrogatory because it is overly broad and unduly burdensome and it seeks information

or materials which are irrelevant or immaterial to the issues in this action, and/or which are not

reasonably calculated to lead to the discovery of admissible evidence, on the grounds that

Cyberguard TSP with Webwasher is not, and has never been, available for purchase by

customers, as the Webwasher functionality is locked and not available to customers. In other

words, Secure Computing will not take an order for Webwasher on Cyberguard TSP, therefore,

no customer will ever run Webwasher on Cyberguard TSP. Secure Computing objects to this

Interrogatory because it is overly broad and unduly burdensome and it seeks information or

materials which are irrelevant or immaterial to the issues in this action, and/or which are not

reasonably calculated to lead to the discovery of admissible evidence, in that it seeks information

relating to "IronMail," on the grounds that IronMail does not have, and has never had, the

functionality Finjan has accused of infringement. Subject to and without waiving the foregoing

objections, Secure Computing states that pursuant to Rule 33(d) of the Federal Rules of Civil

Procedure, Secure Computing has produced and/or will produce documents, including

specifically technical documents, that provide Finjan information relating to the Webwasher

product and the Cyberguard TSP with Webwasher product. See SC001360-SC001386;

SC001387-SC001418; SC001457-SC001494; SC001495-SC001526; SC001527-SC001553;

SC002458-SC002459; SC002524-SC002551; SC002886-SC002923; SC002933-SC002961;

SC003063-SC003074; SC003075-SC003076; SC003077-SC003078; SC003271-SC003272;

SC003430-SC003467; SC003468-SC003496; SC003499-SC003500; SC003637-SC003640;

SC003641-SC003642; SC003643-SC003644; SC003645-SC003646; SC004018-SC004019;

SC004020-SC004021; SC005081-SC005082; SC005377-SC005394; SC005963-SC005968;

- 38 -

SC006034-SC006035;  SC006036-SC006039;  SC006312-SC006329;  SC006475-SC006478;

SC006479-SC006481;  SC006482;  SC006483-SC006484;  SC006485;  SC006487-SC006489;

SC006794-SC006900;  SC007055-SC007137;  SC007619-SC007645;  SC007675-SC007730;

SC007731-SC007794;  SC007926-SC007996;  SC007997-SC008051;  SC008052-SC008104;

SC008105-SC008134;  SC008135-SC008188;  SC008311-SC008327;  SC008328-SC008386;

SC008387-SC008413;  SC008443-SC008496;  SC008497-SC008551;  SC008552-SC008568;

SC008576-SC008610;  SC008719-SC008757;  SC008758-SC008782;  SC008807-SC008831;

SC008832-SC008856;  SC008857-SC008881;  SC008882-SC008908;  SC008909-SC008934;

SC008935-SC009064;  SC009065-SC009200;  SC009201-SC009370;  SC009371-SC009550;

SC009551-SC009730;  SC009759-SC009782;  SC009787-SC009821;  SC009822-SC009842;

SC009843-SC009879;  SC009880-SC009908;  SC010024-SC010051;  SC010058-SC010086;

SC010087-SC010105;  SC010180-SC010183;  SC010184-SC010185;  SC010227-SC010237;

SC010238-SC010245;  SC011633-SC011663;  SC011664-SC011688;  SC011689-SC011690;

SC011691-SC011692;  SC011693-SC011694;  SC011695-SC011696;  SC011697-SC011698;

SC011699-SC011700;  SC011701-SC011702;  SC011704-SC011705;  SC011706-SC011707;

SC011710-SC011711;  SC011712-SC011713;  SC011714-SC011715;  SC011716-SC011717;

SC011718-SC011719;  SC011720-SC011721;  SC011722-SC011723;  SC011736-SC011737;

SC011755-SC011756;  SC011757-SC011758;  SC011759-SC011762;  SC011763-SC011766;

SC011767-SC011770;  SC011794-SC011818;  SC011819-SC011843;  SC011844-SC011868;

SC011869-SC011893;  SC011894-SC011918;  SC011919-SC011943;  SC011944-SC011968;

SC011969-SC011970;  SC011971-SC011972;  SC011973-SC011974;  SC011975-SC011976;

SC011977-SC011978;  SC011979-SC011980;  SC011981-SC011982;  SC011983-SC011984;

SC011985-SC011986;  SC011987-SC011988;  SC011989-SC011990;  SC011991-SC011992;

MP3 20249768.1
RLF1-3224528-1

SC011993-SC011994;  SC012033-SC012034;  SC012035-SC012036;  SC012037-SC012038;

SC012039-SC012040;  SC012041-SC012042;  SC012043-SC012044;  SC012045-SC012046;

SC012079-SC012080;  SC012081-SC012082;  SC012083-SC012084;  SC012085-SC012086;

SC012087-SC012088;  SC012089-SC012090;  SC029458-SC029463;  SC029855-SC029882;

SC029883-SC029914;  SC030319-SC030340;  SC031214-SC031217;  SC032271-SC032323;

SC032324-SC032338;  SC032448-SC032479;  SC032497-SC032524;  SC032552-SC032579;

SC032588-SC032602;  SC032603-SC032634;  SC032839-SC032840;  SC032875-SC032876;

SC033661-SC033676;  SC033697-SC033698;  SC034015-SC034040;  SC044694-SC044711;

SC066026-SC066040;  SC066053-SC066077;  SC066097-SC066128;  SC066232-SC066263;

SC066264-SC066294;  SC066320-SC066334;  SC066354-SC066384;  SC067833-SC067834;

SC067835-SC067846;  SC067847-SC067850;  SC067947-SC067948;  SC067956-SC067959;

SC067960-SC067964;  SC067975-SC067978;  SC067979-SC067982;  SC067983-SC067986;

SC067987-SC067990;  SC068039-SC068040;  SC068041-SC068042;  SC068043-SC068044;

SC068045-SC068046;  SC068047-SC068048;  SC068049-SC068050;  SC068051-SC068052;

SC068053-SC068054;  SC068055-SC068056;  SC068057-SC068058;  SC068059-SC068060;

SC068061-SC068062;  SC068063-SC068064;  SC068065-SC068066;  SC068067-SC068068;

SC068069-SC068070;  SC068071-SC068072;  SC068073-SC068074;  SC068075-SC068076;

SC068077-SC068078;  SC068079-SC068080;  SC068081-SC068082;  SC068087-SC068111;

SC068112-SC068136;  SC068161-SC0680178;  SC068388-SC068389;  SC068390-SC068391;

SC068392-SC068393;  SC068394-SC068395;  SC068409-SC068410;  SC068411-SC068412;

SC068844-SC068861;  SC068904-SC068905;  SC068906-SC068917;  SC068918-SC068921;

SC069149-SC069258;  SC070618-SC070727;  SC070749-SC070774;  SC070796-SC070821;

SC070889-SC070904;  SC070937-SC070961;  SC070969-SC071029;  SC071050-SC071064;

- 40 -

SC071065-SC071082;  SC071083-SC071095;  SC071096-SC071109;  SC071110-SC071124;
SC071583-SC071668;  SC071937-SC071967;  SC072954-SC072971;  SC075622-SC075623;
SC076786-SC0767986;  SC079360-SC079377;  SC113213-SC113238;  SC113239-SC113266;
SC114411-SC114415;  SC114416-SC114420;  SC114787-SC114814;  SC133070-SC133101;
SC135327-SC135338;  SC138866-SC138868;  SC138871-SC138875;  SC140949-SC140950;
SC140996-SC140997;  SC140998-SC140999;  SC141000-SC141001;  SC141017-SC141123;
SC142365-SC142396;  SC142946;  SC142947-SC143326;  SC143327-SC143727;  SC144035-
SC144058;  SC144059-SC144095;  SC144113-SC144182;  SC144183-SC144252;  SC144253-
SC144270;  SC144271-SC144295;  SC144296-SC144308;  SC144309-SC144321;  SC144322-
SC144358;  SC144359-SC144374;  SC144375-SC144393;  SC144394-SC144413;  SC144414-
SC144427;  SC145414-SC145445;  SC145463-SC145490;  SC155643-SC155654;  SC155960-
SC155987;  SC156008-SC156025;  SC156486-SC156487;  SC156488-SC156516;  SC156522-
SC156549;  SC156563-SC156591;  SC158572-SC158584;  SC160165-SC160181;  SC160460-
SC160470;  SC160654-SC160665;  SC160666-SC160683;  SC160685-SC160713;  SC160714-
SC160715;  SC163602-SC163613;  SC163617-SC163631;  SC163632-SC163646;  SC164525-
SC164535;  SC164536-SC164549;  SC164607-SC164634;  SC167807-SC167821;  SC006573-
SC006793;  SC007138-SC007286;  SC007287-SC007445;  SC007446-SC007618;  SC007646-
SC007667;  SC007795-SC007925;  SC008189-SC008212;  SC008213-SC008237;  SC008238-
SC008262;  SC008263-SC008289;  SC008290-SC008310;  SC008414-SC008435;  SC008611-
SC008646;  SC008647-SC008681;  SC008682-SC008718;  SC008785-SC008806;  SC069487-
SC0609610;  SC069611-SC069787;  SC069788-SC069944;  SC069945-SC070094;  SC070095-
SC070212;  SC070775-SC070795;  SC070822-SC070888;  SC071125-SC071248;  SC071249-
SC071425;  SC071426-SC071582;  SC071669-SC071818;  SC071819-SC071936;  SC135134-

- 41 -

SC135183; SC135184-SC135326; SC141124-SC141339; SC141340-SC141556; SC141557-SC141749; SC141750-SC141943; SC141944-SC142153; SC142154-SC142364; SC142398-SC142596; SC142597-SC142796; SC142797-SC142945; SC143728-SC143869; SC143870-SC144015; SC144016-SC144034; SC144096-SC144103; SC144104-SC144112; SC156782-SC156824; SC170610-SC170612; SC171191-SC171192; SC171207-SC171209; SC171210-SC171212; SC171299-SC171331; SC172887-SC172891; SC172894; SC209527-SC209534; SC209550-SC209580; SC209730-SC209760; SC210584-SC210589; SC210790-SC210797; SC212380-SC212423; SC212424-SC212469; SC212505-SC212550; SC212551-SC212596.

Discovery is on-going and Secure Computing may supplement its answer to this Interrogatory as facts and circumstances require and in compliance with any order and/or schedule of the Court.

AS TO OBJECTIONS:

_Kelly E. Farnan_

OF COUNSEL:

Ronald J. Schutz
Jake M. Holdreith
Christopher A. Seidl
Trevor J. Foster
ROBINS, KAPLAN, MILLER &
CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

Fredrick L. Cottrell, III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

***ATTORNEYS FOR DEFENDANTS***

Dated: November 14, 2007

- 42 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2007 true and correct copies of the foregoing document were caused to be served on counsel of record at the following addresses as indicated:

### HAND DELIVERY & E-MAIL

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street,
Hercules Plaza, 6th Floor
Wilmington, DE 19899-0951

### FEDERAL EXPRESS & E-MAIL

Paul J. Andre
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114

*Kelly E. Farnan*

Kelly E. Farnan (#4395)

RLF1-3156581-1

# EXHIBIT M

ROBINS. KAPLAN. MILLER & CIRESI LLP

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis. MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

**CHRISTOPHER A. SEIDL**
612-349-8468

May 1, 2007

## VIA FACSIMILE

James Hannah, Esq.
Perkins Coie LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114

      Re:    *Finjan Software, Ltd. v. Secure Computing Corporation, et al.*
           Our File No.: 028487.0002

Dear James:

      I write in response to your letter of April 30, 2007. You are correct that Secure Computing has agreed to produce all documents (excluding email) in response to Finjan's First Set of Requests for Documents by June 25, 2007, not just the categories mentioned in my letter of April 27. I thought my letter of April 27 made that clear. Of course, Secure Computing does not waive any of its stated objections to Finjan's First Set of Requests for Documents.

      Regarding documents relating to IronMail and Cyberguard TSP, again, as we discussed during our phone conference on April 26, Secure Computing has not agreed to produce by June 25, 2007: (1) documents "that market and advertise IronMail and Cyberguard TSP "; or (2) documents "that refer or relate to the gross profits and net profits from the sales of IronMail and Cyberguard TSP," as referenced in your letter of April 17, 2007, because Finjan's First Set of Requests for Documents does not include any requests for such documents. As we discussed today, Finjan's Second Set of Requests for Documents does not include any requests for such documents either. You agreed that your reference to Finjan's Second Set of Requests for Documents in your letter of April 30th is a typo, but you indicated that Finjan's Third Set of Requests for Documents, served just yesterday, contains requests directed to IronMail and Cyberguard TSP. Secure Computing will timely respond to Finjan's Second and Third Sets of Requests for Documents. Secure Computing does not agree to produce all documents in response to Finjan's Second and Third Sets of Requests for Documents by June 25, 2007. Our agreement was limited to documents in response to Finjan's First Set of Request for Documents because, among other things, that was the only set of document requests Finjan identified in the joint letter to the Court and, therefore, the only document requests we discussed. Secure

ATLANTA     BOSTON     LOS ANGELES   | MINNEAPOLIS |    NAPLES     SAINT PAUL    WASHINGTON, D.C.

MP3 20223294.1

James Hannah, Esq.
May 1, 2007
Page 2

Computing will produce documents in response to Finjan's recently served Second and Third
Sets of Requests for Documents on a rolling basis, beginning after Secure Computing serves its
responses and objections to the same.

     Please let me know if you have any questions.

              Regards,

              ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

              Christopher A. Seidl

CAS/cjj

MP3 20223294.1

# EXHIBIT N

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT O

461

```
 1              IN THE UNITES STATES DISTRICT COURT

 2            IN AND FOR THE DISTRICT OF DELAWARE

 3

 4    FINJAN SOFTWARE LTD.,      :  Civil Action
                                 :  No. 06-369(GMS)
 5                 Plaintiff,    :

 6          v.                   :

 7    SECURE COMPUTING CORPORATION, :
      CYBERGUARD CORPORATION,    :
 8    WEBWASHERE AG and DOES 1   :
      THROUGH 100,               :
 9                               :
                   Defendants.   :
10                      - - -

11
                 Wilmington, Delaware
12             Tuesday, March 4, 2008    Wed. Mar 5
                    8:30 a.m.
13               Day Three of Trial

14                      - - -

15    BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge,
                                and a Jury
16
      APPEARANCES:
17
                 PHILIP A. ROVNER, ESQ.
18               Potter Anderson & Corroon LLP
                          -and-
19               PAUL J. ANDRE, ESQ.,
                 LISA KOBIALKA, ESQ.,
20               JAMES HANNAH, ESQ.,
                 MEGHAN WARTON, ESQ.,
21               KRIS KASTENS, ESQ., and
                 HANNAH LEE, ESQ.,
22               King & Spalding
                 (Silicon Valley, California)
23
                              Counsel for Plaintiff
24

25
```

462

```
 1    APPEARANCES (Continued):

 2
           FREDERICK R. COTTRELL, III, ESQ., and
 3         KELLY J. FARNAN, ESQ.
           Richards, Layton & Finger
 4                  -and-
           RONALD J. SCHUTZ, ESQ.,
 5         CHRISTOPHER A. SEIDL, ESQ.,
           TREVOR J. FOSTER, ESQ., and
 6         JAKE M. HOLDREITH, ESQ.
            Robins, Kaplan, Miller & Ciresi, L.L.P.
 7         (Minneapolis, MN)

 8              Counsel for Defendants

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

461

 1          THE COURT: Good morning. Please be seated.

 2    There are some issues?

 3          MR. ANDRE: Good morning, Your Honor.

 4          THE COURT: Mr. Andre.

 5          MR. ANDRE: We have a couple issues regarding

 6    deposition designations. With we are going to finish with

 7    Dr. Vigna today. We will put our damages expert in.

 8          THE COURT: Is he actually going to finish

 9    today?

10          MR. ANDRE: We will be closing our case today.

11    Defendants have deposition designations they are going to

12    play into the record on videotape. We have the same

13    objection from both of them. There is a subject matter

14    regarding our 8 --

15          THE COURT: To the entire --

16          MR. ANDRE: A portion of both of them, they

17    relate to a recall of our product, our latest product, 8.5

18    version. It is highly prejudicial, and has absolutely no

19    bearing on validity in this case whatsoever. That is the

20    basis.

21          THE COURT: All right. Mr. Schutz.

22          MR. SCHUTZ: First, a minor correction. I think

23    we are readings them in. Yes.

24          The issue, Judge, is in response to their

25    allegations that their product has been commercial licensee

464

 1    successful and they have put that out there front and center

 2    and it's merely rebuttal to commercial success.

 3          I think it also probably relates, at least at

 4    some level, to their argument that we copied their product,

 5    although it is the later of these but it goes right to the

 6    heart of commercial success.

 7          THE COURT: Sounds like it does to me,

 8    Mr. Andre.

 9          MR. ANDRE: This is a version, Your Honor, that

10    was released two months ago. In --

11          THE COURT: You are saying the version that was

12    recalled?

13          MR. ANDRE: Yes. This is the last couple

14    months. In deposition took place in October 2007. It was a

15    hardware problem. That product has hit the market now,

16    widely successful. We have had our best quarter ever in the

17    fourth quarter.

18          So what -- if you see the testimony, Your Honor,

19    it is just a couple pages. I can hand this up if you would

20    like to see it.

21          THE COURT: I think I have the issue.

22          Mr. Absolute, I don't want to have a mini-trial

23    on this issue, if we can avoid it. I understand your point.

24    Why don't you react to, Mr. Andre has just indicated that

25    this is a later version -- is it an entirely different

645

Parr - direct

1   Q.    Let's get to Slide G-113, please.

2          Now, with all this information, we are trying to

3   put a rate and a number on the infringing sales. Correct?

4   A.    Right.

5   Q.    Could you describe what this is?

6   A.    This shows WebWasher software sales from 2004, when it

7   was first introduced, to the third quarter of 2007. And the

8   total amount is 49.4 million. And if you award a royalty

9   rate of 18 percent, then Finjan should get paid $8.9.

10  Q.    On the software?

11  A.    That's right.

12  Q.    Now, it's fair to say that in your report, your

13  numbers were a little higher and you have adjusted those.

14  Correct?

15  A.    Yes.

16  Q.    Why is that?

17  A.    Well, there was an adjustment to the numbers that I

18  put in my report for, how should I say it, key entry.

19  Instead of $89, I might have $98.

20  Q.    Typing errors?

21  A.    Typing error, that's right. I think the total errors

22  out of the 49 million, I think it was a couple hundred

23  thousand dollars in typing errors.

24         That has been fixed here.

25  Q.    And there was another product that you had put in and

646

Parr - direct

1   that I think you had taken out?

2   A.    That's right. I was told, I think it's called the

3   Sidewinder product?

4   Q.    I don't know if that's -- I think it was Inspector.

5   A.    There was a product that I was told to include because

6   it was alleged to infringe, and then I was told no.

7   Q.    So your number here on what you say are infringing

8   sales for software is lower than what is in your report?

9   A.    Yes. I don't think it's a lot, but, yes, they are a

10  little lower.

11  Q.    So this is just for the infringing sales and it's $49

12  million, the royalty rate of 18 percent gets you this almost

13  8.9 million. Is that correct?

14  A.    Yes.

15  Q.    Slide 114, please. Could you describe this slide?

16  A.    Okay. We talked about the TSP line and we also talked

17  about that it has WebWasher in it, from the Secure

18  documents.

19         These are the sales for the quarter shown, 2005,

20  quarter 1 through 4, and the first two quarters for 2006.

21  The amount of sales totaled 12. Remember, TSP is a hardware

22  product, less profitable. So I used a royalty rate of eight

23  percent. And the amount you pay to Finjan is just over

24  $970,000 for the TSP sales that we have information on

25  that's been reported.

647

Parr - direct

1   Q.    And why are there blanks in that chart?

2   A.    Because I haven't -- nobody has told me or provided

3   information about what sales have been in those periods.

4   Q.    Did you ask for it?

5   A.    Yes.

6   Q.    Where does that information come from?

7   A.    Well, normally it would come from you after you got it

8   from Secure Computing.

9   Q.    Would you go to the next slide, 115. Would you tell

10  me what this slide is?

11  A.    This is the WebWasher appliance sales. That shows for

12  the second, third, fourth quarter of 2006, and in the first

13  three quarters of 2007, the sales. And during that period,

14  total sales are approximately 3.2 million. And if you use

15  the eight-percent royalty, because that is an appliance, a

16  hardware product, then the total amount due Finjan is

17  $259,557.

18  Q.    The next slide, please.

19         This slide combines infringing sales. Could you

20  tell me what this depicts?

21  A.    Total damages for the period so far, from the

22  information I have, is $10.1 million.

23  Q.    So the actual infringing sales could change because

24  you don't have all the information, but your royalty rates

25  would be the same. Is that fair to say?

648

Parr - direct

1   A.    I wouldn't change the royalty rates. But you would

2   have the, the blanks you pointed out, once we fill those in,

3   then the total damages will go higher by applying the

4   royalty rates to those sales, too.

5   Q.    The rate wouldn't change, just the dollar amount

6   could?

7   A.    Right. The royalty base that you apply the rate to

8   would be higher.

9   Q.    Now, I asked you in the beginning of this testimony,

10  you made certain assumptions. You said that you did. Let's

11  assume that you didn't make those assumptions, there is an

12  interesting sentence, and say that one or -- let's say only

13  one of the patents infringed. Okay? Assume that. Would

14  your royalty rate be the same?

15  A.    Absolutely.

16  Q.    Why is that?

17  A.    What we are talking about here is freedom to operate.

18  If I had one claim in one patent that can -- that I can

19  charge you with infringing, it stops you, it shuts you down,

20  you are out of the market.

21         If you need 100 patents to move forward, then

22  you have the 18 percent, or the eight percent, whether

23  software or appliance, and you get a license for a hundred.

24  But if you don't need 100 patents, you just got one claim in

25  one patent, you have got to get a license to it you stop.

Parr - redirect

1  Q.  Right. And you have concluded that gross profit

2  margin for software is anywhere, around 93 percent to 99

3  percent. Right?

4  A.  Yes. That's the information I obtained, yes.

5  Q.  Could we go to PX-136, please.

6       Do you see that, PTX-136?

7  A.  I see it.

8  Q.  If you go to the next page. I will give you a second

9  to get it.

10      Do you recognize that document?

11  A.  I do recognize this document.

12  Q.  Could you go over to Page 2. Is this one of the

13  documents you used to determine the 93 percent gross profit

14  margin for software?

15  A.  Yes.

16  Q.  Tell the jury how you came about that using this

17  document.

18  A.  I didn't do any calculations. I just looked at it.

19  The WebWasher-Germany is showing gross profit margin, the

20  figures look like they are out from all aspects of the

21  WebWasher. It comes out with a gross profit margin of 93

22  percent.

23  Q.  Did this 93 percent, did this document -- did you make

24  any adjustments to this?

25  A.  No.

---

Parr - redirect

1  Q.  This is coming from the defendants. Right?

2  A.  Right. There is no R&D in here that I need to

3  eliminate, no ordinary expenses. I would have, but they

4  weren't in there to need to be adjusted.

5  Q.  You also said they had gross profit margins of 99

6  percent. Correct?

7  A.  Yes.

8  Q.  And you choose to rely on that. Right?

9  A.  Yes.

10  Q.  And you relied on it because you saw some testimony

11  from an employee of Secure. Right?

12  A.  Secure Computing employee, that's right.

13  Q.  Could you put up the first page of --

14      MR. HOLDREITH: Your Honor, I believe counsel is

15  about to show a page of a witness that is not here. I

16  object on hearsay grounds. I believe counsel is about to

17  show a page of a deposition of another witness.

18      MR. ROVNER: Mr. Parr relied on deposition

19  testimony of a Secure employee. I am going to point out

20  what that testimony was.

21      MR. HOLDREITH: Your Honor, I have no objection

22  if he asks Mr. Parr if he relied on it. But putting the

23  testimony in, that is hearsay.

24      THE COURT: Don't put it up, ask him about it.

25  BY MR. ROVNER:

---

Parr - redirect

1  Q.  Did you read the deposition of Ms. Putman?

2  A.  Jill Putman, that's right.

3  Q.  Do you know her to be the vice president of finance

4  for Secure Computing?

5  A.  Yes.

6  Q.  Is she also the treasurer of Secure Computing?

7  A.  Well, yes. I just remember her as vice president of

8  finance. I didn't remember she was also treasurer.

9  Q.  She gave deposition testimony. Correct?

10  A.  Yes.

11  Q.  Do you feel you can rely on financial information

12  provided by the director of finance?

13  A.  Yes.

14  Q.  And is that where she said that there was a gross

15  profit margin of 99 percent?

16  A.  Yes.

17  Q.  And you felt that was something you could rely on?

18  A.  Yes.

19      MR. ROVNER: I have no further questions, Your

20  Honor.

21      THE COURT: All right. Thank you, Mr. Parr.

22      THE WITNESS: Thank you very much, Your Honor.

23      THE COURT: Take care. Excused.

24      MR. ANDRE: Thank you, Your Honor. At this

25  time, Plaintiff, Finjan Software, rests its case.

---

Parr - redirect

1      THE COURT: All right. So, ladies and

2  gentlemen, as a predicted, Finjan has rested on its

3  case-in-chief, that is its direct case. We will resume

4  these proceedings tomorrow at 9:00.

5      (Jury leaves courtroom at 4:00 o'clock p.m.)

6      THE COURT: Counsel, did you say you had a set

7  of final instructions?

8      MS. KOBIALKA: We are getting really close to

9  being able to file something. I think it might be a little

10  later today, if that would be okay.

11      THE COURT: All right. Anything before we

12  recess?

13      MR. SCHUTZ: Not from us.

14      MR. ANDRE: Thank you, Your Honor.

15      (Court recessed).

16          - - -

17  Reporter: Kevin Maurer

18

19

20

21

22

23

24

25

---

# EXHIBIT P

**TABLE OF PREJUDGMENT INTEREST CALCULATED FROM DATE OF FIRST INFRINGING SALE THROUGH APRIL 21, 2008**

| | Time Period (Start of Infringement Through April 21, 2008) | Federal Reserve Average Annual Prime Rate (using annual rates from http://www.federalreserve.gov/releases/h15/data/Annual/H15_PRIME_NA.txt) For 2008, the average was taken from published January-April 2008 monthly prime rates (monthly rate for April 2008 was taken as average of weekly rates between April 1, 2008 and April 21, 2008)) | Prejudgment Interest Compounded Quarterly $A = P(1 + r/n)^{nt}$ P = principal amount r = annual interest rate n = number of times the interest is compounded per year t = time in years A = amount of principal plus interest after time t | Prejudgment Interest $I = A - P$ |
|---|---|---|---|---|
| **Webwasher Software Sales Considered By Jury (16% of $49 million = $7.84 million)** | October 1, 2004 - April 21, 2008 | 6.50% | P = 7,840,000 r = 0.0650 n = 4 t = 3.56 A = $9,862,886 | **$1,984,804** |
| **Webwasher Hardware Sales Considered By Jury (8% on $3.25 million = $0.26 million** | April 1, 2006 - April 21, 2008 | 7.33% | P = 260,000 r = 0.0733 n = 4 t = 2.06 A = $301,966 | **$40,652** |
| **TSP Appliance Sales Considered By Jury (8% on $13.5 million = $1.08 million)** | January 1, 2005 - April 21, 2008 | 7.04% | P = 1,080,000 r = 0.0704 n = 4 t = 3.31 A = $1,360,644 | **$280,644** |
| | | | | **TOTAL PREJUDGMENT INTEREST: $2,306,100** |

**TABLE OF PREJUDGMENT INTEREST CALCULATED FROM DATE OF FIRST INFRINGING SALE THROUGH ENTRY OF INJUNCTION [INCLUDING NEWLY ACCOUNTED SALES]**

| | Time Period (Start of Infringement Through Entry of Injunction) | Federal Reserve Average Annual Prime Rate (using annual rates from http://www.federalreserve.gov/releases/h15/data/Annual/H15_PRIME_NA.txt) For 2008, the average was taken from published January-___ 2008 monthly prime rates) | Prejudgment Interest Compounded Quarterly $A=P(1+r/n)^{nt}$ P=principal amount r = annual interest rate n = number of times the interest is compounded per year t = time in years between start of infringement and entry of injunction A = amount of principal plus interest after time t | Prejudgment Interest I = A-P |
|---|---|---|---|---|
| **Webwasher Software Sales Considered By Jury (16% of $49 million = $7.84 million)** | October 1, 2004 - Date Injunction Entered | [average rate (r) goes here] _____ | P = 7,840,000 + [newly accounted sales] r = average rate n= 4 t = _____ A = _____ | _____ |
| **Webwasher Hardware Sales Considered By Jury (8% on $3.25 million = $0.26 million)** | April 1, 2006 - Date Injunction Entered | [average rate (r) goes here] _____ | P = 260,000 + [newly accounted sales] r = average rate n = 4 t = _____ A = _____ | _____ |
| **TSP Appliance Sales Considered By Jury (8% on $13.5 million = $1.08 million)** | January 1, 2005 - Date Injunction Entered | [average rate (r) goes here] _____ | P =1,080,000 + [newly accounted sales] r = average rate n = 4 t = _____ A = _____ | _____ |
| | | | | **TOTAL PREJUDGMENT INTEREST:** _____ |