## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) | |
| | ) | Civil Action No. 06-369 GMS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SECURE COMPUTING CORPORATION, | ) | **PUBLIC VERSION** |
| a Delaware corporation, CYBERGUARD, | ) | |
| CORPORATION, a Delaware corporation, | ) | |
| WEBWASHER AG, a German corporation and | ) | |
| DOES 1 THROUGH 100, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF FINJAN SOFTWARE, LTD.'S OPENING BRIEF
IN SUPPORT OF ITS COMBINED POST-TRIAL MOTIONS FOR ENHANCED
DAMAGES AND ATTORNEYS' FEES, EXPENSES AND COSTS**

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
1000 Bridge Parkway
Suite 1000
Redwood City, CA 94065
(650) 590-0700

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff
Finjan Software, Ltd.

Dated: April 25, 2008
Public Version: May 2, 2008

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 3

ARGUMENT .............................................................................................................. 3

I.     IN LIGHT OF DEFENDANTS' WILLFUL INFRINGEMENT OF THE FINJAN
PATENTS, TREBLE DAMAGES PURSUANT TO 35 U.S.C. §284 ARE
APPROPRIATE BECAUSE THE JURY FOUND THAT DEFENDANTS
ACTED WITH  OBJECTIVE RECKLESSNESS AND THE READ FACTORS
WEIGH HEAVILY IN FAVOR OF FINJA ................................................... 3

     A.     The Jury Determined That Defendants Committed Willful Infringement
Of The Asserted Claims Of The Finjan Patents ........................................ 5

     B.     Defendants Copied Finjan's Technology After the Market Realized Its
Importance ................................................................................................ 6

     C.     Defendants Did Not Have A Good Faith Belief That The Finjan Patents
Were Invalid Or Not Infringed ................................................................. 9

     D.     Defendants' Vexatious Litigation Strategy Supports An Award Of Treble
Damages .................................................................................................. 11

          a.     Defendants Argued Contrary To The Claim Construction
Order ....................................................................................... 11

          b.     Defendants Pursued Frivolous And Unsupported Claims ........... 14

          c.     Defendants Pursued Unsupported Infringement Claims ............... 15

          d.     Finjan Was Forced to Waste Resources For Witnesses
Defendants Placed on the "Will-call" List But Never Called
At Trial ................................................................................... 17

     E.     Defendants' Gross Revenues and Large Size Permits An Award Of
Enhanced Damages ................................................................................. 18

     F.     Infringement, Willfulness and Validity Were Not Close Questions .................... 19

a.    Infringement Was Not A Close Question ...................................... 19

b.    Willfulness Was Not A Close Question ......................................... 22

c.    Validity Was Not A Close Question .............................................. 22

G.    Defendants Have Been Engaged In Infringing Activities For Years ................... 24

H.    Defendants Have Not Engaged In Any Remedial Action To Avoid
      Infringement Of The Finjan Patents ....................................................... 25

I.    Defendants Were Motivated to Drive Finjan Out of the Market by Stealing
      its Technology ............................................................................ 26

II.   THE EXCEPTIONAL NATURE OF THIS CASE WARRANTS ATTORNEYS'
      FEES, EXPENSES AND COSTS PURSUANT TO 35 U.S.C. § 285 ............................ 26

      A.    The Present Case Is An Exceptional One ......................................... 27

            1.    There Was No Close Question Of Willfulness And Bad Faith
                  Infringement ......................................................................... 27

            2.    Defendants Engaged in Litigation Misconduct, Litigated This
                  Action Vexatiously And In Bad Faith, And Pursued Frivolous
                  Suits ................................................................................. 28

      B.    An Award Of Attorneys' Fees, Costs and Expenses Is Appropriate In This
            Case ................................................................................. 28

CONCLUSION ................................................................................. 30

# TABLE OF AUTHORITIES

## CASES

*Advanced Medical Optics, Inc. v. Alcon Labs., Inc.,*
  C.A. No. 03-1095-KAJ, 2005 WL 3454283 (D. Del. Dec. 16, 2005) .....................................28

*Aero Products Intern., Inc. v. Intex Recreation Corp.,*
  466 F.3d 1000 (Fed. Cir. 2006)............................................................................................27

*Alza Corp. v. Mylan Labs., Inc.,*
  464 F.3d 1286 (Fed. Cir. 2006)............................................................................................23

*Amsted Indus. Inc. v. Buckeyes Steel Castings Co.,*
  24 F.3d 178 (Fed. Cir. 1994)................................................................................................11

*Beckman Instruments, Inc. v. LKB Produkter AB,*
  892 F.2d 1547 (Fed. Cir. 1989)...........................................................................................26

*C.R. Bard, Inc. v. U.S. Surgical Corp.,*
  258 F. Supp. 2d 355 (D. Del. 2003).....................................................................................28

*Del Mar Avionics, Inc. v. Quinton Instrument Co.,*
  836 F.2d 1320 (Fed. Cir. 1987)...........................................................................................24

*Energy Transp. Group, Inc. v. William Demant Holding A/S,*
  C.A. No. 05-422-GMS, 2008 WL 114861 (D. Del. Jan. 7, 2008)............................................9

*Golight v. Wal-mart Stores, Inc.,*
  355 F.3d 1327 (Fed. Cir. 2004)...........................................................................................27

*Hoffman-La Roche, Inc. v. Invamed, Inc.,*
  213 F.3d 1359 (Fed. Cir. 2000)...........................................................................................26

*In re Seagate Tech., LLC,*
  497 F.3d 1360 (Fed. Cir. 2007)...........................................................................................6

*Interspiro USA, Inc. v. Figgie Int'l Inc.,*
  18 F.3d 927 (Fed. Cir. 1994)...............................................................................................27

*Intra Corp. v. Hamar Laser Instruments, Inc.,*
  662 F. Supp. 1420 (E.D. Mich. 1987), *aff'd without opinion*, 862 F.2d 320 (Fed. Cir.
  1988), cert. denied, 490 U.S. 1021 (1989)............................................................................25

*Johnson & Johnson Assocs., Inc. v. R.E. Services Co.,*
  No. C97-04382CRB, 1998 U.S. Dist. LEXIS 20235 (N.D. Cal. Dec. 29, 1998) ......................4

*Jurgens v. CBK, Ltd.,*
    80 F.3d 1566 (Fed. Cir. 1996)........................................................................3, 5

*Kaufman Co. v. Lantech, Inc.,*
    807 F.2d 970 (Fed. Cir. 1996)......................................................................19, 24

*KSR Int'l Co. v. Teleflex, Inc.,*
    127 S. Ct. 1727 (2007).......................................................................................23

*Lucent Techs, Inc. v. Newbridge Networks Corp.,*
    168 F. Supp.2d 269 (D. Del. 2001)................................................................9, 26

Maxwell v. Angel-Etts,
    No. 99-10516 DT, 2001 U.S. Dist. LEXIS 25418 (C.D. Cal. July 9, 2001), *aff'd,* 53
    Fed. Appx. 561...................................................................................................18

*Medtronic Navigation, Inc. v. Brainlab Medizinische Computersystems Gmbh.,*
    No. 98-CV-01072-RPM, 2008 WL 410413 (D. Co. Feb. 12, 2008) ............11, 12. 13

*Mickowski v. Visi-Trak Corp.,*
    36 F. Supp. 2d 171 (S.D.N.Y. 1999)
    *aff'd without opinion,* 230 F.3d 1379 (Fed. Cir. 2000)...........................................10

*Read Corp. v. Portec, Inc.,*
    970 F.2d 816 (Fed. Cir. 1992)............................................................... Passim

*Renishaw PLC v. Marposs Soecita' Per Azioni,*
    158 F.3d 1243 (Fed. Cir. 1998).........................................................................21

*Rohm & Haas Co. v. Crystal Chem. Co.,*
    736 F.2d 688 (Fed. Cir. 1984)...........................................................................28

*S.C. Johnson & Son v. Carter-Wallace, Inc.,*
    781 F.2d 198 (Fed. Cir. 1994)...........................................................................29

*Smith v. Aleyska Pipeline Serv. Co.,*
    538 F. Supp. 977 (D. Del. 1982), *aff'd,* 758 F.2d 668 (Fed. Cir. 1985) ....................4

*Spectra-Physics Inc. v. Coherent, Inc.,*
    827 F.2d 1524 (Fed. Cir. 1987).........................................................................28

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,*
    127 F.3d 1462 (Fed. Cir. 1997)......................................................................3, 5

*St. Regis Paper Co. v. Winchester Carton Corp.,*
    410 F. Supp. 1304 (D. Mass. 1976) ..................................................................18

*Underwater Devices, Inc. v. Morrison-Knudsen Co.,*
   717 F.2d 1380 (Fed. Cir. 1983)............................................................................................9


## STATUTES

35 U.S.C. § 112............................................................................................................14, 21

35 U.S.C. §284............................................................................................................1, 3, 30

35 U.S.C. § 285.......................................................................................................... passim


## RULES

Fed. R. Civ. P. 11 ............................................................................................................15

Fed. R. Civ. P. 54 ............................................................................................................29

## NATURE AND STAGE OF PROCEEDINGS

On March 12, 2008, after a seven day trial, the jury reached a unanimous verdict on all claims in favor of Plaintiffs Finjan Software, Ltd. and Finjan Software, Inc. ("Finjan"). Specifically, the jury found that defendants Secure Computing Corporation ("Secure Computing"), Cyberguard Corporation ("Cyberguard") and Webwasher AG ("Webwasher") (collectively "Defendants") infringed all of the asserted claims of United States Patent Nos. 6,092,194 ("'194 Patent"), 6,804,780 ("'780 Patent") and 7,058,822 ("'822 Patent") (collectively "the Finjan Patents"). The jury further found Defendants' infringement was willful. The jury upheld the validity of the Finjan Patents and awarded Finjan past damages in the amount of 16% royalty rate for Webwasher software, 8% royalty rate for Webwasher appliances, and 8% for the TSP appliances. The jury determined these royalty rates should be applied to Defendants' sales of the Webwasher software, Webwasher appliances and TSP appliances. The total amount of past damages based on the latest sales information available to the jury totaled $9,180,000. In addition, the jury found that Finjan did not infringe any of the asserted claims of Defendants' patents, United States Patent Nos. 7,185,361 ("'361 Patent") and 6,357,010 ("'010 Patent") (collectively "Defendants' Patents"). The Court entered judgment on March 28, 2008.

## SUMMARY OF ARGUMENT

Finjan respectfully requests that the Court enhance damages and award attorneys' fees, expenses and costs under 35 U.S.C. § 284 and § 285. The reasons, which are explained in greater detail below, are as follows:

1)    Defendants knew of the Finjan Patents and deliberately copied Finjan's inventions with the intent to compete with Finjan.

2)    Defendants lacked a good faith belief of invalidity or non-infringement of the Finjan Patents. Furthermore, Defendants did not seek an opinion of counsel, even though they

knew that Finjan's technology was patented and that Finjan would "check very carefully which of their patents we may touch by recreating their system." Declaration of Lisa Kobialka in Support of Finjan's Combined Motion ("Kobialka Decl."), Ex. 1 (PTX-36 at 2).

  3)  Defendants' litigation misconduct and overall vexatious litigation strategy warrants enhancement of damages.

  4)  Secure Computing, which owns Cyberguard and Webwasher, is a large public company whose market capitalization has ranged over approximately $450 million to $750 million in the past year. As such, Defendants will not be deterred from future willful infringement absent a significant enhancement of damages.

  5)  The issues relating to infringement and validity were not close as Defendants were found to infringe all 45 of the asserted claims of three different patents.

  6)  Defendants began infringing as soon as the market reacted to the necessity of Finjan's technology in 2004 and have continued to infringe even *after* the jury's verdict of willful infringement, going so far as to announce to the public after the verdict that they intend to continue their infringing activities.

  7)  Defendants took no remedial action to lessen or eliminate the impact of its infringement on Finjan. Instead, Defendants have continued recklessly on their course of willful infringement.

  8)  Defendants were motivated to harm Finjan as evidenced by Defendants' review of the Finjan Patents to create an infringing product to drive Finjan out of the market with its "Finjan Killer" product.

2

## STATEMENT OF FACTS

The relevant facts are set forth in the Argument section below.

## ARGUMENT

**I.    IN LIGHT OF DEFENDANTS' WILLFUL INFRINGEMENT OF THE FINJAN PATENTS, TREBLE DAMAGES PURSUANT TO 35 U.S.C. §284 ARE APPROPRIATE BECAUSE THE JURY FOUND THAT DEFENDANTS ACTED WITH OBJECTIVE RECKLESSNESS AND THE READ FACTORS WEIGH HEAVILY IN FAVOR OF FINJAN.**

Pursuant to 35 U.S.C. § 284, Finjan respectfully requests the Court to treble the damages

awarded against Defendants for their willful infringement of the Finjan Patents.  A party having

knowledge of an adverse patent has an affirmative duty to exercise due care to avoid

infringement of a presumptively valid and enforceable patent.  *SRI Int'l, Inc. v. Advanced Tech.*

*Labs., Inc.*, 127 F.3d 1462, 1464 (Fed. Cir. 1997) (recognizing the tortious nature of patent

infringement and the public interest in a stable patent right in affirming the district court's

trebling of damages award for willful infringement absent good faith).  The principal

considerations in enhancement of damages are the same as those of the willfulness

determination, but "in greater nuance as may affect the degree of enhancement." *SRI*, 127 F.3d

at 1469.

Enhancing damages under 35 U.S.C. § 284 is a two-step process.  First, the fact-finder

must decide that an infringer is guilty of conduct upon which increased damages may be based.

Second, the court determines to what extent the damages should be increased, given the totality

of the circumstances. *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1573 (Fed. Cir. 1996) (holding that

the district court abused its discretion by failing to enhance damages or award attorneys' fees in

light of the jury's findings of willful and bad faith infringement) (internal citations omitted); *see*

*also Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826-28 (Fed. Cir. 1992) (compiling a list of

3

factors for deciding the extent to which damages should be increased once willful infringement is found). However, "it is well-established that a finding of willful infringement alone provides ample justification for an award of treble damages." *Johnson & Johnson Assocs., Inc. v. R.E. Services Co.*, No. 97-04382 CRB, 1998 U.S. Dist. LEXIS 20235, at *23 (N.D. Cal. Dec. 29, 1998); *see also Smith v. Aleyska Pipeline Serv. Co.*, 538 F. Supp. 977, 986 (D.Del. 1982), *aff'd*, 758 F.2d 668 (Fed. Cir. 1985) ("[a] patent owner is entitled to treble damages in a patent infringement action where the defendant has knowingly, deliberately, intentionally, willfully, or wantonly infringed the patent").

The Federal Circuit has set forth nine factors to "assist the trial court in evaluating the degree of the infringer's culpability and in determining whether to exercise its discretion to award enhanced damages and how much the damages should be increased." *Read*, 970 F.2d at 828. The *Read* factors are:

(1)    whether the infringers deliberately copied the ideas or design of another;

(2)    whether the infringers, when they knew of the other's patent protection, investigated the scope of the patents and formed a good faith belief that they were invalid or that they were not infringed;

(3)    the infringers' behavior as parties to litigation;

(4)    defendants' size and financial condition;

(5)    closeness of the case;

(6)    duration of defendants' misconduct;

(7)    remedial action by defendants;

(8)    defendants' motivation for harm; and

(9)    whether defendants attempted to conceal their misconduct.

4

*Id.* at 827. A careful consideration of the *Read* factors, as set forth below, demonstrates that the aggravating circumstances surrounding Defendants' overall conduct warrants the maximum allowable increase in damages.

**A.    The Jury Determined That Defendants Committed Willful Infringement Of The Asserted Claims Of The Finjan Patents.**

Willful infringement is a question of fact, and raises issues of "reasonableness and prudence ...often accompanied by questions of intent, belief, and credibility"--where "the boundary between unintentional and culpable acts is not always bright," any subsequent enhancement of damages analysis requires "appropriate deference to the special role of the [fact-finder]." *SRI*, 127 F.3d at 1465 (internal citations omitted). Thus, where a jury has been charged with detailed instructions and returned a verdict of willful infringement, the Court cannot substitute its own findings pertinent to the enhancement of damages for those already expressly or impliedly made by the jury. *See Jurgens*, 80 F.3d at 1572 (holding that "[b]ecause the jury had rejected [the defendant's] assertion that it acted in good faith as a matter of fact, the [district] court did not have discretion to reweigh evidence about the competency of the [legal] opinion or [the defendant's] reliance upon it").

At trial, the jury found that Defendants willfully infringed the Finjan Patents. D.I. 226. In accordance with case law, the jury was instructed that:

> Proof of willful infringement requires a showing of objective recklessness. To establish willful infringement, a patent owner must prove by clear and convincing evidence that the alleged infringer proceeded with the activities that are accused of infringement [with] an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the alleged infringer is not relevant to this objective inquiry. If the patent owner proves that objective threshold, then the patent owner must prove that the objectively high risk or likelihood of infringement was either known, or so obvious that it should have been known, to the accused infringer. The accused infringer's state of mind is relevant to this second inquiry.

5

Kobialka Decl., Ex. 2 (Trial Transcript (T.T.") at 1566:6-19); *see also In re Seagate Tech., LLC,*
497 F.3d 1360, 1371 (Fed. Cir. 2007). A finding of willfulness is necessarily predicated on a
finding that a defendant did not have a good faith belief in the invalidity or non-infringement of a
patent, and the defendant continued to infringe after becoming aware of the patent. Jurgens, 80
F.3d at 1572 (in returning its verdict of willfulness, the court held that jury necessarily decided
the infringer had acted in bad faith). Therefore, because the jury found willful infringement by
Defendants, they necessarily found that Defendants acted in bad faith in developing and making
the products which infringed the Finjan Patents. *See* D.I. 226. Finjan respectfully submits that,
due to the willful nature of Defendants' infringement, the appropriate remedy to deter further
willful infringement is a trebling of the damages.

**B.     Defendants Copied Finjan's Technology After the Market Realized Its Importance.**

Before 2004, Defendants disparaged the proactive technology invented by Finjan. For
example, in September 2002, Defendants sent internal emails stating "the theoretical virus threat
that Finjan can protect us for is close to zero, especially if a normal AV scanner is used instead."
Kobialka Decl., Ex. 3 (PTX-31). Additionally, in May 2003, Defendants created whitepapers
claiming that Finjan "offers only one feature that Webwasher does not have: 'Proactive Behavior
Inspection' Investigations show that this technology is quite weak and does not add substantial
additional security to an Internet gateway filtering product." *Id.*, Ex. 4 (PTX-33 at 2).
Defendants created these whitepapers because "to have arguments against solutions like Finjan,
[Defendants] need some documents and statements from outside webwasher that such
functionality is not necessary." *Id.*, Ex. 5 (PTX-34).

However, soon after creating these whitepapers, consumers began to increasingly demand
proactive scanning technology as it became to be considered a necessary part of any
comprehensive network security solution. As shown by the August 2003 IDC report presented

6

during trial, "the demand for more proactive virus detection technologies has been heightened due to the rash of hybrid threats (e.g., Nimda, Code Red, and Bugbear) that have escaped traditional signature-based virus measures." *Id.*, Ex. 6 (PTX-23 at 19). The IDC report also stated that "proactive technologies will increasingly become part of organizations' security architectures." *Id.* In April 2004, Defendants discussed in internal emails that they reviewed IDC reports and concluded that "Proactive Security" was "a key trend identified by IDC." *Id.*, Ex. 7 (PTX-35).

Defendants began the process of copying Finjan's technology immediately after acknowledging that they needed proactive security in their product. Defendants decided that, in order to compete with Finjan, they must "develop [our] own technology or create something similar to Finjan." *Id.* In an internal email sent on May 2004, Defendants outlined two possible options, the first option being a "whitelist" and the second option a "blacklist." *See id.*, Ex. 1 (PTX-36); Ex. 2 (T.T. at 318:16-25). Defendants reasoned that "[o]ption 1 is what Finjan does" and would allow Defendants to "compete exactly with [Finjan]." *Id.*, Ex. 1 (PTX-36). When asked about which option was chosen, Martin Stecher, the project manager in charge of the development of the infringing product, admitted, "[t]he option that was finally implemented is closer to what is listed under 1." *Id.*, Ex. 2 (T.T. at 319:6-7). Further establishing Defendants' deliberate decision to copy something which would compete directly with Finjan is shown by their choice of nickname for that new product - the "Finjan Killer." *Id.*

In choosing to follow this option, Defendants were aware that pursuing this strategy would infringe the Finjan Patents. Defendants noted that if they decided to follow option 1, Finjan "will also check very carefully which of their patents we may touch by recreating their system." *Id.* Indeed, there was no dispute that Defendants were aware of the Finjan Patents and

7

had already specifically identified the '194 Patent. *See id.*, Ex. 8 (PTX-38 at 2). In an internal

memorandum updated on June 29, 2004, Defendants reviewed and summarized the invention

disclosed in the '194 Patent. *Id.*, Ex. 8 (PTX-38 at 2); Ex. 2 (T.T. at 319:6-7). Further evidence

of Defendants' copying is that they admitted they reviewed Finjan's products while

implementing their own infringing product. For example, Christoph Alme, Defendants'

principal engineer in designing the infringing product, testified:

> Question: Have you ever reviewed Finjan's products while you were working for
> Secure Computing?
> Answer: I reviewed them within the period covering both Webwasher and to
> Secure Computing.
> ….
> Question: Did you ever review Finjan's products in you development of the
> proactive scanner?
> Answer: I reviewed screen shots …

*Id.*, Ex. 2 (T.T. at 306:1-16). Frank Berzau, Defendants' Director of Product Management, also

testified that the infringing product was developed based on his review of Finjan's products,

stating:

> Question: Was there any development of any product based on your review of
> Finjan's products?
> Answer: No individual products but products were developed on the basis of
> these findings.
> Question: What products were those?
> Answer: … And the ProActive technology that was developed as a response to
> these requirements was offered as a part of WebWasher anti-virus.

*Id.*, Ex. 2 (T.T. at 580:21-581:5). Further evidence of the testing and copying of the Finjan

products was presented at trial in an email detailing the discussions in a "Product Meeting." *Id.*,

Ex. 9 (PTX-32); Ex. 2 (T.T. at 311:15-18). The email describes the following - "c) Finjan -

testing finished. Martin distributes new version of document to participants of this meeting,

only." *Id.*, Ex. 9 (PTX-32). Martin Stecher testified at his deposition that the statement referred

to "the test of our Finjan evaluation copy." *Id.*, Ex. 2 (T.T. at 312:7-8).

8

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████. Defendants did not explain or even attempt to

challenge the apparent evidence of copying Finjan's proprietary technology.

The facts are clear. Defendants knew of Finjan's Patents and what they covered, knew

that they would infringe by recreating the Finjan system, but chose to copy Finjan anyway.

Given the Defendants' conduct, trebling the damages awarded by the jury is proper to deter

Defendants from continuing to willfully infringe the Finjan Patents.

## C.   Defendants Did Not Have A Good Faith Belief That The Finjan Patents Were Invalid Or Not Infringed.

Defendants did not have good faith belief that the Finjan Patents were invalid or not

infringed. Defendants were aware of Finjan's Patents, were aware their activities would infringe

the Finjan Patents, and yet continued their infringing activities. The Federal Circuit has made

clear that when "a potential infringer has actual notice of another's patent rights, he has an

affirmative duty to exercise due care to determine whether or not he is infringing. *Underwater*

*Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983) (emphasis in

original). Furthermore, the "affirmative duty includes, *inter alia*, the duty to seek and obtain

legal advice from counsel." *Id.* (emphasis in original); *see also Lucent Techs, Inc. v. Newbridge*

*Networks Corp.,* 168 F. Supp. 2d 269, 274-75 (D. Del. 2001). And as this Court recently held, a

jury may consider a defendant's failure to obtain an opinion of counsel in the "totality of

circumstances" surrounding willful infringement. *Energy Transp. Group, Inc. v. William*

*Demant Holding A/S*, C.A. No. 05-422-GMS, 2008 WL 114861, at *1 (D. Del. Jan. 7, 2008).

The evidence demonstrating that Defendants were aware of Finjan's patents and knew Finjan would "check very carefully which of [Finjan's] patents [Defendants] may touch by recreating [Finjan's] system" is uncontested. Kobialka Decl., Ex. 1 (PTX-36).

As discussed above, Defendants developed the infringing product without taking any precautions, and knew full well the potential for infringement. During the course of trial, Defendants did not even attempt to put forward any evidence of a good faith belief of the invalidity or non-infringement of the Finjan Patents. Defendants did not have a single witness on the stand at trial, either by deposition or live testimony, to testify about the development of the infringing product. Moreover, Defendants failed to provide any evidence whatsoever to defend against Finjan's claim of willful infringement, which further supports that they had no good-faith basis for their infringing activities. *See Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 181 (S.D.N.Y. 1999), *aff'd without opinion*, 230 F.3d 1379 (Fed. Cir. 2000) (treble damages awarded where an infringer's "failure to offer any colorable defense in this action, whether as to infringement or as to the validity of the patents in suit, when considered in light of defendants' failure to assert an advice of counsel defense, [is] compelling evidence that defendants lacked any good-faith basis for their infringing activities"). Michael Gallagher, the Vice President of Secure Computing, admitted in his testimony that Defendants never even bothered to take the basic precaution of obtaining an opinion of counsel. Kobialka Decl., Ex. 2 (T.T. at 735:24-736:2).

Defendants presented no evidence of any good faith belief in the non-infringement or invalidity of the Finjan Patents. In fact, and as discussed above, there is ample evidence that Defendants were well aware of the Finjan Patents and that they were infringing these patents.

Given Defendants' conduct and lack of any good-faith excuse, trebling the damages awarded by the jury is proper to deter Defendants from continuing to willfully infringe the Finjan Patents.

**D.      Defendants' Vexatious Litigation Strategy Supports An Award Of Treble Damages.**

Defendants engaged in improper litigation tactics by arguing positions contrary to the claim construction order and maintaining frivolous positions. The behavior of a party during the litigation is an important consideration when deciding whether to treble damages against a party for willful infringement. *Amsted Indus. Inc. v. Buckeyes Steel Castings Co.,* 24 F.3d 178, 183-84 (Fed. Cir. 1994) (affirming enhancement of damages to "full potential legal effect" when "inappropriate litigation behavior" was a particularly important consideration) (internal quotations omitted).

**a.      Defendants Argued Contrary To The Claim Construction Order.**

Arguing a claim construction contrary to a court's order in support of untenable theories is an example of both vexatious conduct and litigation misconduct. *Medtronic Navigation, Inc. v. Brainlab Medizinische Computersystems Gmbh.,* No. 98-cv-01072-RPM, 2008 WL 410413, at *6 (D. Co. Feb. 12, 2008) (finding vexatious litigation and litigation misconduct because the "opinions of Medtronic's experts were crafted to fit the infringement theories put forward by Medtronic's counsel, and those theories were legally and factually untenable in light of the court's claim construction"). During trial, Defendants repeatedly argued claim constructions that this Court had rejected and elicited improper testimony from their one technical expert, Dr. Wallach.

Defendants elicited improper testimony from Dr. Wallach during his direct examination and made improper statements in their closing remarks regarding the claim element "addressed to a client." In the '194 patent, the term "addressed to a client" was construed to have its plain and ordinary meaning. D.I. 142. The Court clearly rejected Defendants' proposed construction

as unnecessarily narrowing the claim. *Id.* Dr. Wallach admitted in both his Rebuttal Expert Report and his deposition that he had no understanding of the plain and ordinary meaning of this term after reviewing the Court's Claim Construction Order. Kobialka Decl., Ex. 10 (Technical Expert Rebuttal Report of Dan Wallach ("Wallach Rebuttal Report") at 4; Ex. 11 (Deposition of Dan Wallach ("Wallach Depo.") at 164:18-165:9. As a result of Dr. Wallach having no understanding of the term's meaning, the Court instructed Defendants that they were not to question Dr. Wallach on the element "addressed to a client." *Id.*, Ex. 2 (T.T. at 810:1-13, 815:24-816:2). Despite this instruction, Defendants presented in their closing arguments that the "addressed to a client" element was not met by the Webwasher product, even though they had presented no evidence at trial to support such a claim. *Id.* (T.T. at 1648:22-1649:22). Indeed, this is uncontroverted because Dr. Wallach, their only witness to support their non-infringement claim, was precluded at trial from testifying on the subject. *Id.* (T.T. at 815:20-25).

In addition, in the '780 Patent, the term "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" was construed as "performing a hashing function on the Downloadable together with its fetched software components to generate a Downloadable ID." D.I. 142 at 2. The Court explicitly rejected Defendants' unnecessarily narrow interpretation of "performing a hashing function on the Downloadable together with its fetched software components to generate *a single* Downloadable ID." D.I. 142 at 2 (emphasis added). Furthermore, Defendants had been instructed by the Court during trial that they could not argue this interpretation because it had been rejected by the Court during claim construction. *See* Kobialka Decl., Ex. 2 (T.T. at 890:16-892:6, 971:2-15).

Undeterred by the Court and the Claim Construction Order, Defendants argued the

rejected interpretation, and elicited testimony from Dr. Wallach using the wrong claim

construction. *Id.*, Ex. 2 (T.T. at 970:11-20, 971:23-972:14, 1061:15-21).

> Q.   And yesterday, as we discussed, you understand there is a construction in
> this case that adds the word together to hashing, you hash together?
> A.   That's correct.
> Q.   Can you explain what it means to take a downloadable and a software
> component, fetch the component and hash them together?
> A.   Right. When you say "together," what you are saying -- it's easier to
> describe the alternative first. You could hash each one separately and produce a
> separate hash value for each of them. If you have five components, you have five
> hashes.
>       What this claim requires is that if you have five components, you end up
> with *one hash* ...

*Id.*, Ex. 2 (TT. at 970:7-20) (emphasis added).   After the above exchange, the Court ordered

Defendants to correct Dr. Wallach. *Id.* (T.T. at 971:13-15) ("Court: Why don't you lead him and

correct it. Mr. Holdreith: I will."). Disregarding the Court's instruction, Defendants once again

elicited testimony from Dr. Wallach using an incorrect claim interpretation, without attempting

to lead him toward the correct interpretation. *Id.* (T.T. at 971:19-972:14).   Dr. Wallach even

admitted that his opinion was completely based on the claim to requiring a single hashing

function. *Id.* (T.T. at 1061:15-18).

> Q.   So your opinion is based upon what you just said, it has to be a *single*
> hashing function on those two together?
> A.   That is my interpretation of this claim.

*Id.* (T.T. at 1061:15-18) (emphasis added).

Attempting to subvert this Court's Claim Construction Order by eliciting expert

testimony using a rejected claim interpretation is a clear example litigation violation and

vexatious litigation conduct and further supports trebling the damages. *See* Medtronic, 2008 WL

410413, at *5.

13

**b.    Defendants Pursued Frivolous And Unsupported Claims.**

Defendants engaged in litigation misconduct by maintaining unsupported claims, thereby requiring Finjan and the Court to waste significant time and resources.[1]  Defendants' use of these claims was an improper litigation tactic, and there was no colorable reason for Defendants to wait until the last possible moment to drop their claims, indicating they were not presented in good faith and intended as a tactic to waste Finjan's time and resources before and during trial.

(1)    Defendants pursued the frivolous 35 U.S.C. § 112 claims of enablement and indefiniteness, but then dropped them at trial.  Even as late as March 2, 2008, the day before trial, Defendants maintained that these claims would be presented, despite the fact that they had no witnesses who could provide any testimony to support such claims.  Kobialka Decl., ¶17; *id.*, Ex. 12 (March 2, 2008 email from Chris Seidl to Lisa Kobialka); *id.*, ¶14, Ex. 13 (email pointing out no basis for these claims).  The claims were not dropped until just before Defendants closed their case in chief.  Finjan needlessly was forced to prepare a rebuttal to Defendants' baseless and unsupported claims even though no expert could testify on such subject matter, as no expert was *properly* disclosed on the issues.  *Id.*, ¶¶17-18; *id.*, Ex. 14 (March 9, 2008, email and attachment from Chris Seidl to Hannah Lee).

(2)    Defendants also pursued a frivolous inequitable conduct claim.  Before trial, Defendants maintained that they would present this claim at trial.  *See* D.I. 168 (Trial Brief).  Defendants knew they could not present such a case, acknowledging in their trial brief it would attempt to do so only through cross-examination of Finjan's witnesses at trial.  D.I. 168 (Trial Brief at 12).  Nonetheless, Defendants forced Finjan to prepare its rebuttal case to this unsupported frivolous claim, which they ended up dropping during trial.  Kobialka Decl., Ex. 12.

---

[1]  Defendants asserted counterclaims for a Declaratory Judgment of unenforceability, invalidity and non-infringement.  D.I. 47.  Defendants also pled affirmative defenses on the same grounds. *Id.*

Defendants only dropped this claim after the second day of trial, on March 4, 2008. *Id.*, Ex. 15 (email from Lisa Kobialka to Chris Seidl, March 4, 2008). Defendants knew they had no evidence going into trial to support these claims. *See* D.I. 168 (Trial Brief at 12).

      (3)     Defendants also pursued a frivolous patent exhaustion defense. Before trial, Defendants maintained that they would pursue this defense at trial. D.I. 168. Defendants only dropped this defense after March 5, 2008, several days into the trial. Kobialka Decl., ¶¶17-18; *id.*, Ex. 13 (email from Hannah Lee to Chris Seidl, March 5, 2008).

      Finjan attempted to meet and confer with Defendants regarding these claims in the weeks leading up to trial, but to no avail. Kobialka Decl., ¶17. Defendants' use and continued pursuit of claims and defenses they acknowledged were unsupported, only to drop them during trial is further evidence that Defendants engaged in litigation misconduct.

      **c.**     **Defendants Pursued Unsupported Infringement Claims.**

      Defendants engaged in litigation misconduct by pursuing frivolous and wholly unsupported infringement assertions regarding the '361 and '010 Patents. Finjan was required to expend considerable resources to defend against Defendants' baseless infringement claims and to prove its invalidity claims with respect to these patents. This required an expert on technical issues, a damages expert, unnecessary depositions, and unnecessary written discovery. Kobialka Decl., ¶18. Defendants brazenly acknowledged their improper purpose in their Opening Statement, admitting that the '010 Patent was being used solely as a means of retaliation, because "[Finjan] picked a fight with us, quite frankly, and we are fighting back." *Id.*, Ex. 2 (T.T. at 160:21-22).

      Defendants asserted that Finjan infringed claim 37 of the '010 patent even though Defendants' expert, Dr. Wallach, concluded, based on a review of the accused product's source code, it did not infringe. Defendants intentionally chose not to rely on the accused product's

source code at all. The reason being, and as their own expert freely admitted at trial, "[b]ased on what I was able to see, Documents 1 Box does not infringe this patent." *Id.*, Ex. 2 (T.T. at 1090:1-2). After reviewing the source code and determining the product did not infringe, Defendants should have dropped the claims immediately. However, Defendants chose to ignore this conclusive evidence.

Instead of relying on the source code of the product, Defendants relied completely on advertising material. In fact, for the majority of claim elements, Defendants relied exclusively on a two page advertising flyer put out by a third party, Presence. *See id.*, Ex. 16 (DTX-1271). Defendants' own expert admitted that these type of flyers are "modified perhaps by these Presence people, which is quite common ...." *Id.*, Ex. 2 (T.T. at 1091:23-25). So instead of relying on the product, Defendants relied completely on two marketing documents, including the press release which Dr. Wallach admitted was probably changed by the third party. *Id.*, Ex. 2 (T.T. at 1091:4-8). This raises significant questions and concerns regarding whether Defendants complied with their obligations under Rule 11 of F.R.C.P.

Probably more astoundingly than the lack of evidence for Defendants' infringement case is the fact that Defendants had no remedy whatsoever for the '010 Patent. The accused product had not been sold for several years before the notice was first given to Finjan of the patent. *Id.*, Ex. 2 (T.T. at 1451:19-1452:2, 1452:16-22). Defendants admitted that they had sold an embodiment of the invention. *Id.* (T.T. at 760:4-7). However, they provided no evidence they ever marked any of their products with the '010 Patent number. *See, generally,* Trial Transcript.

The frivolous nature of these counterclaims is further demonstrated by the fact that Defendants neglected to present any evidence to refute Finjan's evidence of invalidity of the '361 and '010 Patents. In the case of the '361 Patent, Defendants not only presented no rebuttal

16

case, they failed to even ask a single cross-examination question on the subject of the invalidity. For the '010 Patent, Defendants asked only a single question related to the invalidity of the patent. Kobialka Decl., Ex. 2 (T.T. at 1544:14-17). There was no expert or fact witness that rebutted Finjan's *prima facie* case of invalidity. *See, generally,* Trial Transcript. Defendants presented no evidence <u>at all</u> that challenged the invalidity evidence put forth by Finjan, and did not even mention either of their two patents in their closing arguments. *Id.*

Defendants also made the completely unsupported claim that Finjan willfully infringed the '010 and '361 Patents, thereby requiring Finjan to prepare defenses for these claims. However, there was absolutely no evidence of willfulness. Defendants maintained that they would assert this issue at trial, only to drop it during the trial. Kobialka Decl., Exs. 14-15. Thus, only after Finjan was already forced to expend resources to rebut Defendants' charge of willfulness did Defendants finally drop this claim. The utter lack of evidence to support Defendants' patent infringement claims and complete failure to challenge or rebut the invalidity evidence demonstrates that Defendants pursued these two patents against Finjan in bad faith, abusing the judicial process to retaliate against Finjan for lawfully trying to protect its patent rights. Such egregious conduct should not be tolerated or permitted.

### d. Finjan Was Forced to Waste Resources For Witnesses Defendants Placed on the "Will-call" List But Never Called At Trial.

Defendants also engaged in improper litigation tactics when it placed several witnesses on their "will-call" list who they never called, thereby requiring Finjan to unnecessarily prepare for these witnesses. Defendants represented in the Pretrial Order that both Christoph Alme and Martin Stecher would be testifying at trial and placed them on their "will call" list. D.I. 170 (Pretrial Order at Schedule D). Finjan expended considerable resources in preparing to cross-examine these witnesses who never made an appearance at trial.

17

E.    **Defendants' Gross Revenues and Large Size Permits An Award Of Enhanced Damages.**

Defendants' gross revenues from its network security business favor an award of enhanced damages. *Read*, 970 F.2d at 827. According to information provided by Defendants, they have made considerable sales revenue over the past few years, and over the past four years, the number of network security software and appliances sold by Defendants has grown significantly.[2] *See* Secure Computing Corp. (SCUR) key statistics, *available at* http://finance.yahoo.com/q/ks?s=SCUR. Therefore, an award of enhanced damages is appropriate to ensure no future infringement.

Cyberguard and Webwasher are currently owned by Secure Computing, a large, publicly traded company whose market capitalization has ranged over approximately $450 million to $750 million in the past year. *Id.* As such, Secure Computing will not be deterred from future willful infringement absent a significant enhancement of damages. In contrast, Finjan is a small company that has litigated against a major player in the network security sector. The relative size difference between the two companies supports the enhancement of the damages. *See St. Regis Paper Co. v. Winchester Carton Corp.*, 410 F. Supp. 1304, 1309 (D. Mass. 1976) (treble damages appropriate if "defendant were the giant and plaintiff the small independent"); *see also Read*, 970 F.2d at 827; *Maxwell v. Angel-Etts*, No. 99-10516 DT, 2001 U.S. Dist. LEXIS 25418, at *10-11 (C.D. Cal. July 9, 2001), *aff'd*, 53 Fed. Appx. 561 (enhancing factor where disparate financial conditions supported enhanced damages award).

---

[2]  While Finjan has concerns about Defendants' representations about its financial situation, there can be no reasonable dispute that Defendants have come to this Court, claiming strong financial health. Indeed, that is their justification for refusing to satisfy the judgment and failure to post a security for the judgment, as set forth in their Motion To Stay Execution of the Judgment. *See e.g.*, D.I. 247, 248.

Secure Computing is capable of paying treble damages without risk of financial ruin. For example, Secure Computing had gross revenues of over $237 million in 2007. The Court entered judgment against Defendants in the total amount of $9,180,000 for past infringement of the Finjan Patents. Based on Secure Computing's annual revenues, an enhanced damage award of approximately $27 million[3] will not dramatically affect the financial condition of Secure Computing. Additionally, in the Declaration of Jill Putman, Ms. Putman asserted that "Secure Computing Corporation has been cash flow positive every quarter since Q3 of 2002." D.I. 248 (Declaration of Jull Putman at 1). This declaration further asserted that Secure Computing has cash "in excess of $23,000,00" and "has an unused line of credit of $20,000,000." *Id.* at 1-2. Accordingly, Secure Computing has $43,000,000 currently at its disposal and would easily be able to pay enhanced damages for its reckless conduct.

## F.     Infringement, Willfulness and Validity Were Not Close Questions.

### a.     Infringement Was Not A Close Question.

Defendants' non-infringement case was not a close question because they offered no meritorious arguments to support their non-infringement case at trial. Defendants' inability to put forward a plausible non-infringement argument directly supports increasing the damages enhancement from willfulness. *See Kaufman Co. v. Lantech, Inc.,* 807 F.2d 970, 978-79 (Fed. Cir. 1996) (affirming award of double damages where the infringer's non-infringement defense was weak).

With respect to the '194 Patent, the only non-infringement position taken by Defendants was that the infringing product did not create a "list of suspicious computer operations." Kobialka Decl., Ex. 2 (T.T. at 1053:5-12). At trial, Dr. Wallach admitted this as follows:

---

[3] In a separate motion, Finjan seeks an accounting of Defendants' revenues because the financial documents Defendants provided during discovery were grossly inadequate.

Q. ... That was the basis for your noninfringement, the suspicious computer
operations. Correct?
A.    Yes.

Id. (T.T. at 1053:10-12). Dr. Wallach's semantic argument was based upon his assertion that a

"category is not a suspicious computer operation" and the infringing product only created

"categories." *Id.* (T.T. at 1053:20-21). However, Dr. Wallach is directly contradicted not only

by the description provided in the '194 Patent, but also by the product literature, the engineers'

testimony, and the product itself. *Id.* (T.T. at 1053:5-1058:25). For example, in the menus of the

product that Dr. Wallach labeled as the so-called categorizes are clearly described as

"operations." *Id.,* Ex. 17 (PTX-26 at 15); Ex. 2 (T.T. at 1054:9-1055:5). For the '194 Patent,

Defendants provided only one extremely weak non-infringement argument, which was directly

contradicted by many sources, thereby proving that the infringement of the '194 Patent was not a

close question.

For the '780 Patent, Defendants argued that the term "performing a hashing function on

the Downloadable and the fetched software components to generate a Downloadable ID" was not

met by the infringing product. Defendants reasoned that the claims of the '780 Patent required a

single hashing function be run on the downloadable and the fetched components together. *Id.,*

Ex. 2 (T.T. at 1061:15-21). Dr. Wallach admitted this as follows:

Q.    So your opinion is based upon what you just said, it has to be a ***single***
hashing function on those two together?
A.    That is my interpretation of this claim.
Q.    Is there any other basis that you provided for why the WebWasher product
does not infringe Claim 1 of the '780 patent?
A.    That is the basis I have provided.

*Id.* (T.T. at 1061:15-21) (emphasis added). However, this claim interpretation was expressly

rejected by the Court. D.I. 142; Kobialka Decl., Ex. 2 (T.T. at 1060:18-1061:21). For their non-

20

infringement arguments regarding the '780 Patent, Defendants relied exclusively upon a claim construction which had been expressly rejected by the Court, thereby proving that infringement of the '780 Patent was not a close question.

With respect to the '822 Patent, Dr. Wallach admitted in the following testimony that Defendants infringed the patent by completing the steps of the claims:

> Q.  … Let me take one more step back through this claim.  If JavaScript comes in, all these steps happen.  Right?
> A.  If JavaScript comes in, we are not disputing that any of these steps happen.
> Q.  And if Visual Basic Script comes in, all these steps happen.  Right?
> A.  That's correct.

Kobialka Decl., Ex. 2 (T.T. at 1063:16-22).  Defendants rely completely on changing the meaning of the term "if" to "whenever."  Dr. Wallach admits as much in the following testimony:

> Q.  You are changing words here.  You are changing words in the claim from "if" to "whenever"?
> A.  I am trying to clarify the word.
> Q.  You are clarifying the word "if"?
> A.  Yes.

*Id.*, Ex. 2 (T.T. at 1062:19-23).  In other words, Defendants' entire non-infringement position rested on changing a word in the actual claim language of the '822 Patent.  That is not a defense to patent infringement.  Dr. Wallach once again had to rely on a untenable argument which required him to remove the word "if", and replace it with "whenever.  That position defies common sense and established patent law.  *See Renishaw PLC v. Marposs Soecita' Per Azioni,* 158 F.3d 1243, 1247-48 (Fed. Cir. 1998) (infringement determined by "compare[ing] [a] *properly constructed claim* to the accused device").  Furthermore, Defendants did not contest infringement of any dependant claims.  Kobialka Decl., Ex. 2 (T.T. at 1060:5-6).  Thus, for the

'822 Patent, Defendants' alleged non-infringement defense was based on an outrageous position, proving that the infringement of the '822 Patent was not a close question.

### b.    Willfulness Was Not A Close Question.

The jury returned a verdict of willful infringement, expressly rejecting the entirety of Defendants' non-infringement and invalidity defenses. As discussed above, there is overwhelming evidence that Defendants deliberately copied Finjan's Patents without a good faith belief that the Finjan Patents were invalid or not infringed.

### c.    Validity Was Not A Close Question.

The record demonstrates that Defendants did not put forth a meritorious good faith challenge with respect to the invalidity of the Finjan Patents. As demonstrated during trial, most of the asserted prior art or technology discussed in the references was before the Patent Office during the prosecution of the respective patents. Kobialka Decl., Ex. 2 (T.T. at 1066:17-1081:1). Defendants' own expert witness, Dr. Wallach, testified that, despite having the prosecution history of the Finjan Patents, he did not even bother to consider that the prior art was considered by the Patent Office. Id. (T.T. at 1066:17-1081:1).

The trial transcript reveals that Defendants' anticipation defense for the '194 Patent was meritless. The only reference relied upon for anticipation by Defendants was the Shaio reference. Id. (T.T. at 1075:10-12). However, Defendants admitted that in order to anticipate, the Shiao reference needed to incorporate by reference a second patent disclosing a bytecode verifier. Id. (T.T. at 1076:17-21). However, this second patent could not be considered part of the Shaio reference because it was improperly incorporated by Shaio. Id. (T.T. at 1076:17-21). Furthermore, the bytecode verifier technology included in this second patent was already considered by the Patent Office. Id. (T.T. at 1295:6-9).

The only alleged prior art references used by Defendants which were not before the Patent Office in the examination of the '194 Patent were used for obviousness. These references were inapplicable because the claims of the '194 Patent are required to operate at the gateway. *See id.*, Ex. 18 (JTX-1). In contrast, each of these alleged prior art references required user intervention and could not operate autonomously at a gateway. *Id.*, Ex. 2 (T.T. at 1285:4-11, 1290:4-5). In addition, Dr. Wallach admitted that he combined the obviousness references using hindsight:

> Q.   So you look back in hindsight and see 1996 and what was happening then and try to apply prior art at that time. Correct?
> A.   Yes.

*Id.*, Ex. 2 (T.T. at 1065:4-7). However, an obvious determination of a patent should never be made using hindsight. *Alza Corp. v. Mylan Labs., Inc.,* 464 F.3d 1286, 1290 (Fed. Cir. 2006); *see also KSR Int'l Co. v. Teleflex, Inc.,* 127 S.Ct. 1727, 1742 (2007) ("[a] factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning"). Thus, Defendants' expert admitted using an impermissible standard to support his opinion.

For the '780 Patent, Defendants relied upon the Microsoft Authenticode and the Sign Java references for anticipation. However, during trial, Defendants only pointed to a single paragraph in the Microsoft Authenticode reference and did not point to any section of the Signed Java reference. Kobialka Decl., Ex. 2 (T.T. at 977:19-979:21). Furthermore, the Authenticode was already considered by the Patent Office in the examination of the '780 Patent. *Id.* (T.T. at 1077:18-23).

For the '822 Patent, Defendants relied on the Ji reference. Again, Defendants only pointed to a single paragraph in the reference to show that the '822 Patent was invalid.

23

Furthermore, the Ji reference was disclosed to the Patent Office during prosecution of the '822 Patent. Id. (T.T. at 1080:5-15).

Further indicating Defendants' weak position was that they did not even attempt to argue the majority of their claims and defenses. As described above, Defendants dropped their patent exhaustion, inequitable conduct, and 35 U.S.C. § 112 claims during trial. *See* Kobialka Decl., ¶¶17-18. The evidence Defendants presented at trial inevitably leads to the conclusion that Defendants did not have a good faith belief in its invalidity claims.

**G.    Defendants Have Been Engaged In Infringing Activities For Years.**

As discussed above, the record reflects that Defendants began infringing the Finjan Patents in October 2004, only four months after recognizing increased demand for proactive security as a part of comprehensive network security solution. Kobialka Decl., Ex. 2 (T.T. at 591:12-13). Currently, Defendants' products have been infringing for almost four years, further supporting a trebling of damages.

Furthermore, when the products were released, Defendants knew of the Finjan Patents, created summaries of the Finjan patents, and knew they would infringe the Finjan Patents. Id. (T.T. at 301:4-321:8). Nevertheless, Defendants released the products, continued to sell the products throughout litigation, and despite the jury's findings and subsequent entry of judgment on that verdict, still continue to this day to unapologetically sell the infringing products. *See* Secure Computing website at http://www.securecomputing.com/index.cfm?skey=22; *see also* http://www.securecomputing.com/index.cfm?sKey=1312. Defendants' disregard for Finjan's legitimate patent rights, and Defendants' continued sale of the infringing products support a trebling of the awarded damages. *See Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1328-29 (Fed. Cir. 1987) (affirmed award of enhanced damages where infringement continued after the filing of the suit); *see also Kaufman*, 807 F.2d at 979 (affirmed award of

enhanced damages where the infringer continued to sell the infringing product for four months
after the filing of suit).

**H.    Defendants Have Not Engaged In Any Remedial Action To Avoid Infringement Of
The Finjan Patents.**

There is no evidence that Defendants took any remedial action to avoid the activities
covered by the Finjan Patents.  In fact, the evidence supports that they did the exact opposite and,
as discussed above, deliberately copied the Finjan Products and the Finjan Patents.  Defendants
knew of the Finjan Patents while developing the infringing products, and have continued to sell
the infringing products throughout the litigation.  Defendants continue to infringe the Finjan
Patents, even after the jury's finding of willful infringement.  Accordingly, that conduct justifies
trebling the damages awarded to Finjan.  Compare *Intra Corp. v. Hamar Laser Instruments, Inc.,*
662 F. Supp. 1420, 1439 (E.D. Mich. 1987), *aff'd without opinion*, 862 F.2d 320 (Fed. Cir.
1988), cert. denied, 490 U.S. 1021 (1989) (enhanced damages awarded but only doubled because
defendant "voluntarily ceased manufacture and sale of infringing systems during the pendency of
this litigation....").  Defendants have taken no remedial action in an attempt to cure their
infringement of the Finjan Patents, further bolstering Finjan's request for treble damages.  In
fact, Defendants have simply refused to comply with the judgment entered by this Court on
March 28, 2008, failing even to provide a security for the existing damages award.  Kobialka
Decl., ¶22.  Defendants have given Finjan no choice to seek enforcement of the judgment, given
Defendants' apparent disregard for the jury's verdict.  *Id.,* ¶22; *id.,* Ex. 18 ("Letter to C. Seidl").
Defendants' continued disregard of Finjan's rights and the jury's determination justify Finjan's
request for enhanced damages.

I.    **Defendants Were Motivated to Drive Finjan Out of the Market by Stealing its Technology.**

Defendants were clearly motivated to eliminate Finjan as a competitor by copying its technology and driving them out of the market. As discussed above, Defendants realized that the network security market was demanding proactive security, and after years of disparaging the Finjan product, chose to copy Finjan's innovative technology in order to destroy Finjan in the market. Defendants' calculated intent to destroy Finjan is extremely clear, apparent from the nickname for their infringing product, "Finjan Killer." Kobialka Decl., Ex. 1 (PTX-36).

II.   **THE EXCEPTIONAL NATURE OF THIS CASE WARRANTS ATTORNEYS' FEES, EXPENSES AND COSTS PURSUANT TO 35 U.S.C. § 285**

Finjan respectfully requests that the Court declare this case "exceptional" within the meaning of 35 U.S.C. § 285. Furthermore, Finjan requests the Court award attorneys' fees, related expenses and costs incurred in establishing that Defendants willfully infringed the Finjan Patents, that the Finjan Patents are valid, and that Finjan did not infringe Defendants' Patents. Attorneys' fees are awarded under Section 285 to discourage infringement, and to prevent gross injustice when the accused infringer has litigated in bad faith. *See Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989).

An exceptional case may be established by a clear and convincing showing of (1) willful infringement; (2) litigation misconduct; (3) vexatious, unjustified and otherwise bad faith litigation; or (4) a frivolous suit. *Hoffman-La Roche, Inc. v. Invamed, Inc.,* 213 F.3d 1359, 1365 (Fed. Cir. 2000). A court also considers the factors relevant to an enhanced damages award determine whether attorneys' fees should be granted. *Lucent Tech., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 269, 276 (D.Del. 2001) (awarding enhanced damages and attorneys' fees where jury found willfulness and several *Read* factors weighed in favor of enhancement). If the Court determines that the instant case is exceptional, it is within the Court's discretion to

26

determine whether to award attorneys' fees to Finjan, the prevailing party. 35 U.S.C. §285; *Interspiro USA, Inc. v. Figgie Int'l Inc.,* 18 F.3d 927, 933-34 (Fed. Cir. 1994) (affirming finding of an exceptional case).

A.    **The Present Case Is An Exceptional One**

      1.    **There Was No Close Question Of Willfulness And Bad Faith Infringement**

The jury found by clear and convincing evidence that Defendants willfully infringed Finjan's patents. A finding of willfulness alone is sufficient basis for a case to be determined exceptional and for the Court to award attorney fees. *Golight v. Wal-mart Stores, Inc.,* 355 F.3d 1327, 1340 (Fed. Cir. 2004) (quoting *Avia Group Int'l, Inc. v. L.A. Gear Cal.,* 853 F.2d 1557, 1567 (Fed. Cir. 1988)). As discussed above in the analysis of the *Read* factors, there is significant evidence to support the jury's finding that Defendants willfully infringed the Finjan Patents.

Moreover, Defendants never obtained an opinion of counsel regarding the Finjan Patents. *See* Kobialka Decl., Ex. 2 (735:22-736:2). The failure of a party to seek an opinion of counsel regarding the potential infringement of a patent indicates that the case is exceptional. *See Aero Products Intern., Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1009 (Fed. Cir. 2006) (Federal Court upheld district courts decision to "enhance damages and to award attorney fees on its findings that the case was not close, … [and] that Intex did not rely in good faith on the opinion of counsel noted above"). That Defendants never bothered to obtain an opinion of counsel regarding the infringing products, even though they were aware of Finjan's patents and that they would infringe the patents with their "new" product is a further indication that this case is exceptional. *See* Kobialka Decl., Ex. 2 (PTX-16 at 2) ("[Finjan] will also check [v]ery carefully which of their patents we may touch be recreating their system"); Ex. 8 (PTX-38 at 2).

The jury found that Defendants willfully infringed the Finjan Patents, and it is well within the Court's discretion to deem this case exceptional under 35 U.S.C. § 285. Moreover, as discussed above, the case for infringement, validity, and enforceability of the Finjan Patents was not a close question.

### 2. Defendants Engaged in Litigation Misconduct, Litigated This Action Vexatiously And In Bad Faith, And Pursued Frivolous Suits

As discussed above in the *Read* factor analysis, a further indicia that this case is exceptional is that Defendants employed improper litigation tactics, including eliciting improper testimony during trial and the bad-faith advancement of unsupported positions, including claims of patent infringement. Litigation misconduct and unprofessional behavior are relevant to the determination if a case is exceptional, and alone or in conjunction with willfulness can be a basis for an exceptional case and an award of attorneys' fees. *Spectra-Physics Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1537 (Fed. Cir. 1987).

### B. An Award Of Attorneys' Fees, Costs and Expenses Is Appropriate In This Case.

An award of attorneys' fees, costs, and expenses is appropriate in this case. Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Furthermore, when willful infringement is found "[d]istrict courts have tended to award attorney fees when willful infringement has been proven, and ... [the Federal Circuit] has uniformly upheld such awards." *C.R. Bard, Inc. v. U.S. Surgical Corp.,* 258 F. Supp. 2d 355, 360 (D. Del. 2003) (quoting *S.C. Johnson & Son v. Carter-Wallace, Inc.,* 781 F.2d 198, 201 (Fed. Cir. 1994)); *Rohm & Haas Co. v. Crystal Chem. Co.,* 736 F.2d 688, 691 (Fed. Cir. 1984) ("[c]ases awarding attorney fees to prevailing patentees have typically found 'exceptional' circumstances in willful and deliberate infringement"); *see also Advanced Medical Optics, Inc. v. Alcon Labs., Inc.,* C.A. No. 03-1095-KAF, 2005 WL 3454283 (D. Del. Dec. 16, 2005) ("[a]n

28

award of attorneys' fees and costs is typical in cases of willful infringement"). Moreover, the Federal Circuit has in the past sought an explanation from a District Court when attorneys' fees are not awarded "in the face of [the jury's] express finding of willful infringement." *S.C. Johnson & Son*, 781 F.2d at 201. Defendants' decision to not comply with the judgment and refusal to provide security for the judgment, is further evidence of their complete disregard for the legal process.

As discussed above, there is clear and convincing evidence to support the jury's finding of willful infringement. Furthermore, Finjan should be compensated for the costs and expenses it unnecessarily incurred due to Defendants' litigation misconduct and vexatious litigation strategy. For the reasons discussed throughout this motion, Finjan respectfully requests the Court to award attorneys' fees. Finjan submits, pursuant to Federal Rule of Civil Procedure 54(d)(2)(b)(iii), that $3.5 Million is a fair estimate of the attorneys' fees, expenses, and costs. Kobialka Decl., ¶19. Finjan respectfully requests that the Court determine liability for fees, expenses, and costs before receiving submissions bearing on the precise and itemized amounts.

## CONCLUSION

For the above reasons, Finjan respectfully requests the Court to treble the damages

awarded by the jury pursuant to 35 U.S.C. §284, to declare this case "exceptional" pursuant to 35

U.S.C. § 285, and award Finjan its attorneys' fees, expenses and costs.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. Andre
Lisa Kobialka                                    By:  /s/ Philip A. Rovner
King & Spalding LLP                                   Philip A. Rovner (#3215)
1000 Bridge Parkway                                   Hercules Plaza
Redwood City, CA 94065                                P. O. Box 951
(650) 590-0700                                        Wilmington, DE  19899
                                                      (302) 984-6000
Dated: April 25, 2008                                 provner@potteranderson.com
Public Version: May 2, 2008
862868                                           *Attorneys for Plaintiff*
                                                 *Finjan Software, Ltd.*

30

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 2, 2008, the within document was

filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com; farnan@rlf.com

I hereby certify that on May 2, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

Jake M. Holdreith, Esq.
Christopher A. Seidl, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
jmholdreith@rkmc.com; caseidl@rkmc.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-369 GMS |
| v. | ) ) ) | |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING FINJAN SOFTWARE, LTD.'S MOTION FOR ENHANCED DAMAGES AND ATTORNEYS' FEES, EXPENSES AND COSTS

WHEREAS, on March 12, 2008, the jury found Defendants Secure Computing Corporation, Cyberguard Corporation, and Webwasher AG (collectively, "Defendants") willfully infringed Plaintiff Finjan Software, Ltd.'s ("Finjan") U.S. Patent No. 6,092,194 ("the '194 Patent"), U.S. Patent No. 6,804,780 ("the '780 Patent), and U.S. Patent No. 7,058,822 ("the '822 Patent");

WHEREAS, on March 12, 2008, the jury awarded Plaintiff Finjan Software, Ltd. ("Finjan") a 16% royalty on $49 million in sales of Defendants' (Secure Computing Corporation, Cyberguard Corporation, and Webwasher AG) Webwasher software product, 8% royalty on $3.25 million in sales of Defendants' Webwasher hardware appliance product, and 8% royalty on $13.5 million in sales of Defendants' TSP appliance product for infringement of the '194 Patent, the '780 Patent, and the '822 Patent;

1

WHEREAS, on March 28, 2008, the Court, entered judgment in accordance with the jury's verdict;

WHEREAS, Defendants should be ordered to pay treble damages pursuant to 35 U.S.C. § 284; and

WHEREAS, Defendants should be ordered to pay Finjan's attorneys' fees, expenses and costs pursuant to 35 U.S.C. § 285;

IT IS HEREBY ORDERED as follows:

1. The judgment of March 28, 2008, as amended to include an award of damages commensurate with Defendants' amended record of infringing activities, is trebled;

2. Defendants shall pay Finjan's attorneys' fees, expenses and costs.


SO ORDERED:


Dated: _____        _____
                                       Honorable Gregory M. Sleet

2