IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 06-369 GMS |
| v. | ) ) ) | |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF FINJAN SOFTWARE, LTD.'S REPLY IN SUPPORT OF
MOTION TO AMEND JUDGMENT AND FOR AN ACCOUNTING OF SALES**

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
1000 Bridge Parkway
Suite 1000
Redwood City, CA 94065
(650) 590-0700

Dated: May 16, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiff
Finjan Software, Ltd.*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 1

    A. THE COURT SHOULD GRANT FINJAN'S MOTION FOR AN ACCOUNTING ............................................................................................. 1

        1. FINJAN PROPERLY SEEKS DAMAGES FOR THE ENTIRE PERIOD OF INFRINGEMENT ............................................................. 1

        2. THE COURT SHOULD APPLY THE REASONABLE ROYALTY RATE DETERMINED BY THE JURY AT TRIAL TO THE NEWLY ACCOUNTED SALES ..................................................... 4

        3. THE COURT SHOULD ORDER DEFENDANTS TO ACCOUNT FOR SALES OF ALL INFRINGING PRODUCTS THAT WERE NOT CONSIDERED BY THE JURY .......................................... 6

    B. THE COURT SHOULD GRANT PREJUDGMENT INTEREST AT THE PRIME RATE WHICH BEST COMPENSATES FINJAN FOR ITS FOREGONE USE OF MONEY OVER TIME ................................................................... 7

    C. THE COURT SHOULD AWARD POSTJUDGMENT INTEREST UNDER 28 U.S.C. § 1961 ................................................................................ 9

III. CONCLUSION ................................................................................................................ 9

# TABLE OF AUTHORITIES

**CASES**

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................... 5-6

*IMX, Inc. v. LendingTree, LLC*,
   469 F. Supp.2d 203 (D. Del. 2007) ....................................................................... 8

*IMX, Inc. v. Lending tree, LLC*,
   C.A. No. 03-1067-SLR, 2007 WL 1232184 (D. Del. Apr. 25, 2007) ................... 3

*Laitram Corp. v. NEC Corp.*,
   115 F.3d 947 (Fed. Cir. 1997) ............................................................................... 8

*Lucent Techs., Inc. v. Newbridge Networks Corp.*,
   168 F. Supp. 2d 269 (D. Del. 2001) ...................................................................... 3

*Mars, Inc. v. Coin Acceptors, Inc.*,
   513 F. Supp. 2d 128 (D.N.J. 2007) ....................................................................... 8

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
   No. CV-S-97-1383-EJW, 2001 WL 34778689 (D. Nev. Aug. 2, 2001) ...... 1, 2, 4-5

*Tristrata Tech., Inc. v. ICN Pharms., Inc.*,
   No. Civ.A. 01-150 JJF, 2004 WL 769357 (D. Del. Apr. 7, 2004) ......................... 2

*TWM Mfg. Co. v. Dura Corp.*,
   789 F.2d 895 (Fed. Cir. 1986) ............................................................................... 1

**STATUTES**

28 U.S.C. § 1292(c)(2) ..................................................................................................... 4

28 U.S.C. § 1961 ......................................................................................................... 1, 9

35 U.S.C. § 284 ................................................................................................................ 1

I.  INTRODUCTION

In the opposition brief to Finjan's Motion to Amend Judgment and For An Accounting of Sales, Defendants attempt to evoke the sympathies of the Court by crying "unfair prejudice," when it is clear that they are really seeking to avoid having to pay the damages due for the entire period of infringement. After hearing testimony from numerous witnesses and examining the evidence from both parties for seven days, the jury deliberated and found that Defendants willfully infringed all three of Finjan's Patents: U.S. Patent No. 6,092,194 ("the '194 Patent"), U.S. Patent No. 6,804,780 ("the '780 Patent"), and U.S. Patent No. 7,058,822 ("the '822 Patent"). Finjan would be left with an inequitable result if Defendants could now avoid paying Finjan for the full period of time that Defendants have chosen to sell the infringing products.

Also, prejudgment interest should be granted to Finjan, as Defendants have not proven circumstances exist that justify withholding prejudgment interest in this case. Defendants also conceded that post-judgment interest should be awarded as a matter of right in accordance with 28 U.S.C. § 1961.

II.  ARGUMENT

A.  THE COURT SHOULD GRANT FINJAN'S MOTION FOR AN ACCOUNTING

1.  FINJAN PROPERLY SEEKS DAMAGES FOR THE ENTIRE PERIOD OF INFRINGEMENT

"The methodology of assessing and computing damages under 35 U.S.C. § 284 is within the sound discretion of the district court." *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898 (Fed. Cir. 1986) (citations omitted). Equity requires this Court to exercise its "sound discretion" and order an accounting for those infringing sales that were not considered by the jury at trial.[1]

---

[1] Contrary to Defendants' contention (Opposition at 6 n.3), infringing sales made pre-trial, but not presented to the jury, can be newly accounted for post-trial. *See Mikoh Gaming Corp. v.*

1

After a seven-day trial, the jury found Defendants infringed Finjan's Patents, and Defendants should be held responsible for the "entire period of infringement." *Mikon Gaming*, 2001 WL 34778689, at *20. Defendants do not cite to any persuasive authority in support of their waiver arguments as the cases they cited in their opposition brief are distinguishable from this case. *See id.*, at *21-22 (granting accounting even though plaintiff did not separately seek accounting in pretrial order because damages suffered for infringement include those for entire period of infringement).

In *Tristrata*, the Court's central reasoning for denying the motion for an accounting of sales of an infringing product was that counsel for the plaintiff, in its closing arguments, told the jury to consider sales that were not accounted for when it calculated a damages award. *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, C. A. No. 01-150 JJF, 2004 WL 769357, at *2 (D. Del. Apr. 7, 2004). Also, the plaintiff in that case had explicitly stated in the Pretrial Order that it would request the jury to decide the sales amount for the infringing product, even though the sales numbers of the specific infringing product were "rolled in" with sales numbers of other products. *Id.* at *1. Thus, the plaintiff having submitted a question of unknown infringing product sales to the jury, the Court denied the motion for an accounting. *Id.* at *2.

Unlike in *Tristrata*, in this case, the Webwasher software sales, Webwasher hardware sales, and Cyberguard TSP appliance sales are all distinct products, and sales numbers from one product, do not "roll into" another product. *See id.* at *1; *see also* Opposition at 2 (special verdict form had three separate questions). Also, "more importantly," counsel for Finjan, in his closing arguments, never advised the jury to consider those sales amounts that were unaccounted for. *See* D.I. 233 (Trial Transcript ("T.T.") at 1618:9-1623:10) (Finjan's counsel's closing

---

*Acres Gaming, Inc.*, No. CV-S-97-1383-EJW, 2001 WL 34778689, at *19 (D. Nev. Aug. 2, 2001) (granting motion to account for sales not presented to jury made pre-trial).

2

arguments on damages). Thus, the Court should order an accounting because the question of the amount of the unaccounted sales of the infringing products was not given to the jury to be considered in determining the damages amount.

Defendants also cite to *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 269 (D. Del. 2001), for support that Finjan waived its right to an accounting, but *Lucent*, however, is not persuasive either. The Court in *Lucent* found that plaintiff had waived its right to an accounting based in part on the "lack of any case law supporting an accounting in these circumstances." *Id.* at 273. At the time *Lucent* was decided, there was a lack of case law regarding waiver of the right to an accounting, but since then, the Court has granted motions to amend the judgment to include damages that were not accounted for by the jury. *See, e.g., IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03 1067- SLR, 2007 WL 1232184, at *2 (D. Del. Apr. 25, 2007) (amending judgment to award damages commensurate with entire period of infringement, including period after trial); *see also* Declaration of Hannah Lee in Support of Reply in Support of Motion to Amend Judgment and For An Accounting of Sales ("Lee Reply Decl.") filed herewith, Ex. 1 (IMX Order to Amend the Judgment). Notably, Defendants did not distinguish this case where an accounting was granted in their opposition brief.

Defendants' prejudicial press releases, and evidence of continued willful infringement show the inequitable result that would occur if Defendants were not ordered to account for the sales of infringing products that the jury did not consider at trial. *See* Opening Brief at 4-5; *see also* D.I. 267 (Opening Brief in Support of Motion for Permanent Injunction). Significantly, compounding the harm to Finjan, Defendants, just a couple weeks ago, repeated on a conference call with financial analysts the falsehood that Defendants "won on one count" and at trial. *See* Lee Reply Decl., Ex. 2 (Secure's Q1 Earning Call). Defendants continue to perpetuate the

3

wrong jury verdict and refuse to acknowledge the jury's determination that Defendants infringed all three Finjan Patents.

To deny Finjan's Motion for an Accounting would be to allow Defendants to evade their responsibility to pay damages for the entire period of infringement and "would contradict the patent law's purpose of compensating patent holders for the damage suffered due to infringement." *Mikohn Gaming*, 2001 WL 34778689, at *22; *see also* id. at *21 (granting accounting because no question that plaintiff sought damages for entire period of infringement). Additional evidence that Defendants are trying to evade their duties of payment for their infringing activities is their desire to delay the accounting until after any appeals in this case, which could possibly be years from now.[2] Thus, based on the reasons set forth above and in Finjan's Opening Brief in Support of this Motion, the Court should order an accounting for those sales not considered by the jury.

### 2. THE COURT SHOULD APPLY THE REASONABLE ROYALTY RATE DETERMINED BY THE JURY AT TRIAL TO THE NEWLY ACCOUNTED SALES

Defendants cannot articulate any sound basis for why the royalty rates determined by a jury at trial should not be applied to newly accounted sales. *See Mikohn Gaming*, 2001 WL 34778689, at *23 (applying jury-determined royalty rate to newly accounted sales though rate was higher than expert's rate). In fact, the jury determined that the royalty rate for the Webwasher software should be 16%, a *lower* royalty rate than what Finjan's damages expert, Russell Parr, opined upon at trial for the Webwasher software product. *See* D.I. 229 (T.T. at 637:25-638:1) (Russell Parr testified to a royalty rate of 18% for software, 8% for hardware).

---

[2] The plain language of 28 U.S.C. § 1292(c)(2) does not require that all appeals be concluded before a motion for an accounting is considered by the district court. Rather, it only sets forth the bases for the exclusive jurisdiction of the Federal Circuit.

4

Defendants contend that if Mr. Parr had considered infringing sales that occurred pre-trial, these additional sales would have increased the royalty base, and thereby, lowered the royalty rates. The unsubstantiated theory that the royalty rate must go down as the royalty base (volume of infringing sales) goes up was never presented by either party's damages expert in their report or testimony at trial. Such theory is not founded in law or fact. Both parties' experts, Mr. Parr and Mr. Degen, examined the fifteen *Georgia-Pacific* factors and determined a royalty rate based on analysis of the factors which are used to simulate a "willing licensor"/"willing licensee" negotiation. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y. 1970). None of the *Georgia-Pacific* factors require an examination of the volume of sales. *Id.* Defendants also did not raise with the Court any problem it had with Mr. Parr's analysis of the *Georgia-Pacific* factors before trial, and now refuses to apply the rate determined by the jury based on Mr. Parr's testimony to newly accounted sales.

As Defendants, themselves, state, "[t]his case was tried to a jury...." Opposition at 2. The jury heard the evidence of both damages experts, and after weighing the evidence, chose to adopt a royalty rate closer to Mr. Parr's opinion. The jury had substantial evidence to find that the royalty rate was 16% for sales of the Webwasher software and 8% for Webwasher hardware appliances and TSP appliances. Mr. Parr testified that the gross profit margins were different for hardware and software, and operating profits was 25% for hardware and 55% for software. D.I. 229 (T.T. at 637:21-23). He explained to the jury that profit margins were extremely high for software because "literally, manufacturing software is burning it onto a disk and sticking into a box." *Id.* (T.T. at 638:18-20).

Even a comparison of Mr. Degen's opinion with Mr. Parr's shows that Defendants' volume-royalty rate theory is flawed. Though Mr. Parr considered a greater volume of sales for

5

the products than Mr. Degen because Mr. Degen failed to include all infringing sales, Mr. Parr arrived at a higher royalty rate under *Georgia-Pacific* than Mr. Degen. Under Defendants' theory, a greater volume of sales should have resulted in a lower royalty rate.

Furthermore, even if the volume of the sales was considered by the damages experts in this case, the amount of the newly accounted for infringing sales would not be so enormous that it would conceivably have any substantial effect on the royalty rate determined by the jury. *See* Opening Brief at 5-6. As Defendants, themselves, claim in their opposition, the TSP appliance was no longer offered for sale after December 31, 2007 and newly accounted sales of TSP, therefore, would not be exorbitant, and any newly accounted Webwasher sales after September 9, 2007 would only be a small fraction of the total sales the jury already considered since the Webwasher software was first sold in 2004, and the hardware first sold in 2006. *See* D.I. 263 (Declaration of Hannah Lee in Support of Opening Brief, Ex. N (Ex. 3 to Expert Damages Report of Russell L. Parr, CFA)). Based on these reasons, the Court should apply the royalty rate of 16% to the newly accounted Webwasher software sales, and royalty rate of 8% to the newly accounted Webwasher and Cyberguard TSP appliance sales.

### 3. THE COURT SHOULD ORDER DEFENDANTS TO ACCOUNT FOR SALES OF ALL INFRINGING PRODUCTS THAT WERE NOT CONSIDERED BY THE JURY

Defendants have not and continue to fail to show that there were no sales of the infringing TSP appliance made after June 30, 2006. Defendants allege that sales of the infringing TSP appliance after June 30, 2006 "simply did not occur." However, Defendants also state that "as of December 31, 2007, [it] no longer takes orders for Cyberguard TSP Hardware Appliances." *See* Opposition at 7 n.5; *see also* id. at 8. Surprisingly, Defendants say, on one hand, that there were no sales of the TSP appliance after June 30, 2006, but also say that they

6

continued to make orders for a year and a half thereafter through 2007. If Defendants did not make a single sale after June 30, 2007, they should have no difficulty in providing documents that prove this to be true.

Presumably the reason why Defendants are withholding sales documents of the TSP appliance between June 30, 2006 and December 31, 2007 is that it still maintains the TSP appliance does not infringe and the Webwasher proactive scanning functionality has never been and is not available for purchase by customers on Cyberguard TSP appliances. *See* Lee Reply Decl., Ex. 6 (Response Expert Report of Carl G. Degen at 7); *see also* D.I. 266 (Defendants' JMOL Opening Brief at IV.E). However, as the jury determined at trial, the Cyberguard TSP appliance does contain the infringing technology. *See* D.I. 226 (Joint Special Verdict Form at 10, Question 16). The issue of infringement by Defendants' Cyberguard TSP having gone to trial, and the jury having found infringement, the Court should order an accounting of Defendants' sales of the TSP Appliance after June 30, 2006.

Also, Finjan never contended that the supplementation of Webwasher software and hardware sales after September 9, 2007 was a discovery issue in its opening brief in support of this motion. Rather, it only stated that more recent sales information for Webwasher was not available to the jury at the time of trial. *See* Opening Brief at 5-6. Thus, the Court should order an accounting of Webwasher software and hardware sales made after September 9, 2007.

### B. THE COURT SHOULD GRANT PREJUDGMENT INTEREST AT THE PRIME RATE WHICH BEST COMPENSATES FINJAN FOR ITS FOREGONE USE OF MONEY OVER TIME

Defendants provide no justification for withholding an award of prejudgment interest in this case. *See* Opposition at 9. They merely allege that prejudgment interest could possibly be denied in certain cases based on a plaintiff's litigation tactics, without showing how Finjan was

7

engaged in any supposed "litigation tactics" or providing any other justification for not granting prejudgment interest. *Id.* Thus, prejudgment interest should be awarded in this case.

The rate used to calculate prejudgment interest should be the prime rate. As stated in its opening brief in support of this motion, the prime rate would better "represent the cost of borrowing money, which is a 'better measure of the harm suffered as a result of the loss of the use of money over time.'" *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227-28 (D. Del. 2007). Though Finjan need not "demonstrate it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate," Finjan has borrowed at high rates near or above the prime rate in the past as evidenced in company financial statements. *See* Lee Reply Decl., Ex. 3 (Finjan Financial Statements 2005 at 8 (loan for $1.5 million at 8%)). Had Defendants paid Finjan royalty payments for use of Finjan's patented technology, Finjan could have avoided taking of such loans at such high rates in order to continue operations, and therefore, is entitled to the prime rate to calculate prejudgment interest. *See* id., Ex. 4 (Finjan Financial Statement 2004 at 11); Ex. 3 (Finjan Financial Statement 2005 at 10); Ex. 5 (Finjan Financial Statement 2006 at 10 (Finjan's revenue came from sales of its products, license fees, and maintenance fees)); *see also Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997).

Furthermore, the relationship between Finjan and Defendants during the foregone royalty payments as a result of the infringement was a licensor-licensee relationship, not a lender-borrower relationship. *See Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 134 (D.N.J. 2007) (prejudgment interest compensates for loss of foregone use of royalty payments, "not the risk of default on an imaginary hypothetical loan" because it does not pay down outstanding debt and there is no risk of default). Thus, the Court should apply the prime rate to compute prejudgment interest in this case.

8

## C. THE COURT SHOULD AWARD POSTJUDGMENT INTEREST UNDER 28 U.S.C. § 1961

Because post-judgment interest should be awarded as a matter of right under 28 U.S.C. § 1961 and Defendants do not dispute this, the Court should award postjudgment interest on the entire damages award as set forth in Finjan's opening brief in support of this motion.

## III. CONCLUSION

For the above reasons, the Court should amend the final judgment to order an accounting of sales of the infringing products, and award prejudgment and postjudgment interest.

OF COUNSEL:

Paul J. André
Lisa Kobialka
King & Spalding LLP
1000 Bridge Parkway
Redwood City, CA 94065
(650) 590-0700

Dated: May 16, 2008
865022

POTTER ANDERSON & CORROON LLP

By: _____
Philip A. Rovner (#3215)
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiff*
*Finjan Software, Ltd.*

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Philip A. Rovner, hereby certify that on May 16, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com; farnan@rlf.com

I hereby certify that on May 16, 2008 I have sent by E-mail the foregoing document to the following non-registered participants:

Jake M. Holdreith, Esq.
Christopher A. Seidl, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
jmholdreith@rkmc.com ; caseidl@rkmc.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com