IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) | |
| Plaintiff-counterdefendants, | ) ) | |
| v. | ) ) | C. A. No. 06-00369-GMS |
| SECURE COMPUTING CORPORATION, a Delaware corporation; CYBERGUARD CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) | |
| Defendants-counterclaimants. | ) | |

**DEFENDANTS-COUNTERCLAIMANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50 AND, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND/OR REMITTITUR PURSUANT TO FED. R. CIV. P. 59**

OF COUNSEL:

Ronald J. Schutz
Jake M. Holdreith
Christopher A. Seidl
Trevor J. Foster
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

***ATTORNEYS FOR SECURE COMPUTING CORPORATION***

Dated: May 16, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ..................................................................................................... 1

ARGUMENT .............................................................................................................. 1

I.     NO INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ('780
       AND '194 PATENTS) ..................................................................................... 1

       A.     Finjan Is Estopped From Claiming Infringement Under the Doctrine of
              Equivalents For Any of the Asserted Claims of the '780 Patent .................. 1

       B.     Secure Preserved Its Objections To Doctrine of Equivalents Through Its
              Motions, Offers in Evidence, And Objections To Jury Instructions................ 3

       C.     Federal Circuit Decisions, Including *Paice,* Require JMOL Because Finjan
              Made Only General And Vague Suggestions Of Proof of The Doctrine of
              Equivalents ...................................................................................................... 4

II.    NO LITERAL INFRINGEMENT ('194 PATENT) ......................................... 7

       A.     Finjan Did Not Provide Sufficient Evidence That Webwasher Receives a
              Downloadable "Addressed To A Client" Using Dr. Vigna's Definition ........ 7

       B.     Webwasher Does Not Contain a List of Suspicious Computer Operations........ 8

III.   NO LITERAL INFRINGEMENT ('822 PATENT) ......................................... 8

IV.    FINJAN FAILED TO PRESENT EVIDENCE THAT ANY METHOD CLAIM IS
       INFRINGED ..................................................................................................... 9

V.     PRODUCTS WITH ACCUSED FUNCTIONALITIES THAT ARE LOCKED
       AND NOT ENABLED DO NOT INFRINGE ............................................... 12

VI.    FINJAN'S PATENTS ARE INVALID .......................................................... 13

VII.   THE COURT SHOULD GRANT JMOL, OR IN THE ALTERNATIVE A NEW
       TRIAL, ON NO WILLFUL INFRINGEMENT ............................................. 15

       A.     Finjan Failed To Present Clear And Convincing Evidence to Meet
              *Seagate's* Objective Factor ........................................................................... 15

       B.     Finjan Failed To Present Clear And Convincing Evidence To Meet
              *Seagate's* Subjective Factor .......................................................................... 16

VIII.  THE COURT SHOULD GRANT JMOL, OR IN THE ALTERNATIVE A NEW
       TRIAL OR REMITTUR, REGARDING DAMAGES RELATING TO FINJAN'S
       PATENTS ........................................................................................................ 17

       A.     The Royalty Rates Of 16% For Software and 8% For Hardware Appliances
              Are Unreasonable, Erroneous And Excessive .............................................. 17

- i -

     B.    Secure Did Not Waive Any Post-Trial Issues Concerning Damages ..................... 18

     C.    If This Court Grants JMOL Or A New Trial On Invalidity Or
          Noninfringement, Then the Court Should Order A New Trial On Damages ........ 19

CONCLUSION ......................................................................................................................... 20

RLF1-3284427-1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*
  55 F.3d 615 (Fed. Cir. 1995) .................................................................................... 11

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Ploug Corp.*
  166 F. Supp. 2d 19 (3d Cir. 2001) ........................................................................... 18

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*
  140 F.3d 494 (3d Cir. 1998) .................................................................................... 18

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*
  2002 WL 1801525 (S.D. Ind. July 5, 2002),
  *aff'd in part, rev'd in part and remanded on other grounds*, 381 F.3d 1371 (Fed. Cir. 2004) ... 11

*Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*
  246 F.3d 1336 (Fed. Cir. 2001) ............................................................................... 10

*Faroudja Labs., Inc. v. Dwin Elecs., Inc.*
  1999 U.S. Dist. LEXIS 22987 (N.D. Cal. Feb. 24, 1999) ....................................... 11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*
  344 F.3d 1359 (Fed. Cir. 2003) (*Festo X*) ........................................................... 1, 2

*Fineman v. Armstrong World Indus., Inc.*,
  980 F.2d 171 (3d Cir. 1992 .................................................................................... 18

*Franklin Elec. Co. v. Dover Corp.*
  2007 U.S. Dist. LEXIS 84588 (W.D. Wis. Nov. 15, 2007) ................................... 15

*Hewlett-Packard Co. v. Mustek Sys.*
  340 F.3d 1314 (Fed. Cir. 2003) ................................................................................. 5

*Hilgraeve Corp. v. Symantec Corp.*
  265 F.3d 1336 (Fed. Cir. 2001) ............................................................................... 11

*In re Seagate Tech., L.L.C.*
  497 F.3d 1360 (Fed. Cir. 2007) ......................................................................... 15, 16

*Intel Corp. v. U.S., Int'l Trade Comm'n,*
  946 F.2d 821 (Fed. Cir. 1991) ................................................................................. 12

*ISCO Int'l, Inc. v. Conductus, Inc.*
  279 F. Supp. 2d 489 (D. Del. 2003) .................................................................. 12, 13

- iii -

*Joy Techs., Inc. v. Flakt, Inc.*
  6 F.3d 770 (Fed. Cir. 1993) .................................................................................. 9, 10, 11

*Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.,*
  873 F.2d 1422 (Fed. Cir. 1989) ...................................................................................... 4

*Mendenhall v. Cedarapids, Inc.,*
  5 F.3d 1557 (Fed. Cir. 1993) ........................................................................................ 10

*Moleculon Research Corp. v. CBS, Inc.*
  793 F.2d 1261 (Fed. Cir. 1986) .................................................................................... 12

*National Instruments Corp. v. The Mathworks, Inc.*
  2004 WL 2030128 (Fed. Cir. Sept. 3, 2004)................................................................ 12

*nCube Corp. v. SeaChange Int'l, Inc.*
  436 F.3d 1317 (Fed. Cir. 2006) ...................................................................................... 4

*NTP, Inc. v. Research In Motion, Ltd.*
  418 F.3d 1282 (Fed. Cir. 2005) .................................................................................... 10

*Paice LLC v. Toyota Motor Corp.*
  504 F.3d 1293 (Fed. Cir. 2007) .................................................................................. 5, 6

*ResQNet.com v. Lansa, Inc.*
  533 F. Supp. 2d 397 (S.D.N.Y. 2008)........................................................................... 15

*Ricoh Co. v. Quanta Computer, Inc.*
  2007 U.S. Dist. LEXIS 62415 (W.D. Wis. Aug. 21, 2007) .......................................... 11

*Southwest Software, Inc. v. Harlequin, Inc.*
  226 F.3d 1280 (Fed. Cir. 2000) .................................................................................... 12

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.,*
  90 F.3d 1558 (Fed. Cir. 1996) ........................................................................................ 5

*TPIG, Inc. v. AT&T Corp.*
  2007 U.S. Dist. LEXIS 79919 (E.D. Tex. Oct. 29, 2007) ............................................ 15

*White Water Invs., Inc. v. Ethicon Endo-Surgery, Inc.*
  2005 U.S. Dist. LEXIS 21902 (S.D. Fla. Sept. 2, 2005) .............................................. 11

*z4 Techs., Inc. v. Microsoft Corp.*
  507 F.3d 1340 (Fed. Cir. 2007) .................................................................................... 11

**Statutes**

Fed. R. Civ. P. 59 ........................................................................................................... 18

# INTRODUCTION[1]

Finjan's response to Secure's Opening Brief failed to address many of Secure's bases for overturning the jury's verdict. Further, Finjan's arguments are erroneous, and its citations to the evidence are not accurate, nor are Finjan's characterizations of the record. The Court should grant JMOL in favor of Secure, or in the alternative grant a new trial (or remittitur for damages).

## ARGUMENT

**I.    NO INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ('780 AND '194 PATENTS)**

### A.    Finjan Is Estopped From Claiming Infringement Under the Doctrine of Equivalents For Any of the Asserted Claims of the '780 Patent.

Finjan does not deny it amended every asserted independent claim of the '780 Patent, and therefore Finjan bears the burden to overcome a presumption of prosecution history estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) (*Festo X*). As the Federal Circuit has made clear, "if [Finjan] fails to rebut the *Festo* presumption, then prosecution history estoppel *bars the patentee from relying on the doctrine of equivalents for the accused element.*" *Id.* (emphasis added.)

Finjan's only answer to prosecution history estoppel is to argue, incorrectly, that the amendments did not narrow the claims. There can be no doubt, however, that Finjan made several narrowing amendments to the asserted claims of the '780 Patent related to patentability because the inventors expressly admitted it during prosecution.

For simplicity, this reply brief focuses on two amendments made to the claims of the '780 Patent.[2] The first amendment narrowed the scope of the original claim by making it a *requirement*

---

[1] Secure respectfully requests that the Court accept this reply brief as filed in compliance with the Court's previous page limit of 20 pages, to allow for a fair and adequate reply to Finjan's 50 page answering brief, and because both parties have been operating under the Court's previous page limit policy since the beginning of post-trial briefing.

1

that the Downloadable "includes one or more references to software components required by the Downloadable." (*See* Secure Open. Br. Ex. 1, at 3 (D.I. 266).) In the original claim, software components were optional. (*See* Secure Open Br. at 6 (providing exemplary marked-up claim showing amendments).) The original claim read on downloadables that did not include software components as well as downloadables that did include software components. (*Id.*) As amended it reads only on downloadables that do include software components and is therefore narrower. (*id.*)

It is clear this amendment was made for reasons of patentability. Finjan ignores in its answering brief the admission of the inventors that "[i]n distinction to the present invention, Apperson and Khare do not teach fetching software components of executable code. In order to further clarify this distinction, applicant has amended the claims so as to refer to software components required by the Downloadable." (Secure Open. Br. Ex. 1. at 7 (D.I. 266); *see also Id.*, Ex. 2, at 5-6.) This is an express narrowing of patentable scope to include a mandatory step of fetching required software components. Finjan made another amendment that added the language "to be executed" to admittedly narrow the claim. (*See* Secure Open. Br., Ex. 2, at 5 (D.I. 266).)

Because these two amendments were made for reasons expressly related to patentability, prosecution history estoppel is presumed to "bar[] [Finjan] from relying on the doctrine of equivalents for the accused element." *Festo X*, 344 F.3d at 1367. The burden shifts to Finjan to prove that its accused equivalent was not surrendered. *Id* Finjan did not even attempt to make such a rebuttal case in its answering brief.

---

[2]Finjan asserts that Secure did not show that claim 3 of the '194 Patent was ever amended during prosecution. This argument is irrelevant because Secure never argued in its Opening Brief that prosecution history estoppel applies to claim 3 of the '194 Patent. Instead, Secure showed that Finjan cannot rely on the doctrine of equivalents for claim 3 of the '194 Patent because Finjan did not satisfy the particularity and linking argument requirements. Finjan is estopped, however, from arguing the *independent* claims of the '194 patent are infringed under DOE. (*See* Secure Open. Br at 17-18.)

Finally, Finjan's assertion that Secure did not contest literal infringement based on these amended limitations, although irrelevant to the estoppel analysis, is simply incorrect. Secure's counsel specifically demonstrated on cross examination that Dr. Vigna's analysis did not show that Webwasher fetched any software components. (Tr. at 481:10-482:1; 482:19-485:21 (D.I. 229).)

## B.    Secure Preserved Its Objections To Doctrine of Equivalents Through Its Motions, Offers in Evidence, And Objections To Jury Instructions.

Finjan's assertion that Secure waived its ability to bar Finjan from relying on doctrine of equivalents flies in the face of the record and the Court's express rulings at trial. First, Secure moved to preclude the doctrine of equivalents in its motions in limine, and the Court indicated that it would address the issue in Rule 50 motions. (Pretrial Hrg. Tr. at 40:24-41:2 (D.I. 206)(discussing the prosecution history estoppel motion and stating "[i]f there is a failure of proof during the trial, we will address it at the appropriate time when you make your Rule 50 motions.") At trial, Secure objected to Finjan's expert testifying on the doctrine of equivalents based on prosecution history estoppel. (Tr. at 366:11-12 (D.I. 228).) The Court even expressly stated that Secure "preserved this with your motion in limine." (*Id.* at 367:25.) The Court also sustained Finjan's objections to Secure's use of the prosecution history during trial to show estoppel because "whether there is prosecution history estoppel, that is a legal issue. That is for me to decide." (Tr. at 893:9-11 (D.I. 230); *see also id.* at 893:16-18 ("I think the Federal Circuit has said that I must decide that issue. I cannot give that issue over to the jury."); Tr. at 1399:15-23 (overruling Secure's request to exclude a doctrine of equivalents instruction based on prosecution history estoppel)(D.I. 232).) After overruling Secure's objection to a jury instruction on the doctrine of equivalents, the Court stated:

> [a]ll parties' objections have been acknowledged by the Court and reserved. The Court has ruled as it has. Clearly, in my view, I am going to be very disappointed if either of you goes up to the Federal Circuit on any of these waiver issues. I don't think either party has waived anything.

(Tr. at 1438:9-14 (D.I. 233).)

3

Moreover, Secure expressly moved in its Rule 50 motions for JMOL that Finjan did not prove that Secure infringed any of the asserted claims under the doctrine of equivalents. (Tr. at 687:4-19 (D.I. 230); D.I. 222 at para. 1-3.)

**C.     Federal Circuit Decisions, Including *Paice,* Require JMOL Because Finjan Made Only General And Vague Suggestions Of Proof of The Doctrine of Equivalents.**

As explained in Secure's Opening Brief, to rely on the doctrine of equivalents, the Federal Circuit requires that the patentee provide "particularized testimony" and "linking" arguments that explain how a substantial identity between the function, means, and result of the alleged equivalent and the claim limitation exists. *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (quoting *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989)). Finjan failed this test.

Finjan has wrongly accused Secure of attempting to mislead the Court by not including the testimony adduced regarding claim 1 of the '780 Patent in Secure's Opening Brief. The chart below adds a third column to the chart in the Opening Brief that includes the testimony adduced regarding claim 1 of the '780 Patent.

| Held Insufficient By Federal Circuit | Testimony Regarding Claim 1 of the '780 Patent | Testimony Adduced by Finjan (Opening Brief) |
|---|---|---|
| Q. So, as to each claim element that you have analyzed with respect to all the Mustek devices, do they perform the same function as the claim element?<br><br>A. Yes.<br><br>Q. And do they do it to achieve the same result?<br><br>A. Yes. | Q. Specifically, at the very least, does the Webwasher product perform the same function as Claim 1 of the '780 patent?<br><br>A. Yes.<br><br>Q. And each and every element?<br><br>A. Yes.<br><br>Q. At the very at least, does the | Q. Dr. Vigna, going back to the doctrine of equivalents, at the very least, does the Webwasher product perform substantially the same way as the method in Claim 1?<br><br>A. Yes.<br><br>Q. At the very least, does the Webwasher product yield the same results as the results of the method of Claim 1? |

| Q. And do they do it in the same way? | Webwasher product perform substantially in the same way in Claim 1 as the '780 patent, and the same element? | A. Yes. |
|---|---|---|
| A. Yes. | | Q. That's for each and every element of Claim 1 for each of those analyses? |
| *Hewlett-Packard Co. v. Mustek Sys.*, 340 F.3d 1314, 1323 (Fed. Cir. 2003) ("This testimony falls far short of the long-standing evidentiary requirements for proof of infringement under the doctrine of equivalents") | A. Yes. | A. Correct. |
| | Q. Does the Webwasher product substantially in the same way to get the same result in the claimed element? | (Tr. at 368:18-369:2 (D.I. 228) |
| | A. Yes. | |
| | (Tr. at 424:17-425:4 (D.I. 228) | |

As shown in the above chart, Finjan adduced the exact same type of testimony with respect to claim 1 of the '780 Patent as it did with respect to every other claim, including the representative claim Secure presented in the Opening Brief. As a matter of law, this testimony is insufficient to guide the jury. *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558 (Fed. Cir. 1996) (holding that particularized testimony and linking evidence must be presented on a limitation-by-limitation basis).

The decision in *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007), cited by Finjan, does nothing to change the requirement of the seminal decision in *Lear* or the holding in *Hewlett-Packard*. Indeed, *Paice* exemplifies the proper way to meet the particularity and linking requirements, and demonstrates how far short Finjan was from satisfying those requirements.

In *Paice*, the patentee proffered expert testimony that separately described the accused element and *how* it performed the same function, means, and result of the claimed limitation. In *Paice*, the expert opined that the element accused of infringement, "a planetary gear unit," was equivalent to the limitation of "a controllable torque transfer unit (CTTU)," *Id*. The expert testified that the function of the CTTU is to:

> provide[] controllable and variable amounts of torque from two sources to the drive wheels, and I believe that's consistent with the claim construction of the Court. The way in which it does that is it controls a set of gears to receive torque from two input shafts and transfer torque to the drive wheels. . . . The results are control— that the vehicles control to direct torque flow between the motor, the engine and the drive.

*Id.* Thus, the expert specifically described the particular function, way, and result corresponding to the specific limitation asserted to be equivalent. The Court in *Paice* even identified where the expert "explained to the jury that the accused vehicles' transaxle units 'provide[] the function that is to be provided,' i.e., '*controllable* and *variable* amounts of *torque from two sources* to the drive wheels.'" *Id.* at 1305-06.

The Court did not hold, as Finjan suggests, that "operating the actual device in Court is sufficient." (Finjan Br. at 12 (D.I. 281).) On the contrary, it is still necessary to *link* that description to a description of the function, way, and result of the limitation. As the Court in *Paice* stated, "Dr. Nichols first demonstrated and explained operation of an actual accused device to the jury, *and then linked that demonstration and explanation* to the function of the CTTU." *Id.* at 1306 (emphasis added); *see also* (Ex. 1, at 2, 5 (Jury verdict form).)

Here, however, the jury was not given any such guidance. Not once during Dr. Vigna's testimony did he describe to the jury what the function, way, or result of the limitations of the '780 or '194 Patents were. In fact, Finjan's expert did not even express an opinion regarding whether claim 3 of the '194 Patent was infringed under the doctrine of equivalents, even in a conclusory fashion.[3] As to the '780 Patent, Finjan did not call out specific limitations of the claim and explain for a specific element the function, way and result that was allegedly satisfied by a particular

---

[3] Finjan claims that "Defendants admitted that Dr. Vigna sufficiently addressed DOE during his direct testimony." (Finjan Opp. Br. at 12 (D.I. 281).) This is simply not true. The only thing that Secure admitted in the cited portion of the transcript was that Dr. Vigna opined on the issue of doctrine of equivalents, not that his testimony "sufficiently addressed DOE" as Finjan claims.

6

element of Webwasher, let alone the differences between the limitation and the element or why those differences are insubstantial. Even if function/way/result testimony existed, Finjan made no attempt in its answering brief to identify particularized testimony or arguments linking that testimony to Dr. Vigna's literal infringement testimony.

## II.    NO LITERAL INFRINGEMENT ('194 PATENT)

### A.    Finjan Did Not Provide Sufficient Evidence That Webwasher Receives a Downloadable "Addressed To A Client" Using Dr. Vigna's Definition.

Finjan does not dispute, and indeed quotes Dr. Vigna's testimony, indicating that in his opinion "addressed to a client" means describing the ultimate destination of the information as the client. (Tr. at 339:3-8 (D.I. 228).) Finjan complains that the "Hey Jim" example "was not intended to be a technical description of the Webwasher Products." (Finjan Opp. Br. at 15 (D.I. 281).) Under neither Finjan's technical definition nor its non-technical definition did Finjan show that Webwasher received Downloadables "addressed to a client."

With respect to Finjan's technical definition, Finjan's expert made no attempt to identify whether the Downloadable received by the Webwasher product included a description of the ultimate destination as the client. (Secure Open. Br. at 11-13 (D.I. 266).) Secure offered unrebutted evidence that there is no such description. Instead, Finjan seeks to rely on testimony that the "Downloadables are ultimately received by the client." (Finjan Opp. Br. at 15, 16 (D.I. 281).) But whether or not the client receives the Downloadable does not satisfy Dr. Vigna's definition. Dr. Vigna's definition is focused on whether the "ultimate destination of something is described." (Tr. at 339:4-8 (D.I. 228); Finjan Opp. Br. at 15 (D.I. 281).) There is no evidence that Webwasher receives a Downloadable that "describes" the ultimate destination of the Downloadable as the client. With respect to Dr. Vigna's non-technical description that "addressed to a client" means saying "Hey, pass this note to Jim," Finjan has not shown any instance in which the note

(Downloadable) contains a description indicating to pass the note to Jim. In fact, the note does not contain any description of Jim.[4]

### B.    Webwasher Does Not Contain a List of Suspicious Computer Operations.

Finjan concedes that it relied on testimony equating "categories of behavior" to "lists of suspicious computer operations." As discussed in Secure's Opening Brief, a "list of suspicious computer operations" is not synonymous with recording "categories of behavior." This is a plain departure from the ordinary meaning.

Both parties agreed that the term "list of suspicious computer operations" does not require construction and that the ordinary meaning should be used. As a matter of law, Finjan did not prove infringement using the ordinary meaning. Instead, Finjan attempted to show literal infringement by analogizing categories of behavior to a list of suspicious computer operations and stating it is "pretty much the same thing." (Tr. at 349:8-15 (D.I. 228).)

Secure is not asking this Court to complete a new claim construction analysis. Secure is respectfully requesting that this Court use the ordinary meaning to determine Finjan did not show literal infringement. Categories of behavior are not a list of suspicious computer operations.

### III.    NO LITERAL INFRINGEMENT ('822 PATENT)

Secure's position is simple. The limitation of "causing mobile protection code to be communicated . . . if the downloadable-information is determined to include executable code" requires exactly what it says. Webwasher does not make the decision to cause mobile protection code to be communicated if it determines that the Downloadable includes executable code. For example, Webwasher does not send mobile protection code if it detects executable code such as applets, windows executables, ActiveX controls, etc. (Secure Open. Br. at 20 (D.I. 266).) Instead,

---

[4] If the Court finds that Finjan did prove infringement using "ordinary meaning" then a new construction and a new trial are warranted under the recent *O2 Micro* decision. *See* Open. Br. at 11-13.

Webwasher uses a different method to determine whether or not to send mobile protection code. Webwasher communicates mobile protection code if the Downloadable is determined to include javascript or vbscript. This is different from the ordinary meaning of the claim. (*Id.*)

Secure is not asking for a new construction on the meaning of this term. Secure is respectfully requesting the Court to use the ordinary meaning of the claim to evaluate Finjan's evidence of literal infringement. Given the ordinary meaning, Finjan's reliance upon evidence that Webwasher sends mobile protection when it identifies vbscript and javascript as opposed to other types of executable code is insufficient as a matter of law.

## IV. FINJAN FAILED TO PRESENT EVIDENCE THAT ANY METHOD CLAIM IS INFRINGED

In its answering brief, Finjan does not point to any underline actual performance by Secure of Finjan's alleged patented methods. Instead, Finjan points to: (1) documents explaining how Webwasher works; and (2) Dr. Vigna's operation of the Webwasher product at trial.[5] This evidence is not evidence that Secure actually performed the methods – therefore, under the well-established law that direct infringement of a method claim occurs only when the method is performed by the accused infringer, Finjan's method claims are not directly infringed by Secure. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).

Finjan argues that, even absent evidence of actual performance of the methods by Secure, Secure infringes because its product is allegedly capable of performing the asserted methods. Under Finjan's flawed logic, there would be no distinction between direct infringement of apparatus and method claims. According to Congress, Finjan's logic is wrong. "Congress has consistently expressed the view that it understands infringement of method claims under section

---

[5] Finjan cannot credibly argue that its own paid expert's operation of Webwasher is evidence of direct infringement by Secure. If this is truly Finjan's position, this argument is easily rejected because, of course, Dr. Vigna was authorized by Finjan to practice Finjan's Patents.

271(a) to be limited to use."[6] *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir.

2005). For example, the Senate Report on the Process Patents Amendments Act of 1987 explains:

> Under our current patent laws, a patent on a process gives the patentholder the right
> to exclude others from using that process in the United States without authorization
> from the patentholder. The other two standard aspects of the patent right – the
> exclusive right to make or sell the invention – are not directly applicable to a
> patented process.

*Id.* (quoting S. Rep. No. 100-83, at 30 (1987)).

Finjan's argument has also been expressly rejected by the Federal Circuit. In *Joy Techs.*,

the Federal Circuit held that a method claim is "directly infringed only when the process is

performed." 6 F.3d at 773. The *Joy Techs.* court rejected the argument that a method claim is

directly infringed merely by showing a product is capable of performing the asserted method,

stating that "[t]he law is unequivocal that the sale of equipment to perform a process is not a sale of

the process within the meaning of section 271(a)."[7] *Id.*

Numerous other courts have followed the command of Congress and *Joy Techs.* and have

denied claims of direct infringement of method claims where there is no evidence that the accused

infringer actually performed the method.[8] *See, e.g., Crystal Semiconductor Corp. v. TriTech*

*Microelectronics Intern., Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001)(stating that the defendant

---

[6] Finjan admits elsewhere in its briefing that method claim infringement requires that the methods be performed. (Finjan Opp. Br. at 26 (D.I. 281) ("This is because the Finjan Patents not only included method claims, but also included system and program code claims. These claims do not require the steps of the methods to be performed."))

[7] Finjan expressly abandoned any claim that Secure induces others to perform the method. (D.I. 266 at Ex. 3.) Finjan should not be allowed to take an end-run around the proof requirements of inducement by pointing to sales to Secure customers who may or may not perform the method.

[8] Finjan's assertion that, under Secure's (and Congress' and the Federal Circuit's) theory, "no product would ever infringe a method claim" is wrong. The Federal Circuit has found direct infringement of a method claim by an accused infringer under Secure's theory. *See e.g., Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1579 (Fed. Cir. 1993)(affirming jury's verdict of direct infringement of a method claim because accused infringer "staged open houses for customers" and used the patented method with its products "for demonstration purposes.")

"cannot be liable for direct infringement under section 271(a)" because the defendant did not practice the method in the United States); *Ricoh Co. v. Quanta Computer, Inc.*, 2007 U.S. Dist. LEXIS 62415, at *34-36 (W.D. Wis. Aug. 21, 2007)(granting defendant summary judgment of no direct infringement of method claims because plaintiff failed to show use of patented method by defendant); *White Water Invs., Inc. v. Ethicon Endo-Surgery, Inc.*, 2005 U.S. Dist. LEXIS 21902, at *13-15 (S.D. Fla. Sept. 2, 2005)(granting defendant summary judgment of no direct infringement of two method claims because plaintiff "presented no evidence that [defendant] itself practices the methods patented"); *Faroudja Labs., Inc v. Dwin Elecs., Inc.*, 1999 U.S. Dist. LEXIS 22987, at *9-12 (N.D. Cal. Feb. 24, 1999)(granting summary judgment of no direct infringement of a method claim because there was no evidence that the defendant performed the method). As one district court noted, "[a] method claim is not infringed by the sale of a device that is merely capable of being used in an infringing matter. Actual infringing use must be shown." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 2002 WL 1801525, at *29 (S.D. Ind. July 5, 2002), *aff'd in part, rev'd in part and remanded on other grounds*, 381 F.3d 1371 (Fed. Cir. 2004)(citing *Joy Techs.*, 6 F.3d at 773-75).

The cases Finjan relies on are not applicable. In *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 622 (Fed. Cir. 1995), the court expressly stated that it had "no view on the ultimate question whether [defendant's] system infringes," and even if it did address infringement, the court does not address whether its holding applies to direct infringement. In *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) the "reasonably capable" statement that Finjan relies on relates only to the patent's "product claim," not a method claim. Likewise, the court in *z4 Techs., Inc v. Microsoft Corp.*, 507 F.3d 1340, 1350 (Fed. Cir. 2007) does not specifically address direct infringement of method claims, and expressly relies on *Hilgraeve*, which again relates to "product claims." Finally, *National Instruments Corp v. The*

11

*Mathworks, Inc.* 2004 WL 2030128 (Fed. Cir. Sept. 3, 2004) is not applicable because: (1) it is an unpublished non-precedential case; (2) it deals with both direct and indirect infringement claims, and it is clear from the jury verdict form (Ex. 2) and the decision itself,[9] that holding does not apply to direct infringement of a method claim; and (3) it does not expressly contradict the law that a method claim is directly infringed only when the actual process is performed, and if it were read as Finjan proposes it would be directly contrary to Congressional intent and the precedential Federal Circuit case law cited above.

Secure respectfully submits that this Court should rely on well-established and prevailing law that direct infringement of a method claim is proved only by showing that the alleged infringer actually performed the method. Here, Finjan failed to show that Secure performed any of the methods at issue and the Court should grant JMOL that Secure does not infringe claims 1-14, and 24-30 of the '194 Patent, claims 1-6 of the '780 Patent, and claims 4, 6, and 8 of the '822 Patent.

## V.    PRODUCTS WITH ACCUSED FUNCTIONALITIES THAT ARE LOCKED AND NOT ENABLED DO NOT INFRINGE

Finjan cites no authority for its position that products with locked and non-enabled accused functionalities infringe. Moreover, contrary to Finjan's assertion, Michael Gallagher did not testify, nor could his testimony even suggest, that "a product that contains infringing program code infringes even if the functionality is disabled." Mr. Gallagher merely confirmed that Secure's source code contains the "module" that relates to the accused functionality. (Tr. at 722:16-723-13 (D.I. 230).) This case is like *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489 (D. Del. 2003) and *Southwest Software, Inc. v. Harlequin, Inc.*, 226 F.3d 1280 (Fed. Cir. 2000), which hold that non-functional elements cannot infringe. For example, in *ISCO*, the defendant argued that,

---

[9] In finding infringement, the *Mathworks* court expressly relied on *Intel Corp. v. U.S., Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991), which relates to a "product claim" (not a method claim), and *Moleculon Research Corp. v. CBS, Inc.* 793 F.2d 1261 (Fed. Cir. 1986), a case involving indirect infringement only.

because the accused "bypass mode" was "not enabled" unless and until it is manually reconfigured by a human operator, the product does not contain a "bypass mode as required by the patent claim." 279 F. Supp. 2d at 506. Here, Secure proved at trial that, even though code for accomplishing the accused functionality was in the source code, it was locked and not enabled without a key. Therefore, the Court should grant JMOL that these sales are not infringing, or in the alternative a new trial or remittitur.

## VI.    FINJAN'S PATENTS ARE INVALID

Dr. Wallach testified for nearly two days regarding Finjan's Patents. Dr. Wallach discussed the prior art in detail and gave an element-by-element analysis. In fact, Dr. Wallach's discussion of the invalidity of the '194 Patent alone spanned over 100 pages of testimony. (*See, e.g.*, Tr. at 820:17-871:13; Tr. at 908:10-940:7; Tr. at 945:12-969:8 (D.I. 230, 231).)

With respect to the Shaio reference, Finjan only points to one argument that Mr. Heberlein made against Shaio to show why Shaio did not anticipate the independent claims. That argument is that Shaio, in Mr. Heberlein's opinion, did not "receive an incoming Downloadable addressed to a client" because it looks at patents, but does not receive an "entire Downloadable." (Tr. at 1356:14 (D.I. 232).) But, Dr. Wallach provided unrebutted testimony that an entire Downloadable can fall within one packet. (Tr. at 824:18-20 (D.I. 230).) It is undisputed that Shaio expressly teaches analyzing an "applet." (D.I. 266, Ex. 6, at col.6 ll.25-26.) And it is undisputed that an "applet" is a "Downloadable." (Tr. at 1356:23-25 (Finjan's expert agreeing that an applet is a Downloadable).) Finjan's only basis is incorrect in that it argues that Shaio does not anticipate. Finjan does not point to a single other limitation that is not met by Shaio. Consequently, this Court should grant Secure JMOL of invalidity of the asserted claims of the '194 Patent based on the Shaio reference.

The asserted independent claims of the '194 Patent are also rendered obvious by the combination of Ji 1995 and Chen. Finjan only relies on three arguments in its answering brief to

13

argue that the jury could have concluded that Ji and Chen did not invalidate. First, Finjan states that Chen was not installed on a gateway. But this was the precise reason Dr. Wallach combined Chen with Ji 1995. Ji 1995 disclosed using known anti-virus techniques, such as Chen, on a gateway. Thus, while Chen is silent on whether it runs on a "gateway," the combination of Ji and Chen satisfies that limitation.

Second, Finjan argues that Chen does not disclose extracting a profile "pertaining to the Downloadable." But Finjan selectively quoted the portion of Mr. Heberlein's testimony in which he argued that Fig. 9 of the Chen patent did not identify operations pertaining to the specific Downloadable, because those were merely the operations that the Chen program looked for. But in the very next question and answer, Mr. Heberlein admitted that "Chen extracts these -- looks for these suspicious computer operations in a downloadable." (Tr. at 1380:4-7 (D.I. 232)(emphasis added).) Thus, Mr. Heberlein himself admitted that Chen extracts a profile from a Downloadable.

The third and final limitation that Finjan argues is missing from Chen and Ji 1995 is that Chen did not include a security policy. But again, Mr. Heberlein admitted that this limitation was present in Chen:

> Q. The suspect instructions, if Chen finds them, Chen removes them. Right?
> A. I believe that's the case, yes.
> Q. Specifically, if we look at Column 3, at about Line 55, Chen has a number of options for what you can do, including correcting the file or notifying the user. Right?
> A. Yes, I see that.
> Q. So Chen says, If I find a virus, I am either going to delete that macro or fix it. Right?
> A. Yes, I don't disagree with that.
> Q. And deleting the macro or fixing it is a way of not permitting that macro to execute if it violates a *security policy*, isn't it?
> A. I would agree with that.

(Tr. at 1380:15-:1381:3 (D.I. 232)(emphasis added).)

14

**VII.  THE COURT SHOULD GRANT JMOL, OR IN THE ALTERNATIVE A NEW TRIAL, ON NO WILLFUL INFRINGEMENT**

**A.  Finjan Failed To Present Clear And Convincing Evidence to Meet *Seagate's* Objective Factor.**

Finjan failed to address the heightened standards for proving willful infringement under *In re Seagate Tech., L.L.C.*, 497 F.3d 1360 (Fed. Cir. 2007). Finjan focuses almost entirely on *Seagate's* second, subjective factor. (*See* Finjan Opp. at 3-6 (D.I. 281).) However, none of the evidence on pages 3-6 of Finjan's brief is relevant until Finjan first meets *Seagate's* objective factor -- which it did not. (*See* Secure Opening Br. at 32-41 (D.I. 266).) It is not enough to offer evidence that the alleged infringer believed it might be or is infringing a patent, if -- after the record is developed -- there are substantial questions about validity or infringement, even though the accused infringer did not prevail on its defenses. *ResQNet.com v. Lansa, Inc.*, 533 F. Supp. 2d 397, 420 (S.D.N.Y. 2008); *see also TPIG, Inc. v. AT&T Corp.*, 2007 U.S. Dist. LEXIS 79919, at *35-37 (E.D. Tex. Oct. 29, 2007)(granting defendant JMOL to reverse jury's willfulness verdict and stating that "[e]ven though [the accused infringer] ultimately did not prove its invalidity defense by clear and convincing evidence, its position was hardly objectively unreasonable."); *Franklin Elec. Co. v. Dover Corp.*, 2007 U.S. Dist. LEXIS 84588, at *23 (W.D. Wis. Nov. 15, 2007)(denying defendant's motion for summary judgment on non-infringement, but finding no willful infringement, "[g]iven the significant support in the language of the patent, the specification, and the prosecution history for defendant's non-infringement position.") In this case, based on the trial record and Secure's post-trial submissions, it is clear there were at least substantial questions regarding validity and infringement of Finjan's Patents. Therefore, the jury's willful infringement verdict should be overturned.

**B.**     **Finjan Failed To Present Clear And Convincing Evidence To Meet *Seagate's* Subjective Factor.**

Because Finjan failed to present sufficient evidence to prove *Seagate's* objective prong, the jury should never have determined whether Finjan proved the second, subjective, prong. However, even if Finjan could present sufficient evidence that there was a high likelihood of infringement of a valid patent, as showed in Secure's Opening Brief (D.I. 266 at 45-48), Finjan fails the second, subjective, *Seagate* test.

At page 4 of Finjan's answering brief, Finjan attempts to present "substantial evidence of willful infringement" by listing several trial exhibits and trial testimony and then severely mischaracterizing them with attorney argument. For instance: (1) PTX-31 (D.I. 268, Ex. 8) does not relate to testing by Secure, but testing by a third-party av-test.org; (2) nowhere in PTX-36 (D.I. 268, Ex. 17) does it say that Defendants "realize they need to use the Finjan Patents as a roadmap"; (3) Trial Transcript 319:6-7 does not support any conclusion that Secure thought it "would infringe the Finjan Patents"; (4) there is no evidence that PTX-38 (D.I. 269, Ex. 31) is a "summary of their findings"; and (5) Trial Transcript 306:12-16 in no way supports the outrageous conclusion that "[n]ot only did Defendants use the Finjan Patents as a road map, the lead developer testified that he reviewed Finjan's patented products in order to develop infringing products." Finally, PTX-37[10] says that "Roland", not "Christoph and Jan", was "doing research on proact. sec patents from finjan." Moreover, Finjan failed to include the entire quotation, which says "doing research on proact. sec patents from finjan <u>and trend</u>." (emphasis added). The Trend patents, Ji and Chen, are the art that raise substantial questions of invalidity of Finjan's Patents. Further, none of this alleged evidence is evidence that any objectively-defined risk (determined by the record developed in this infringement proceeding) was either known or so obvious that it should have been known to

---

[10] Finjan failed to attach PTX-37 to its brief, but instead provided the Court a courtesy copy. Therefore, Secure's citation is to the exhibit provided in Finjan's courtesy copy.

Secure. At best, it is evidence of competition and commercial gamesmanship. Finjan has failed to meet both the objective and subjective *Seagate* factors, and the Court should grant JMOL of no willful infringement, or in the alternative a new trial.

## VIII.  THE COURT SHOULD GRANT JMOL, OR IN THE ALTERNATIVE A NEW TRIAL OR REMITTITUR, REGARDING DAMAGES RELATING TO FINJAN'S PATENTS

### A.  The Royalty Rates Of 16% For Software and 8% For Hardware Appliances Are Unreasonable, Erroneous And Excessive.

Finjan does not deny that Mr. Parr: (1) ignored Secure's product-specific operating profit financials, which were kept in the ordinary course of business; (2) inflated his "adjusted" rate even more by erroneously considering financials for 2004 and 2005, years in which Secure did not even sell the accused product; and (3) used an 99% gross profit number (as opposed to net operating profit), not related to the Webwasher product (as opposed to product-specific), and pulled out of context from an excerpt from a deposition (as opposed to business record financials), to boost his high royalty rate even more. In short, Mr. Parr failed to follow his own acknowledged method under the rule of thumb of using product-specific operating profit. This resulted in a four-fold multiplication of the damages rate that Mr. Parr's own method produces. Finjan's only response to Secure's assertion that Mr. Parr's "rule of thumb" methodology was flawed is that Mr. Parr "attempt[ed] to derive a more accurate picture of profitability for the accused products." Mr. Parr admitted he simply failed to consider the very information he said his methodology requires: the product specific operating profit kept in the ordinary course of business. (Tr. at 655:4-668:22 (D.I. 229).) No reasonable jury could find that Mr. Parr's manipulation of Secure's actual product-specific operating profit financials, which were kept in the ordinary course of business, is appropriate. These inflated royalty rates simply do not pass the "grossly excessive" test. The Court should overturn the jury's damages award, or order a new trial or remittitur.

17

**B.**     <u>Secure Did Not Waive Any Post-Trial Issues Concerning Damages.</u>

Secure's Opening Brief (D.I. 266 at 32-41) presented several reasons why the Court should grant JMOL, or in the alternative a new trial or remittitur, in favor of Secure on damages relating to Finjan's Patents. Secure did not waive any of these arguments.[11]

Secure complied with Rule 50(a). At the close of Finjan's case-in-chief, Secure timely moved for JMOL, pursuant to Rule 50(a), on damages as follows: "Finjan has not proved, by a preponderance of the evidence, that it is entitled to any damages." (Tr. at 687:23-688:4 (D.I. 230).) At the close of all the evidence, pursuant to Rule 50(a), Secure again timely moved for "[j]udgment as a matter of law that Finjan Software, Ltd. has not proved, by a preponderance of the evidence, any damages." (D.I. 222 at 2, 4.) The Third Circuit has found compliance with the Rule 50 specificity requirement based on far more general assertions than those in Secure's motions. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 519 n.18 (3d Cir. 1998); *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 184 (3d Cir. 1992).

Further, the Third Circuit has held that specificity should be considered in light of the context of the case and "the background, as reflected in the record." *Brokerage Concepts*, 140 F.3d at 519 n.18. Only truly new and novel arguments, as opposed to arguments merely buttressed with new detail, are waived. *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 166 F. Supp. 2d 19, 31 (3d Cir. 2001). Moreover, when a party has "not indicated that it was surprised or that it would have provided further evidence had it known that these arguments existed" there is no waiver. *Id.* Here, in the context of the trial record, Finjan had clear notice of all of Secure's Rule

---

[11] To the extent Finjan contends that any arguments for a new trial and/or remittitur, pursuant to Fed. R. Civ. P. 59, are waived, they should be rejected on their face. For instance, Finjan argues that Secure's arguments regarding "excessiveness of the damages" and "reasonableness of the juries' damages findings" are waived. Finjan's arguments are nonsensical. At the time of Secure's Rule 50(a) motion, there was no jury award to challenge. Further, Rule 59 has no specificity requirement.

50(b) JMOL arguments. Indeed, they are not new and novel arguments, they are merely the same arguments (*i.e.*, that Finjan failed to present sufficient evidence of its claimed damages) buttressed with new detail. And, Finjan has not indicated that it was surprised or that it would have provided further evidence had it known that these arguments existed. To the contrary, Finjan has steadfastly (and erroneously) contended that the evidence it presented at trial was sufficient to support the jury's damages award.[12] Finjan's waiver arguments should be rejected.

### C.    If This Court Grants JMOL Or A New Trial On Invalidity Or Noninfringement, Then the Court Should Order A New Trial On Damages.

In Secure's Opening Brief, Secure argued that, in the event the Court grants any relief for JMOL or a new trial on noninfringement or invalidity, the Court should grant a new trial on damages. (Secure Opening Br. at 41 (D.I. 266).) Finjan did not challenge, or even address, this argument. Therefore, it is undisputed between the parties that, if the Court grants any relief for JMOL or a new trial on noninfringement or invalidity, the Court should grant a new trial on damages. Indeed, this would be appropriate because the jury did not reveal the means by which it calculated damages, nor did it indicate how much of the damages it apportioned to a particular patent or claim.

---

[12] For instance, in its answering brief, Finjan acknowledges that Secure was "attack[ing]" Mr. Parr's rule of thumb analysis during trial. (Finjan Opp. Br. at 45 (D.I. 281).)

## CONCLUSION

Based upon the foregoing, and Secure's Opening Brief, Secure respectfully requests that the Court grant Secure's motion for JMOL and, in the alternative, a new trial or amended judgment (remittitur).

OF COUNSEL:

Ronald J. Schutz
Jake M. Holdreith
Christopher A. Seidl
Trevor J. Foster
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

*Kelly G. Farnan*

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

*ATTORNEYS FOR SECURE COMPUTING CORPORATION*

Dated: May 16, 2008

20

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 16, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and caused the same to be served on the plaintiff at the address and in the manner indicated below:

### BY HAND DELIVERY AND E-MAIL

Philip A. Rovner, Esquire
Potter, Anderson & Corroon
Hercules Plaza - 6th Floor
Wilmington, DE  19899

### BY E-MAIL

Paul J. Andre
King & Spalding, LLP
1000 Bridge Parkway
Suite 100
Redwood Shores, CA  94065

*Kelly E. Farnan*

Kelly E. Farnan (#4395)

# EXHIBIT 1

F I L E D
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DEC 2 0 2005

DAVID J. MALAND, CLERK
BY
DEPUTY _____

| | | |
|---|---|---|
| PAICE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:04-CV-211 (DF) |
| | § | |
| TOYOTA MOTOR CORP., ET. AL., | § | |
| | § | |
| Defendants. | § | |

**VERDICT FORM**

    You, the jury are to answer the following questions based on the evidence admitted at trial and according to the Instructions the Court has given you. Start with Question No. 1 and proceed through the questions following the directions included in this Verdict Form.

-1-

**Question No. 1:**

Has Paice proven by a preponderance of the evidence that the 2004 and later model year Toyota

Prius infringes any of following claims of the patents in suit?

Answer "Yes" or "No" for each claim in each patent listed below

|  |  | Literal Infringement | Infringement under the doctrine of equivalents |
|---|---|---|---|
| **'970 Patent** |  |  |  |
| Claim 7 | Answer: | NO | NO |
| Claim 8 | Answer: |  | NO |
| Claim 11 | Answer: | NO | Yes |
| Claim 39 | Answer: | NO | Yes |

If, and only if, you find infringement under the doctrine of equivalents for a particular claim, list which element or elements of the 2004 and later model year Toyota Prius you find equivalent and the corresponding limitation or limitations of the claim. Use additional space if necessary.

| Claim No. | Element(s) | Claim Limitation(s) |
|---|---|---|
| 11 | Planet. Gear Asem. | Controlable torque transfer |
| 39 | Planet. Gear Asem. | Controlable torque transfer |
|  |  |  |

-2-

|  |  | **Literal Infringement** | **Infringement under the doctrine of equivalents** |
|---|---|---|---|
| **'672 Patent** |  |  |  |
| Claim 15 | Answer: | NO | NO |
| Claim 16 | Answer: | No | No |

If, and only if, you find infringement under the doctrine of equivalents for a particular claim, list which element or elements of the 2004 and later model year Toyota Prius you find equivalent and the corresponding limitation or limitations of the claim. Use additional space if necessary.

| Claim No. | Element(s) | Claim Limitation(s) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

-3-

|  |  | **Literal Infringement** | **Infringement under the doctrine of equivalents** |
|---|---|---|---|
| **'088 Patent** |  |  |  |
| Claim 1 | Answer: | N0 | N0 |
| Claim 2 | Answer: | N0 | N0 |
| Claim 3 | Answer: | N0 | N0 |

If, and only if, you find infringement under the doctrine of equivalents for a particular claim, list which element or elements of the 2004 and later model year Toyota Prius you find equivalent and the corresponding limitation or limitations of the claim. Use additional space if necessary.

| Claim No. | Element(s) | Claim Limitation(s) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**Question No. 2:**

Has Paice proven by a preponderance of the evidence that the Toyota Highlander/Lexus RX400H

infringes any of following claims of the patents in suit?

Answer "Yes" or "No" for each claim of each patent listed below.

|  |  | Literal Infringement | Infringement under the doctrine of equivalents |
|---|---|---|---|
| **'970 Patent** |  |  |  |
| Claim 7 | Answer: | NO | NO |
| Claim 8 | Answer: |  | NO |
| Claim 11 | Answer: | NO | yes |
| Claim 39 | Answer: | NO | yes |

If, and only if, you find infringement under the doctrine of equivalents for a particular claim, list which element or elements of the Toyota Highlander/Lexus RX400H you find equivalent and the corresponding limitation or limitations of the claim. Use additional space if necessary.

| Claim No. | Element(s) | Claim Limitation(s) |
|---|---|---|
| 11 | Planetary Gear Assm. | Controlable torque transfer |
| 39 | Planetary Gear Assm. | Controlable torque transfer |

-5-

|  |  | Literal Infringement | Infringement under the doctrine of equivalents |
|---|---|---|---|
| **'672 Patent** |  |  |  |
| Claim 15 | Answer: | NO | NO |
| Claim 16 | Answer: | NO | No |
| Claim 26 | Answer: | NO | NO |

If, and only if, you find infringement under the doctrine of equivalents for a particular claim, list which element or elements of the Toyota Highlander/Lexus RX400H you find equivalent and the corresponding limitation or limitations of the claim. Use additional space if necessary.

| Claim No. | Element(s) | Claim Limitation(s) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

|  | **Literal Infringement** | **Infringement under the doctrine of equivalents** |
|---|---|---|
| '088 Patent |  |  |
| Claim 1          Answer: | No | No |

If, and only if, you find infringement under the doctrine of equivalents for a particular claim, list which element or elements of the Toyota Highlander/Lexus RX400H you find equivalent and the corresponding limitation or limitations of the claim. Use additional space if necessary.

| Claim No. | Element(s) | Claim Limitation(s) |
|---|---|---|
| _____ | _____ | _____ |

**Question No. 3:**

Has Paice proven by clear and convincing evidence that Toyota's infringement, if any, of the claims of any of the patents in suit was willful?

Answer "Yes" or "No" for each patent listed below.

| '970 Patent | Answer: | NO |
| '672 Patent | Answer: | NO |
| '088 Patent | Answer: | NO |

-8-

Question No. 4:

Has Toyota proven by clear and convincing evidence that any of the claims of the patents in suit are invalid by anticipation?

Answer "Yes" or "No" for each claim listed below:

**'672 Patent**

| | | |
|---|---|---|
| Claim 15 | Answer: | NO |
| Claim 16 | Answer: | NO |
| Claim 26 | Answer: | NO |

**'088 Patent**

| | | |
|---|---|---|
| Claim 1 | Answer: | NO |
| Claim 2 | Answer: | NO |
| Claim 3 | Answer: | NO |

-9-

**Question No. 5:**

Has Toyota proven by clear and convincing evidence that any of the claims of the patents in suit are invalid for obviousness?

Answer "Yes" or "No" for each claim listed below:

**'970 Patent**

| | | |
|---|---|---|
| Claim 7 | Answer: | NO |
| Claim 8 | Answer: | NO |
| Claim 11 | Answer: | NO |
| Claim 39 | Answer: | NO |

**'672 Patent**

| | | |
|---|---|---|
| Claim 15 | Answer: | NO |
| Claim 16 | Answer: | NO |
| Claim 26 | Answer: | NO |

**'088 Patent**

| | | |
|---|---|---|
| Claim 1 | Answer: | NO |
| Claim 2 | Answer: | NO |
| Claim 3 | Answer: | NO |

**Question No. 6:**

If you have found that any of the accused vehicles infringes any claim of the patents in suit, and the claim is valid, what is the reasonable royalty, if any, that would fairly and adequately compensate Paice for infringement?

Prius                                                  $ 3,348,475. 00

Highlander and RX 400H                     $ 921,475. 00

The foreperson must sign and date this verdict form:

*Charles E Wallaugh*      12/20/2005

FOREPERSON                              DATE

-11-

# EXHIBIT 2

**F I L E D**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JAN 3 0 2003

DAVID J. MALAND, CLERK
BY
DEPUTY _____

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| NATIONAL INSTRUMENTS CORP. | § | |
| Vs. | § | CIVIL ACTION NO. 2:01-CV-11 |
| THE MATHWORKS, INC. | § | |

## VERDICT FORM

**Question No. 1:**

Do you find that National Instruments has proved, by a preponderance of the evidence, that MathWorks has infringed or induced the infringement of claims 1, 2, 4, 8, or 17 of the '587 patent?

Answer "yes" or "no" for each claim.

Claim 1: _____NO_____

Claim 2: _____No_____

Claim 4: _____NO_____

Claim 8: _____N 0_____

Claim 17: _____No_____

357

**Question No. 2:**

Do you find that National Instruments has proved, by a preponderance of the evidence, that MathWorks has infringed or induced the infringement of claims 1, 2, 5, 6, 30, or 32 of the '336 patent?

Answer "yes" or "no" for each claim.

| | |
|---|---|
| Claim 1: | _yes_ |
| Claim 2: | _yes_ |
| Claim 5: | _yes_ |
| Claim 6: | _yes_ |
| Claim 30: | _yes_ |
| Claim 32: | _yes_ |

**Question No. 3:**

Do you find that National Instruments has proved, by a preponderance of the evidence, that MathWorks has infringed or induced the infringement of claims 1, 6, 24, 48, 75, 97, 98, or 101 of the '221 patent?

Answer "yes" or "no" for each claim.

| | |
|---|---|
| Claim 1: | *yes* |
| Claim 6: | *yes* |
| Claim 24: | *yes* |
| Claim 48: | *yes* |
| Claim 75: | *yes* |
| Claim 97: | *yes* |
| Claim 98: | *yes* |
| Claim 101: | *yes* |

**Question No. 4:**

Do you find that National Instruments has proved, by a preponderance of the evidence, that MathWorks has infringed or induced the infringement of claim 1 of the '568 patent?

Answer "yes" or "no."

Claim 1:                 **yes**

**Question No. 5:**

Do you find that MathWorks has proved, by clear and convincing evidence, that claims 1,

2, 4, 8, or 17 of the '587 patent are invalid as being anticipated?

Answer "yes" or "no" as to each claim.

Claim 1:        _NO_

Claim 2:        _NO_

Claim 4:        _NO_

Claim 8:        _NO_

Claim 17:       _NO_

**Question No. 6:**

Do you find that MathWorks has proved, by clear and convincing evidence, that claims 1, 2, 5, 6, 30, or 32 of the '336 patent are invalid as being anticipated?

Answer "yes" or "no" as to each claim.

Claim 1:        *No*

Claim 2:        *No*

Claim 5:        *No*

Claim 6:        *No*

Claim 30:       *No*

Claim 32:       *No*

**Question No. 7:**

Do you find that MathWorks has proved, by clear and convincing evidence, that claims 1,

6, 24, 48, 75, 97, 98, or 101 of the '221 patent are invalid as being anticipated?

Answer "yes" or "no" as to each claim.

| | |
|---|---|
| Claim 1: | No |
| Claim 6: | No |
| Claim 24: | No |
| Claim 48: | No |
| Claim 75: | No |
| Claim 97: | No |
| Claim 98: | No |
| Claim 101: | No |

**Question No. 8:**

Do you find that MathWorks has proved, by clear and convincing evidence, that claim 1 of the '568 patent is invalid as being anticipated?

Answer "yes" or "no."

Claim 1:                 __NO__

If, in answering Question Nos. 1-8, you have found that MathWorks has infringed or induced the infringement of any valid claim, then answer Question No. 9. Otherwise, do not answer Question No. 9.

**Question No. 9:**

What sum of money, if any, if paid now in cash, would fairly and adequately compensate National Instruments as a reasonable royalty for MathWorks' infringement or inducement of infringement, if any, that you have found?

Answer in dollars and cent, if any.

Answer:    3.5 million

SIGNED this 30 day of January, 2003.

_Denny Morlar_
JURY FOREPERSON