# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 06-369 GMS |
| v. | ) ) ) |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) |
| Defendants. | ) ) ) |

---

### PLAINTIFF FINJAN SOFTWARE, LTD.'S REPLY BRIEF
### IN SUPPORT OF ITS COMBINED MOTIONS FOR ENHANCED
### DAMAGES AND ATTORNEYS' FEES, EXPENSES AND COSTS

---

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
1000 Bridge Parkway
Suite 1000
Redwood City, CA 94065
(650) 590-0700

Dated: May 16, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff
Finjan Software, Ltd.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.   THE JURY FOUND, AS A MATTER OF FACT, THAT DEFENDANTS
     WILLFULLY INFRINGED THE FINJAN PATENTS. ...................................................... 1

    A.  Defendants Copied Finjan's Products and Ideas. ................................................. 2

    B.  Defendants Acted in Bad Faith by Willfully Infringing Finjan's Patents. ..................... 4

    C.  Defendants Behavior Before, During, and After, Litigation Warrants Enhanced
        Damages............................................................................................................ 6

        a.  During Trial, Defendants Argued Contrary To The Court's Claim
            Construction Order.......................................................................................... 6

        b.  Leading Up To and During Trial, Defendants Unreasonably Pursued
            Frivolous and Unsupported Claims. ................................................................. 8

        c.  Defendants Pursued Frivolous Infringement Claims At Trial, Including
            Asserting A Patent For Which They Had No Remedy. ...................................... 10

        d.  Even After Trial, Defendants' Conduct Has Been Unreasonable and
            Reckless. ..................................................................................................... 12

    D.  Defendants' Arguments Regarding the Size of Finjan and Secure Computing Are
        Misleading...................................................................................................... 13

    E.  Defendants' Arguments Regarding the Closeness of the Case are Wrong..................... 13

    F.  Defendants Have Willfully Infringed For A Long Duration. ................................... 14

    G.  Defendants Continue to Disregard the Jury's Verdict. ......................................... 15

    H.  Defendants Had a Motivation to Harm Finjan.................................................... 16

    I.  Defendants' Willful Infringement Supports Enhancing Damages. ......................... 16

II.  THE EXCEPTIONAL NATURE OF THIS CASE WARRANTS ATTORNEYS'
     FEES, EXPENSES AND COSTS PURSUANT TO 35 U.S.C. § 285 ............................. 16

    A.  The Present Case Is An Exceptional One. ........................................................ 17

    B.  An Award Of Attorney's Fees Is Appropriate.................................................... 17

CONCLUSION.................................................................................................................. 18

## TABLE OF AUTHORITIES

CASES

Advanced Med. Optics, Inc. v. Alcon Labs., Inc.,
    C.A. No. 03-1095-KAJ, 2005 WL 3454283 (D. Del. Dec. 16, 2005) .............................. 17-18

AquaTex Indus., Inc. v. Techniche Solutions,
    479 F.3d 1320 (Fed. Cir. 2007)........................................................................................4

Beckham Instruments, Inc. v. LKB Produkter AB,
    892 F.2d 1547 (Fed. Cir. 1989).......................................................................................17

Cybor Corp. v. FAS Techs., Inc.,
    138 F.3d. 1448 (Fed. Cir. 1998)................................................................................13, 14

Energy Transp. Group, Inc. v. William Demant Holding A/S,
    C.A. No. 05-422 GMS, 2008 WL 114861 (D. Del. Jan. 7, 2008) ......................... 4-5

Golight, Inc. v. Wal-Mart Stores, Inc.,
    355 F.3d 1327 (Fed. Cir. 2004).......................................................................................17

Honeywell Int'l, Inc. v. Hamilton Sundtrand Corp.,
    166 F.Supp.2d 1008 (D.Del. 2001)...................................................................................2

In re Seagate Tech. LLC,
    497 F.3d 1360 (Fed. Cir. 2007).......................................................................................14

ISCO Intern., Inc. v. Conductus, Inc.,
    279 F.Supp.2d 489 (D. Del. 2003)....................................................................................9

LG Elecs., Inc. v. Bizcom Elecs., Inc.,
    453 F.3d 1364 (Fed. Cir. 2006).......................................................................................10

SRI Intern., Inc. v. Advanced Tech. Labs., Inc.,
    127 F.3d 1462 (Fed. Cir. 1997)....................................................................................1, 2

STATUTES

35 U.S.C. § 112......................................................................................................................9

35 U.S.C. § 285...............................................................................................................16, 17

## INTRODUCTION

Willful patent infringement is a company's worst nightmare because it demonstrates a total disregard for the intellectual property rights of another. The only way to prevent such lawlessness is to make an example of those who are caught red-handed, like Defendants Secure Computing Corporation ("Secure Computing"), Cyberguard Corporation ("Cyberguard") and Webwasher AG ("Webwasher") (collectively "Defendants"). The only way to prevent them, and others, from future willful infringement is to treble the damages awarded to Finjan Software, Ltd. and Finjan Software, Inc. ("Finjan") for Defendants' infringement of Finjan's Patents and award Finjan its attorney fees, expenses and costs.

## ARGUMENT

## I.   THE JURY FOUND, AS A MATTER OF FACT, THAT DEFENDANTS WILLFULLY INFRINGED THE FINJAN PATENTS.

The "disparagement then infringement" story, as nicknamed by Defendants, is no longer an allegation, it is now a fact that the jury decided was supported by clear and convincing evidence. *See* SRI Intern., Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1465 (Fed. Cir. 1997) It is a fact that Defendants knew of Finjan's Patents and Finjan would "check carefully which of their patents [Defendants] may touch by recreating their system." Declaration of James Hannah in Support of Finjan's Reply in Support of Its Combined Post-Trial Motions ("Hannah Reply Decl.") filed herewith, Ex. 1 (PTX-16); Declaration of Lisa Kobialka in Support of Finjan's Combined Post-Trial Motions ("Kobialka Decl."), Ex. 1 (PTX-36); Ex. 8 (PTX-38). It is a fact that Defendants disregarded Finjan's patent rights and created an infringing product despite the risk of infringement. D.I. 228 (Trial Transcript ("T.T.") at 319:6-7; 306:1-16). No matter how many times Defendants state otherwise, it is a fact that Defendants acted with objective recklessness. *See* Finjan's Combined Post-Trial Motions for Enhanced Damages ("Opening Brief").

Defendants attempt to hide the facts by repeatedly citing the Honeywell case. Honeywell, however, is not relevant to this case because, here, there is ample direct evidence of

Defendants' willful infringement. *See* Honeywell Int'l, Inc. v. Hamilton Sundtrand Corp., 166 F.Supp.2d 1008 (D.Del. 2001). Our case is more akin to SRI in which treble damages were awarded because the engineers circulated an internal memo regarding their potential infringement of the asserted patents. SRI, 127 F.3d at 1465. Like the infringers in SRI, Defendants sent internal emails notifying management of potential infringement of the Finjan Patents, a fact conveniently overlooked in Defendants' brief. Hannah Reply Decl., Ex. 1 (PTX-16); Kobialka Decl., Ex. 1 (PTX-36); Opposition at 7. Further direct evidence includes summaries and emails regarding the research of Finjan's Patents, testimony from Defendants' engineers that they copied the Finjan products, and even references to Finjan in the source code. Hannah Reply Decl., Ex. 1 (PTX-16); Ex. 2 (PTX-37); Ex. 3 (PTX-42); Kobialka Decl., Ex. 8 (PTX-038); Ex. 9 (PTX-32); Ex. 7 (PTX-35); D.I. 228 (T.T. at 305:9-306:16; 313:11-319:17; 456:18-458:12). All of this evidence illustrates not only an objectively high likelihood of infringement of a valid patent, but culpable mindset as well. Indeed, Defendants would not send internal emails to upper management about potential infringement for no reason at all. Therefore, the appropriate remedy is trebling of the damages awarded to Finjan because Defendants acted with objective recklessness which Finjan proved by clear and convincing evidence at trial.

### A.    Defendants Copied Finjan's Products and Ideas.

Defendants' argument that they did not copy Finjan's patented technology is the same one that was presented to the jury and which the jury rejected. Since the law requires "appropriate deference to the special role of the [fact-finder]," Defendants' characterization of the facts and testimony of its engineers should be rejected because it has already been rejected by the jury. SRI, 127 F.3d at 1465. Indeed, it would have been impossible for the jury to find otherwise with emails that say Defendants should "create something similar to Finjan" or "[s]urprise, surprise that a feature that Finjan works on for years cannot be done within a few weeks." Kobialka Decl., Ex. 7 (PTX-35); Ex. 1 (PTX-36). Moreover, it would have been

impossible to look past the fact that the only way Defendants were able to get their infringing product to market in approximately four months, "a feature Finjan works on for years," and at a cost $100K-$150K, was by copying Finjan's patented technology. D.I. 232 (T.T. at 1232:4-8).

Even more persuasive are admissions from Defendants' engineers that they looked at the Finjan products while developing the infringing product. D.I. 228 (T.T. at 306:1-16); D.I. 229 (T.T. at 580:21-581:5). Not only was there a clear and convincing evidence of an objective likelihood of infringement, there was conclusive evidence that Defendants knew Finjan would sue them for patent infringement by recreating Finjan's system. Hannah Reply Decl., Ex. 1 (PTX-16); Kobialka Decl., Ex. 1 (PTX-36).

In its brief, Defendants attempt to characterize the references to "Finjan Killer" and "Finjan Buster" as evidence of competition. Opposition at 9-10. While these references no doubt illustrate the competitive nature between the companies (which is why an injunction is absolutely necessary), these references also show that Defendants were specifically looking at Finjan's technology and products during their development of the infringing products.

Furthermore, Defendants conveniently omit that Defendants' developers "Christoph and Jan started research proactive security features" including "doing research on proact. sec patents from finjan" resulting in the concern that Finjan would "check carefully which of their patents [Defendants] may touch by recreating [Finjan's] system." Hannah Reply Decl., Ex. 1 (PTX-16); Ex. 2 (PTX-37); Kobialka Decl., Ex. 1 (PTX-36); Ex. 8 (PTX-38). Defendants clearly knew that there was an objectively high likelihood of infringing Finjan's valid patents. Otherwise it makes no sense that Defendants would be concerned that Finjan would "check carefully" which Finjan's Patents Defendants were infringe by "recreating" Finjan's patented technology. Id. The evidence at trial that persuaded the jury was that Defendants knowingly and with reckless disregard adopted Finjan's patented technology with their "Finjan Killer" product.

Particularly disingenuous are Defendants' arguments regarding alleged competition and economic pressure. They attempt to use the testimony of Michael Gallagher, Secure Computing's Senior Vice President of Product Development and Customer Support, to suggest

3

that competition was the reason for calling the infringing product the "Finjan Killer." Opposition at 9. However, that very same individual testified specifically at trial that Defendants "seldom, if ever" run into Finjan in the marketplace. D.I. 230 (T.T. at 716:7-11). Even as recently as May 1, 2008, Defendants claimed publicly that they really are not competing with Finjan. During Secure Computing's Earnings Conference Call on May 1, 2008 with analysts, Secure Computing's CEO informed analysts that "we don't really see Finjan competing with us in many deals." Hannah Reply Decl., Ex. 4 (Conference Call Transcript at 7). Defendants are hard pressed to make the argument that "competition" or "market pressure" drove them to review Finjan's Patents, test Finjan's products that were covered by those very patents,[1] and copy Finjan's patented technology. It is not competition or the result of economic pressure when a company copies another's propriety technology.[2] It is willful patent infringement that should be punished with treble damages.

### B.    Defendants Acted in Bad Faith by Willfully Infringing Finjan's Patents.

In an attempt to cover up liability for willful infringement, Defendants mislead the Court with double-talk. In one sentence, Defendants accuse Finjan of wrongly focusing on the fact that Defendants did not obtain an opinion of counsel. Opposition at 13. However, in a footnote, Defendants concede that the failure to obtain an opinion of counsel is proper in deciding whether to enhance damages. Id. at 13 n.7. The case law is clear, while there is no longer an affirmative duty of care, the fact that Defendants did not seek a legal opinion may be considered in the "totality of circumstances" surrounding willful infringement. Energy Transp. Group, Inc. v.

---

[1]  Contrary to Defendants' claim, Finjan proved that it marked its products that embodied the patented technology with the numbers of the Finjan Patents. D.I. 228 (T.T. at 218:17-221:7); Hannah Reply Decl., Ex. 5 (JTX-14); Ex. 6 (DTX-1070); *see also* Opposition at 12 n.5.

[2]  Defendants constantly assert that Finjan failed to compare its products and the source code of those products that embody the patented technology to Defendants' products and source code. Opposition at 10 n.4. However, as Defendants well know, a product to product comparison is wholly improper in patent cases because "infringement is not determined by comparison between commercial products sold by the parties." AquaTex Indus., Inc. v. Techniche Solutions, 479 F.3d 1320, 1328 (Fed. Cir. 2007) (quotation omitted).

William Demant Holding A/S, C.A. No. 05-422 GMS, 2008 WL 114861, at *1 (D. Del. Jan. 7, 2008). As such, Finjan properly focused on the uncontested fact that Defendants did not seek an opinion of counsel and this fact weighs in favor of Finjan to enhance damages. D.I. 230 (T.T. at 735:24-736:2).

Defendants still point to no evidence offered at trial that Defendants acted in good faith. As detailed in Finjan's Opening Brief, Defendants did not present any witnesses or evidence at trial to rebut Finjan's willful infringement arguments. Opening Brief at 9-10. Further, Defendants' claims against Finjan were completely frivolous and did not mount a substantial challenge to Finjan's infringement contentions. Id. at 18-20. In their brief, Defendants argue that there was no connection between Defendants' summary of Finjan's Patents and the development of proactive scanning. Opposition at 14. Again, Defendants ignore the evidence in this case. PTX-37 is an email sent to the *entire development team* which provides that Defendants' developers "Christoph and Jan started research proactive security features" including "doing research on proact. sec patents from finjan." Hannah Reply Decl., Ex. 2 (PTX-37). Apparent from the face of this document, Finjan's Patents are not limited to the '194 Patent, as Defendants suggest, as Defendants admittedly were doing research on not just one patent relating to Finjan's proactive security, but multiple "*patents* from finjan." Id. (emphasis added). There can be no question that Defendants were well aware of Finjan's Patents relating to its proactive security technology.

Furthermore, Defendants' claim that there was only one document introduced at trial that discussed Finjan's Patents and that Finjan only proved that Defendants acted in bad faith with knowledge of Finjan's '194 Patent is simply untrue. Opposition at 14. By way of documents, in addition to PTX-38, a document which describes Finjan's pioneering '194 Patent, PTX-37 discussed doing research into multiple patents issued to Finjan on its proactive security technology. Hannah Reply Decl., Ex. 2 (PTX-37). Additional documents proving Defendants' bad faith conduct with knowledge of Finjan's Patents is the email discussions that explicitly expressed the concern that Finjan would "check very carefully which of [Finjan's] patents

5

[Defendants] may touch by recreating [Finjan's] system." Kobialka Decl., Ex. 1 (PTX-36). These documents were tied to the individuals developing the infringing products. Also at trial, Finjan proved that the '780 and '822 Patents were part of Finjan's proactive security patents. D.I. 228 (T.T. at 286:2-287:19; 330:17-333:3). This evidence was unrebutted, such that the only evidence before the jury was the clear and convincing evidence that Defendants knew about Finjan's proactive security patents, yet acted with reckless disregard nonetheless.

Moreover, as set forth in Finjan's Opening Brief, there can be no question that Defendants were well aware of Finjan's Patents and patented technology in light of the substantial testing that Defendants did of Finjan's products that embodied the patented technology and which were marked with Finjan's Patents. Opening Brief at 7-9; D.I. 228 (T.T. at 218:17-221:7); Hannah Reply Decl., Ex. 5 (JTX-14); Ex. 6 (DTX-1070). The only reasonable explanation in light of the overwhelming evidence at trial was that Defendants acted in bad faith with knowledge of Finjan's Patents. This is particularly punctuated by the fact that Defendants called their infringing product the "Finjan Killer" and the references to "Finjan Buster" in Defendants' source code and were made available to the jury. The clear and convincing evidence at trial was that Defendants figured they could willfully and in bad faith copy Finjan's patented technology and not get caught.[3] This evidence heavily favors enhancing damages.

### C. Defendants' Behavior Before, During, and After, Litigation Warrants Enhanced Damages.

#### a. During Trial, Defendants Argued Contrary To The Court's Claim Construction Order.

As detailed in Finjan's Opening Brief, the damages awarded to Finjan should be trebled because of Defendants' litigation behavior. In several instances during trial, Defendants presented claim construction arguments that were against the Court's claim construction order.

---

[3] Defendants state that Finjan hired Dr. Bishop, Dr. Vigna and Mr. Heberlein "to defend against [Defendants'] non-infringement and invalidity defenses. Opposition at 17. This statement is completely false. Dr. Bishop was a tutorialist on the technology and Dr. Vigna was Finjan's infringement expert.

*See* Opening Brief at 11-13. With regard to "addressed to a client," it was completely improper for Defendants to argue regarding the "addressed to a client" element in closing argument in light of the Court's instruction that Dr. Wallach could not testify on his understanding of the meaning of this term. As a preliminary matter, common sense dictates that if Dr. Wallach had no understanding of the meaning of this claim element, he ***could not*** formulate an opinion one way or the other regarding whether it is infringed by Defendants' products. Thus, Defendants had no basis to argue to the contrary, as they had no evidence to support such an argument.

Moreover, Defendants' cite to Dr. Wallach's testimony discussing "at a very high level of generality" and without talking "about network protocols" how Webwasher would work with Dr. Vigna's example of passing high school notes. Opposition at 18, citing D.I. 230 (T.T. at 816:18-818:23) ("I want to ask you at a very high level of generality, I don't want to talk about network protocols or anything like that...." and "And at a high level of generality, now, without going into the protocols...."). This very general testimony which was specifically requested to be "at a high level of generality" is not related in any way to the "addressed to a client" claim language of the '194 Patent, as Defendants suggest. Rather, that testimony was in connection with an example provided by Finjan's expert, Dr. Vigna, about passing notes.

Defendants have no reasonable explanation for their improper solicitation of testimony regarding "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" as well. As set forth in Finjan's Opening Brief, Defendants continuously sought testimony regarding this claim element knowing Dr. Wallach would testify contrary to the claim construction order forcing Finjan to seek multiple side bars and disrupting trial. Opening Brief at 12-13. This testimony was solicited ***after*** Defendants were on notice that they should not be attempting to procure testimony contrary to the Court's Claim Construction Order, as they had attempted to do the same thing in connection with the "addressed to the client" element. D.I. 230 (T.T. at 809:12-810:13). Their continued efforts to obtain testimony contrary to the law of the case rises to the level of litigation misconduct which weighs in favor of enhancing Finjan's damages award.

**b.    Leading Up To and During Trial, Defendants Unreasonably Pursued Frivolous and Unsupported Claims.**

Defendants pursued several unsupported claims requiring Finjan and the Court to was significant time and resources. *See* Opening Brief at 11-13. Defendants attempt to claim that it was proper for them to "streamline" their case by eliminating multiple claims during trial. Opposition at 20. They further contend that Finjan's assertions are "hypocritical" because Finjan dropped several patent claims on what they describe as "the eve of trial." Id. at 20-21. Defendants' statements are misleading, and a closer examination of the relative conduct of the two parties serves only to further highlight Defendants' vexatious litigation strategy, as they ignore key facts which demonstrate the vexatious nature of their litigation tactics.

Defendants demonstrated their intent to waste Finjan's time and resources by dropping numerous claims during trial while Finjan, by contrast, did not drop ***anything*** either during trial or "on the eve of trial." The sheer number of claims infringed by Defendants required Finjan to drop some claims from the '780 and '822 Patents before trial. Finjan gave timely notice of its intent to drop these claims to Defendants no later than February 27, 2008, over a week before trial. Hannah Reply Decl., Ex. 7 (Email to Lisa Kobialka to Jake Holdreith). It took the parties a few days to memorialize their stipulation regarding Finjan dropping those claims and file it with the Court. Defendants conveniently forgot to acknowledge Finjan's good faith conduct in this regard, citing only to the stipulation memorializing the agreement. Furthermore, Defendants insinuate that Finjan dropped their indirect infringement claim and their claim against Defendants' IronMail appliance on the eve of trial. Opposition at 20. This is not true. The document they cite in support shows that these claims were dropped months before trial and no later than January 7, 2008. D.I. 170 (Joint Proposed Final Pretrial Order). Indeed, Finjan was required to wait that long because of Defendants' conduct and refusal to allow Finjan to activate the product for testing as they had previously promised. Hannah Reply Decl., Ex. 8 (Emai from Kris Kastens to Chris Seidl). Finjan was then forced to rely on a declaration from the Defendants. Id., Ex. 9 (Affidavit of Paul Judge). Defendants, on the other hand, dropped

everything in the middle of trial. Their only explanation is that they simply wanted to "streamline" their case. Opposition at 20. Defendants had months before trial to figure out which claims they needed to drop. Defendants cite to no change in circumstance requiring that the claims be dropped only at trial.

Defendants also make several inaccurate statements when arguing that their dropped claims were not frivolous. For example, Defendants attempted to argue that they did not drop and waive their 35 U.S.C. § 112 defenses, even though they did not submit them to the jury. As discussed in Finjan's Opposition to Defendants' JMOL, this is not allowed and is not a basis to show that Defendants' conduct was not vexatious. *See* D.I. 283 (Finjan's Opposition to Secure Computing's JMOL at 40).

Defendants also argued that they did not call any witnesses on inequitable conduct because they were not allowed to do so by this Court. Opposition at 22. As this Court knows, that is false. *See* ISCO Intern., Inc. v. Conductus, Inc., 279 F.Supp.2d 489, 500-01 (D. Del. 2003) (allowing testimony of expert on materiality of prior art). Defendants' further contention that they were "left to cross-examine Finjan's witnesses" to support their purported inequitable conduct case is similarly baseless. Opposition at 22. Defendants took numerous depositions of witnesses in Israel, including the three inventors of Finjan's Patents and numerous Finjan employees, who would be exactly the type of witnesses with information regarding the prosecution of Finjan's Patents.[4] None of these witnesses provided any testimony that was in any way related to Defendants' inequitable conduct allegations. Defendant knew this, as they designated deposition testimony from many of these witnesses for other subject matter at trial. Despite being well aware before trial that there was absolutely no evidence or even colorable claim of inequitable conduct, Defendants elected to pursue this claim at trial. Evidence that Defendants knew before trial began that they could not present even a colorable claim of

---

[4]  Notably, Defendants did not take the depositions of the patent attorneys who prosecuted Finjan's Patents.

inequitable conduct is found in their Trial Brief, where Defendants admit that the only way they could attempt to pursue this claim is through cross-examination of Finjan's witnesses at trial. The procedural and evidentiary problems with such an approach is hard to imagine, but it appears that it was Defendants' strategy going into to trial that they would seek to cross Finjan's witnesses outside the scope of their direct testimony in an effort to procure testimony regarding the subject of the prosecution of Finjan's Patents.[5]

Defendants' pursuit of a patent exhaustion defense based on the principle that anyone in the world who uses the infringing products "in combination with *any Microsoft product*" strains credibility. *See* Opposition at 24. Their theory is based on the concept that due to Microsoft's license to Finjan's Patents, anyone who uses any product made by Microsoft automatically has a license to Finjan's Patents, wholly irrespective of whether that product includes the patented technology or whether the license extends to that product. That is not the law. Patent exhaustion requires an unconditional sale of a patented device. LG Elecs., Inc. v. Bizcom Elecs., Inc., 453 F.3d 1364, 1369-70 (Fed. Cir. 2006). However, the "exhaustion doctrine ... does not apply to an expressly conditional sale or license." Id. Defendants could not offer any evidence that Finjan had sold its products to Defendants at all, much less unconditionally, but frivolously pursued the claim anyway. Defendants actions should not be sanctioned, but punished by trebled damages.

### c.    Defendants Pursued Frivolous Infringement Claims At Trial, Including Asserting A Patent For Which They Had No Remedy.

As described in Finjan's Opening Brief, Defendants pursued unsupported infringement claims. Opening Brief at 15-17. In their opposition, Defendants do not address *at all* the most stunning evidence of their pursuit of a frivolous patent infringement claim -- the fact that for their infringement claim for the '010 Patent, Defendants had absolutely no monetary or

---

[5]  Contrary to Defendants' claim, Finjan did raise the fact that Defendants dropped their willful infringement claim in its Opening Brief. *See* Opening Brief at 17 ("Defendants maintained that they would assert [willfulness] at trial, only to drop it during the trial....forc[ing Finjan] to expend resources to rebut Defendants' charge of willfulness....").

injunctive relief available, a fact that was undisputed at trial.[6] The fact that Defendants had no remedy for any alleged infringement of this patent is the very definition of frivolous. Forcing Finjan to defend itself against this patent was no small undertaking. Finjan had a technical expert, damages expert, unnecessary depositions and unnecessary written discovery to deal with as a result of Defendants' pursuit of this patent, which was expense to Finjan. Defendants' silence on this issue speaks volumes about their culpability here.

With respect to "evidence" that Defendants relied upon to support their claim of infringement for the '010 Patent, Defendants have absolutely no evidence from Finjan whatsoever to support their expert's position that the information provided for Documents 1Box was different than Vital Security for Documents. The undisputed testimony at trial was that Documents 1Box was renamed Vital Security for Documents and the only source code that Finjan had was provided to Defendants' expert. D.I. 233 (T.T. at 1452:2-9). However, Defendants' position that, since they did not like the evidence of non-infringement based on the accused product's actual source code, they could disregard it and rely on a two page marketing document authored by a third party about the same product. D.I. 231 (T.T. at 1090:1-1091:8).

To defend this decision, Defendants make the false statement that a comparison of Finjan's marketing flyer, DTX-1267, and the third party marketing flyer on the same product, DTX-1271, would require a person to believe they were both authored by Finjan. Opposition at 27. Even a cursory review of the two documents shows that, while both discuss Finjan's Vital Security for Documents product, they include very different language and content. That Defendants would even attempt to rely on a document created by a third party as opposed to Finjan's materials and source code of the same product for an infringement case, demonstrates that Defendants pursued a frivolous infringement claim to retaliate against Finjan.

---

[6] Finjan did not to renew its motion for judgment as a matter of law for invalidity of this patent because Defendants have no remedy for this patent and there is no need to perpetuate this claim in this dispute.

Defendants do not address Finjan's arguments regarding their failure to refute Finjan's evidence of invalidity of the '361 and '010 Patents such as the failure to have *any* witness rebut Finjan's *prima facie* case of invalidity and the failure to even mention these patents in their closing arguments. What this demonstrates is that Defendants did not care about these patents and never took their infringement claims seriously. This was nothing more than a waste of judicial resources and was purely retaliation against Finjan. Such bad faith conduct justifies trebling damages.

> **d.    Even After Trial, Defendants' Conduct Has Been Unreasonable and Reckless.**

Defendants' conduct after trial has been considerably disturbing. After the jury's determination of willful infringement, Defendants issued a false press release, refused to satisfy the judgment that was entered against it for the jury's damages award. Moreover, Secure Computing has unabashedly continued to sell and promote its infringement products. D.I. 263 (Exhs. E-H to Opening Brief to Motion for an Accounting of Sales); D.I. 247 (Motion to Stay). Earlier this month, during a recent earnings call with the shareholders and analysts, Secure Computing's Senior Vice President and Chief Financial Officer represented that at trial "the jury has entered a verdict against us. We won on one count on the trial. They won on two counts." *See* Hannah Reply Decl., Ex. 4 (Conference Call Transcript at 6). This statement mirrors the false press release that Defendants issued immediately after the trial, whereby they claimed that the jury found that they did not infringe one of the patents, and for which Finjan was required to demand that Defendants issue a correction. Defendants did not win on *any* counts, while Finjan won on all three counts of patent infringement. It is apparent from Defendants' conduct before, during and after trial, that Defendants have acted in bad faith, weighing heavily in favor of enhancing damages.

**D.    Defendants' Arguments Regarding the Size of Finjan and Secure Computing Are Misleading.**

Secure Computing is a much larger company than Finjan. Defendants argue that the difference in size between Finjan and Secure Computing is not as great as Finjan states. Opposition at 29. In support of this proposition, Defendants assert that both companies describe themselves as global leaders, compare the relative number of offices of each company, and compare the number of executives and board members each company has. These comparisons indicate absolutely nothing about the relative sizes of the companies. Noticeably, Defendants neglect to mention anything actually indicative of size, such as market capitalization or sales, the two most important indicators of company size. Presumably they have done this because these factors show conclusively that Finjan is much smaller than Defendants. For example, in 2007, Defendants' sales were $237.9 million, more than 10 times Finjan's sales. Hannah Reply Decl., Ex. 10 (Secure Computing's Company Fact Sheet, *available* at http://www.securecomputing.com/index.cfm?skey=233&menu=about). Therefore, as discussed in Finjan's Opening Brief this <u>Read</u> factor weighs heavily in favor of enhanced damages.

**E.    Defendants' Arguments Regarding the Closeness of the Case are Wrong.**

Despite Defendants' arguments to the contrary, this was not a close case. *See* Opposition at 30-32. Defendants were found to willfully infringe every single asserted claim in three separate patents, for a grand total of 45 claims willfully infringed. Finjan's Opening Briefing describes in detail the many reasons this case was not a close question, the majority of which Defendants do not even address. *See* Opening Brief at 19-24; *see also* Opposition at 31-32. Defendants do not address the fact that they really did not have infringement defenses to Finjan's Patents and no defense to willful infringement.

Furthermore, Defendants' arguments that, because this was a "hard fought" case that enhanced damages are not appropriate is without merit, as they mischaracterize the law. Opposition at 30. For example, <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d. 1448 (Fed. Cir. 1998), never states that enhanced damages are inappropriate simply because a case was "hard

13

fought." Cybor only states that it was not an abuse of the district court's discretion to not enhance damages when the case was close and the other Read factors such as litigation misconduct and evidence of copying were not met. Id. at 1461. Cybor is inapplicable to this case because as discussed herein and in Finjan's Opening Brief, this case was not close and at least eight of the Read factors weigh heavily in favor of granting enhanced damages.

Defendants also argue that Dr. Wallach was not using hindsight and that Finjan is trying to mislead the Court by stating that he was using hindsight. Opposition at 31. However, Dr. Wallach's testimony is clear that he himself admits to using hindsight. In any case, this is the only argument that Defendants address with respect to the question of whether this was a close case. Once again, Defendants' silence regarding this Read factor speaks volumes about how this factor weighs strongly in favor of granting enhanced damages.

### F.    Defendants Have Willfully Infringed For A Long Duration.

As discussed above, and at length in Finjan's Opening Brief, Defendants knew of Finjan's Patents and nonetheless decided to willfully infringe them. Defendants admit that they have sold the infringing products for at least four years with this knowledge and continued to sell the product after the lawsuit began, which weighs strongly in favor of enhancing damages.

Defendants improperly rely upon In re Seagate Tech. LLC, 497 F.3d 1360 (Fed. Cir. 2007). Opposition at 33-34. In Seagate, the charge of willful infringement was based "solely" on the infringers post-filing misconduct. Seagate, 497 F.3d at 1374. Here, willful infringement is not based "solely" on post-filing misconduct. Also, Seagate did not purport to establish any sort of *per se* rule that a motion for preliminary injunction is a prerequisite to enhanced damages for post-filing willful infringement, as Defendants suggest. Moreover, the extent of Defendants' willful infringement was not discovered until well after the litigation commenced and after Defendants produced its supplemental document production, including productions that occurred a year after the litigation commenced, and granted Finjan access to its source code. Thus, it was not appropriate in this particular case for Finjan to move for preliminary injunction. Given

Defendants' willful infringement dating back to 2004, which is based on Defendants' highly confidential information that Finjan did not have access to until the middle of the litigation, this factor weighs heavily in favor of trebling the damage award to Finjan.

### G. Defendants Continue to Disregard the Jury's Verdict.

As discussed herein and in Finjan's Opening Brief, Defendants have continued to disregard Finjan's patent rights and the jury's verdict, including refusing to post a security for the jury's damages award. Opening Brief at 25. While Defendants claim that they have taken some remedial action, the declaration of Mr. Gallagher to support their claim of taking such alleged actions is not specific and does not address all the areas of infringement presented at trial. D.I. 283 (Declaration of Michael Gallagher). For instance, Mr. Gallagher states that Secure Computing has removed script code mitigation. However, an investigation into the current version indicates that the functionality in place may still infringe. In addition, being "in the process" of disabling and removing the infringing technology means products are still being shipped with the infringing technology despite the finding of willful infringement. Id. (Declaration of Michael Gallagher at ¶2). It is clear the Defendants have completely disregarded the jury's verdict and have not taken any remedial steps whatsoever.

Furthermore, Defendants have not made the alleged revised products available for inspection, so there is no direct evidence of the alleged changes made to the infringing products. Additionally, the statements in the declaration are contrary to Defendants' public marketing materials and statements to the public. In addition to Defendants' continued marketing of the infringing products, as recent at May 1, 2008, Secure Computing's CEO announced to analysts on an earning call that "we do have the ability to ship the product today without the alleged infringement if we chose to do that. We are obviously not choosing to do that." Hannah Reply Decl., Ex. 4 (Conference Call Transcript at 7). Defendants' admission that they will continue to willfully infringe Finjan's Patents despite the jury's determination weighs heavily in favor of enhancing damages.

### H.  Defendants Had a Motivation to Harm Finjan.

The overwhelming evidence at trial demonstrated that Defendants were motivated to harm Finjan well beyond normal business competition.  From Defendants' nickname for the Webwasher Product as the "Finjan Killer," to the software engineers referring to the same product as the "Finjan Buster" in the source code.  Kobialka Decl., Ex. 1 (PTX-36); D.I. 229 (T.T. at 456:18-458:12).  Defendants fail to address this evidence at all in their Opposition.  *See* Opposition at 35.  Once again, such silence speaks volumes about Defendants' bad faith intentions towards Finjan, and weighs heavily in favor of enhancing damages.

### I.  Defendants' Willful Infringement Supports Enhancing Damages.

Defendants attempt to argue that because they did not attempt to conceal any misconduct, damages should not be enhanced.  Opposition at 36.  However, Defendants' brazen infringement of Finjan's patented technology, the seriousness of which Finjan only learned of during discovery, does not weigh against enhancing damages.  Whether a willful infringer attempts to conceal their infringement or ends up providing through discovery the extent of their willful infringement, the fact remains that they have reckless disregarded a patentee's rights and are a willful infringer.  Given the nature of Defendants' willful infringement, all the Read factors weigh heavily in favor of enhancing damages by threefold for Defendants' willful infringement of Finjan's Patents.

## II.  THE EXCEPTIONAL NATURE OF THIS CASE WARRANTS ATTORNEYS' FEES, EXPENSES AND COSTS PURSUANT TO 35 U.S.C. § 285

As detailed in Finjan's Opening Brief, Finjan respectfully requests the Court declare this case "exceptional" within the meaning of 35 U.S.C. § 285.  Furthermore, Finjan requests the Court award attorneys' fees, related expenses and costs incurred in establishing that Defendants willfully infringed Finjan's Patents, that Finjan's Patents are valid, and that Finjan did not infringe Defendants' Patents.

### A. The Present Case Is An Exceptional One.

As demonstrated in Finjan's Opening Brief and herein, if there ever was a case that should be deemed exceptional, this is that case. The extensive and well-documented nature of Defendants' willful infringement, which was not challenged at trial, as well as Defendants' total disregard for the jury's verdict and post-trial behavior justify deeming this case as exceptional. Declaring this case exceptional and awarding attorneys' fees would surely discourage such reckless behavior and prevent Defendants from pursuing frivolous claims, such as its infringement claim for which it had no remedy. *See* Beckham Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551-52 (Fed. Cir. 1989).

Defendants do not raise any additional grounds regarding the issue of whether the case should be deemed exceptional other than referring to its analysis of the Read factors. In doing so, Defendants failed to rebut the fact that a finding of willfulness alone is sufficient basis for a case to be determined exceptional and for the Court to award attorneys' fees. Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1340 (Fed. Cir. 2004) (quoting Avia Group Int'l, Inc. v. L.A. Gear Cal., 853 F.2d 1557, 1567 (Fed. Cir. 1988)). Furthermore, all of the cases cited by the Defendants do not apply to this case because the evidence of willfulness is overwhelming, the case for infringement, validity, and enforceability of the Finjan Patents was not a close question, and Defendants litigated in bad faith, and never sought an opinion of counsel. Moreover, Defendants employed improper litigation tactics, including eliciting improper testimony during trial and the bad-faith advancement of unsupported positions, including claims of patent infringement. As discussed above, and detailed in Finjan's Opening brief, there is significant evidence to support the jury's finding of willful infringement and for this Court to exercise its discretion to deem this case exceptional under 35 U.S.C. § 285.

### B. An Award Of Attorney's Fees Is Appropriate.

As detailed in Finjan's Opening brief, an award of attorneys' fees, cost, and expenses is appropriate in this case, especially in light of Defendants' willful infringement. The case law provides an award of attorney fees is typical in cases of willful infringement. Advanced Med.

Optics, Inc. v. Alcon Labs., Inc., C.A. No.03-1095-KAJ, 2005 WL 3454283 (D. Del. Dec. 16, 2005) ("[a]n award of attorneys' fees and costs is typical in cases of willful infringement") (citation omitted).  Defendants' conduct in total, as described in Finjan's Opening Brief and above, provides sound grounds to award attorneys' fees.  From Defendants' decision to continue perpetuating false statements regarding the jury's verdict to its pursuit of patent infringement claims for which it has no relief, Finjan has suffered enough.  Indeed, Defendants' intentional misappropriation of its patented technology, their disregard for the jury's determination and their retaliation against Finjan for lawfully seeking to enforce its patent rights and Defendants' disregard are just a few of the challenges that Finjan has faced as a result of Defendants' tortious behavior.  Finjan respectfully requests the Court to prevent gross injustice and award attorneys' fees, expenses and costs for an amount that will be substantiated with submissions bearing on the precise and itemized amounts.

### CONCLUSION

For the above reasons, Finjan respectfully requests that the Court grant its combined motions for enhanced damages, and attorneys' fees, expenses and costs.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. André
Lisa Kobialka
King & Spalding LLP
1000 Bridge Parkway
Redwood City, CA 94065
(650) 590-0700

Dated:  May 16, 2008
865136

By: _____
        Philip A. Rovner (#3215)
        Hercules Plaza
        P. O. Box 951
        Wilmington, DE  19899
        (302) 984-6000
        provner@potteranderson.com

*Attorneys for Plaintiff*
*Finjan Software, Ltd.*

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 16, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com; farnan@rlf.com

I hereby certify that on May 16, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

Jake M. Holdreith, Esq.
Christopher A. Seidl, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
jmholdreith@rkmc.com ; caseidl@rkmc.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com