# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN SOFTWARE, LTD., an Israel corporation, | ) ) ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) |
| SECURE COMPUTING CORPORATION, a Delaware corporation, CYBERGUARD, CORPORATION, a Delaware corporation, WEBWASHER AG, a German corporation and DOES 1 THROUGH 100, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 06-369 GMS

**PUBLIC VERSION**

---

## FINJAN SOFTWARE LTD.'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF PERMENANT INJUNCTION PURSUANT TO 35 U.S.C. § 283

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
1000 Bridge Parkway
Suite 100
Redwood Shores, CA 94065
(650) 590-0700

Dated: May 16, 2008
Public Version: May 23, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff
Finjan Software, Ltd.

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.  FINJAN HAS SUFFERED IRREPARABLE HARM ....................................... 2

    A.  Finjan is not precluded from a showing of irreparable harm because Finjan has maintained exclusivity by not licensing the patents-in-suit to competitors........................................................................................... 2

        1.  Microsoft does not compete with Finjan and Secure in the web gateway security market ........................................................... 3

        2.  Finjan maintains a policy of not licensing the Finjan patents-in-suit to competitors........................................................................ 4

    B.  Finjan is not precluded from showing irreparable harm under Innogenitics .......... 5

    C.  Finjan has lost market share as a result of Defendants' infringing sales because Finjan and Secure compete directly for customers ................................... 6

    D.  Finjan is particularly susceptible to harm at this point in time because 2008 will be an important year in the market in which Finjan and Secure compete ................................................................................................ 9

    E.  The Cases relied upon by Finjan support a finding of irreparable harm ............. 10

II.  THE BALANCE OF HARDSHIPS FAVORS FINJAN AND AN INJUNCTION IS IN THE PUBLIC'S INTEREST ............................................................... 12

III.  DEFENDANTS ARE NOT ENTITLED TO A STAY OF ANY PERMANENT INJUNCTION ISSUED IN THIS CASE ........................................................ 13

IV.  AN ONGOING ROYALTY IS NOT APPROPRIATE IN THIS CASE ......................... 14

CONCLUSION............................................................................................................. 16

## TABLE OF AUTHORITIES

CASES

800 Adept, Inc. v. Murex Securities, LLC,
    505 F.Supp.2d 1327 (M.D. Fla. 2007) ..................................................................................11, 12

Acumed LLC v. Stryker Corp.,
    2007 WL 4180682 (D. Or. Nov. 20, 2007) ..............................................................................3, 11

Baden Sports, Inc. v. Kabushiki Kaisha Molten,
    2007 WL 2790777 (W.D. Wash. Sept. 25, 2007) ........................................................................3, 6

Black & Decker Inc. v. Robert Bosch Tool Corp.,
    2006 WL 3446144 (N.D. Ill. Nov. 29, 2006) ..........................................................................11, 12

Commonwealth Sci. & Ind. Rsch. Org. v. Buffalo Tech. Inc.,
    492 F.Supp.2d 600 (E.D. Tex. 2007) ..........................................................................................11

eBay Inc. v. MercExchange, L.L.C.,
    547 U.S. 388 (2006) ......................................................................................................................2

Fisher-Price, Inc. v. Safety 1st, Inc.,
    279 F. Supp.2d 526 (D. Del. 2003) ..............................................................................................14

Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.,
    2008 WL 928496 (N.D. Cal. Apr. 4, 2008) ............................................................................11, 12

Innogenetics, N.V. v. Abbott Labs.,
    2007 WL 4960850 (W.D. Wis. Jan. 3, 2007) ...............................................................................15

Innogenetics, N.V. v. Abbott Labs.,
    512 F.3d 1363 (Fed. Cir. 2008) .............................................................................................5, 6, 15

MPT, Inc. v. Marathon Labels, Inc.,
    505 F.Supp.2d 401 (N.D. Ohio 2007) ..........................................................................................11

Muniauction, Inc. v. Thomson Corp.,
    502 F.Supp.2d 477 (W.D. Pa. July 31, 2007) ..............................................................................12

National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.,
    357 F.3d 1319 (Fed. Cir. 2004) .....................................................................................................2

Nichols Inst. Diagnostics v. Scantibodies Clinical Lab., Inc.,
    166 Fed. Appx. 487 (Fed. Cir. 2006) ............................................................................................14

Odetics, Inc. v. Storage Tech. Corp.,
    14 F.Supp.2d 785 (E.D. Va. 1998), aff'd, 185 F.3d 1259 (Fed. Cir. 1999) ...............................12

Paice LLC v. Toyota Motor Corp.,
    2006 WL 2385139 (E.D. Tex. Aug. 16, 2006) ....................................................................15

Paice LLC v. Toyota Motor Corp.,
    504 F.3d 1293 (Fed. Cir. 2007)..................................................................................................14

Sanofi-Synthelabo v. Apotex, Inc.,
    470 F.3d 1368 (Fed. Cir. 2006)..................................................................................................13

Smith & Nephew, Inc. v. Synthes,
    466 F.Supp.2d 978 (W.D. Tenn. 2006).................................................................................3, 6

T.J. Smith & Nephew Ltd. v. Consolidated Med. Group, Inc.,
    821 F.2d 646 (Fed. Cir. 1987)................................................................................................2, 6

TiVo Inc. v. EchoStar Communs. Corp.,
    446 F.Supp.2d 664 (E.D. Tex. 2006).................................................................................. 10-11

TiVo Inc. v. EchoStar Communs. Corp.,
    516 F.3d 1290 (Fed. Cir. 2008)..................................................................................................11

Transocean Offshore Deepwater Drilling, Inc. v. GlobalSanataFe Corp.,
    2006 WL 3813778 (S.D. Tex. Dec. 27, 2006)...........................................................................2

## INTRODUCTION

Defendants make no argument that Webwasher was unaware of the Finjan Patents it has knowingly infringed for nearly four years. Nor can they make such a representation because the evidence clearly demonstrates that Webwasher was fully aware of the Finjan '194 Patent and Finjan's other proactive security patents at the time Webwasher engineers incorporated the infringing feature into the Webwasher product. In June 2004, Roland Cuny, Webwasher AG's Chief Technical Officer was "doing research on proact[ive] sec[urity] patents from [F]injan." Declaration of Meghan Wharton in Support of Finjan's Reply to Motion for Entry of Permanent Injunction ("Wharton Reply Decl."), Ex. 1 (PTX-37 at SC075235); D.I. 228 (Trial Transcript ("T.T.") at 320:15-321:8). Clear from this document is the explicit acknowledgement that Finjan has multiple patents covering proactive security. It was undisputed at trial that the '780 and '822 Patents were part of Finjan's proactive security patents. D.I. 228 (T.T. at 286:2-287:19; 330:17-333:3). With respect to the '194 Patent, Webwasher went so far as to assemble a document comparing the elements of that patent with the Webwasher Products and other patents in the area. Declaration of Lisa Kobialka in Support of Finjan's Motion for Entry of Permanent Injunction ("Kobialka Decl."), Ex. 31 (PTX-38); D.I. 228 (T.T. at 320:15-321:8). Contrary to Defendants' claim, additional documents proving Defendants' knowledge of Finjan's Patents include the email discussions that explicitly expressed the concern that Finjan would "check very carefully which of [Finjan's] patents [Defendants] may touch by recreating [Finjan's] system." Kobialka Decl., Ex. 17 (PTX-36). The individuals developing the infringing products were either recipients or authors of these documents. There is no dispute that Defendants knew about all Finjan Patents.

Furthermore, despite numerous product iterations and releases by Defendants, they never made any attempt to design around Finjan's Patents. For nearly four years, Defendants flouted Finjan's intellectual property rights and continues to do so to this day. In fact, Secure Computing has told the public that it has no intention of selling a non-infringing Webwasher

product even though it could begin shipping such a product immediately. The fact that Defendants fail to address most of Finjan's arguments in support of an injunction speaks volumes. To prevent further harm to Finjan that will occur if Defendants are permitted to continue to willfully infringe the Finjan Patents, this Court should grant Finjan's request for a permanent injunction and deny Defendants' request that the injunction be stayed pending the outcome of further proceedings and alternative requests for payment of an ongoing royalty to be placed in escrow. Finjan has suffered the effects of Defendants infringement for nearly four years and it should not be forced to suffer those effects any longer.

### ARGUMENT

The vast majority of district courts considering whether to grant a permanent injunction against an adjudicated infringer following the Supreme Court's decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), have granted it. D.I. 267 (Opening Brief at 6 n.2). Defendants do not even attempt to refute this weight of authority - but instead rely on *preliminary* injunction cases like T.J. Smith & Nephew Ltd. v. Consolidated Med. Group, Inc., 821 F.2d 646 (Fed. Cir. 1987), and National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319 (Fed. Cir. 2004), to support their position that a *permanent* injunction is not warranted in this case. A preliminary injunction determination is very different from the question of a permanent injunction. In the present case, a full trial has been held and an impartial jury correctly rendered a verdict rejecting Defendants' validity and non-infringement contentions. Under such circumstances, Finjan is entitled to a permanent injunction and such injunction should not be stayed pending appeal.

## I.    FINJAN HAS SUFFERED IRREPARABLE HARM.

### A.    Finjan is not precluded from a showing of irreparable harm because Finjan has maintained exclusivity by not licensing the patents-in-suit to competitors.

Contrary to Defendants assertion, willingness to license is far from a dispositive factor regarding whether to grant a permenant injunction. Transocean Offshore Deepwater Drilling, Inc. v. GlobalSanataFe Corp., 2006 WL 3813778, at *3-4 (S.D. Tex. Dec. 27, 2006) (finding

irreparable harm even though patent owner had previously demonstrated a "willingness to license the patented invention"); <u>Smith & Nephew, Inc. v. Synthes</u>, 466 F.Supp.2d 978, 983 (W.D. Tenn. 2006) (rejecting argument that willingness to license dispositive and stating that such willingness "is not sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue") (quotation omitted); <u>Acumed LLC v. Stryker Corp.</u>, 2007 WL 4180682, at *6 (D. Or. Nov. 20, 2007) (granting injunction where patent holder had previously licensed patent to others); <u>Baden Sports, Inc. v. Kabushiki Kaisha Molten</u>, 2007 WL 2790777, at *2 (W.D. Wash. Sept. 25, 2007) (finding irreparable harm despite patent holder's offers to license). However, as the evidence presented at trial clearly demonstrated, Finjan has never demonstrated a willingness to license competitors in the web gateway security market.

### 1. Microsoft does not compete with Finjan and Secure in the web gateway security market.

At the time Finjan and Microsoft entered into the Microsoft license, Finjan and Microsoft were not competitors and there was no indication that Microsoft would enter the web gateway security market with a product directly competing with the parties' products. While the IDC reports do mention Microsoft, the discussion of Microsoft in the 2003 IDC report states that Microsoft will "own the security client" implying that Microsoft's presence in the market will be at the client (user) level not the gateway level. Kobialka Decl., Ex. 6 at 18 (PTX-23). The IDC did not mention any Microsoft entrance into the gateway level security market. <u>Id</u>.

Defendants' reference to the Microsoft Forefront line of products and in particular the Intelligent Application Gateway 2007 ("Microsoft IAG") product is also without merit. Opposition at 6 and Ex. 4. Further research into the nature of Microsoft IAG clearly demonstrates that the product does not compete against the parties' products in the web gateway security market. *See* Wharton Reply Decl., Ex. 2 (Microsoft Advances Commitment to Secure and Seamless Networks at Interop).[1] The nature and purpose of Microsoft IAG is to provide

---

[1] A link to this article can be found on the Microsoft Forefront webpage relied upon by Defendants. Opposition at Ex. 4.

security to companies that seek to "have users who seek a consistent connected experience, regardless of their location, the device they use, or the networks they traverse." Id. Microsoft IAG includes "technologies [that] provide mobile and remote workers with easy and flexible security-enhanced access from a broad range of devices and locations." Id. This Microsoft product does not perform the functions of the parties' products or appear to even include the Finjan patented technology at issue in the present litigation. The products at issue in the present case in no way relate to remote access for employees.



**2.    Finjan maintains a policy of not licensing the Finjan patents-in-suit to competitors.**

Contrary to Defendants' assertions, Finjan has never offered to license Finjan's Patents to Webroot or any other competitor in the web gateway security market. In March 2007, Finjan

communicated to Webroot that it believed that certain of Webroot's products relating to client side products, not gateway technology, infringed two patents owned by Finjan that are not the subject of the current litigation - U.S. Patent Nos. 6,167,520 ("the '520 Patent") and 6,480,962 ("the '962 Patent"). Wharton Reply Decl., Ex. 3 (DTX-1305). The letter's subject was "Offer to License - U.S. Patent Nos. 6,167,520 and 6,480,962." Id. Attached to this letter, counsel for Finjan attached copies of the two patents discussed in the letter. Id. As is clear from the face of the letter, Finjan did not offer to license the patents-in-suit, namely the '194, '780, and '822 Patents. As further evidence that the intent of the letter was to license only the '520 and '962 Patents, the response sent by counsel for Webroot clearly evidences that Webroot itself believed that the offer to license communicated in the letter related only to the '520 and '962 Patents. Id., Ex. 4 (DTX-1306) (not submitted for admission at trial). Thus, the reference to "Finjan's patent portfolio" in the letter was actually referring to the '520 and '962 Patents, which is a different patent portfolio.

      **B.**      **Finjan is not precluded from showing irreparable harm under *Innogenitics*.**

Defendants' reliance on Innogenetics to argue that Finjan is precluded from obtaining an injunction is misplaced. Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1379 (Fed. Cir. 2008); Opposition at 3-4. Contrary to Defendants' characterization, the Federal Circuit has never held that "there should be no injunction when a patentee relies on projections of future sales before the jury." Opposition at 2. The Federal Circuit's opinion in Innogenetics dealt with a very specific factual situation that is wholly different from the facts now before the Court. Innogenetics, 512 F.3d at 1379-80. In Innogenetics, the parties' expert witnesses and the jury instructions provided for a jury damages verdict that "could include an up-front payment and an ongoing royalty payment" with the up-front payment to constitute a "market entry fee." Id. Subsequently, the jury award was found to include such a "market entry fee as an amount paid in anticipation of [the adjudicated infringer's] long-term license to sell its products." Id. Under those limited circumstances, the Federal Circuit found that an up-front licensing fee incorporated into a verdict constituted an award of damages on future sales. Id. Only under those

circumstances, where a portion of the jury award is directly attributable as damages for future sales, did the Federal Circuit find that the patent holder could not show irreparable harm. Id.

Our case is factually different from the case taken up by the Federal Circuit in Innogenetics. First, Defendants' and Finjan's expert damages witnesses testified that their damages opinions were specifically based on determining a reasonable royalty for past sales and neither witness argued that the jury should consider any type of up-front payment. D.I. 229 (T.T. at 591:4-592:3); D.I. 231 (T.T. at 1157:23-1158:20). The jury in the present case was asked to determine a royalty rate and then apply that rate to a royalty base made up solely of past sales. Verdict Form, D.I. 226  And the jury performed exactly as instructed. Id.  No portion of the jury damage amount constituted any type of up-front license fee. Id.  In Innogenetics, the Federal Circuit's sole reason for finding no irreparable harm was the existence of an up-front fee in the jury verdict. Innogenetics, 512 F.3d at 1379-80. The verdict in the present case contained no such fee. As such, Defendants' arguments regarding Innogenetics should be disregarded.[2]

### C.    Finjan has lost market share as a result of Defendants' infringing sales because Finjan and Secure compete directly for customers.

Defendants' assertion that Finjan is not losing market share is without merit.  Opposition at 7-10.  The fact that Finjan and Defendants compete with other vendors in the network gateway security market does not prohibit a finding that Finjan's drop in market share following Defendants' inclusion of the infringing technology is at least partially attributable to Defendants' infringing sales.  In Smith & Nephew, a court addressing a similar competitive situation found irreparable harm and granted a permanent injunction. Synthes, 466 F. Supp. 2d at 983 (finding irreparable harm where parties were not sole entities selling products in the relevant market); see also Baden Sports, 2007 WL 2790777, at *2 (finding that basketball manufacturer suffered

---

[2] Defendants further argue that Finjan's expert damages witness, Russell Parr, inappropriately relied on profit projections in performing a reasonable royalty analysis.  However, Defendants do not cite a single case holding that it is inappropriate for a damages expert witness to review future profit projections in performing a reasonable royalty analysis.  In fact, it is without question that an accused infringer approaching a hypothetical negotiation would know and consider future profit and sales projections before agreeing to a royalty rate.

irreparable harm despite the fact that numerous companies also sold basketballs in the same market).

Further, as discussed in Finjan's Opening Brief, the record is replete with evidence that Finjan competed with Defendants for customers and that competition continues to this day. Opening Brief at 8-16. Contrary to Defendants' thinly supported statement that Secure "rarely, if ever" competed with Finjan following January 2006, the record evidence clearly demonstrates that Defendants and Finjan competed for customers following Secure Computing's acquisition of Cyberguard. In Secure's Webwasher Sales Manual circulated after Secure's acquisition of Cyberguard in January 2006, Secure specifically identifies Finjan as selling a competing product. Kobialka Decl., Ex. 21 (PTX-118 at SC02745). Further, as the evidence in documents put forth at trial demonstrated, in April 2006, Finjan clearly considered the Webwasher product to be a competing product when Finjan undertook to research the Webwasher product and put together a document entitled "Finjan/Webwasher Competitive Analysis." Id., Ex. 15 (DTX-1071). Clearly, in the time following Secure Computing's purchase of Cyberguard, Finjan perceived Webwasher Products to be significant competing products in the market. Id. Moreover, in their opposition brief to Finjan's Motion for Enhanced Damages, Defendants argued in an effort to overcome the clear and convincing evidence of willful infringement that they were "competing with Finjan, not copying." D.I. 283 (Opposition to Finjan's Post-Trial Motion For Enhanced Damages at 9-10).

In support of their representation that Defendants rarely or never compete with Finjan, Defendants cite to the testimony of Michael Gallagher that Defendants and Finjan are not and have never been competitors and supported his assertion by describing Defendants' target customers for the Webwasher Products as Fortune 500 businesses whose business Finjan is not large enough to obtain. D.I. 230 (T.T. at 714:7-24). However, contrary to Mr. Gallagher's representation, Defendants' own documents note that their business is much broader than Fortune 500 businesses. For example, in its Form 10-K filed with the Securities and Exchange Commission for the year ending December 31, 2006, Secure Computing identified its key

customers as "both at the enterprise level as well as the Small and Medium Business (SMB) level." Kobialka Decl., Ex. 26 (JTX-11 at 7). The report went on to state that Secure Computing provides solutions for "organizations of all sizes." Id. The truth is that Defendants sell their products to entities of all sizes and Finjan directly competes with Defendants for these very same clients.

Defendants' representation that Finjan and Secure do not currently compete is contradicted by statements made by Secure Computing's Chief Executive Officer, Dan Ryan, during a recent earnings call. During the call, Mr. Ryan discussed Secure Computing's ongoing competition with Finjan and acknowledged that Finjan and Secure Computing compete for the same customers by stating that "Finjan is putting [news of the verdict] out in the market in front of a lot of perspective customers. . . I am aware of one substantial deal that we would directly relate to this." Wharton Reply Decl., Ex. 5 at 6 (Final Transcript - May 1, 2008 Conference Call Transcript: SCUR - Q1 2008 Secure Computing Corporation Earnings Conference Call). Thus, there is substantial evidence undermining Defendants' claim that they "rarely, if ever," compete head to head with Finjan. Oppositon at 8.



---

[3] The final three line items on Defendants' Exhibit 9 to the answering brief are incorrect. The number used by Defendants as the total market revenue is actually the total revenue for "Other" vendors - $530.1 million in 2004. The total market revenue for the 2004 was actually $4,479,400,000. Therefore, this Court should disregard the final calculation on Exhibit 9 as incorrect.



Finally, Defendants argument that Finjan does not benefit from convoyed sales is untrue. Finjan sells service agreements to its clients along with the Vital Security line of products. As is clearly evidenced by a cursory inspection of Finjan's website, Finjan actively promotes its services in conjunction with selling its products. Id., Ex. 7 (Finjan's Technical Support Offerings, *available* at http://www.finjan.com/content.aspx?id=251).

**D.      Finjan is particularly susceptible to harm at this point in time because 2008 will be an important year in the market in which Finjan and Secure compete.**

As recent statements released by Defendants clearly demonstrate, 2008 is a key time in the development of the market for web security products. For example, in the recent Earnings Call, Mr. Ryan noted that the "secure web gateway is a lucrative opportunity [and that a]ccording to Gardner, there's only a 10 to 15% market penetration of these solutions in the enterprise and 20 to 25% growth is anticipated." Wharton Reply Decl., Ex. 5 (Earnings Conference Call at 3).

Further, Defendants' intention is to dominate the market as soon as possible and Secure may succeed if not enjoined by this Court. During the Earnings Call, Tim Steinkopf, Secure Computing's Senior Vice President of Operations and Chief Financial Officer stated that their "intention here is to dominate the web gateway market and that's really what you're going to see focus of this company by for the next year." Id. Later in the call, Mr. Steinkopf stressed this point by stating that "as far as all of the product lines go, an IDC report would probably back this

up as well[, o]ur best growth opportunity, and we're seeing it in our activity, is in the web gateway area." Id. at 7.

Defendants have clearly stated that they will not cease infringing sales unless enjoined. This is true despite the fact that they acknowledge that it has "the ability to ship the product today without the alleged infringement if [it] chose to do that" but that they are "obviously not choosing to do that." Id. at 6. This explicit admission about continuing their tortious conduct is done with complete disregard to Finjan's patent rights, irreparable harming the value of Finjan's intangible assets and ability to utilize its technology in the marketplace to compete fairly.[4]

### E.    The Cases relied upon by Finjan support a finding of irreparable harm.

Finjan relies on numerous cases to support its claim of irreparable harm. Defendants' selective attack of a few of these cases fails to controvert the overwhelming case law supporting an injunction in the present matter. Further, Finjan's reliance on both the Novozymes and TiVo decisions was proper because the cases are directly on point and have not been overturned by the Federal Circuit. Defendants' attack on Finjan's reliance on this Court's Novozymes decision is misleading because it presumes that this Court will find Microsoft and Finjan were and continue to be direct competitors at the time of the Microsoft License. Opposition at 9. However, as discussed above, Microsoft does not and has never had a product offering that competes with Finjan's and Defendants' web gateway appliance products that are at issue in this case.

Defendants' attack on Finjan's reliance on the TiVo case is similarly misleading. While it is true that the Federal Circuit stayed the injunction issued by the district court in TiVo, the Federal Circuit in no way overturned the district court's issuance of the injunction or rejected the reasoning supporting the district court's decision. TiVo Inc. v. EchoStar Communs. Corp., 446 F.Supp.2d 664 (E.D. Tex. 2006). In fact, the Federal Circuit's opinion in the matter reinstituted

---

[4] Secure's insistence that it intends to continue selling infringing products is especially troubling because Defendants included a discussion of the available non-infringing version in support of their argument that Finjan has shown no irreparable harm. Opposition at 12. If Secure has no intention of selling the non-infringing version, this Court should give no weight to the non-infringing version when weighing irreparable harm.

the injunction as ordered by the district court. TiVo Inc. v. EchoStar Communs. Corp., 516 F.3d 1290, 1312 (Fed. Cir. 2008). In fact, numerous district courts outside of the Fifth Circuit have discussed the TiVo district court decision in evaluating whether or not to issue a permanent injunction. See e.g., 800 Adept, Inc. v. Murex Securities, LLC, 505 F.Supp.2d 1327, 1335 (M.D. Fla. 2007); Acumed, 2007 WL 4180682, at *4; Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., 2008 WL 928496, at *5 (N.D. Cal. Apr. 4, 2008); Black & Decker Inc. v. Robert Bosch Tool Corp., 2006 WL 3446144, at *4 (N.D. Ill. Nov. 29, 2006); MPT, Inc. v. Marathon Labels, Inc., 505 F.Supp.2d 401, 420 (N.D. Ohio 2007).

Finjan's Opening Brief made a substantial showing of irreparable harm on several grounds. Opening Brief at 8-16. Specifically, Finjan demonstrated that it suffered irreparable harms in the following manner: (a) Finjan lost of the right to exclude a key competitor from using Finjan's proprietary technology; (b) Secure's infringing sales shaped the market in a manner that resulted in Finjan's long-term customer loss; (c) Finjan lost market share to Defendants following their incorporation of the infringing technology; (d) Finjan's reputation as an innovator in the industry was harmed by Defendants infringing sales; (e) Finjan lost market share and good will that it should have enjoyed as a technology innovator in the field of network security; (f) Finjan lost valuable access to potential customers for its products; (g) Finjan lost its right to exclude Defendants as licensees; and (h) Defendants' post-trial conduct and assertions that it intends to continue making infringing sales has further harmed Finjan's image and credibility. This evidence of harm demonstrates why monetary damages are inadequate.

Defendants fail to address the vast majority of the evidence and cases cited by Finjan in support of assertion of irreparable harm. For example, they do not address the numerous cases cited by Finjan that support entry of a permanent injunction in the present case. *See* Commonwealth Sci. & Ind. Rsch. Org. v. Buffalo Tech. Inc., 492 F.Supp.2d 600, 605 (E.D. Tex. 2007) (finding irreparable harm where adjudicated infringer "saturates the market for a patented invention with an infringing product [and] damages the patent holder's good will or brand name recognition by selling infringing products"); *see also* Fresenius, 2008 WL 928496, at *5 (finding

11

irreparable harm where adjudicated infringer's misappropriation causes harm to reputation of patent holder as an innovator); Black & Decker, 2006 WL 3446144 (finding irreparable harm where patent holder suffered harm to reputation as innovator in the field of the patented technology); 800 Adept, 505 F.Supp.2d at 1337 (finding irreparable harm where patent holder "pioneer[ed] an invention in the market place" because "irreparable harm flows from a competitor's attempts to usurp the pioneering company's market position and goodwill"); Muniauction, Inc. v. Thomson Corp., 502 F.Supp.2d 477, 483 (W.D. Pa. July 31, 2007) (finding irreparable harm in part because jury verdict "that defendants have willfully infringed plaintiff's patent for six years supports our conclusion that plaintiff has suffered irreparable injury to its patent rights"); Odetics, Inc. v. Storage Tech. Corp., 14 F.Supp.2d 785, 797 (E.D. Va. 1998), aff'd, 185 F.3d 1259 (Fed. Cir. 1999) ("A compulsory license, which may arise from a refusal to enjoin, is fundamentally at odds with the right of exclusion built into our patent system.") (quotation omitted).

## II.    THE BALANCE OF HARDSHIPS FAVORS FINJAN AND AN INJUNCTION IS IN THE PUBLIC'S INTEREST.

Defendants' assertion that the balance of hardships favors Defendant is wholly unsupported by the facts now before the Court. Defendants will suffer little if any harm if enjoined by this Court. They assert that an injunction will cause them to suffer harm to its reputation and goodwill. Opposition at 13-14. However, Defendants have been adjudicated by a jury of their peers to willfully infringe Finjan's valid patents. As such, any harm to their reputation was their own doing and based on their conduct. Further, any alleged harm suffered by Defendants as a result of an injunction will be directly caused by customers' losing faith in Defendants as a result of their continued insistence that they do not infringe the Finjan patents and refusal to put out a non-infringing version of the accused product. Any harm suffered by Defendants, therefore, is of their own making and is not relevant to the injunctive question now before the Court. As such, the balance of the hardships clearly favors Finjan.

Finally, Secure now asserts that it will suffer harm if enjoined - a position in direct

contradiction to the position taken during Secure Computing's recent Earnings Call. As was made clear to its investors and analysts, Secure Computing will not suffer harm if forced to cease selling infringing products. In fact, Secure Computing's CEO confirmed this on May 1, 2008, when he stated that it "has the ability immediately to ship a product without the piece of the product that is alleged to infringe." Wharton Reply Decl., Ex. 5 (Earnings Conference Call at 12). Therefore, an injunction will have a limited impact on Defendants' overall business.

Likewise, Defendants' argument that an injunction in this case is contrary to the public interest is without merit. There s a substantial public interest in enforcing valid patents as the Federal Circuit has acknowledged "the importance of the patent system in encouraging innovation", which is tied directly to the right to exclude. Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1383-84 (Fed. Cir. 2006).

Furthermore, Defendants claim that Finjan will not be able to service all of Defendants' customers. Opposition at 13-14. However, this statement is made without any support whatsoever. To the contrary, as demonstrated at trial, Finjan will be able to provide the public with its patented technology, such that there will not be an adverse effect on the market if Defendants are enjoined from the market.

## III.    DEFENDANTS ARE NOT ENTITLED TO A STAY OF ANY PERMANENT INJUNCTION ISSUED IN THIS CASE.

Defendants do not believe that there should be any consequences for knowingly and willfully infringing Finjan's Patents. The clear and convincing evidence presented at trial demonstrated that Defendants willfully infringed Finjan's Patents for nearly four years and that they will continue to do so unless enjoined. Secure Computing, for example, has acknowledged that it is possible for it to immediately begin selling a non-infringing version of the Webwasher product. Wharton Reply Decl., Ex. 5 (Earnings Confrence Call at 12). However, its refusal to begin selling the non-infringing version raise concerns whether, or if, Defendants will ever switch to a non-infringing version of the product unless compelled by this Court.

To demonstrate entitlement to a stay of a permanent injunction, Defendants must demonstrate, among other things, a strong showing of likelihood of success on the merits of its post-trial requests for relief or subsequent appeals. <u>Fisher-Price, Inc. v. Safety 1st, Inc.,</u> 279 F. Supp. 2d 526 (D. Del. 2003). Defendants cannot make such a showing in this case and do not even attempt to do so. In fact, their argument is simply that they have filed Rule 50 and 59 motions. This does not come close to the "strong showing" requirement upon Defendants. Similar to the circumstances before this Court in <u>Fisher-Price</u>, "[t]here is no persuasive evidence that the [Defendants'] appeal carries a likelihood of success on the merits." In the present case, the jury heard evidence and ruled that Defendants' products infringed Finjan's Patents. While Defendants filed the usual post-trial requests for relief, there are no special circumstances in the present case that support Defendants' request for a stay pending their post-trial motions or subsequent appeals.

The case that Defendants relied on in support of their request for a stay involve wholly different circumstances than those now before the court. <u>Nichols Inst. Diagnostics v. Scantibodies Clinical Lab., Inc.,</u> 166 Fed. Appx. 487, 489 (Fed. Cir. 2006). In <u>Nichols</u>, the Federal Circuit, as opposed to a district court, determined whether or not to stay a permanent injunction and issued the stay only because the Federal Circuit found that the district court interpreted a claim term incorrectly. In the present case, there is no indication that either the jury or the Court made errors that support Defendants' assertion that they are likely to succeed on the merits. As such, a stay is not warranted.

## IV.    AN ONGOING ROYALTY IS NOT APPROPRIATE IN THIS CASE.

The case now before the Court is not the type of case in which an ongoing royalty in lieu of injunction is appropriate. First, this Court must first consider the question of a permanent injunction before considering an ongoing royalty arrangement. *See* <u>Paice LLC v. Toyota Motor Corp.,</u> 504 F.3d 1293, 1314-15 (Fed. Cir. 2007) (affirming lower court decision examining appropriateness of ongoing royalty arrangement only after determining that a permanent

14

injunction is not warranted). Because Finjan has clearly demonstrated that it is entitled to a permanent injunction, this Court should not consider instituting an ongoing royalty arrangement.

The cases relied upon by Defendants are not persuasive because the factual circumstances before the courts in those cases was completely different from the facts now before this Court. In its decision in Paice, the district court refused to enter an injunction under circumstances where the patent holder did not manufacture a product and where the court rejected the patent holder's only asserted harm of difficulty licensing the patents to other car manufacturers. Paice LLC v. Toyota Motor Corp., 2006 WL 2385139 at *5 (E.D. Tex. Aug. 16, 2006) (finding that plaintiff did not show irreparable harm because it "does not compete for market share with the accused vehicles [and] concerns regarding loss of brand name recognition and market share similarly not implicated"). Unlike the facts before the courts in the Pacie matters, as discussed in detail in Finjan's Opening Brief, Finjan has clearly demonstrated irreparable harm. Finjan manufactures a product that directly competes with Defendants' products and Finjan's ability to sell its product has been hindered by Defendants' infringing sales.

Likewise, in Innogenetics, the Federal Circuit held that the district court made a correct decision by an ongoing royalty arrangement only after determining that a permanent injunction was not appropriate. *See* Innogenetics, 512 F.3d at 1379-80. In Innogenetics, the district court specifically found that the patent holder could not demonstrate irreparable harm and that an injunction "could pose a serious risk to the public health." Innogenetics, N.V. v. Abbott Labs., 2007 WL 4960850 (W.D. Wis. Jan. 3, 2007). Under those circumstances, a running royalty was the only means available to the court to compensate the patent holder for ongoing infringement. In our case, Finjan has made a strong showing of irreparable harm and there is no public interest that weighs heavily against an injunction. As such, a permanent injunction is the appropriate means of ending the ongoing harm to be suffered by Finjan.

Should this Court grant an ongoing royalty, the payments from Secure should not go into escrow but rather should be paid directly to Finjan. First, as discussed above, Defendants have failed to demonstrate that they are likely to succeed on the post-trial motions or on appeal. As

such, there is only a slight possibility that Finjan would be required to refund any royalty payments. Second, Finjan owns the patents for the key technology in the industry. Second, Finjan's sales revenue have been steadily increasing over the years and Finjan has no history of default. As such, escrow in this instance is not warranted.

## CONCLUSION

For the foregoing reasons, Finjan respectfully requests that the Court grant its motion for a permanent injunction against further infringing sales by Defendants.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. André
Lisa Kobialka
King & Spalding LLP
1000 Bridge Parkway
Redwood City, CA 94065
(650) 590-0700

Dated: May 16, 2008
Public Version: May 23, 2008
866018

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Hercules Plaza
    P. O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com

*Attorneys for Plaintiff*
*Finjan Software, Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 23, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com; farnan@rlf.com

I hereby certify that on May 23, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

Jake M. Holdreith, Esq.
Christopher A. Seidl, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
jmholdreith@rkmc.com; caseidl@rkmc.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com