IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN SOFTWARE, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 06-369 (GMS) |
| | ) |
| SECURE COMPUTING | ) |
| CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM

## I.      INTRODUCTION

Presently before the court are the parties' post-trial motions in the above-captioned patent

infringement action. For the reasons that follow, the court will deny all of the defendants' post-

trial motions (D.I. 253), as well as the plaintiff's renewed motion for invalidity of the '361 patent

(D.I. 243). The court, however, will grant the plaintiff's motion for a permanent injunction (D.I.

283). The court will also grant in part the plaintiff's motion for enhanced damages (D.I. 245) and

its motion to amend the judgment and for an accounting of sales (D.I. 246).

## II.     PROCEDURAL BACKGROUND

On June 6, 2006, plaintiff Finjan Software, Ltd., ("Finjan") filed this action against the

defendants, Secure Computing Corporation, *et al.*, (collectively, "Secure") alleging that Secure's

Webwasher and TSP products infringe United States Patent Nos. 6,092,194, (the "'194 patent"),

6,804,780 (the "'780 patent), and 7,058,822 (the "'822 patent") (the "Finjan patents"). On April 20,

2007, Secure filed counterclaims against Finjan alleging infringement of United States Patent Nos.

7,185,361, (the "'361 patent"), and 6,357,010, (the "'010 patent") (the "Secure patents"). (D.I. 47.) The court held a *Markman* hearing in this matter on October 24, 2007. On December 11, 2007, the court issued an order construing the disputed claim terms of both the Finjan patents and the Secure patents (collectively, the "patents-in-suit"). (D.I. 142.)

On March 12, 2008, following a seven-day jury trial, the jury returned a verdict in favor of Finjan. (D.I. 226.) In its verdict, the jury found that: (1) the Finjan patents are not invalid; (2) Secure infringes the asserted claims of the Finjan patents; (3) Secure's infringement of the Finjan patents was willful; (4) the Secure patents are not invalid; and that (5) Finjan does not infringe the Secure patents. (*Id.*) In addition, the jury awarded Finjan $9.18 million in compensatory damages, based on: (1) a 16% royalty on $49 million in sales of Secure's Webwasher software product; (2) an 8% royalty on $3.25 million in sales of Secure's Webwasher hardware appliance product; and (3) an 8% royalty on $13.5 million in sales of Secure's TSP appliance product. (D.I. 226.) On March 28, 2008, the court entered judgment on the verdict in favor of Finjan and against Secure for monetary damages totaling $9.18 million. (D.I. 242.)

Following entry of the judgment,[1] on April 7, 2008, Finjan filed the following post-trial motions: (1) a motion for JMOL that the Secure '361 patent claims are invalid (D.I. 243); (2) a motion for permanent injunction (D.I. 244); (3) a motion for enhanced damages and for attorneys' fees (D.I. 245); and (4) a motion to amend the judgment and for an accounting of sales (D.I. 246). Likewise, on April 11, 2008, Secure filed the following post-trial motions: (1) a renewed motion

---

[1] Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, prior to the entry of judgment, the parties each moved for judgment as a matter of law ("JMOL") on the issues of infringement and invalidity. (D.I. 240.) At that time, however, the court reserved ruling on these motions, subject to the parties renewing the motions post-trial. *See* Fed. R. Civ. P. 50 (b).

for JMOL and, in the alternative, for a new trial for non-infringement, invalidity, and no willful infringement of the Finjan patents; (2) a motion for JMOL, or in the alternative remittur, to alter or amend the damages; and (3) a renewed motion for JMOL that Finjan infringed the Secure patents.[2] (D.I. 253.) The parties completed briefing on these motions on May 16, 2008. (D.I. 293.)

## III. BACKGROUND OF THE TECHNOLOGY

The patents-in-suit relate to computer networks. The Finjan patents relate to "hostile downloadables."[3] The '194 patent, at [57] (filed Nov. 6, 1997). Specifically, the '194 patent relates to a system and method for protecting a computer and a network from hostile downloadables. *Id.* This patent discloses a computer virus protection technique that monitors for known hostile downloadables, as well as examining the downloadable code to determine whether the code contains any suspicious operations. *Id.* Likewise, the '780 patent also relates to a system and method for protecting a computer and a network from hostile downloadables. The '780 patent, at [57] (filed March 30, 2000). This patent discloses a computer virus protection technique that monitors downloadables for performing suspicious operations. *Id.* The '822 patent relates to a system and method for protecting "network-connectable devices" from hostile downloadables. The '822 patent, at [57] (filed May 17, 2001). This patent discloses a computer virus protection technique that monitors downloadables for performing suspicious operations in an efficient and flexible manner

---

[2] On April 7, 2008, Secure also filed a motion to stay enforcement of the judgment and for expedited relief in this case. (D.I. 247.) On February 18, 2009, the court granted Secure's motion in part, subject to Secure posting an appropriate security for the judgment entered against it. (D.I. 277, 301.)

[3] As described in the Finjan patents, the term "downloadable" is construed as "an executable application program, which is downloaded from a source computer and run on the destination computer." (D.I. 142 at 2.)

3

that minimizes the usage of system resources while running in the background. *Id.*

The Secure patents relate to "firewalls."[4]   The '361 patent, at [57] (filed Jan. 31, 2000). Specifically, the '361 patent discloses a system, method and computer program product for providing authentication to a firewall using a lightweight directory access protocol (a "LDAP") directory server. *Id.* According to this claimed invention, the firewall can be configured through a graphical user interface to implement an authentication scheme. *Id.* Secure's '010  patent relates to controlling communication between networks. The '010 patent, at [57] (filed Feb. 17, 1998). The '010 patent discloses a system and method for limiting access to documents stored on an internal network. *Id.*

## IV.    STANDARD OF REVIEW

### A.    Motion for Judgment as a Matter of Law

Pursuant to Fed. R. Civ. P. 50, a court may render judgment as a matter of law after the moving party is fully heard on an issue at trial if there is no legally sufficient evidentiary basis for a reasonable jury to find for the party opposing the motion on that issue. *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993) (internal citation omitted). If the court denies a motion for judgment as a matter of law during trial, the motion may be renewed within ten days of entry of judgment in the case. Fed. R. Civ. P. 50(b).  For a party to prevail on its renewed motion for judgment as a matter of law following a jury trial, the party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu*

---

[4] As described in the Secure patents the term "firewall" is construed as having its plain and ordinary meaning, *i.e.*, a mechanism that allows only authorized users to access a network using its own authentication database. (D.I. 142, 112 at 27.)

4

*v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computer-Vision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d. at 893. In assessing the sufficiency of the evidence, the court must draw all reasonable inferences from the evidence in the light most favorable to the nonmovant. *Id.*; *Richardson-Vicks, Inc. v. UpJohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). The appropriate inquiry is whether a reasonable jury, given the facts before it, could have arrived at the conclusion it did. *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998). The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893.

### B.    Motion for a New Trial

Pursuant to Fed. R. Civ. P. 59, a court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions of law in the courts of the United States." Fed. R. Civ. P. 59(a). The decision to grant or deny a new trial is within the sound discretion of the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts. *Lind v. Schenley Industries, Inc.*, 278 F.2d 79, 89 (3d Cir. 1960), cert. denied, 364 U.S. 835 (1960). Unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *Allied Chem. Corp.*, 449 U.S. at 36. A court should grant a new trial in a jury case, however, only if "the verdict was against the weight

5

of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Conrail*, 926 F.2d 1344, 1352 (3d Cir. 1991).

## V.    DISCUSSION

Here, after having considered the record evidence in this case, the parties' post-trial submissions, and the applicable law, the court concludes that the jury's findings are supported by substantial evidence in the record, and that a new trial in this case is unwarranted.[5] Specifically, the court concludes that there is substantial evidence in the record to support the following jury findings: (A) the Finjan patents are not invalid; (B) Secure infringes the asserted claims of the Finjan patents; (C) Secure's infringement of the Finjan patents was willful; (D) the Secure patents are not invalid; and that (E) Finjan does not infringe the Secure patents.[6]  The court also concludes that a permanent injunction is warranted in this case, and that Finjan is entitled to enhanced damages, and an accounting for infringing sales through March 28, 2008.  The court will, therefore, deny all of Secure's post-trial motions, as well as Finjan's renewed motion for invalidity of the '361 patent. The court, however, will grant Finjan's motion for a permanent injunction, and grant in part Finjan's motion for enhanced damages, and Finjan's motion to amend the judgment for an accounting of sales.

---

[5] There is no basis in the record for the court to conclude that the jury's verdict goes "against the weight of the evidence" or that "a miscarriage of justice would result if the verdict were to stand."  *Williamson*, 926 F.2d at 1352.  Hence, the court will not grant a new trial on any of the issues in this case.

[6] More specifically, in its findings on the issue of invalidity, the jury found that neither side had proven by clear and convincing evidence that any of the asserted claims of the patents-in-suit were invalid due to either anticipation or obviousness in light of the prior art.  (D.I. 226.)

6

### A.    Secure's Renewed JMOL Motion for Invalidity

The court concludes that substantial evidence in the record supports the jury's finding that Secure failed to prove by "clear and convincing evidence" that the Finjan patents are invalid.[7] (D.I. 226 at 7-9.) Specifically, in light of the prior art, there is substantial evidence in the record for a reasonable jury to conclude that the Finjan patents are not invalid based on anticipation[8] or obviousness.[9]

---

[7] "Clear and convincing evidence is evidence that places in the fact finder 'an abiding conviction that the truth of [the] factual contentions are highly probable.'" *Alza Corp. v. Andrx Pharms., LLC*, 607 F. Supp. 2d 614, 631 (D. Del. 2009) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

[8] 35 U.S.C. § 102(a) provides that "[a] person shall be entitled to a patent unless, . . . the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for [a] patent, [*i.e.*, anticipated by the prior art]." To prove that a patent is invalid based on anticipation "requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citations omitted). Because a patent as a whole is entitled to the presumption of validity, an accused infringer seeking to prove that a patent is anticipated by the prior art, and therefore invalid, must do so by clear and convincing evidence. *State Contracting & Eng'g Corp. v. Condotte Am. Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003).

[9] 35 U.S.C. § 103 provides, that a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art." Obviousness is a question of law that is predicated upon several factual inquiries. *Richardson-Vicks v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). Specifically, the trier of fact must consider four issues: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed subject matter and the prior art; and (4) secondary considerations of non-obviousness, such as commercial success, long felt but unsolved need, failure of others, and acquiescence of others in the industry that the patent is valid, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). A party seeking to challenge the validity of a patent based on obviousness must also demonstrate by clear and convincing evidence that the invention described in the patent would have been obvious to a person of ordinary skill in the art at the time

7

### *1.    The '194 Patent*

First, there is substantial evidence in the record for a reasonable jury to conclude that the '194

patent is not anticipated by the Shaio reference.  Finjan's expert, Todd Heberlein ("Heberlein")

testified that none of the elements in the asserted claims of the '194 patent are included in the Shaio

reference that Secure alleges as prior art.  (D.I. 232 at 1271:15.)  In distinguishing the Shaio

reference from the '194 patent, Heberlein further testified that the Shaio reference does not receive

an incoming downloadable "addressed to a client," as required by the claims of the '194 patent. ( *Id.*)

Given Heberlein's testimony in this regard, a reasonable jury could conclude that the Shaio reference

does not anticipate the '194 patent.

In addition, there is also substantial evidence in the record for a reasonable jury to conclude

that the '194 patent is not obvious. As Finjan correctly notes, Heberlein testified during trial that one

of ordinary skill in the art would not have combined the Lo or Chen references with the Ji reference

to make the '194 patent obvious. (D.I. 232 at 1318.)  *See PharmaStem Therapeutics, Inc. v. ViaCell,*

*Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007) (explaining that when challenging the validity of a patent

for obviousness based on a combination of prior art references, "the burden falls on the patent

challenger to show by clear and convincing evidence that one of ordinary skill in the art would have

had reason to attempt to make [the combination] . . . and would have had a reasonable expectation

of success in doing so"). Heberlein also testified concerning the relevant secondary considerations

of non-obviousness. *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983)

(noting that "evidence of secondary considerations may often be the most probative and cogent

evidence in the record"). In particular, Heberlein testified that the '194 patent met a long-felt, but

---

the invention was made. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359-60 (Fed. Cir. 2007).

at the time unresolved need in the marketplace, that Secure copied the invention, and that the invention was commercially successful. (D.I. 232 at 1344-51.) Indeed, there is substantial evidence in the record to support the jury's finding that the '194 patent is not invalid.

### 2.    The '780 Patent

Likewise, there is also substantial evidence in the record to support the jury's finding that the '780 patent is not invalid. Specifically, in his testimony concerning the '780 patent, Heberlein described the obviousness analysis that he performed and presented to the jury detailed testimony regarding his methodology and the underlying bases for his conclusions. Heberlein also discussed in detail each of the claims of the '780 patent on a claim-by-claim, element-by-element basis. (D.I. 232 at 1333:8-1338:17.) In addition, he testified about the lack of evidence in the record that supports Secure's anticipation and obviousness claims against the '780 patent. (*Id.* at 1333:8-1338:17.) Moreover, both of Finjan's experts testified that they applied the court's claim construction to, among other things, rebut Secure's invalidity arguments regarding the '780 patent. (D.I. 228 at 327:10-11; D.I. 229 at 489:11-21; D.I. 232 at 1276:15-1277:2.) Given the testimony of both of Finjan's experts in this regard, a reasonable jury could conclude the '780 patent is not invalid.

### 3.    The '822 Patent

Similarly, based on the record evidence in this case, a reasonable jury could also conclude that the '822 patent is not invalid. Specifically, as Finjan correctly notes, there is substantial evidence in the record for a reasonable jury to conclude that the '822 patent is not anticipated by the Ji reference. In fact, as Finjan correctly points out, at trial, Secure's witness read only the abstract of this reference to the jury. (D.I. 231 at 995:6; D.I. 232 at 1338:22-1339:7.) On the contrary, Finjan

9

presented evidence to the jury indicating that the Ji reference was previously considered by the PTO during the prosecution of the '822 patent. (D.I. 232 at 1339:8-15.)

Accordingly, the court concludes that substantial evidence in the record supports the jury's finding that the Finjan patents are not invalid. The court also concludes that a new trial on this issue is not warranted.

## B.    Secure's Renewed JMOL Motion for Non-Infringement

In its JMOL motion for non-infringement, Secure challenges the jury's finding that Secure infringed the asserted claims of the Finjan patents. A patent infringement analysis entails two steps: "(1) claim construction to determine the scope of the claims, followed by (2) determination of whether the properly construed claim encompasses the accused device." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir.1998) (citations omitted). The first step, claim construction, is a matter of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S. Ct. 1384, 1387 (1996). The second step, determination of infringement, is a question of fact. *Bai*, 160 F.3d at 1353. A patentee must establish literal infringement by a preponderance of the evidence. *See, e.g., Braun Inc. v. Dynamics Corp.*, 975 F.2d 815, 819 (Fed. Cir.1992). "To establish literal infringement, every limitation set forth in a claim must be found in [the] accused product, exactly." *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir.1995). "The scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 728 (2002). Therefore, the court must determine whether substantial evidence supports the jury's finding that every limitation, or its equivalent, set forth in each of the asserted claims of the Finjan patents is found in Secure's accused products.

10

### *1.    The '194 Patent*

Secure contends that its accused Webwasher products do not infringe the '194 patent, and that Finjan has not placed substantial evidence into the record to support the jury's findings. Specifically, Secure argues that: (1) the Webwasher product does not copy the "addressed to a client" limitation as its ordinary meaning should have been construed; (2) the Webwasher product does not copy the "lists of suspicious computer operations" limitation as its ordinary meaning should have been construed; and (3) that its product does not infringe claim 3 under the doctrine of equivalents. The court disagrees. The court concludes that substantial evidence in the record supports the jury's finding that Secure's accused products literally infringe all but claim 3 of the asserted claims of the '194 patent, and that Secure's accused products infringe claim 3 of the '194 patent under the doctrine of equivalents.

As to Secure's first argument, the court concludes that substantial evidence in the record supports the jury's finding that the Webwasher products perform the limitation of receiving a downloadable "addressed to a client" as required by the asserted claims. At trial, Finjan offered expert testimony concerning this precise issue. Specifically, Finjan's expert, Dr. Giovanni Vigna ("Dr. Vigna") testified that the Webwasher product does receive an incoming downloadable addressed to a client. (D.I. 228 at 334:19.) In addition, in the claim construction order, the court construed this limitation as having "its plain and ordinary meaning." (D.I. 142 at 1.) Given Dr. Vigna's testimony, and the court's claim construction, a reasonable jury could have determined that Secure's Webwasher products performed this limitation. (D.I. 230 at 811:4). Thus, the court cannot say that the jury's finding in this regard is not supported by substantial evidence in the record.

As to Secure's second argument, the court also concludes that substantial evidence in the

11

record supports the jury's finding that Secure's Webwasher products covers the "list of suspicious computer operations" limitation of the '194 patent. At trial, Dr. Vigna testified that this element is found in the Webwasher products. (D.I. 228 at 365:10-12). Specifically, Dr. Vigna testified that, among other things, the Webwasher product "produces a list of suspicious behavior" that is identical to a "list of suspicious computer operations" as set forth in the asserted claims of the '194 patent. (*Id.* at 345:7-21, 349:16-350:1.) Again, in view of Dr. Vigna's testimony and the asserted claims of the '194 patent, the court finds that a reasonable jury could have concluded that the "lists of suspicious computer operations" limitation is found in Secure's Webwasher products.

Similarly, the court finds that a reasonable jury could have concluded that Secure's accused Webwasher products infringe claim 3 of the '194 patent under the doctrine of equivalents. Under the doctrine of equivalents, an element of an accused device is "equivalent" to an element of the patented invention if the differences between them are insubstantial. *Martek Biosciences Corp. v. Nutrinova, Inc.*, 520 F. Supp. 2d 537, 547-48 (D. Del. 2007) (citations omitted). Alternatively, the accused product infringes under the doctrine of equivalents if the element in the accused device performs substantially the same function in "substantially the same way to obtain the same result" as the claim limitation. (*Id.*)

As Finjan correctly notes, Dr. Vigna testified during trial that, each element of the asserted claims of the '194 patent, including claim 3, would be infringed by Secure's Webwasher products under the doctrine of equivalents. (D.I. 228 at 366:5-10, 368:18-369:2, 414:5-24, 415:5-16.) In light of Dr. Vigna's testimony, and the other evidence presented at trial, there is substantial evidence in the record for a jury to conclude that accused products infringe claim 3 of the '194 patent under the doctrine of equivalents. That is, based on substantial evidence in the record, a reasonable jury could

12

conclude that the differences between Secure's Webwasher product and claim 3 of the '194 patent are "insubstantial," or that Secure's Webwasher product "performs substantially the same function in substantially the same way to obtain the same result" as set forth in claim 3 of the '194 patent. *See Martek*, 520 F. Supp. 2d at 547-48.

Accordingly, the court concludes that substantial evidence in the record supports the jury's finding that Secure's accused products literally infringe all but claim 3 of the asserted claims of the '194 patent, and that Secure's accused products infringe claim 3 of the '194 patent under the doctrine of equivalents.

## 2. *The '780 Patent*

Regarding the '780 patent, Secure argues that the jury's finding that Secure's accused products infringe the asserted claims of the '780 patent under the doctrine of equivalents is not supported by substantial evidence in the record. Specifically, Secure argues that the doctrine of equivalents does not apply because: (1) prosecution history estoppel bars the use of the doctrine of equivalents in the context of the '780 patent, and (2) Dr. Vigna improperly applied a claim construction suggesting that the Webwasher products infringe the '780 patent under the doctrine of equivalents. The court disagrees with these arguments for several reasons.

First, the court rejects Secure's prosecution history estoppel argument. As a threshold matter, prosecution history estoppel requires that a claim element be amended in a manner altering the claim's scope. *See Festo Corp. v. Shoketsu Kinzolu Kogyo Kabushiki Co.*, 344 F.3d 1359, 1365 (Fed. Cir. 2003). Moreover, any such amendment must actually narrow the scope of the claims. *Id.* at 1366 ("If the amendment was not narrowing, then prosecution history estoppel does not apply.") In addition, prosecution history estoppel, if applicable, only limits equivalents in the "territory

13

between the original claim limitation and the amended claim limitation." *Id.* at 1367 (citation omitted). Here, there were no narrowing amendments during the prosecution of the '780 patent. Indeed, as Finjan correctly points out, the amendments to the claims of the '780 patent actually broadened or clarified aspects of the invention, as opposed to limiting the original claims. (D.I. 266 at 8-9.) The court is also not convinced that any of the amendments to the claims of the '780 patent relate to any claim element that Secure used as basis for defense for infringement at trial. (D.I. 231 at 1060:17-1061:6.) Secure's prosecution estoppel argument must, therefore, fail.

The court also rejects Secure's argument that Dr. Vigna's improperly applied the court's claim construction. To the contrary, the court finds that Dr. Vigna properly applied the '780 patent claims to the accused products in accordance with the court's claim construction order. During his testimony, Dr. Vigna described the technology and claims of the '780 patent on a limitation-by-limitation basis, analyzed relevant technical documents and source code, and explained, in detail, how Secure's Webwasher product worked in relation to the claims of '780 patent. (D.I. 228 at 330:17-331:4, 415:20-423:24.) Dr. Vigna further opined that, in addition to the Webwasher product literally infringing the '780 patent, the product also infringes under the doctrine of equivalents. Dr. Vigna offered specific testimony linking the asserted claims of the '780 patent to the operation of Secure's Webwasher product. Given Dr. Vigna's testimony and the evidence presented at trial in connection with his testimony, the court concludes that there is, indeed, substantial evidence in the record to support the jury's finding that Secure's accused products infringe all of the asserted claims of the '780 patent under the doctrine of equivalents.[10] Thus, Secure's argument in this regard must

---

[10] The court notes that at trial, during a conference at sidebar, Secure suggested that Dr. Vigna had addressed the doctrine of equivalents issue during his direct testimony. (D.I. 229 at 490:8-493:19.)

14

fail.

### *3.    The '822 Patent*

Substantial evidence in the record also supports the jury's finding that Secure's accused products literally infringe all of the asserted claims of the '822 patent. At trial, Secure's own expert admitted as much. Admittedly, Secure's expert testified that the Webwasher product infringed the '822 patent at least, "sometimes." (D.I. 231 at 1063:15.) *See Bell Commc'ns. Rsch., Inc. v. Vitalink Commc'ns. Corp.,* 55 F. 3d 615, 622 (Fed. Cir. 1995) ("[A]n accused product that sometimes, but not always, embodies a claimed method nonetheless infringes.")

Based on the foregoing discussion, the court concludes that substantial evidence in the record supports the jury's finding that every limitation, or its equivalent, set forth in each of the asserted claims of the Finjan patents is found in Secure's accused products. The court also concludes that a new trial on the issue of infringement of the Finjan patents is not warranted.

### C.    **Secure's JMOL Motion Regarding Willful Infringement**

The standard for willfulness has an objective prong and a subjective prong. *In re Seagate Technologies, LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007). "[P]roof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness ... to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* In addition, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

Here, the court concludes that substantial evidence in the record supports the jury's finding

15

that Secure willfully infringed the Finjan patents. At trial, Finjan presented both testimonial and documentary evidence indicating that, in developing its Webwasher products, Secure acted despite an "objectively high likelihood" that its actions constituted infringement of the Finjan patents. *Seagate*, 497 F.3d at 1371. For example, Finjan presented evidence showing that, as of 2003, as a result of testing, Secure knew that Finjan's product had "only one feature" that its Webwasher product did not have. (PTX-31, 32.) In addition, Finjan offered evidence indicating that Secure used the Finjan patents as a "road map" to develop its Webwasher products. (D.I. 228 at 306:12-16.) Finjan also presented evidence suggesting that Secure knew that its accused products infringed the Finjan patents. In particular, Finjan's infringement expert, Dr. Vigna, testified and pointed to evidence showing that Secure's source code included specific references to Finjan. (D.I. 228 at 457:10-11.) Given this record, a reasonable jury could conclude that Finjan proved by clear and convincing evidence that Secure's infringement was willful. Because the court finds no basis to disturb the jury's finding in this regard, Secure's motions for JMOL and for a new trial on the issue of willful infringement are denied.

**D.      Finjan's Renewed JMOL Motion for Invalidity of the '361 Patent**

Finjan contends that the jury's finding that the '361 patent is not invalid lacks evidentiary support. (D.I. 243.) Specifically, Finjan argues that at trial it presented conclusive evidence proving that the '361 patent is both anticipated and obvious in light of the Check Point Firewall-1 Architecture and Administration Version 4.0 reference (the "CP reference"). (*Id.* at 1.) The court disagrees. The court concludes that there is substantial evidence in the record that supports the jury's finding that the '361 patent is not invalid.

At trial, Secure elicited testimony from Finjan's expert, Dr. Trent Jaeger ("Dr. Jaeger"),

suggesting that the CP reference did not disclose all of the limitations required by the asserted claims of the '361 patent. For example, on cross-examination, Dr. Jaeger admitted that, unlike the '361 patent, the CP reference contains its own proprietary schema attributes. (D.I. 233 at 1536:13-1537:3.) Dr. Jaeger also admitted that, rather than using a directory schema that is predefined by the organization, the CP reference discloses proprietary schema attributes that must be added to the predefined directory schema of the organization. (*Id.* at 1537:18-24, 1538:5-8, 12-14.) Based on Dr. Jaeger's responses to cross-examination, and the asserted claims of the '361 patent, a reasonable jury could conclude that the CP reference: (1) does not teach each and every claim element and limitation of the '361 patent, and (2) that it does not anticipate or render obvious the claims of the '361 patent. Giving deference to the jury's finding, and viewing the evidence in the light most favorable to the nonmovant, as it must, the court simply cannot say that the jury's finding lacks the requisite evidentiary support. Accordingly, the court will deny Finjan's JMOL motion for invalidity based on anticipation and obviousness.

## E.    Secure's JMOL Motion for Infringement of the '361 Patent

The court finds that there is substantial evidence in the record that supports the jury's finding that Finjan's accused products do not infringe any of the asserted claims of the '361 patent. Finjan presented extensive expert testimony on this issue at trial. Specifically, Finjan's expert, Dr. Jaeger, testified that Finjan's accused NG appliances do not infringe the asserted claims of the '361 patent. (D.I. 233 at 1465.) During his testimony, Dr. Jaeger distinguished the accused Finjan products from the described technology and the asserted claims of the '361 patent on a limitation-by-limitation basis. Dr. Jaeger also testified that Finjan's accused products do not infringe because, among other things, the accused Finjan products are application layer gateways, as opposed to "firewalls" as

17

required by the claims of the '361 patent. (D.I. 233 at 1469:23-1470:23.) Dr. Jaeger further testified that the accused Finjan products do not infringe because they do not "query a directory as the response of a request" as required by claim 15 of the '361 patent. (*Id.* at 1482:11-1485:19.)

Given Dr. Jaeger's testimony, and the other relevant evidence presented at trial, the court finds that there is substantial evidence in the record to support the jury's finding that Finjan's accused product does not infringe any of the asserted claims of the '361 patent. The court finds no legal or factual basis to overturn the jury's finding in this regard or to order a new trial. The court will, therefore, deny Secure's JMOL motion for infringement of the '361 patent, as well as Secure's motion for a new trial on this issue.

## F.    **Finjan's Motion for Permanent Injunction**

A district court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.    "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."    *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).    That is, to be awarded a permanent injunction, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.* "Courts awarding permanent injunctions typically do so under circumstances where [the] plaintiff practices its invention and is a direct market competitor." *Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 558 (D. Del. 2008).

18

Here, applying the equitable factors set forth in *eBay* to the facts of this case, the court concludes that a permanent injunction with respect to the Finjan patents is warranted. First, the court concludes that, as a result of Secure's infringement, Finjan has suffered irreparable harm. Finjan and Secure are direct competitors in the network security market. *See Callaway Golf Co. v. Acushnet Co.*, 585 F. Supp. 2d 600, 619 (D. Del. 2008) ("Courts awarding permanent injunctions typically do so under circumstances where plaintiff practices its invention and is a direct market competitor.") Indeed, there is both testimonial and documentary evidence in the record in this case confirming that Finjan and Secure compete for many of the same targeted customers. (D.I. 227 at 221:8-14; D.I. 228 at 318:22-319:17; PTX-33, 35-36.) In addition, the record evidence reflects that Finjan has also suffered the loss of market share, as well as access to potential customers due to Secure's infringing Webwasher products competing in the market.[11] In fact, according to third-party market data published in 2007, following Secure's introduction of the infringing Webwasher products between 2004 and 2006, Secure's market share improved five fold, while Finjan's market share fell 66%. (D.I. 267 at 11-12.) Based on these considerations, the court is persuaded that Finjan has suffered irreparable harm. Moreover, because Finjan's alleges that Secure has continued to sell the infringing products, even after the jury's verdict, Finjan will likely continue to suffer such harm (and likely continue losing market share) if Secure is not enjoined from infringing the Finjan patents-in-suit.

Second, the court finds that legal remedies are not adequate to compensate Finjan for

---

[11] *See, e.g., Callaway Golf*, 585 F. Supp. 2d at 619 (finding irreparable harm based in part on evidence of lost market share); *Becton Dickinson & Co. v. Tyco Healthcare Gr. LP*, No. 02-1694 GMS, 2008 U.S. Dist. LEXIS 87623, at *10-11 (D. Del. Oct. 29, 2008) (finding irreparable harm based on evidence of lost customers and opportunities).

Secure's infringement. Indeed, the law is quite clear in this regard. The statutory right to exclude represents a tangential benefit associated with patent rights that cannot be quantified in monetary damages. *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528 (D. Del. 2003) (citation omitted). As previously noted, Secure is a direct competitor in the network security market. Finjan, therefore, has a right to exclude this rival from using Finjan's own proprietary technology against it in the marketplace. *Cf. Novozymes A/S v. Genecor Intern., Inc.*, 474 F. Supp. 2d 592, 613 (D. Del. 2007). In addition, the court is not persuaded by Secure's arguments that Finjan's willingness to license its invention, or attempt to estimate future infringing sales proves that monetary damages are adequate. (D.I. 280 at 4-8.) Although Finjan's "willingness to forgo its patent rights (generally) for compensation may be inconsistent with the notion that money damages are inadequate, it is certainly not a dispositive factor." *Callaway Golf*, 585 F. Supp. 2d at 620. Furthermore, contrary to what Secure seems to suggest, the court does not read the Federal Circuit's decision in the *Innogenetics* [12] case as standing for the proposition that in all cases "there should be no injunction when a patentee relies on projections of future sales before the jury." (D.I. 280 at 2.) In light of the record evidence, and the particular facts and circumstances presented in this case, the court is not convinced that monetary damages are sufficient to compensate Finjan for Secure's infringement.

Third, the court concludes that the balance of hardships favors Finjan. On the one hand, in addition to suffering the irreparable harm discussed above, should the court not issue an injunction in this case, Secure would certainly become Finjan's compulsory licensee, and, thus, deprive Finjan of its right to exclude a direct competitor. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988). In addition, absent an injunction enjoining Secure from practicing the

---

[12] *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008).

Finjan patents, there is the risk that Finjan may not recoup all of its "significant investment" in both time and resources spent developing and safeguarding its intellectual property. *Cf. Power-One, Inc. v. Artesyn Techs., Inc.*, No. 2:05-CV-463, 2008 U.S. Dist. LEXIS 30338, at \*5-6 (E.D. Tex. Apr. 11, 2008) (noting that "if [the plaintiff] is not granted an injunction, not only will it lose any potential of recouping its significant investment, it would also lose its right to exclude others from infringing its intellectual property"). The court finds that these hardships tip the scales in favor of Finjan.

On the other hand, Secure contends that, if an injunction is issued, its "reputation and goodwill would be tarnished." (D.I. 280 at 13.) Specifically, Secure argues that an injunction "*could* cause potential customers to associate [its] products with a *potential* for a disruption in service," resulting in "increased service and development costs" and "a *potential* loss in sales." (*Id.* at 13) (emphasis added). Finjan correctly points out, however, that any loss that Secure might suffer from ceasing the sale of the infringing products stems from Secure's own willful infringement. The court finds, therefore, that the balance of hardships tips in Finjan's favor. Secure's potential hardship does not outweigh the likely hardship that Finjan faces if its request for a permanent injunction is denied.

Lastly, the court concludes that the public interest would not be disserved by a permanent injunction in this case. Although it may be true that: (1) "computer security revolves around protecting highly sensitive information," and that (2) a "disruption in service . . . would be an incredible disservice to the public" (D.I. 280 at 13), in the context of this case, these truisms are insufficient to counter the "strong public policy favoring the enforcement of patent rights" recognized by the courts. *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1998). Thus, the public interest factor, favors Finjan's request for a permanent injunction.

For the reasons discussed above then, the court will grant Finjan's motion for a permanent

injunction, and order that Secure be enjoined from infringing the asserted claims of the Finjan patents.

### G.    Secure's JMOL Motion to Alter or Amend Damages

For a district court to overturn the damages verdict of the jury, the court must find that the jury's verdict is "against the great weight of evidence or sufficiently shocking so as to warrant a new trial." *Lucent Tech., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 264 (D. Del. 2001). In other words, a jury's award of damages is entitled to deference and must be upheld unless it is "grossly excessive." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 426 F. Supp. 2d 211, 223 (D. Del. 2006).

Secure contends that the jury's verdict in this case should be overturned because it is "unreasonable, excessive, and shocks the conscience." (D.I. 266 at 32.) In part, as a basis for its contention, Secure argues that, based on the record evidence, no reasonable jury could find that Secure should have to pay Finjan $9.18 million for infringing the three Finjan patents at issue in this case; especially given that Microsoft paid only $8 million to license Finjan's entire patent portfolio. (*Id.* at 33.) The court, however, disagrees. As Finjan correctly notes, the jury heard and considered extensive testimony at trial regarding the Microsoft-Finjan license agreement and the $8 million Microsoft paid to license Finjan's technology. Specifically, Finjan's damages expert, Russell Parr ("Parr") testified regarding both the scope of the Microsoft license and the value of the license agreement to both Microsoft and Finjan. (D.I. 229 at 598:3-604:9, 650:25-654:3, 671:1-10. ) In his testimony, Parr explained that as a result of, among other things, the substantial intangible benefits that stem from being endorsed by Microsoft, the true value of the Microsoft license actually exceeds $8 million. (D.I. 229 at 650:25-654:3.) Secure also presented expert testimony concerning the

22

Microsoft license. (D.I. 231 at 1139:9-1140:1; D.I. 233 at 1633:17-1634:10.) Indeed, there is substantial evidence in the record concerning the Microsoft-Finjan license agreement and the $8 million payment.

In addition, the jury heard and considered a substantial amount of testimonial evidence regarding the *Georgia-Pacific* factors.[13] In fact, both sides' experts testified as to the appropriate measure of damages and the weight that the *Georgia-Pacific* factors should be given in determining the reasonable royalty that an accused infringer, like Secure, should pay an alleged injured patent holder, like Finjan. For example, Finjan presented evidence, including expert testimony, regarding the appropriate reasonable royalty rates and royalty base that should be applied to Secure's infringing sales in this case. Not surprisingly, Secure presented conflicting expert testimony as to what, if at all, the appropriate reasonable royalty rates and royalty base should be in this case.

On this record, a reasonable jury could accept or reject either parties' take on the evidence, including the conflicting expert testimony in this case. *See DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1309 (Fed. Cir. 2006) (noting that it is the role of the jury to "resolve conflicts in the evidence of damages"). Thus, the court will not substitute its own resolution of the conflicting evidence for that of the jury. *See Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1377 (Fed. Cir. 1988). As such, and in light of the substantial evidence in the record, the court is unconvinced that the jury's verdict on the issue of damages is either grossly excessive, unreasonable, or "sufficiently shocking so as to warrant a new trial." *Lucent Tech., Inc.*, 168 F. Supp. 2d at 223. Secure's JMOL motion to alter or amend the damages award, or in the alternative, for a new trial

---

[13] *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (establishing 15 factors to be weighed in determining a reasonable royalty damages).

is, therefore, denied.

### H.    Finjan's Motion to Amend the Judgment and for an Accounting of Sales

In this motion, Finjan seeks to amend the March 28, 2008 judgment to include: (1) an accounting of all infringing sales not considered by the jury,[14] and (2) both prejudgment and postjudgment interest, calculated at the prime rate, on the total damages award. (D.I. 246.) Secure, however, argues that this motion lacks merit, and should be denied for two reasons: (1) Finjan waived its right to request an accounting, and (2) Secure would be unfairly prejudiced by the application of the jury-determined royalty rate to additional sales not presented at trial. (D.I. 279 at 1.) Secure further argues that, should the court grant prejudgment interest, the U.S. Treasury Constant Maturity Rate (the "T-bill rate"), compounded annually, should be used. (*Id.* at 8-9.)

### *1.    Accounting of Infringing Sales Not Considered by the Jury*

35 U.S.C. § 284 provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." "The methodology of assessing and computing damages under 35 U.S.C. § 284 is within the sound discretion of the court." *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898 (Fed. Cir. 1986) (citations omitted).

Here, the court concludes that Finjan is entitled to an accounting for those additional

---

[14] In its March 12, 2008 verdict, the jury awarded Finjan: (1) a 16% royalty on $49 million in sales of Secure's Webwasher software product, (2) an 8% royalty on $3.25 million in sales of Secure's Webwasher hardware appliance product, and (3) an 8% royalty on $13.5 million in sales of Secure's TSP appliance product. (D.I. 226.)

infringing sales that occurred up until March 28, 2008, *i.e.*, the date of entry of the judgment.[15]  The court will, therefore, grant in part and deny in part Finjan's motion, and order that the judgment be amended as follows: (1) to include an accounting of any sales of Secure's Webwasher software appliance products made after September 9, 2007 through March 28, 2008; (2) to include an accounting of any sales of Secure's Webwasher hardware appliance products made after September 9, 2007 through March 28, 2008; and (3) to include an accounting of any sales of Secure's TSP appliance products made after June 30, 2006 through March 28, 2008.[16]  Accordingly, the jury's original $9.18 million damages award, and the court's March 28, 2008 judgment reflecting the same, shall be amended to incorporate the foregoing additional infringing sales: as calculated by multiplying the royalty rates used by the jury by the newly accounted for sales (*i.e.*, the "amended jury damages award").

### 2.    *Prejudgment and Postjudgment Interest*

In patent infringement cases, "prejudgment interest should be awarded under [35 U.S.C.] § 284 absent some justification for withholding such an award." *General Motors v. Devex Corp.*, 461 U.S. 648, 657 (1983).  In deciding whether to award prejudgment interest at the prime rate or at the Treasury bill rate, the "Federal Circuit has given district courts great discretion when determining the applicable interest rate for an award of prejudgment interest." *IPPV Enterprises, LLC v. EchoStar Comm'n Corp.*, No. Civ. A. 99-577-KAJ, 2003 WL 723260, at *3 (D. Del. Feb. 27, 2003)

---

[15] The court rejects Secure's waiver argument.  The court, however, agrees that the accounting should be limited to only those additional infringing sales that occurred up until the date of entry of the judgment in this case.

[16] Within five (5) days of the docketing of this memorandum and order, Secure shall provide Finjan with an accounting of all additional infringing sales that occurred up until March 28, 2008.

(citation omitted). In making this determination, a number of courts have recognized "that the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is 'a better measure of the harm suffered as a result of the loss of the use of money over time.'" *IMX, Inc. v. Lending Tree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) (quoting *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720-21 (D. Del. 1993), *aff'd*, 16 F.3d 421 (Fed. Cir. 1993)). Postjudgment interest "shall be allowed on any money judgment in a civil case recovered in a district court . . . " 28 U.S.C. § 1961. "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, . . . compounded annually." *Id.*

Accordingly, the court will order Secure to pay: (1) prejudgment interest on the amended jury damages award at the prime rate, compounded quarterly, starting from "the dates infringement began for each of the infringing products" through March 28, 2008,[17] and (2) postjudgment interest on the amended jury damages award, calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, compounded annually.

## I.    **Finjan's Motion for Enhanced Damages**

Finjan seeks enhanced treble damages for Secure's willful infringement of its patents. Pursuant to 35 U.S.C. § 284, a court may "increase the damages up to three times the amount found or assessed." An increased damages award requires a showing of willfulness. *Seagate*, 497 F.3d at 1368. A finding of willfulness, however, does not mandate enhanced damages. *See Cybor Corp.*

---

[17] For purposes of calculating prejudgment interest in this case, "the dates infringement began for each of the infringing products" are deemed as follows: (1) October 1, 2004 for the Webwasher software products; (2) April 1, 2006 for the Webwasher hardware appliance products; and (3) January 5, 2005 for the TSP appliance products. (D.I. 262 at 10.)

*v. FAS Techs., Inc.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992). "Rather, '[t]he paramount determination [for enhanced damages] . . . is the egregiousness of the defendant's conduct based on all the facts and circumstances.'" *Electro Scientific Indus., Inc. v. General Scanning, Inc.*, 247 F.3d 1341, 1353 (Fed. Cir. 2001) (citation omitted). "[T]he principal considerations in enhancement of damages are the same as those of the willfulness determination, but in greater nuance as may affect the degree of enhancement." *SRI Intern., Inc. v. Advanced Technology Labs., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997) (citing *Read*). Thus, enhancement of damages is within the discretion of the district court and is informed by the totality of the circumstances. *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1576 (Fed. Cir. 1991).

Factors the court may take into consideration when determining whether, and to what extent, to exercise its discretion include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Read Corp.*, 970 F.2d at 826 (the "*Read* factors"). The weighing of these factors helps finely tune the nuanced calculation of culpability for enhanced damages.

Here, Finjan argues that each of these factors weigh heavily in favor of trebling damages. (D.I. 264 at 3.) Secure, on the other hand, argues that its conduct is far from the egregious behavior that justifies enhancement, and, as such, the *Read* factors do not weigh in favor of enhanced

27

damages. (D.I. 283 at 6.)  The court will address each of the *Read* factors in turn.

### *1.    Deliberate Copying*

Secure relies on its previous arguments against willful infringement to support its contention that there was no deliberate copying.  Pursuant to the *Seagate* standard for willful infringement, however, the jury found to the contrary.  The jury determined that there, in fact, existed an "objectively high risk" that Secure's actions were infringing, and that Secure knew or should have known of that objectively high risk. The court will give deference to the jury's finding in this regard, and will not substitute its own findings for those made by the jury.  *See Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1572 (Fed. Cir. 1996).  Thus, the court finds that Finjan's patents were copied deliberately.  This factor, therefore, weighs in favor of enhanced damages.

### *2.    Lack of Good Faith Belief*

The record evidence suggests that Secure knew or should have known that it was likely infringing Finjan's patents.  As discussed previously, Finjan presented both testimonial and documentary evidence at trial indicating that, in developing its infringing products, Secure acted despite an "objectively high likelihood" that its actions constituted infringement of the Finjan patents.  *Seagate,* 497 F.3d at 1371.  Indeed, it is undisputed that Secure did not obtain an opinion of counsel, or take any other meaningful steps, to try to determine whether the Finjan patents were invalid, or whether any of its products infringed those patents.  While there is no longer an affirmative duty of care that requires an accused infringer to obtain an opinion of counsel, the fact that Secure did not seek any such opinion may be considered in the totality of circumstances surrounding willful infringement.  As such, the court finds that this factor weighs in favor of enhanced damages.

28

### 3.    *Litigation Conduct*

The third *Read* factor requires the court to look at the infringer's behavior through the course of the litigation. Finjan contends that Secure engaged in improper litigation tactics, in part, by arguing positions contrary to the claim construction order and maintaining frivolous positions. While there might be some evidence of less than desirable litigation behavior by Secure, the court does not find this evidence sufficient to conclude that this factor favors enhancement. This factor is, therefore, neutral on the issue of enhanced damages.

### 4.    *Size and Financial Condition*

Secure argues that there is little difference in its size relative to Finjan. This fourth *Read* factor, however, is not concerned with relative sizes *per se*, as much as whether a defendant can financially withstand an enhancement in damages. Moreover, this factor does not weigh towards culpability, but rather may militate against enhanced damages, if they would be too burdensome on a defendant. Here, given Secure's considerable size and relatively healthy financial condition, the court finds that this factor weighs in favor of enhanced damages.

### 5.    *Closeness of the Case*

This case was sufficiently close so as to either neutrally weigh towards enhancing damages, or slightly weigh against enhancing damages.

### 6.    *Duration of Misconduct*

Secure does not dispute that its Webwasher product has been for sale for more than four years, or that it has continued to sell the product since this lawsuit began. Thus, this factor weighs in favor of enhanced damages.

### 7.    *Remedial Action*

29

Secure claims that it has taken some remedial actions. If true, this factor mitigates against treble damages. *Read Corp.,* 970 F.2d at 827 (noting that the defendant "voluntarily ceased manufacture and sale of infringing systems during the pendency of this litigation") (citation omitted). Here, however, the record suggests that Secure has continued to manufacture and sell its accused Webwasher products in the marketplace, despite the pendency of this litigation. The court, therefore, finds that this factor weighs in favor of enhanced damages.

### *8.     Motivation to Harm*

Secure does not contest that the Finjan patents represented a technology that it wished to compete with and emulate in the market. Although this type of market pressure alone may not be enough to show the motivation to inflict harm necessary to warrant enhanced damages, it certainly does not weigh against such a finding. Thus, the court finds that this factor is neutral on the issue of enhanced damages.

### *9.     Concealment of Misconduct*

There are no claims or evidence to suggest that Secure attempted to conceal any misconduct. The court, therefore, finds that this factor weighs against enhanced damages.

### *10.     Conclusion on the Issue of Enhanced Damages*

Here, in light of the jury's verdict and findings, as well as the parties' submissions, and consideration of the *Read* factors, the court concludes that enhanced damages are warranted in this case. Specifically, in analyzing the *Read* factors, two *Read* factors (*i.e.*, closeness of the case and concealment of misconduct) weigh against enhanced damages; two factors (*i.e.*, litigation conduct and motivation to harm) are neutral; and the remaining five factors weigh in favor of enhanced damages. Secure's willful infringement and the factors discussed above, therefore, support an award

30

of enhanced damages. Accordingly, Finjan's motion for enhanced damages is granted in part and denied in part. The court finds that Finjan is entitled to enhanced damages in the amount of 50% of the amended jury damages award. Postjudgment interest, however, shall not be applied to these enhanced damages.

## J.    Finjan's Motion for Attorney Fees and Expenses

Finjan also argues that the jury's willfulness finding and Secure's litigation tactics warrant a finding that this case is exceptional pursuant to 35 U.S.C. § 285. In deciding whether to award attorney's fees, the court must undertake a two-step inquiry. *Interspiro USA, Inc. v. Figgie Intern. Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994). First, the court "must determine whether there is clear and convincing evidence that the case is 'exceptional.'" *Id.* (quotation omitted). Second, the court must determine whether "an award of attorney fees to the prevailing party is warranted." *Id.* Exceptional cases include: "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002) (citation omitted).

An award of attorney fees under § 285 is not intended to be an "ordinary thing in patent cases," and should be limited to circumstances in which it is necessary to prevent "a gross injustice" or bad faith litigation. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003); *see also Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1375 (Fed. Cir. 2001) (affirming an award of attorney fees under § 285 for the "extreme litigation misconduct" of falsifying evidence); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. 1989) (affirming an award under § 285 following repeated violations of a permanent injunction and a district court finding of a "strategy of vexatious activity").

31

Here, the court finds that Secure's conduct in this case does not rise to a level of bad faith or vexatious litigation that warrants an award of attorneys' fees and costs. Notwithstanding the jury's finding of willfulness, the record demonstrates that throughout this litigation, Secure vigorously defended its position and put Finjan to its proofs. *See Forest Labs., Inc. v. Ivax Pharms., Inc.*, No. 03-891-JJF, 2008 U.S. Dist. LEXIS 14623, at *6-7 (D. Del. Feb. 26, 2008) (noting that "hard-fought" litigation does not necessarily constitute "vexatious or bad faith litigation" for purposes of awarding attorney fees under § 285). Indeed, the court is not aware of any conduct by either side during this litigation that could be characterized as "bad faith" or "vexatious" litigation. Absent more, the court declines to award attorney fees based upon the jury's finding of willfulness. Accordingly, the court will deny Finjan's motion for attorneys' fees and costs.

## VI.    CONCLUSION

For the foregoing reasons, the court will: (1) deny all of Secure's post-trial motions (D.I. 253); (2) deny Finjan's renewed motion for invalidity of the '361 patent (D.I. 243); (3) grant Finjan's motion for a permanent injunction (D.I. 244); (4) grant in part Finjan's motion for enhanced damages (D.I. 245); and (5) grant in part Finjan's motion to amend the judgment and for an accounting of sales (D.I. 246).

Dated: August ___, 2009

CHIEF, UNITED STATES DISTRICT JUDGE

32

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FINJAN SOFTWARE, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-369 (GMS) |
| | ) | |
| SECURE COMPUTING | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ORDER**

For the reasons set forth in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1.   Secure's motion for judgment as a matter of law and, in the alternative, for a new
      trial for non-infringement, invalidity, and no willful infringement of the Finjan
      patents (D.I. 253) is DENIED;

2.   Secure's motion for judgment as a matter of law, or in the alternative remittur, to
      alter or amend the damages (D.I. 253) is DENIED;

3.   Secure's motion for judgment as a matter of law that Finjan infringed the Secure
      patents (D.I. 253) is DENIED;

4.   Finjan's motion for judgment as a matter of law for invalidity of the '361 patent (D.I.
      243) is DENIED;

5.   Finjan's motion to amend the judgment and for an accounting of sales (D.I. 246) is
      GRANTED IN PART and DENIED IN PART. The March 28, 2008 judgment, and

the original jury damages award of $9.18 million, shall be amended to include an accounting of those additional infringing sales that occurred up until March 28, 2008. Secure shall pay: (a) prejudgment interest on the amended jury damages award at the prime rate, compounded quarterly through March 28, 2008, and (b) postjudgment interest on the original jury damages award pursuant to 28 U.S.C. § 1961;

6.  Finjan's motion for a permanent injunction (D.I. 244) is GRANTED.

7.  Finjan's motion to enhance damages and for attorneys' fees and costs (D.I. 245) is GRANTED IN PART and DENIED IN PART. Finjan is awarded enhanced damages in the amount of 50% of the amended jury damages award. Finjan's motion for attorneys' fees and costs is DENIED.

8.  Secure's motion to stay enforcement of the judgment and for expedited relief (D.I. 247) is DENIED as moot.

Dated: August 18, 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE